**Jason L. Kafoury (OSB #091200)**
**Mark McDougal (OSB #890869)**
**Kafoury & McDougal**
**411 SW Second Avenue, Suite 200**
**Portland, OR 97204**
**(503) 224-2647**
**Fax: (503) 224-2673**
**jkafoury@kafourymcdougal.com**
**mcdougal@kafourymcdougal.com**
**Attorneys for Plaintiff**

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

Eugene DIVISION

| | |
|---|---|
| **JAMES M. CLEAVENGER,** | Case No. 6:13-cv-01908-DOC |
| Plaintiff, | **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| vs. | |
| **UNIVERSITY OF OREGON (an Agency and Instrumentality of the State of Oregon), et al.,** | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

Plaintiff hereby requests oral argument on this matter, and responds to defendants'

motions as follows:

Page 1 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................3

Motion 1:  Tort claim notice ....................................................................5

    1.  Actual Notice - ORS 30.275(6) ..............................................6

    2.  Notice through Partial Payment - ORS 30.275(3) .................13

    3.  Continuing Torts ...................................................................15

Motion 2:  Statute of limitations ...........................................................16

Motion 3 and 4:  Plaintiff's § 1983 claims against the state and individual defendants..........19

Motion 5:  Due process violations .........................................................20

Motion 6:  Adequate statutory remedy ..................................................27

Motion 7:  Eleventh Amendment Immunity ..........................................29

Motion 8:  Plaintiff's claims based on retaliation he
    suffered after he was terminated are valid claims..................29

Motions 9 and 10: Declaratory relief and injunctive relief...................31

CONCLUSION.......................................................................................32

CERTIFICATE OF COMPLIANCE.......................................................32

CERTIFICATE OF SERVICE ...............................................................33

TABLE OF AUTHORITIES

**Cases**

*Berndt v. California Dep't of Corr.*, No. C 03-3174 PJH, 2014 WL 4628860 (N.D. Cal. Sept. 16, 2014) .................................................................................................................... 19

*Bignall v. N. Idaho College*, 538 F.2d 243 (9th Cir. 1976) ......................................... 21

*Bollow v. Fed. Res. Bank of San Francisco*, 650 F.2d 1093 (9th Cir. 1981)................................. 24

*Bordelon v. Chicago School Reform Board of Trustees*, 233 F.3d 524 (7th Cir. 2000)............... 21

*Brown v. Portland School District # 1*, 291 Or. 77, 628 P.2d 1183 (1981).................................. 11

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) ....................................... 21

*Davis v. Bostick*, 282 Or. 667, 580 P.2d 544 (1978).................................................... 16

*Dunlap v. Liberty Natural Products, Inc.* (No. 3:12-cv-01635-SI, 2013 WL 6177855 (D. Or. Nov. 25, 2013) .................................................................................................. 29, 30

*Engquist v. Oregon Department of Agriculture,* 478 F.3d 985, 996-98 (9th Cir. 2007) ......... 20, 21

*Flug v. University of Oregon*, 335 Or. 540, 73 P.3d 917 (2003) ............................................... 8, 9

*Griffen By and Through Stanley v. Tri-County Metropolitan Transportation District of Oregon*, 112 Or. App. 575 (1992).......................................................................... 16, 17, 18

*Hafer v. Melo*, 502 U.S. 21, 31 (1991) ....................................................................... 20

*Hotelling v. Walther*, 169 Or. 559 (1942) .............................................................. 16, 18

*Hughes v. City of Portland*, 255 Or.App. 271, 296 P.3d 642 (2013)................................. 5, 14, 15

*McCabe v. State of Oregon*, 841 P.2d 635-7 (1992)............................................... 5, 9, 11

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 1010, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002).......................................................................................................... 18, 19

*Olsen v. Deschutes Cnty.*, 204 Or. App. 7, 127 P.3d 655 (2006) .................................................. 28

*Portman v. County of Santa Clara*, 995 F.2d 898 (9th Cir. 1993).......................................... 20, 25

*Roa v. Roa*, 200 NJ 555, 985 A2d 1225 (2010)...................................................................... 30, 31

*Roley v. Pierce County Fire Protection District No. 4*, 869 F.2d 491 (1989) ............................. 24

*Urban Renewal Agency v. Lackey*, 275 Or. 35, 41, 549 P.2d 657 (1976) ...................................... 5

*Vanelli v. Reynolds School District No. 7*, 667 F.2d 773 (9th Cir. 1982)................................... 24

*Wall v. Sentry Ins.*, 2015 WL 350683 (2015) ............................................................................. 27

*Webb v. Highway Division of Oregon State*, 652 P.2d 783 (1982) ............................................. 11

Page 4 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Motion 1.        Tort claim notice.

Generally, the purpose of the Oregon Tort Claims Act is to afford public bodies an opportunity to investigate potential claims so they are not surprised when claims are actually asserted.  (See generally *Urban Renewal Agency v. Lackey*, 275 Or. 35, 41, 549 P.2d 657 (1976); *McCabe v. State of Oregon*, 841 P.2d 635-7 (1992); and *Hughes v. City of Portland*, 255 Or.App. 271, 296 P.3d 642 (2013)).  In this case there was no surprise, as plaintiff's claims were anticipated by the defendants even *before* his termination.

Defendants claim that "Plaintiff did not present a tort claim notice that met the requirements of ORS 30.275(4) to *any* Defendant until, at the earliest, December 10, 2014 . . . more than two years after Plaintiff's termination."  (ECMF #60 at p. 6.)   This claim is in error, as plaintiff actually sent *multiple* tort claim notice letters to *all* the defendants and state entities in October and November of 2013.  (Decl. of James Cleavenger, Ex. 1.)  The 12/10/2014 notice that defendants are referring to in their motion and referenced in Paragraph 133 the Second Amended Complaint (ECMF #56), is actually a ***separate and additional*** tort claim notice that was timely sent to the appropriate government entity (Oregon Department of Administrative Services) for notice of the *continuing* torts (of retaliation), as discussed in a later section herein.

Regardless, plaintiff concedes that he did not present a *written* tort claim notice meeting the requirements of ORS 30.275(4) within 180 days of his 10/26/2012 termination.  However, plaintiff previously provided sufficient notice under three theories:

(1)  Actual Notice as per ORS 30.275(6).

(2)  Notice through defendants' payment of part of plaintiff's claims, as per ORS 30.275(3)(d).

Page 5 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

(3) Notice of plaintiff's *continuing* tort claims (for retaliation) through the filing of an additional written tort claim notice on 12/10/2014, as per ORS 30.275(4).

1. <u>Actual Notice - ORS 30.275(6)</u>:

ORS 30.275(6) provides that:

> Actual notice of claim is any communication by which any individual to whom notice may be given as provided in subsection (5) of this section or any person responsible for administering tort claims on behalf of the public body acquires actual knowledge of the time, place and circumstances giving rise to the claim, where the communication is such that a reasonable person would conclude that a particular person intends to assert a claim against the public body or an officer, employee or agent of the public body. A person responsible for administering tort claims on behalf of a public body is a person who, acting within the scope of the persons responsibility, as an officer, employee or agent of a public body or as an employee or agent of an insurance carrier insuring the public body for risks within the scope of ORS 30.260, engages in investigation, negotiation, adjustment or defense of claims within the scope of ORS 30.260 to 30.300, or in furnishing or accepting forms for claimants to provide claim information, or in supervising any of those activities.

Plaintiff communicated the time, place and circumstances that gave rise to one or more of his current claims with six people: defendant and UOPD Chief Carolyn McDermed; defendant and OUS Associate General Counsel for Labor & Employment Brian Caufield; OUS General Counsel Ryan Hagemann; Director of HR Linda King; Assistant Director of HR and Labor Relations Manager Randy Wardlow; and Assistant Vice President of Finance and Administration Brian Smith.  All of these individuals were employees or agents (acting or actual) of the University of Oregon and had some degree of authority or responsibility for administering and/or investigating plaintiff's potential tort claims after receiving actual knowledge.

Specifically, and as stated in the Second Amended Complaint at paragraph 115, plaintiff communicated his potential claims to Carolyn McDermed via emails and in meetings on

Page 6 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

6/1/2012 and 8/13/2012, to Linda King in a meeting on 10/12/2012, to Brian Smith via email and in meetings on 9/25/2012 and 10/2/2012, to Randy Wardlow via emails and in meetings on 6/13/2012, 7/13/2012, 8/13/2012, 8/21/2012, 9/25/2012, and 10/12/2012, to Ryan Hagemann via emails and in a meeting on 10/30/2012, and to Brian Caufield via emails and in a meeting on 4/3/2013.  (Decl. of James Cleavenger, para. 19.)

Plaintiff began outlining many of his potential legal claims against the defendants as early as 6/17/2012, when he filed his 12-page "Official Statement of Grievance Form" through his Union (SEIU).  This grievance discussed potential claims for retaliation, discrimination, due process violations, unlawful employment practices, and specific violations of Oregon statutes (ORS 236.350-60).  (Decl. of James Cleavenger, Ex. 2, plaintiff's 6/17/2012 SEIU grievance form.)  This document was seen by all of the individual defendants and all six of the people plaintiff claims had actual knowledge of his potential claims.  (Decl. of James Cleavenger, para. 20.)  Plaintiff began explaining more of his claims throughout the grievance process, which lasted until well *after* plaintiff was terminated by letter on October 26, 2012.  During this process and after he was terminated, plaintiff also filed separate grievances through the union (SEIU) to UODPS and UofO HR for wrongful termination (without just cause) on 11/7/2012, and for due process violations and unfair labor practices on 2/13/2013, for due process violations and unfair labor practices on 2/13/2013, and for failure to hold a hearing filed on 2/13/13.  (Decl. of James Cleavenger, Ex. 2.)

Plaintiff was also told multiple times by his supervisors that they believed he *would* be filing a lawsuit.  (Decl. of James Cleavenger, para. 21.)  These beliefs were based on defendants' knowledge that plaintiff was himself a lawyer and he had always stated his intentions to assert

Page 7 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

his rights in court if necessary.  The defendants and their agents reiterated this to other UOPD employees before and after plaintiff's termination.

As the Oregon Supreme Court discusses in *Flug v. University of Oregon*, 335 Or. 540, 73 P.3d 917 (2003), the notice communicating time, place and circumstances giving rise to a claim does **not** need to specify the exact nature or theory of claim.  In *Flug*, the plaintiff brought an action against her former employer, the University of Oregon, alleging two counts of unlawful employment practices under ORS 659 and one count of intentional infliction of emotional distress (IIED). The trial court granted summary judgment for defendant, concluding plaintiff failed to give timely notice of her claim.  But the Oregon Supreme Court reversed the decision, finding that a plaintiff's conveyance of a *general intent* to assert one or more claims *in general terms* was sufficient to provide notice to defendants.  Their analysis seems directly relevant:

> ORS 30.275(6) defines "actual notice" of a claim as: "any communication by which any individual to whom notice may be given acquires actual knowledge of the time, place and circumstances giving rise to *the* claim, where the communication is such that a reasonable person would conclude that a particular person intends to assert *a* claim against the public body *or* an officer, employee or agent of the public body.
>
> The provision consists of two clauses. The first refers to the recipient's actual knowledge of facts, *viz.,* "time, place and circumstances giving rise to" the claim. The second clause invokes an objective reasonableness standard by which the meaning of what is "actually known" is to be tested.  It also is significant, in our view, that the foregoing provision speaks in terms of communicating an intent to assert *a* claim against the public entity.
>
> The use of the indefinite article ("a") suggests that the notice need convey only an intent to assert *some* claim.  That impression is bolstered by the fact that the same subsection spells out a requirement that the notice describe the "time, place and circumstances giving rise to *the* claim." The clear import of the contrasting choice of articles is that, although a plaintiff must provide a defendant with the facts (*i.e.,* time, place, and circumstances) that relate to the specific claim or claims that a plaintiff ultimately asserts, the plaintiff need convey an **intent to assert a claim** **only in general terms**.

We see nothing in the wording of ORS 30.275(6), or in the context of other provisions relating to that statutory subsection, that suggests or supports defendant's argument that a notice of claim must predict expressly the specific claims that will or may be asserted. ORS 30.275(6) requires some form of communication by which the proper parties acquire actual knowledge of the time, place, and circumstances "giving rise to" the ultimate claim, not of the specific nature or theory of the claim. Although the notice also must warn of the plaintiff's intent to bring "*a* claim," the use of that term demonstrates that warning **need not specify precisely *what* claim**.

It is clear from text and context that, for purposes of the OTCA notice of claim requirement, "actual notice" is a communication that (1) allows the recipient to acquire "actual knowledge of the time, place and circumstances" that give rise to the specific claim or claims that the plaintiff ultimately asserts; and (2) would lead a reasonable person to conclude that the plaintiff has a **general intent** to assert *a* claim.

*Flug v. University of Oregon*, 335 Or. 540, 73 P.3d 917 (2003) (emphasis added).

Plaintiff's multiple communications with one or more of the six aforementioned individuals expressing his general intent in general terms to assert one or more claims, satisfies the actual notice requirements of ORS 30.275(6).

The next question is whether any of these six individuals was qualified as someone eligible to receive notice on behalf of the public body (University of Oregon) under ORS 30.275(6).  The defendants argue in their motion that the only way for plaintiff to succeed in doing so, he must have "communicated with *either* the office of the Director of the Oregon Department of Administrative Services *or* **a person responsible for administering tort claims on behalf of the University of Oregon**."  (ECMF #60 at p. 6).

In *McCabe v. State of Oregon*, 841 P.2d 635 (1992), the Oregon Supreme Court decided that the plaintiff, who was an employee of the Oregon State Police (OSP), did not give notice to the state of her claim against the state and OSP, but instead gave sufficient actual notice through a letter she sent to the *Superintendent* (the equivalent of the department's "Chief") of the Oregon

State Police (OSP), describing a personnel matter as employment discrimination.  As the Justices discussed, "The dispositive issue is whether the Superintendent of OSP is a person 'responsible for administering claims' within the meaning of ORS 30.275(6), so as to bring the letter notice given to him within the provisions of that subsection."  *McCabe v. State of Oregon*, 841 P.2d 635-7 (1992).

The Oregon Supreme Court went on to determine under that ORS 30.275(6), the definition of "a person responsible for administering claims on behalf of a public body" includes anyone, "who as an officer, employee or agent of a public body or as an employee or agent of an insurance carrier insuring the public body for risks within the scope of [the OTCA], engages in **investigation, negotiation, adjustment _or_ defense** of claims within the scope of [the OTCA]. *Id.* They held that "the Superintendent of OSP, as a person who in fact **investigates** claims involving his agency, qualifies also as a person 'responsible for administering claims' under this statute [ORS 30.275(6)]."  *Id* at p.639.  In reaching their decision, the Court noted:

> The state argues that we should read the statute to limit persons "responsible for administering claims" to those who have authority to fully pay or settle a tort claim. In order to reach the limiting interpretation contended by the state, the state would read two different "or" connectors in the statute as though the word "or" were the word "and."

> The first "or" appears in the statutory description of a person who is authorized to receive an actual notice of claim. "Actual notice of claim is any communication by which an individual to whom notice may be given as provided in subsection 5 *or* any person responsible for administering claims on behalf of the public body." As this court has stated: "Generally, the words 'and' and 'or,' as used in statutes, are not interchangeable, being strictly of a conjunctive or disjunctive nature." *Lommasson v. School Dist. No. 1*, 201 Or. 71, 79, 261 P.2d 860, adhered to in part on rehearing, 201 Or. at 90, 91, 267 P.2d 1105 (1954).  Because the connector is an "or," the rest of the sentence must be read to mean that entities or agents of state government, *in addition to DGS [the Oregon Department of Administrative Services]*, also may be responsible for administering

Page 10 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

claims.

The second "or" which the state's argument would also read as an "and" occurs where the statute defines who is a person "responsible for administering claims." The statute states that "[a] person responsible for administering claims is one who engages in **investigation, negotiation, adjustment _or_ defense of claims**." (Emphasis added.) Under the state's analysis, one must do _all_ those things and also have the authority fully to settle the claim by payment before one may be a person who "administers claims." However, using "or," **the statute includes persons who _only_ _investigate_ the claim** within the definition of those responsible for administering claims…Because the statute reads "_investigation, negotiation, adjustment _or_ defense_" (emphasis added), the authority of the Superintendent to investigate the claim, as he does through a member of his staff, is all that the statute requires to demonstrate that he is a "person responsible for administering claims."

_Id_ at 638-9.

In _Webb v. Highway Division of Oregon State_, the Oregon Supreme Court decided that "Where notice of claim required by this section was actually received and investigated by a proper official, notice was valid even though the _method_ of notice was technically improper." _Webb v. Highway Division of Oregon State_, 652 P.2d 783 (1982).  Similarly, in _Brown v. Portland School District # 1_, 291 Or. 77, 628 P.2d 1183 (1981), the three-justice plurality opinion stated: "The sufficiency of the notice given must be determined with the object of the statute in mind and technically deficient claims should not be barred where the purpose of the statute is served. The doctrine of substantial compliance has previously been used by this court to avoid the harsh results of insisting on literal compliance with statutory notice provisions where the purpose of these requirements has been met." _Brown v. Portland School District # 1_, 291 Or. at 81, 628 P.2d 1183.

What is clear from the record in this case is that similar to the OSP Superintendent in _McCabe_, defendant Chief Carolyn McDermed was the top administrator at UOPD and was

Page 11 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

responsible for investigating claims such as the plaintiff's.  The plaintiff provided her with all the information and documents necessary to instigate such an investigation, which gave her actual notice of his claims.

It is also clear from the record in this case that plaintiff discussed his potential claims with Brian Caufield in person on 4/3/2013 and through email correspondence beginning 2/8/2013.  (Decl. of James Cleavenger, Ex. 3.)  At the time, Caufield was Oregon University System's Associate General Counsel for Labor and Employment.  When Caufield was asked what his "general role" in this position was, he stated "I would attempt to mitigate risk on the university's [University of Oregon's] behalf."  Caufield was then posed this follow-up question: "You said that your job was to 'mitigate risk.' So that means -- you tell me, what does mitigate risk mean?"  To which Caufield answered, "The way I view it is if there's a termination that a university is either thinking about or if they've already done that, and now we're at the stage where we're at arbitration, what are our likelihood of success on the merits? If they are not very good, we might want to enter into settlement discussions with the union and the employee at that point, or not take that action against the employee."  (Decl. of James Cleavenger, Ex. 3, Caufield Depo., p. 35-36; 61-62.)

During their in-person meeting on 4/3/2013, at Caufield's urging, Caufield and plaintiff discussed a possible "global settlement" of all of plaintiff's claims, in which plaintiff offered to drop all of his then-current and all potential future claims (to include filing a lawsuit, BOLI complaint, Unfair Labor Practice claim, etc.) in exchange for certain consideration.  Caufield only took two short pages of notes during this meeting, but the notes he did take documented the crux of this discussion.  This meeting was also attended by Union Steward John Ahlen and

Page 12 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Union employee Sean Brailey.  (Decl. of James Cleavenger, Ex. 4, Caufield's 4/3/2013 notes.)
Based on Caufield's deposition testimony and his limited handwritten notes from the 4/3/2013
meeting, it seems clear that Caufield qualified as a person responsible for administering claims.

Ryan Hagemann also further confirmed that OUS was at least partially responsible for
administering claims during his 11/20/2014 deposition.  When asked what his job duties as
OUS's "General Counsel" entailed, Hagemann replied, "In 2011 the Oregon University System
got substantial freedom from the state . . . I was the organization's chief legal officer.  At the
time we were -- again, that's right after we got the freedom from the state . . . for example,
previously the attorney general supervisor litigation, that became my responsibility. . . .  So in
addition to being the in-house person, litigation and risk shifted to me, as well. So the attorney
general was no longer the state -- **we were no longer part of the state…**  We no longer had to
go to the state for risk or insurance."  (Decl. of James Cleavenger, Ex. 5, Hagemann Depo.)

In this case, plaintiff met with and discussed, emailed, and provided documents
describing the time, place and circumstances that gave rise to one or more of his claims to the six
individuals described above, all of whom could be considered a person responsible for
"administering claims" because they engaged in the investigation, negotiation, adjustment *or*
defense of the claims.  Therefore, defendants had actual knowledge of plaintiff's claims under
the meaning of ORS 30.275(6).

2.    Notice through Partial Payment - ORS 30.275(3):

ORS 30.275(3)(d) provides that: "*Notice of claim required by this section is satisfied by:
Payment of all or any part of the claim by or on behalf of the public body at any time.*"  Plaintiff
participated in the union contract mandated arbitration process and was ordered reinstated and

Page 13 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT**

awarded back pay through Arbitrator Rich Ahearn's decision dated 2/24/2014.  (Decl. of James

Cleavenger, Ex. 6, Arbitration Award.)  (See also, Second Amended Complaint ¶ 119.)  Plaintiff

and defendants could not agree to the terms of reinstatement (not to mention the fact defendants

threatened to appeal the arbitration decision if plaintiff insisted on reinstatement so it is debatable

how much "choice" plaintiff had in the matter) (Decl. of James Cleavenger, Ex. 8, p. 6) and

instead entered into a settlement agreement, which resulted in payment to the plaintiff on

9/4/2014.  (Decl. of James Cleavenger, Ex. 7.)  It is plaintiff's contention that this payment

satisfied the "payment of all *or any part* of the claim[s] by or on behalf of the public body at any

time" notice provision in ORS 30.275(3)(d).  During these post-arbitration settlement

negotiations, defendants also tried to negotiate a "global settlement" of all of plaintiff's claims,

to specifically include all claims in this lawsuit in addition to those addressed in arbitration.

(Decl. of James Cleavenger, Ex. 8.)  Plaintiff had also previously engaged in settlement

negotiations on 4/3/2013 with defendant Brain Caufield, as described above.

In *Hughes v. City of Portland*, 255 Or App 271, 296 P3d 642 (2013), the Oregon Court of

Appeals decided that for purpose of determining whether notice is satisfied under ORS

30.275(3)(d), "payment of all or any part of 'the claim' refers to payment of all or part of the

specific claim or claims the plaintiff ultimately asserts against the public body." *Hughes* at p.645.

In reaching their conclusion, the Court reviewed the legislative history of the notice provisions in

ORS 30.275.  Specifically, the court found the following:

> The current notice provisions in ORS 30.275 were enacted as part of
> Senate Bill (SB) 86 in 1981, which was introduced in response to the
> perception that public bodies were using technical defects in tort claim
> notices as an excuse to reject meritorious claims.  As initially proposed,
> that bill would have *eliminated* the notice requirement entirely.  Various
> public bodies objected to eliminating the notice requirement, arguing…

**Page 14 – PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT**

without any notice, they would not be able to assess how much revenue they needed to collect and set aside for paying claims.  The legislature ultimately rejected the original version of SB 86 in favor of liberalizing the notice requirements and eliminating technical aspects that created traps for unwary claimants.

Similarly, "actual notice" requires "*any* communication" that gives the public body "actual knowledge of the time, place and circumstances giving rise to the claim, where the communication is such that a reasonable person would conclude that a particular person intends to assert a claim." ORS 30.275(6).  Neither of those methods of notice requires that the public body receive sufficient information to anticipate its potential liability exposure without further investigation.  Only one method of giving notice *might* satisfy the purpose that defendant notes without further investigation: commencement of an action on the claim. ORS 30.275(3)(c)

In short, the legislature responded to the objecting public bodies' concern simply by retaining the requirement that claimants give notice, apparently concluding that **ensuring an *opportunity* to investigate potential claims sufficiently addressed the public bodies' concerns**.

*Hughes* at pp. 647-8 (emphasis added).

As previously noted, defendants had ample opportunity to investigate plaintiff's claims that he began notifying defendants of as early as 6/17/2012 (the date he filed his initial grievance through his union).  Plaintiff continued providing additional actual notice of his claims through the communications with the six individuals mentioned above, and for *part* of which defendants eventually paid him for on 9/4/2014 in the Arbitration Settlement Agreement (Decl. of James Cleavenger, Ex. 7) satisfying the notice through partial payment method found in ORS 30.275(3).

    3.   <u>Continuing Torts:</u>

As previously discussed and undisputed, on 12/10/2014 plaintiff filed a *separate and additional* tort claim notice to the Director of the Oregon Department of Administrative Services

Page 15 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

under the provisions of ORS 30.275(4), based on the defendants' *continuing* retaliatory acts, which occurred after plaintiff's termination, to include the defendants devising a plan to attempt to disqualify the plaintiff from being able to return to work as ordered by arbitration by submitting over 200 pages of "Brady List" materials to the Lane County DA on or about June 17, 2014.   (Second Amended Complaint ¶ 133, ECMF #56).  This separate and additional tort claim notice was meant only to satisfy the requirements for written notice under ORS 30.275(4) for the *continuing* torts (of retaliation), not as the *sole* method of notice for the entire lawsuit.

The "continuing torts" issue is further explored in plaintiff's arguments against defendants' statute of limitations motion below, but in general, Oregon courts have consistently held that where there is a continuing tort, the cause of action does not finally "accrue" until the injurious conduct *ceases*.  See generally *Hotelling v. Walther*, 169 Or. 559 (1942); *Davis v. Bostick*, 282 Or. 667, 580 P.2d 544 (1978); *Griffen By and Through Stanley v. Tri-County Metropolitan Transportation District of Oregon*, 112 Or. App. 575 (1992).

Motion 2:      Statute of limitations.

Plaintiff's claims for relief for whistleblowing and retaliation are not barred by the one-year statute of limitations provided for in ORS 659A.  Plaintiff was wrongfully terminated on October 26, 2012.  The termination was a direct result of reporting inappropriate conduct to his supervisors and other University of Oregon and Oregon University System officials outside the department, causing him to be retaliated against in the form of wrongful accusations, disciplinary actions, mistreatment, and poor and intentionally inaccurate performance reviews.  The acts leading up to and culminating in plaintiff's termination constituted a "continuing tort," as did the defendants' continuing retaliatory acts which occurred after plaintiff's termination, to include

Page 16 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

their devising a plan to attempt to disqualify the plaintiff from being able to return to work as ordered by arbitration by submitting over 200 pages of "Brady List" materials to the Lane County DA on or about June 17, 2014.  (See Second Amended Complaint ¶¶ 120-133).

In *Griffen By and Through Stanley v. Tri-County Metropolitan Transportation District of Oregon*, 112 Or. App. 575 (1992)(*reversed on other grounds*), plaintiff began working for Tri-Met in 1976.  In early 1987 he told his supervisor that he was HIV positive and asked that the information be kept confidential.  However, beginning later that year plaintiff's supervisors began demanding that he provide them with medical releases and threatening him with suspension if he did not comply, and his shifts were changed, his work more closely scrutinized, and eventually in 1988 plaintiff was terminated.  Plaintiff filed an Oregon statutory claim for disability discrimination by his employer.  Defendants argued in that case that evidence of conduct that occurred outside of the 180 days for notice under the Oregon Tort Claims Act be excluded.  On appeal the court disagreed.

> Here, the October and November, 1987 acts, although separate incidents, are not the type of discrete, permanent events that would likely support separate actions for wrongful termination.  Instead, they can be reasonably construed as elements of a systematic pattern of conduct, aimed at causing plaintiff's eventual termination.  The allegations should not have been stricken.

*Griffen* at 582.

Consider further:

> Oregon cases have used a continuing tort analysis to allow claims that would otherwise be time-barred. See Shives v. Chamberlain, 168 Or. 676, 126 P.2d 28 (1942). The cases arose in a variety of fact patterns and do not readily produce a single rule. See Adams v. Oregon State Police, 289 Or. 233, 611 P.2d 1153 (1980); Holdner v. Columbia County, 51 Or.App. 605, 627 P.2d 4 (1981). However, in Davis v. Bostick, 282 Or. 667, 580 P.2d 544 (1978), the court stated concisely the concept of continuing tort:

Page 17 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

> "[A]t the heart of the continuing tort idea is the concept that recovery is for the cumulative effect of wrongful behavior, not for discrete elements of that conduct." 282 Or. at 671, 580 P.2d 544.

*Griffin*, at 581.

Where there is a continuing tort, the cause of action does not finally "accrue" for statute of limitations purposes until the conduct ceases to cause injury.  "The alleged negligent treatment of the plaintiff must be considered as a whole. . . .  The continued negligent treatment constituted a single cause of action.  Where the tort is continuing, the right of action is continuing." *Hotelling v. Walther*, 169 Or. 559, 565 (1942).

Plaintiff was terminated as a result of retaliation for exercising his rights under the law. Plaintiff's state law claims involve acts directly related to and leading up to his ultimate termination.  Plaintiff filed this action within a year of his termination and therefore the state law claims are also timely since they constituted continuing violations ending in plaintiff's wrongful discharge.

While defendants have cited the *Nat'l R.R. Passenger Corp. v. Morgan* US Supreme Court decision, 536 U.S. 1010, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002), the portion of that decision that defendants rely upon was based entirely upon the Supreme Court's interpretation of very specific language in Title VII.  The Supreme Court's opinion recognizes the "continuing violation" doctrine in the context of a hostile work environment case, to wit:

> Given, therefore, that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim. In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment.

**Page 18 – PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118, 122 S. Ct. 2061, 2075, 153 L. Ed. 2d 106 (2002).

The continuing violation doctrine has been applied in the circuit:

> However, the court finds that plaintiff has convincingly argued that the "continuing violation" doctrine applies in this case, which allows the inclusion of otherwise time-barred incidents as long as they are deemed part of "one unlawful employment practice giving rise to a single claim." *See, e.g., National Railroad Passenger Corporation v. Morgan,* 536 U.S. 101, 118 (2002).

*Berndt v. California Dep't of Corr.*, No. C 03-3174 PJH, 2014 WL 4628860, at *4 (N.D. Cal. Sept. 16, 2014).

The above federal authorities are only pointed to by way of example.  Oregon law controls and the fact that the Oregon Court of Appeals applied the continuing tort theory to an Oregon statutory claim in *Griffin*, *supra*, supports plaintiff's position that the continuing tort doctrine applies in this case.  Here, the acts that occurred more than a year before filing are actionable as the claim for retaliatory termination was timely filed and the prior acts were part of the same retaliatory scheme.

Motion 3 and 4:        Plaintiff's § 1983 claims against the state and individual defendants.

Defendants submit that plaintiff's claims against all individual defendants should be dismissed because a state and its officials acting in their official capacities are not "persons" under 42 U.S.C. § 1983.  It is true that this bars a lawsuit against the state, as well as its officials when they are sued only in their official capacity.  However, the law does not allow for immunity when suit is brought against state officials in their individual capacities regardless of whether the actions giving rise to the lawsuit were "official."

Plaintiff filed suit against all individual defendants in their individual capacities. Second Amended Complaint ¶ 7. In *Hafer v. Melo*, 502 U.S. 21, 31 (1991), the Supreme Court stated "[w]e hold that state officials, sued in their individual capacities, are "persons: within the meaning of [42 U.S.C.] § 1983. The Court further stated that "state officers [are not] absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts." *Id*. Therefore, the individual defendants can be sued under 42 U.S.C. § 1983 and plaintiff's claims against the individual defendants under § 1983 should not be dismissed.

    Motion 5:    <u>Due process violations</u>.

A section 1983 claim based upon procedural due process has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of that interest by the government; and (3) lack of due process. *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).

In *Engquist v. Oregon Department of Agriculture,* 478 F.3d 985, 996-98 (9th Cir. 2007), the Ninth Circuit explained the requirements for a substantive due process violation in the *government* employment context as follows:

> We decline to hold that there is no substantive due process claim for a public employer's violations of occupational liberty. Rather, we limit the claim to extreme cases, such as a "government blacklist, which when circulated or otherwise publicized to prospective employers effectively excludes the blacklisted individual from his occupation, much as if the government had yanked the license of an individual in an occupation that requires licensure." Such a governmental act would threaten the same right as a legislative action that effectively banned a person from a profession, and thus calls for the same level of constitutional protection.

*Engquist v. Oregon Department of Agriculture,* 478 F.3d 985, 996-98 (9th Cir. 2007)

**Page 20 – PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

*Engquist* goes on to state that a plaintiff must "present sufficient evidence to demonstrate that [defendants'] actions deprived [him] of the ability to pursue [his] profession." *Id* at 996. In *Engquist*, the Ninth Circuit looked to Seventh Circuit precedent to evaluate the sufficiency of plaintiff's evidence. *Id.* at 998-99. In reliance on *Bordelon v. Chicago School Reform Board of Trustees*, 233 F.3d 524, 531 (7th Cir. 2000), the Ninth Circuit articulated the following standard:

> Plaintiff must show that the character and circumstances of a public employer's stigmatizing conduct or statements are such as to have destroyed an employee's. freedom to take advantage of other employment opportunities. It is not enough that the employer's stigmatizing conduct has some adverse effect on the employee's job prospects; instead, the employee must show that the stigmatizing actions make it **virtually impossible** for the employee to find new employment in his chosen field.

*Bordelon*, 233 F.3d 524, 531 (7th Cir. 2000).

Defendants argue that plaintiff has failed to state a claim for a constitutional due process violation. However, plaintiff did properly state due process claims in his Second Amended Complaint. In fact, the *majority* of the factual allegations within it describe due process violations and plaintiff will try not to duplicate that voluminous record again here. Nonetheless, defendants are correct in a couple material respects. Defendants are correct that a public employee dismissible for cause is entitled to notice, an explanation of the employer's evidence, and an opportunity to present his side. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). Defendants also correctly mention that "[t]he purpose of notice is to allow a complainant to marshall a case against the firing body." *Bignall v. N. Idaho College*, 538 F.2d 243, 247 (9th Cir. 1976). Plaintiff was not given proper notice, an explanation of or access to evidence, and as a consequence did not have an opportunity to present his side.

Page 21 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Plaintiff was not given the required notice or explanation of the evidence against him when he was given the "Notice of Investigatory Suspension" on September 25, 2012. See Second Amended Complaint ¶ 90. The "Notice of Investigatory Suspension" generally referred to "incidents" without further details. *Id*. The only further elaboration on these incidents which would later be referred to as "problematic call-outs" in plaintiff's "Termination Letter" that he received on October 26, 2012, was a vague allegation of "inaccurate call-outs" in a Pre-Dismissal Letter received by Plaintiff on October 2, 2012. "The tenured public employee is entitled to oral or written notice of the charges against him . . ." *Loudermill*, 470 U.S. at 546. This is also codified in Oregon State Law in ORS 236.360(5): "An employer that intends to take disciplinary action against a public safety officer shall: Notify the officer in writing of the charges against the officer…and provide the officer with an opportunity to respond to the charges at an informal meeting which may be recorded, with the person or persons having authority to impose the proposed discipline." This notification in writing requirement found in ORS 236.360(5) also shows that defendants clearly misstated the law when they claim on page 13 of their Motion to Strike (ECMF #59) that "ORS 236.350-370 do not apply to investigation letters, only interviews." The statute itself is even titled "Disciplinary Actions; written procedures, safeguards, just cause, notice." (See ORS 236.360.) But the point is, merely submitting notice with a reference to "incidents" or "inaccurate call-outs" does not give notice of the charges against the plaintiff, but rather left the plaintiff to guess at what might be meant by "incidents" and "inaccurate call-outs."

Further, the mere statement of "incidents" or "inaccurate call-outs" does not explain the evidence that might be supportive of such "incidents" or "inaccurate call-outs." Because

**Page 22 – PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

plaintiff was unapprised as to the nature of the new "incidents" or "inaccurate call-outs" and did

not receive an explanation of any evidence of the allegations, he had no bearings from which he

could present his side of the story.  At no time prior to termination was plaintiff ever interviewed

or questioned about the incidents, nor was he provided with notice of the dates or times of all

three call-outs, or a copy of the audio recordings of them, or a transcript, or any kind of

description of them that would have allowed him to know with any degree of certainty which

incidents were being referred to and what was "problematic" or "inaccurate" about them.  As a

consequence, plaintiff did not have an opportunity to present his case with regard to the

"incidents" or "inaccurate call-outs" at his Pre-Dismissal Hearing on October 12, 2012.

It has also been discovered that the actual motives for plaintiff's termination were never

reduced to writing or disclosed until discovery in this case led to the production of a 5/14/2012

email, in response to Plaintiff's Request for Production #4, received on 1/21/2015.  (Decl. of

James Cleavenger, Ex. 9.)  Therefore, plaintiff's ambiguous two paragraph "Notice of

Investigation & Reassignment" letter that he received on 5/18/2012 was also constitutionally

insufficient, a violation of ORS 236.360, a violation of UOPD policy, and a violation of the

collective bargaining agreement, as outlined in the complaint.  (Decl. of James Cleavenger, Ex.

10.)  This action did in fact amount to a pay sanction because plaintiff was immediately removed

from all of the overtime work shifts that he had signed-up for.

Plaintiff was also never given the opportunity to be heard at his Step-3 Hearing because

defendant Brian Caufield unilaterally terminated the meeting and refused to reschedule one.

Accounts of this meeting were documented immediately afterward by the plaintiff and his Union

Steward John Ahlen. (Decl. of James Cleavenger, Ex. 11, 12, and 13.)  However, it has come to

light through deposition testimony that these hearings were illusory anyway, since defendants and other UofO employees have testified that to their knowledge a termination decision by the university had **never** been overturned through a grievance hearing *or* through a pre-termination hearing. In other words, the die was already cast as soon as UOPD decided to terminate the plaintiff. Former university employees do however fare much better when they reach an actually neutral tribunal such as arbitration, where in recent years employees and their union are about 50/50 in cases against the UofO (according to UO HR Director Linda King's deposition testimony and statements made to plaintiff by SEIU officials).

In regards to the defendants' more recent actions in their surreptitious and malicious submission of over 200 pages of undisclosed, false, and defamatory "Brady List" allegations of "dishonesty" as described in the complaint, this act in of itself constitutes substantive *and* procedural due process violations. Plaintiff has a liberty interest in his professional reputation and his ability to work and earn a living in his chosen profession. *Bollow v. Fed. Res. Bank of San Francisco*, 650 F.2d 1093, 1100 (9th Cir. 1981). Plaintiff's liberty interest is implicated "if a charge impairs his reputation for honesty or morality. The procedural protections of due process apply if (1) the accuracy of the charge is contested, (2) there is some public disclosure of the charge, and (3) it is made in connection with the termination of employment or the alteration of some right or status recognized by state law." *Vanelli v. Reynolds School District No. 7*, 667 F.2d 773, 777-78 (9th Cir. 1982); see also *Roley v. Pierce County Fire Protection District No. 4*, 869 F.2d 491 (1989), at 495 ("A liberty interest in employment arises when a government charge damages seriously one's standing and associations in the community. . . . When one's good name, reputation, or integrity is at stake or when the government stigmatizes a person,

Page 24 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

foreclosing his freedom to pursue other employment opportunities, then the allegations damage standing and associations.").  Also see *Portman*, 995 F.2d 898, 908 (9th Cir. 1993): "Allegations that exclude a person permanently from a profession may also infringe a constitutionally protected liberty interest, even if they do not rise to the level of moral turpitude.").  These standards are easily met in this case.

The *procedural* due process violations stemming from defendants' "Brady List" actions include the fact that defendants never informed plaintiff that they were disclosing his information in violation of their own policy (Decl. of James Cleavenger, Ex. 14), ORS 135.815 (2)(b)(A), and ORS 236.360.  The submission added new additional allegations that the plaintiff was *never* questioned or interviewed about and so he's never had a chance to respond to them, added new allegations for acts that plaintiff's supervisors ordered and/or authorized him to do, misrepresented the arbitrator's decision, misrepresented plaintiff's previous statements, all as further described in the Second Amended Complaint.  This left plaintiff without the opportunity to have any type of "name clearing hearing" at all, a clear due process violation.

Defendants did this after plaintiff had been ordered reinstated to his position but well before the Settlement Agreement had been signed.  It was done in direct response to the Arbitrator's unfavorable decision, as is quite apparent from the recently discovered 3/10/14 email from Carolyn McDermed to some of the other defendants and UOPD supervisors in this case, wherein she states that despite the arbitrator's order, she "will not take him [plaintiff] back!"  (Decl. of James Cleavenger, Ex. 15.)  In this string of emails (which provides a copy of the arbitrator's decision to other UOPD supervisors for the first time), a plan is devised to try to get plaintiff on the "Brady List" in order to disqualify him from being *eligible* to return.  At the

Page 25 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

same time, defendants contemplated appealing the arbitrator's decision if plaintiff were to push to return to work.  (See Decl. of James Cleavenger, Ex. 8, and as previously addressed in plaintiff's discussion of tort claim notices above).

It is a *substantive* due process violation because it has essentially *indefinitely* "blacklisted" the plaintiff from being able to seek fulltime employment as a sworn police officer or in any law enforcement capacity.  It may also have the same effect on his legal career.  This is the *first and only* time UOPD (or UODPS) has *ever* submitted anyone to the DA for "Brady List consideration" despite the practice having been around for many years.  Plaintiff is also the *only* non-police officer (plaintiff was only a public safety officer, not a police officer with UODPS) known to be included on an Oregon DA's "Brady List."  This is despite the fact that these "Brady Obligations" (and subsequently the "Brady List") have been around since the late 1990's. *Kyles v. Whitley*, 514 U.S. 419 (1995), and UODPS has terminated multiple individuals since that time in whole or in part for allegations of dishonesty.  It is also worth noting that the arbitrator's Opinion & Decision found that the plaintiff had *not* been dishonest.

Plaintiff argues that the defendants' acts as described throughout the Second Amended Complaint are within the "extreme cases" realm contemplated by the Ninth Circuit because they have deprived the plaintiff of the ability to not only pursue his profession of choice (law enforcement), but also that of his *secondary* profession of choice (the practice of law).  It is worth noting that plaintiff was hired in his current **temporary** position as a Judicial Clerk for US District Judge Michael McShane **before** plaintiff's reputation had been tarnished with defendants' "Brady List" allegations which amount to portraying him as a racist liar.  It does not stretch the imagination too far to fathom that a federal judge would probably *not* have hired the

Page 26 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

plaintiff had his reputation been so diminished at the time.  It is likewise not hard to imagine that when plaintiff's current employment ends (in June 2018 at the latest due to US District Court's mandatory term employment standards), he will indeed find it "virtually impossible" to find employment in the law enforcement *or* the legal field, unless and until people who have been described as incompetent, unsafe, and racist liars suddenly come into vogue.

There is a plethora of additional due process violation claims described in the Second Amended Complaint.  But rather than waste the Court's time defending every minutiae of each factual allegation challenged by the defendants, plaintiff believes the "highlights" discussed above should suffice for the purposes of this motion response.  Should additional arguments regarding every single one of defendants' swarm of motions to strike be desired by the Court, plaintiff requests leave to file an additional brief and/or an amended complaint.

Motion 6:        <u>Adequate statutory remedy</u>.

Plaintiff is fully aware of the long line of federal district court opinions holding that a wrongful discharge claim is precluded if an adequate statutory remedy exists.  *Wall v. Sentry Ins.*, 2015 WL 350683 (2015) very plainly states the existence of a conflict between Oregon's Court of Appeals and numerous opinions rendered by judges in the US District Court for Oregon:

> Plaintiff contends that the appropriate test, as articulated by the Oregon Court of Appeals, is conjunctive: the Defendant must demonstrate both that the provided remedy is adequate and that the legislature intended the statute to abrogate preexisting common law remedies. See *Kemp v. Masterbrand Cabinets, Inc*., 257 Or.App. 530, 537–38, 307 P.3d 491 (2013); *Olsen v. Deschutes County*, 204 Or.App. 7, 14, 127 P.3d 655 (2006). See also *Neighorn v. Quest Health Care*, 870 F.Supp.2d 1069, 1106 (D.Or.2012) (discussing cases applying the disjunctive and conjunctive tests).

Page 27 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

*         *         *

> A federal court sitting in diversity, however, is not bound by the decisions of a state intermediate appellate court if it determines that the state's highest court would reach a different conclusion. *McCubbrey v. Veninga*, 39 F.3d 1054, 1055 (9th Cir.1994). Following Judge Stewart's analysis in *Draper* and the many cases in this district following it, the Court is not convinced that the Oregon Court of Appeals decision in *Kemp* portends the Oregon Supreme Court's direction on this issue.

*Wall*, at 3-4.

Plaintiff relies upon the Oregon appellate decisions discussed in the *Wall* case and the plaintiff's arguments as set forward in the *Wall* case.  Specifically, the *Olsen v. Deschutes County* opinion that directly holds that a statutory whistleblower claim does not displace a common law wrongful discharge claim, to wit:

> The public employee whistleblower statute, however—unlike the statute protecting workers' compensation claimants—does contain an explicit statement of legislative intent: It provides that the statute is "not intended to * * * [r]estrict or impair any judicial right of action an employee or an employer has under existing law." ORS 659.515(6). That language establishes that the legislature clearly and affirmatively expressed its intention that the statutory claim *not* supersede common-law claims. Further, the legislative history indicates an intent to preserve a plaintiff's right to bring a common-law wrongful termination action. Senate Bill (SB) 1051 (1989), the original whistleblower law, came out of the Senate Labor Committee. The committee chair, Senator Grattan Kerans, when discussing the provision codified in ORS 659.515(6), stated that it would allow a plaintiff who was terminated in retaliation for whistleblowing to "check right into wrongful discharge." Tape Recording, Senate Labor Committee, SB 1051, Apr. 24, 1989, Tape 118, Side A (statement of Sen. Grattan Kerans). Thus, aggrieved whistleblower plaintiffs were explicitly permitted to sue in tort.[6] Accordingly, plaintiffs' wrongful termination claims were not legally barred due to the existence of an alternative statutory cause of action. The trial court's denial of defendant's motion to dismiss was not error.

*Olsen v. Deschutes Cnty.*, 204 Or. App. 7, 16-17, 127 P.3d 655, 661 (2006).

**Page 28 – PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

This Court is exercising prudent jurisdiction over the state law claims. The Oregon Court of Appeals decisions should be given deference.

Motion 7:    <u>Eleventh Amendment Immunity</u>.

Plaintiff incorporates his response to Motions 3 and 4, above, setting forward the ability to proceed against the individual defendants in their individual capacity.

Motion 8.    <u>Plaintiff's claims based on retaliation he suffered after he was terminated are valid claims</u>.

Defendants cite to *Dunlap v. Liberty Natural Products, Inc.* (No. 3:12-cv-01635-SI, 2013 WL 6177855 (D. Or. Nov. 25, 2013)) for the proposition that former employees may not bring a claim for whistleblower when the retaliation occurs after they are terminated. The crucial distinction between the *Dunlap* case and the present case is that in *Dunlap*, the whistleblowing occurred after Dunlap was no longer an employee. Consider:

> The undisputed facts established that Dunlap was not an employee when she initiated these complaints. Thus Dunlap is not protected by Oregon Revised Statute 659A.199.

There can be little doubt that *Dunlap* would have been decided differently if the whistleblowing had occurred while Dunlap was an employee, but the retaliation continued after the employee was terminated. ORS 659A.199 has a very broad prohibition against retaliating against an employee that engages in whistleblowing, to wit, in pertinent part:

> It is an unlawful employment practice for an employer to discharge, demote, suspend, or in any manner discriminate or retaliate against an employee . . . .

As the court in *Dunlap* points out:

> "For a variety of reasons, some retaliators prefer to take their time: They may wait until the victim is especially vulnerable or until an especially

hurtful action becomes possible. Or they may wait until they think the lapse of time disguises their true motivation." Coszalter, 320 F.3d at 978. Courts should be "particularly sensitive" to this last point, for if a specified time period is deemed per se too long to support an inference of retaliation, "well-advised retaliators will simply wait until that period has passed." *Id*. Retaliators may also wait until a circumstance arises that they think will disguise their true motivation and provide a legitimate non-retaliatory reason for an adverse employment action. Here, Dunlap's termination occurred 18 months after Dunlap applied for workers' compensation benefits, 51 days after Liberty's insurer issued Dunlap's Notice of Closure on her workers' compensation claim, and on the same day that Dunlap presented her Preferred Worker Card to Liberty. The time periods between Dunlap's Notice of Closure and her termination and between Dunlap's presentation of her Preferred Worker Card and her termination are well within the range that has been found to support an inference of causation. *See Coszalter*, 320 F.3d at 978. Based on the proximity of Dunlap's protected activity and her termination, considering the other the evidence in the record and viewing the evidence in the light most favorable to Dunlap, Dunlap has shown a prima facie case of retaliation.

*Dunlap* at 10.

To prohibit plaintiff from bringing a claim against defendants for retaliatory actions after he was terminated (and despite plaintiff prevailing at arbitration and being ordered reinstated) would reward defendant for continuing to retaliate after the plaintiff had already been terminated. Continuing or waiting to retaliate after a wrongful discharge is equally harmful as it can prevent the plaintiff from securing new employment and moving forward.

Similarly, New Jersey's Law Against Discrimination was recently construed to include a post-discharge act of retaliation--cancellation of a former employee's health insurance benefit. In *Roa v. Roa*, 200 NJ 555, 570, 985 A2d 1225, 1233 (2010) the court, as in *Robinson*, looked to Title VII's anti-retaliation provisions for guidance:

Further on point is relevant federal case law, to which we look for guidance. Recently, the United States Supreme Court specifically rejected a defendant's contention that "Title VII's antiretaliation provision forbids

Page 30 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

only those employer actions and resulting harms that are related to employment or the workplace." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61, 126 S.Ct. 2405, 2411, 165 L.Ed.2d 345, 355 (2006). In doing so, the Court noted that "[t]he antiretaliation provision seeks to secure [Title VII's] primary objective by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." *Id.* at 63, 126 S.Ct. at 2412, 165 L.Ed.2d at 356. Thus, the Court held that limiting the statute to employment and workplace-related conduct would permit employers to engage in a range of retaliatory conduct that would undermine the provision's purpose of preserving open access to Title VII's enforcement mechanisms. *Id.* at 64, 126 S.Ct. at 2412, 165 L.Ed.2d at 357; see also *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 799–800 n. 5 (6th Cir.2004) ("[A]n employer is prohibited [by Title VII] from retaliating in materially adverse ways, regardless of whether the retaliatory acts affect employment." (citation omitted)), *aff'd*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006); *Ray v. Henderson*, 217 F.3d 1234, 1242 (9th Cir.2000).

*Roa v. Roa*, 200 NJ 555, 570, 985 A2d 1225, 1233 (2010).

Post-employment actions that may be viewed as retaliatory include but are not limited to refusals to give a job reference, denial of or delays in post-employment benefits, blacklisting a former employee, or in the case at hand, submitting over 200 pages of Brady List materials to the Lane County District Attorney almost two years after plaintiff had been terminated. Plaintiff respectfully submits that the purpose of Oregon's Unlawful Discrimination statute would be severely undermined where the court to adopt defendants' argument. Therefore, plaintiff's claims for retaliation after he had been wrongfully discharged should be allowed.

Motions 9 and 10: Declaratory relief and injunctive relief.

Plaintiff agrees to drop his claims for declaratory relief and injunctive relief.

Page 31 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

CONCLUSION

Plaintiff has responded to some arguments advanced in the motion to dismiss with

evidentiary support, to the extent that plaintiff's pleading is not sufficiently definite and certain,

or unclear, plaintiff moves for leave to amend his complaint in conformance with the arguments

and evidence submitted herewith.

CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b),

54-1(c), or 54-3(e) because it contains 8,796 words, including headings, footnotes, and

quotations, but excluding the caption, table of contents, table of authorities, signature block, and

any certificates of counsel.

DATED April 30, 2015.

*/s/ Mark McDougal*

Jason L. Kafoury  (OSB #091200)
Mark McDougal (OSB #890869)
Kafoury & McDougal
411 SW Second Avenue, Suite 200
Portland, OR 97204
(503) 224-2647
Fax: (503) 224-2673
jkafoury@kafourymcdougal.com
mcdougal@kafourymcdougal.com
Attorney for Plaintiff

Page 32 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT**

## CERTIFICATE OF SERVICE

I certify that on April 30, 2015, I served or caused to be served a true and complete copy of the foregoing PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT on the party or parties listed below as follows:

| X | Via CM / ECF Filing |
| ☐ | Via First Class Mail, Postage Prepaid |
| ☐ | Via Facsimile |
| ☐ | Via Personal Delivery |
| ☐ | Via Email |

Andrea Coit
Andrea.coit@harrang.com
Harrang Long Gary Rudnick P.C.
360 E 10th Ave, Ste 300
Eugene  OR 97401-3273

*/s/ Mark McDougal*

Jason L. Kafoury  (OSB #091200)
Mark McDougal (OSB #890869)
Kafoury & McDougal
411 SW Second Avenue, Suite 200
Portland, OR 97204
(503) 224-2647
Fax: (503) 224-2673
jkafoury@kafourymcdougal.com
mcdougal@kafourymcdougal.com
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**