**Andrea D. Coit, OSB #002640**
**andrea.coit@harrang.com**
**Jonathan M. Hood, OSB #133872**
**jonathan.hood@harrang.com**
HARRANG LONG GARY RUDNICK P.C.
360 East 10th Avenue, Suite 300
Eugene, OR 97401-3273
Telephone:     541-485-0220
Facsimile:     541-686-6564
Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **JAMES M. CLEAVENGER,** | Case No. 6:13-cv-01908-DOC |
| Plaintiff, | **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** |
| vs. | |
| **UNIVERSITY OF OREGON (an Agency and Instrumentality of the State of Oregon), et al.,** | |
| Defendants. | |

Defendants submit the following reply arguments and authority in support of their Motions to Dismiss.

## I.      MOTION 1 - FAILURE TO ALLEGE TORT CLAIM NOTICE

Plaintiff raises three arguments in response to Defendants' claim that he has failed to plead adequate tort claim notice for all claims arising more than 180 days before his lawsuit was filed: (1) his oral communications and written grievances sufficiently put various people on actual notice of his intent to file a lawsuit; (2) Defendant University of Oregon's settlement of

Page 1 –      **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

his arbitration award satisfied ORS 30.275(3)(d); or (3) his tort claim notice sent more than a year after this case was filed satisfied the requirements of ORS 30.275 under the continuing tort theory.

Plaintiff has submitted various forms of extrinsic evidence in support of his arguments. Defendants respond in kind and ask this court to treat their Motion 1 as a Motion for Summary Judgment on the issue of adequate tort claim notice. Fed. R. Civ. Proc. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

## A.    Actual Notice

Plaintiff concedes he has not adequately pleaded tort claim notice under ORS 30.275(4) within 180 days of his termination. Plaintiff's Response (Response) at page 5. The inquiry, therefore, is exclusively into whether he has adequately pleaded facts which, if true, establish that he gave actual notice within 180 days of his termination sufficient to satisfy the requirements of ORS 30.275(6).

Plaintiff has the burden to prove adequate tort claim notice. Plaintiff must show (1) that he communicated with either the office of the Director of the Oregon Department of Administrative Services or a person responsible for administering tort claims on behalf of the University of Oregon; (2) that his communication was one from which one of those people gained actual knowledge of the time, place and circumstances giving rise to the claim, and (3) that the communication was such that a reasonable person would conclude that a particular person intends to assert a claim against the public body or an officer, employee or agent of the public body. ORS 30.275(6) (underlining added). The undisputed facts in the record show Plaintiff cannot satisfy the third element as a matter of law.

Plaintiff contends *Flug v. University of Oregon*, 335 Or. 540 (2003) is dispositive of the "actual notice" inquiry. Defendants agree. *Flug* holds that, while the communication need not

Page 2 –    **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

give notice of the specific theory of the claim or claims that will be asserted, it does need to
actually give notice of the plaintiff's intent to assert a claim.  In deciding that the plaintiff's
various letters relied on as evidence of actual knowledge did not satisfy ORS 30.275(6), *Flug*
explained:

> In that regard, there is no issue whether the letters communicated
> information that would cause a reasonable person to conclude that
> plaintiff intended to assert a claim against defendant. They did not.
> Although the letters stated that defendant's demand for doctors'
> releases was unlawful, and that other demands and conditions
> imposed by plaintiff's supervisors were unreasonable, the import
> of those statements merely is that plaintiff regarded that behavior
> as contrary to law or unfair, not that plaintiff intended to sue over
> those matters.

*Id*., 335 Or. at 554 (emphasis added).

Similarly, in *Shepard v. City of Portland*, 829 F. Supp. 2d 940, (D. Or. 2011), the court
concluded that the plaintiff had not given actual notice sufficient to satisfy ORS 30.275(6)
because his statement did not convey to a reasonable person that a lawsuit was intended.
*Shepard* explained:

> This Court need not address whether plaintiff's internal complaint
> allowed the City to acquire actual knowledge of the "time, place
> and circumstances" giving rise to plaintiff's claims, or whether
> Keil or Kahn are the people responsible for other requirement of
> the statute is dispositive. While plaintiff alleged that the City's
> conduct was contrary to law, he failed to communicate the intent to
> litigate. Thus, I find that these statements would not lead a
> reasonable person to conclude that plaintiff had a general intent to
> assert a claim.

*Id*, at 957-58 (underlining added); *see also Lane v. Hood River Cnty*., 2009 WL 1662990, *7–8
(D. Or. June 11, 2009) (letter stating that plaintiff was unwilling to give up his right to pursue
defendant by signing a settlement proposal and that defendant violated labor laws "merely
reflected the plaintiff's belief that the [defendant's] behavior was contrary to law, not that he
intended to sue.").

Page 3 –   **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTIONS TO
DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Here, Plaintiff presents no evidence of a communication within the relevant time period from which a reasonable person would conclude that he intended to litigate his claims.  Rather, Plaintiff argues (without submitting evidentiary support) that that he "communicated his potential claims to Carolyn McDermed via emails and in meetings … [listing the dates and manner in which he communicated to others his potential claims]."  Response at page 7 (underlining added).  Plaintiff also asserts that he:

> began outlining many of his potential legal claims against the defendants … [in his various union grievance statements].  This grievance discussed potential claims for retaliation, discrimination, due process violations, unlawful employment practices, and specific violations of Oregon statutes."

*Id.*

Plaintiff's alleged communications, if we believe they occurred, fall short of what is required by ORS 30.275(6).  As was the case in *Flug*, Plaintiff's alleged communications relayed that he felt he had been mistreated and thought he had legal claims against the Defendants.  Plaintiff does not allege that he ever told any relevant person that he intended to file a lawsuit.

Plaintiff was asked about his communications supporting an actual notice argument during his deposition.  There Plaintiff confirmed that, while he allegedly expressed to numerous people his belief that he could assert a legal claim if his complaints were not addressed in-house, he never told anyone that he intended to file a lawsuit.

With respect to his alleged communication to Defendant McDermed that Plaintiff relies on in his Response at page 7, Plaintiff testified:

> A.  I don't remember the specifics of that. I just remember that generally that I told her that I didn't want to have to file a lawsuit on this.
>
> Q. Was this during this August 13th meeting you claim happened at the department with Chief McDermed?

**Page 4 –    DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

A. I'm not sure on the exact date. That sounds about right. It's the
one that I said was about an hour –

Declaration of Andrea Coit (Coit Dec.), Ex. 1, Deposition of James Cleavenger dated March 25,

2015 (Cleavenger Depo.) page 13.

With regard to his communication with Defendant Lebrecht, Plaintiff testified:

Q. Okay. All right. Who else did you give actual notice to that you
were going to file a state tort claim?

A. Brandon Lebrecht.

Q. Brandon Lebrecht?

A. Uh-huh.

Q. Okay. When did you tell Brandon Lebrecht?

A. Well, again, we kind of had that discussion many times.

Q. What discussion?

A. The same sort of discussion where – where I said I believed that
certain rights that – were  being violated, and I wanted – I wanted
the problems addressed, and I was hoping to be able to, you know,
do that in-house so that I wouldn't have to file a suit.

Q. So you told Brandon Lebrecht on many occasions that you
hoped not to have to file a lawsuit. Is that your testimony?

A. That's correct.

Cleavenger Depo. at page 14.

Plaintiff's communications with the other people he identifies as having received actual

notice is consistent.  Plaintiff testified:

Q. Okay. Did you – well, when you discussed the arbitration
process to Linda King, was it in the context of you hoping to have
your grievances resolved at that arbitration so that you didn't have
to go further?

A. Yes, that was my hope. My hope was that it could be addressed
there.

**Page 5 –    DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTIONS TO
DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Q. And you expressed that to Linda King?

A. Yes.

Q. And to Randy Wardlow?

A. Yes. I expressed that to everyone.

Cleavenger Depo at page 17.

Q. When you said in this email [dated October 11, 2013] you need to file a tort claim notice to give the defendants notification that you were going to file a lawsuit alleging state law claims against them, did you also believe at that time that they were already aware that you planned to file this lawsuit?

A. Yes.

Q. You did believe that?

A. I believe they were absolutely aware of the possibility of me filing a lawsuit.

Q. Okay.

A. The same claims that I had been bringing in in grievances are the same claims that are in the lawsuit.

Q. So you thought that the claims being raised in the grievances put them on notice that you were going to file a lawsuit. Is that what you're saying?

A. That's not the only notice they had, but that's one aspect of it.

Q. Okay.

A. Yeah.

Q. And the other notice would have been what you described earlier, telling them you hoped you don't have to file a lawsuit?

A. Correct. And that's very general, yeah.

Cleavenger Depo at pages 27-28.

Plaintiff concedes that his "actual" communications were limited to telling various

Page 6 –    **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendants that he hoped to resolve his issues in–house through the grievance process and that he did not want to file a lawsuit.  These statements, along with Plaintiff's admitted actions in pursuing his complaints through the grievance process, would lead a reasonable person to conclude that Plaintiff was not planning to file a lawsuit, but rather that he planned to pursue the remedies provided to him through his union contract.

As a matter of law, Plaintiff did not provide actual notice of any claims within 180 days of his termination.  ORS 30.275(6).

**B.**      **Settlement of Arbitration Award**

Plaintiff has not pleaded that he provided adequate tort claim notice under ORS 30.275(3)(d).  Defendants' Motion to Dismiss cannot be defeated on this argument.

Assuming this Motion is treated as one for summary judgment, Defendants will address the merits of the argument.

Under ORS 30.275(3)(d)(3), tort claim notice of claim is satisfied by payment of all or any part of the claim by or on behalf of the public body at any time.  *Id.* (underlining added).  Plaintiff argues Defendant University's payment to him of back pay wages, as it was ordered to do by the arbitrator deciding Plaintiff's union grievance, constitutes partial payment of his civil lawsuit sufficient to satisfy the notice requirements of ORS 30.275.  This argument, while novel, is wrong.

As explained in *Hughes v. City of Portland*, 255 Or App 271, 277 (2013), ORS 30.275(3)(d)'s use of the term "the claim" refers to "the claim or claims that the plaintiff ultimately asserts against the public body."  The current lawsuit was pending when the Settlement Agreement to which Plaintiff refers was consummated.  Coit Dec., Ex. 2, Settlement Agreement, page 3.  As Plaintiff points out, he declined to enter into a global settlement of his arbitration award and this lawsuit.  The Settlement Agreement expressly limits its terms to "all issues related to the Arbitration Award."  Settlement Agreement, Recitals ¶ 4.  Those issues are

Page 7 –      **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

specifically described in paragraph 3 of the Recitals, expressly identifying for all who cared to look no overlapping issues between the Arbitration Award and the federal civil lawsuit. Settlement Agreement, Recitals ¶ 3.  The Settlement Agreement did not impact, effect or otherwise compromise any part of "the claim" being pursued in this Court.

Furthermore, the only payment made to Plaintiff was for the exact amount of net back pay and benefits ordered due him by the arbitrator.  Settlement Agreement, Terms ¶ 3.a.  There were no additional payments or other items of benefit transferred to Plaintiff by the terms of the Settlement Agreement.

Paying backpay wages ordered due by the Arbitrator does not satisfy ORS 30.275(3)(d).

## C.    Continuing Tort

On December 10, 2014, Plaintiff submitted formal tort claim notice for claims arising out of an alleged improper disclosure of information to the Lane County District Attorney that occurred while this lawsuit was pending.  The Notice does not purport to give notice of any additional claims.

This is not a continuing tort case.  Rather, Plaintiff alleges that various complaints he made to supervisors or statements he made while a public employee led to specific adverse employment actions, including a letter of reprimand, a reassignment, termination and now, apparently, an improper disclosure to the District Attorney[1].  The requirement to give tort claim notice of claims arising from alleged retaliatory adverse employment actions arises at the time the action is taken and the injury suffered.  ORS 30.275(2).

"The continuing tort doctrine applies to repeated instances or continuing acts of the same nature where there is no discrete act or incident that can be fairly determined to have caused the alleged harm." *McLean v. Shelton*, No. 03:11–cv–01535–AC, 2013 WL 3994760, at *6 (D. Or.

---

[1] With this argument, Defendants are not conceding the identified actions constitute adverse employment actions, only that Plaintiff contends they do.

Page 8 –    **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Aug. 2, 2013). As explained by Judge Hubel in a 2014 decision, "Oregon courts have distinguished between a continuing course of conduct that involves discrete acts, each of which would be actionable separately, and a series of acts constituting a continuing tort." *Pearson v. Reynolds Sch. Dist. No. 7*, 998 F. Supp. 2d 1004, 1027 (D. Or.2014) (discussing *Boardmaster Corp. v. Jackson Cnty.*, 224 Or. App. 533, 198 P.3d 454 (2008); *Davis v. Bostick*, 282 Or. 667, 580 P.2d 544 (1978); *Griffin v. Tri–Met*, 112 Or. App. 575, 831 P.2d 42 (1992), *aff'd in part, rev'd in part on other grounds*, 318 Or. 500, 870 P.2d 808 (1994)). As *Pearson* noted, Oregon cases do not recognize "a series of discrete acts, even if connected in design or intent, as a continuing tort that would allow the statute of limitations to be avoided." *Id.* (internal quotation marks omitted).

In *Davis v. Bostick*, the Oregon Supreme Court explained the "continuing tort" doctrine: "[A]t the heart of the continuing tort idea is the concept that recovery is for the cumulative effect of wrongful behavior, not for discrete elements of that conduct." 282 Or. at 671–72. There, the plaintiff brought an action in August 1976 against her former husband, alleging that he had engaged in an intentional course of conduct designed to inflict emotional stress and mental anguish. The conduct complained of consisted of 10 incidents—two in 1973 and at least two others before August 1974. The defendant contended in the trial court that any consideration of those four incidents was barred by the two-year statute of limitations, ORS 12.110(1). *Id.* at 671. The trial court struck that defense on the ground that the plaintiff's pleading sufficiently alleged a "continuing tort" that consisted of all 10 instances, and the jury returned a verdict for the plaintiff. *Id.* at 669-671.

The Supreme Court reversed. *Id.* at 675. The Court concluded that each act alleged was "separately actionable" because each "caused harm." *Id.* at 672. The court noted that, unlike a continuing tort situation, where "the harm complained of * * * [reaches] the level of actionability only at the end of the series of" actions, the defendant's conduct in *Davis* "repeatedly reached the

Page 9 –     **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

level of actionability." *Id.* The Supreme Court further explained:

> Designating a series of discrete acts, even if connected in design or intent, a "continuing tort" ought not to be a rationale by which the statute of limitations policy can be avoided, for surely the cause of action "accrued" at some time * * *; or, to put it another way, a cause of action does not reaccrue every time another distress is inflicted.

*Id.* at 674 (citations omitted). The court thus held that, because "a separate cause of action certainly could have been asserted after each of [the] defendant's * * * acts," the plaintiff "was not entitled to revive the actionability by designating them merely as elements of a single tort." *Id.* at 673–75.

Here, for the continuing tort doctrine to save Plaintiff's state law claims from dismissal based on untimely tort claim notice, Plaintiff must successfully show that none of the Defendants' discrete acts, including his termination, gave rise to a cause of action. Rather, he must show his cause of action did not finally accrue until 180 days prior to December 10, 2014, the date he now asserts he gave formal tort claim notice for this "continuing tort." This showing is impossible. Plaintiff filed a lawsuit based on his termination, admitting, as a matter of law, that his termination constituted a discrete wrongful act. In his Response to Defendants' Motions to Dismiss, Plaintiff further argues that his May 18, 2012 reassignment itself constituted a federal due process violation (Response at page 23).

Plaintiff's state law claims began to accrue at the time each alleged adverse employment action occurred. Tort claim notice was due within 180 days of that accrual. All of Plaintiff's state law claims based on conduct occurring more than 180 days before the lawsuit was filed are barred.

## II.        MOTION 2 – STATUTE OF LIMITATIONS

Plaintiff relies on the continuing tort theory to save his claims that are based on conduct arising more than one year prior to filing of the lawsuit. As explained above, though, Plaintiff is

Page 10 –   **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

claiming discrete acts of harm arising from his May 18, 2012 Letter of Reprimand and his re-assignment.  Those and any other alleged adverse employment actions occurring more than one year before this lawsuit was filed cannot be relied on as evidence of adverse employment actions in support of Plaintiff's claims under ORS 659A.[2]

**III.     MOTION 3 – 42 U.S.C. § 1983 CLAIMS AGAINST UNIVERSITY OF OREGON**

Plaintiff appears to concede this Motion.  All federal claims against the University of Oregon must be dismissed.

**IV.     MOTON 4 - 42 U.S.C. § 1983 CLAIMS AGAINST INDIVIDUAL DEFENDANTS**

Plaintiff correctly states that individual defendants sued under 42 U.S.C. § 1983 in their individual capacities.  Plaintiff, however, brings his Section 1983 claims against the individual defendants in their official capacities.

Under his First Amendment claim, Plaintiff alleges:

> At all times relevant to this complaint, the individual Defendants alleged herein, acted or purported to act in the performance of their official duties, under state, county, or municipal law, ordinances, or policies on behalf of their respective employers UOPD, UofO, and/or OUS.

Pl's Second Amended Complaint, First Claim for Relief ¶ 145.

Individual defendants alleged to be acting in their official capacities are immune from actions under Section 1983.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).  At a minimum, Plaintiff's first claim for relief fails to state a claim against the individual defendants under 42 U.S.C. § 1983.

---

[2] As originally stated in Defendants' Motion to Dismiss, Defendants also claim Plaintiff's claims based on his termination are untimely.  However, extrinsic evidence is needed and they will raise that issue in their Motion for Summary Judgment.

Page 11 –     **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

# V.    MOTION 5 - DUE PROCESS CLAIM

Plaintiff's Second Claim for Relief alleges only violations of procedural due process. *See* Complaint ¶¶ 153-156, 160 (alleging failing to afford adequate process in the context of grievances); ¶¶ 162-163 (alleging failure to afford adequate process in internal investigations); ¶ 164 (alleging failure to notify prior to Brady disclosure); ¶ 165 (alleging failure to provide process required by state law); ¶ 168 (alleging that "Plaintiff was denied process due by law and any process given to him was not meaningful."). Yet in his Response, Plaintiff attempts to enlarge the scope of his pleading. This should not be allowed.

## A.    Substantive Due Process

Plaintiff's response to Defendants' Motion to Dismiss his due process claim is as confusing as his Second Amended Complaint. He begins with an explanation of the elements for a procedural due process claim, but then supports his pleading of this claim citing to *Enquist v. Oregon Department of Agriculture*, 478 F.3d 985 (9th Cir. 2007), for arguments in support of a substantive due process claim. Plaintiff has not plead a substantive due process claim in his Second Amended Complaint. Given the late hour, the impending dispositive motions and trial dates, and the multiple pleading opportunities Plaintiff has had to date, leave should not be allowed for him to now allege a violation of his substantive due process rights.

In addition, such an amendment would be futile. The Ninth Circuit has yet to decide whether "substantive due process protects the right to a particular public employment position[,]" but has only recognized substantive due process protection for occupational liberty claims where the government actions altogether foreclose access to a particular profession. *See Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 997 (9th Cir.2007) aff'd *sub nom. Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591 (2008) (underlining added). Plaintiff, however, pleads that he continues to work as a police officer in Oregon and that he currently works in the legal profession. Complaint ¶¶ 4, 15. He cannot as a matter of law show he has been foreclosed to

Page 12 –    **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

either profession.  An amendment making this claim would be futile.

**B.**     **Due Process Liberty Interest**

Plaintiff also argues for the first time in his Response to Motion to Dismiss that the disclosure of information to the District Attorney violated his liberty interest in his professional reputation, implicating name clearing considerations.  Nothing in the Second Amended Complaint can be read to assert a right to a name clearing hearing in connection with the Brady disclosure.  Rather, Plaintiff alleges his due process rights were violated as a result of Defendants' failure to notify him prior to making the disclosure. Pl's Second Amended Complaint ¶ 175.  For the reasons mentioned above, Plaintiff should not be allowed to re-plead to assert a liberty interest violation at this late date.

In addition, this amendment would also be futile.  Due process requires a terminated employee be given an opportunity to clear his name if a stigmatizing statement is made to a third party in connection with termination.  A stigmatizing charge is connected to the termination "when defamatory statements are so closely related to discharge from employment that the discharge itself may become stigmatizing in the public eye." *Campanelli v. Bockrath*, 100 F.3d 1476, 1482 (9th Cir.1996).  Although the Ninth Circuit has declined to establish a bright-line rule, there must be "some temporal nexus" between the stigmatizing charges and the termination. *Id*. at 1483; *Tibbets*, 567 F.3d at 537.  In *Campanelli,* a seven-to-nine day interval between termination and the publication of stigmatizing charges was found to be sufficient to establish a connection. *Campanelli*, 100 F.3d at 1483.  However, in *Tibbets v. Kulongoski,* 567 F.3d 529, 538 (9th Cir. 2009), the court held that a lapse of sixteen months between the termination and the disclosure "is far too remote from the terminations to meet *Campanelli's* 'temporal nexus' test."

Here, the face of the pleading shows there is no temporal nexus between Plaintiff's termination and the alleged disclosure of stigmatizing information.  The termination was in October 2012, the alleged disclosure was in July 2014, 21 months later.  Under Tibbets, this

delay makes the subsequent disclosure "far too remote" to be considered done in connection with termination.  567 F.3d at 538.

Furthermore, Plaintiff resigned in the interim.  *See* Coit Dec, Ex 3 (Letter of Resignation).  After being ordered reinstated by the arbitrator, Plaintiff negotiated a settlement of the Arbitration Award that included his resignation from employment with the University of Oregon, effective June 14, 2013.  Thus, Plaintiff cannot prevail on a liberty interest claim because he was not terminated. *Ward v. Bolek*, 2013 WL 145828, at *5 (D. Or. Jan. 14, 2013) ("termination of the employee is a cornerstone of a constitutional claim for deprivation of the Fourteenth Amendment liberty interest of employment.").

Plaintiff cannot state a claim for a violation of his liberty interests in connection with the Brady disclosures as a matter of law.  He should not be allowed leave to plead this futile theory of recovery.

## C.    Procedural Due Process

### 1.    Unrelated to Deprivation of a Protected Property Interest

With regard to procedural due process, Plaintiff rehashes the allegations of his complaint (despite his promise not to do so), stating all of the various violations of grievance procedures and internal policy constitute a "plethora of additional due process violation claims."  Response at page 27.  Plaintiff misses the point in that he has no constitutionally protected property interest in anything other than his continued employment.  The various allegations regarding deficiencies in the grievance process, violations of state law, or alleged misconduct of an investigator do not implicate due process rights.  *See e.g., Servo v. Junginger*, No. 3:13-CV-00702-PK, 2014 WL 3891751, at *10 (D. Or. Aug. 6, 2014) ("The existence of such non-federal process requirements cannot modify the constitutional procedural minima discussed above, or suggest that failure to comply with state or municipal procedural rules could, in the absence of any constitutional deprivation, give rise to a cause of action under the Fourteenth Amendment."); *see also Mann v.*

Page 14 – **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

*Adams*, 855 F.2d 639, 640 (9th Cir.), *cert. denied*, 488 U.S. 898 (1988) ("There is no legitimate [due process] claim of entitlement to a grievance procedure.").

All of the allegations unrelated to the process afforded Plaintiff in connection with his termination, pre- and post-deprivation, should be stricken.

### 2.    The Pleadings Show Process was Sufficient as a Matter of Law

As explained in Defendants' Motion to Dismiss, Plaintiff's only due process claim rests on the adequacy of the process he was afforded in connection with the deprivation of his protected property interest in continued employment.  Plaintiff was entitled to reasonable notice and an opportunity to be heard.  *Loudermill*, 470 U.S. at 546. "A predeprivation hearing serves only as 'an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges are true and support the proposed action.' " *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 985 (9th Cir. 1998) (quoting Loudermill, 470 U.S. at 545–46). The pre-termination hearing need not be elaborate—"the root of this requirement is that an individual have the opportunity to be heard before he is deprived of his property interest." *Walls v. Cent. Contra Costa Transit Auth.*, 653 F.3d 963, 968 (9th Cir.2011) (*citing Loudermill*, 470 U.S. at 542).

Plaintiff admits that he was given at least two written notices describing the bases and evidence for his proposed termination, that he attended and participated in a lengthy pre-dismissal hearing with Linda King and his union representative, and that he participated in a full evidentiary arbitration, before a neutral decision maker, with the representation of counsel.  The face of the Complaint shows due process is satisfied as a matter of law.

### VI.    MOTION 6 - WRONGFUL DISCHARGE

Plaintiff contends that this court should apply the Oregon Court of Appeals' decision in *Olsen v. Deschutes County*, 204 Or. App. 7, 127 P.3d 655 (Or. Ct. App.), *petition for review denied*, 341 Or. 80, 136 P.3d 1123 (2006), to conclude that a claim for wrongful discharge

Page 15 –    **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

survived the amendments to ORS Chapter 659A. However, Plaintiff chose to file his action in federal district court for the District of Oregon. The courts of this District uniformly hold that ORS Chapter 659A provides an adequate statutory remedy, superseding the common law claim for wrongful discharge. *See e.g., Shapiro v. Am. Bank [FSB]*, No. 3:12–cv–1358–AC, 2013 WL 6157266, at *8 (D. Or. Nov. 21, 2013); *Duran v. Window Prods., Inc.*, No. CV–10–125–ST, 2010 WL 6420572, at *4–5 (D. Or. Dec. 22, 2010), adopted by 2011 WL 1261190 (D. Or. Mar. 29, 2011); *Reid v. Evergreen Aviation Ground Logistics Enters. Inc.*, Civil No. 07–1641–AC, 2009 WL 136019, at *16–20 (D. Or. Jan. 20, 2009).

In *Reid,* United States Magistrate Judge John V. Acosta conducted a thorough analysis of the issue, finding that *Olsen's* conjunctive test was inconsistent with the wrongful-discharge tort's "original construct, 'to fill a remedial gap where a discharge would be left unvindicated,' and its original purpose 'to serve as a narrow exception to the at-will employment doctrine in certain limited circumstances where the courts have determined that the reasons for the discharge are so contrary to public policy that a remedy is necessary in order to deter such conduct.'" *Id.,* at *18 (citations omitted). Judge Acosta further found that *Olsen's* conjunctive test was inconsistent with Oregon Supreme Court precedent, including the Oregon Supreme Court's decision in *Walsh v. Consolidated Freightways, Inc.*, 278 Or. 347, 563 P.2d 1205 (1977). Finally, Judge Acosta noted that, in a pre-*Olsen* unpublished decision, the Ninth Circuit affirmed the district court's conclusion that the plaintiff's wrongful-discharge claim was precluded by an adequate statutory remedy, noting that, although there are inconsistencies in the Oregon case law, *Walsh* has not been overturned. *Reid* at *19–20 (discussing *Ransom v. HBE Corp.*, 73 F. App'x 919, 920 (9th Cir.2003)). For these reasons, Judge Acosta declined to follow *Olsen*, joining other courts in this District in finding that an adequate statutory remedy alone, irrespective of legislative intent, precludes a common-law claim for wrongful discharge. *Reid*, 2009 WL 136019, at *20.

Page 16 – **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

In the recent decision of *Lamb v. Ace Cash Exp., Inc*., No. 03:12-CV-01160-PK, 2014 WL 3854138 (D. Or. Aug. 5, 2014), Judge Marco Hernandez followed the line of District court decisions concluding that the common law tort has been displaced.  Judge Hernandez explained his reasoning as follows:

> After reviewing the parties' supplemental memorandums and the relevant Oregon case law, I agree with Ace that Lamb's wrongful-discharge claim is precluded by ORS §§ 659A.199 and 659A.230. I reach this conclusion largely on the basis of the Oregon Supreme Court's decisions in *Walsh* and *Delaney v. Taco Time International, Inc.,* 297 Or. 10, 681 P.2d 114 (Or.1984) (en banc). First, in *Walsh,* the Oregon Supreme Court was faced with the question of whether an employee who was allegedly discharged for reporting safety violations in the workplace could bring a claim for common-law wrongful discharge even though there was a federal statute under which the employee could seek vindication. *Walsh,* 278 Or. at 351–52, 563 P.2d at 1208. The *Walsh* court found that, because the existing remedy was "adequate to protect both the interests of society in maintaining safe working conditions and the interests of employees who are discharged for complaining about safety and health problems," it was "unnecessary to extend an additional tort remedy to cover this kind of situation," *Id.* at 352, 563 P.2d at 1208–09. Notably absent from *Walsh's* analysis is any mention of whether Congress intended to abrogate common-law remedies in passing the applicable federal statute.
>
> Second, I am guided by the Oregon Supreme Court's decision in *Delaney,* in which the court attempted to synthesize its case law on wrongful-discharge claims. *Delaney,* 297 Or. at 15–16, 681 P.2d at 117–18. The Oregon Supreme Court found that its decisions fell "into three general categories." *Id.* at 15, 681 P.2d at 117. In the first category of cases, exemplified by *Nees v. Hocks,* 272 Or. 210, 536 P.2d 512 (Or.1975), an employee may bring a common-law claim for wrongful discharge where he or she "was discharged for fulfilling a societal obligation." *Delaney,* 297 Or. at 15, 681 P.2d at 117. In the second category of cases, as exemplified by *Brown v. Transcon Lines,* 284 Or. 597, 588 P.2d 1087 (Or.1978), an employee may bring a common-law claim for wrongful discharge where he or she "is discharged while pursuing a right related to his [or her] role as an employee and the right is one of important public interest indicated by constitutional and statutory provisions

Page 17 – **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

and caselaw." *Delaney,* 297 Or. at 16, 681 P.2d at 118. Finally, in the third category of cases, as exemplified by *Walsh,* an employee may not bring a common-law claim for wrongful discharge "where an adequate existing remedy protects the interests of society." *Id.* at 16, 681 P.2d at 118.

In light of these cases, I am not persuaded that *Olsen's* conjunctive test is applicable here. In *Olsen,* the Oregon Court of Appeals cited *Holien v. Sears, Roebuck & Co.,* 298 Or. 76, 689 P.2d 1292 (Or.1984) (en banc), in support of its articulation of the conjunctive test. *Olsen,* 204 Or.App. at 14, 127 P.3d at 660. *Holien,* however, merely spoke to the second category of cases identified in *Delaney*—that is, those cases where an employee is pursuing a right related to his or her role as an employee and the right reflects an important public interest. *Holien,* 298 Or. at 90–91, 689 P.2d at 1300 (noting that the case fell into the second category of cases identified in *Delaney). Holien* left undisturbed the Oregon Supreme Court's holding in *Walsh.*

*Id.,* at *7.

This court should follow the well-reasoned decisions of the Oregon District courts and dismiss Plaintiff's claim for wrongful discharge.

## VII.    MOTION 7 – 11TH AMENDMENT IMMUNITY

Plaintiff concedes this Motion. All state law claims asserted against University of Oregon and the individual defendants must be dismissed.

Plaintiff appears to believe that he has alleged state law claims against the individual defendants in their <u>individual capacities,</u> thereby saving his state law claims against them from the Eleventh Amendment bar. He has not.

ORS 30.265(1) states that the sole cause of action for a tort committed by officers, employees or agents of a public body acting within the scope of their employment or duties and eligible for representation and indemnification under ORS 30.285 is an action under ORS 30.260. A public employee is entitled to defense and indemnification under ORS 30.285 for "any tort claim or demand, whether groundless or otherwise, arising out of an alleged act or omission occurring in the performance of duty." ORS 30.285 (underlining added).

Page 18 –    **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff alleges the individual defendants were in the course and scope of employment at all times material to his claims.  Complaint ¶ 7.  Defendants agree.  The individual defendants are all entitled to receive and are receiving defense and indemnity under ORS 30.285. Therefore, the claims against them are asserted in their official capacities for purposes of the Oregon Tort Claims Act.  *See Flint v. Dennison*, 488 F.3d 816, 824–25 (9th Cir. 2007) (Eleventh Amendment bars § 1983 damages claims against state officials in their official capacity because the damages award would be satisfied out of the State treasury).

In *Poole v. O.D.O.C.*, No. 3:14-CV-00793-PK, 2015 WL 1526527, at *3 (D. Or. Apr. 3, 2015), Judge Michael Simon dismissed both the state actor and the individually named defendants on the basis of the Eleventh Amendment, holding:

> ODOC is a state organization protected from suit under section 1983 by the Eleventh Amendment. Further, the individually named defendants named in Poole's state law claims are all employees of the State of Oregon, and, pursuant to ORS 30.365(1), any tort action brought against these individuals "shall be an action against the public body only." Therefore, both ODOC and the individuals named in Poole's state law claims are immune from suit under the Eleventh Amendment on these claims.

*Id*, at *3.

In *Alexander v. Williams*, No. 6:11-CV-06215-PK, 2013 WL 6180598, at *14 (D. Or. Nov. 25, 2013), the court dismissed the state law claims against the individual defendant, explaining:

> [B]ecause plaintiff alleges that defendants were negligent while acting within the scope of their employment duties, the State of Oregon is substituted for all individual state employees sought to be held liable under state law, and the State of Oregon has Eleventh Immunity as to these claims…. Accordingly, I find that plaintiff cannot maintain Claim V against defendants in their individual capacities.

*See also Blair v. Toran*, No. CV–99–956–ST, 1999 WL 1270802, at *23 (D. Or. Dec. 2, 1999)

Page 19 –   **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

(finding that, because the plaintiff's action arose out of "the act or omission of a state officer, employee, or agent within the course and scope of his official duties, the State of Oregon is substituted as the party defendant"), *aff'd*, 12 F. App'x 604 (9th Cir. 2001).

Here, Plaintiff's claims against the individual defendants for conduct occurring in the scope of employment and for which they are entitled to defense and indemnity are claims against the state. *See Durning v. Citibank, N.*A., 950 F.2d 1419, 1423 (9th Cir. 1991) (quoting *Ford Motor Co. v. Dep't of Treasury,* 323 U.S. 459, 464 (1945)) ("Under the 'arm of the state' doctrine, a state entity and its officers in their official capacities share the state's sovereign immunity because 'the state is the real party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials [or state entities] are nominal defendants.'"). Those claims are barred from prosecution in this court by the Eleventh Amendment.  All of Plaintiff's state law claims against all defendants should be dismissed.

## VIII.    MOTION 8 – ORS 659A.203 AND .199 DO NOT PROTECT FORMER EMPLOYEES

Plaintiff's summary of Judge Michael Simon's decision in *Dunlap v. Liberty Natural Products*, No. 3:12-CV-01635-SI, 2013 WL 6177855, at *13-14 (D. Or. Nov. 25, 2013) is misleading.  On the issue of whether the whistleblower protections of ORS 659A apply to former employees, Judge Simon states:

> Dunlap claims that Liberty violated Or.Rev.Stat. § 659A.199, the Oregon whistleblower statute. The Oregon whistleblower statute provides:
>
>> It is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee has in good faith reported information that the employee

Page 20 –   **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

believes is evidence of a violation of state or federal law, rule, or regulation.

Or.Rev.Stat. § 659A.199(1). Dunlap claims that Liberty retaliated against her for filing BOLI and EEOC complaints by refusing to interview or rehire Dunlap after her termination on April 27, 2012. Or.Rev.Stat. § 659.199, however, applies only to employees, not former employees or other members of the general public. Dunlap cites *Robinson v. Shell Oil Company,* 519 U.S. 337 (1997), for the proposition that "employees" in the Title VII context includes former employees. Dunlap, however, provides no legal authority interpreting the applicable Oregon statute as applying to former employees.

Or. Admin. R. 839–010–0100 sheds light on whether the term "employee" includes former employees. Or. Admin. R. 839–010–0100 implements Or.Rev.Stat. § 659A, clarifying and explaining what types of discrimination by employers is prohibited. Or. Admin. R. 839–010–0100 expressly states that certain sections of Or.Rev.Stat. § 659A apply to "current, former, and any other employer's employee." The subsection of Or. Admin. R. 839–010–0100 addressing the whistleblower section of Or.Rev.Stat. § 659A, however, does not including this expansive language, but instead just uses the word "employee" by itself. Or. Admin. R. 839–010–0100(1). Thus, this administrative rule explains that certain forms of discrimination protection apply to "current, former, and any other employer's employees," and <u>other forms of discrimination protection (including the whistleblower protection) apply only to current employees.</u> Validly promulgated administrative rules have the force of law. *Haskins v. Emp't Dept.,* 965 P.2d 422 (Or.1998) (en banc). "Administrative rules and regulations are to be regarded as legislative enactments having the same effect as if enacted by the legislature as part of the original statute." *Bronson v. Moonen,* 528 P.2d 82, 85–86 (Or. 1974) (en banc).

In matters of interpretation, "the office of the judge is simply to ascertain and declare what is ... not to insert what has been omitted." Or.Rev.Stat. § 174.010. Therefore, this Court will not insert the word "former" or the words "current or former" into Or.Rev.Stat. § 659A.199 or Or. Admin. R. 839–010–0100(1).

*Id*. at *14 (underlining added).

Plaintiff's citation to Dunlap for his argument that retaliators may decide to take their

Page 21 –   **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

time is also not persuasive.  The quoted material was set forth in relation to a temporal argument. The alleged conduct and the alleged retaliation at issue in that portion of *Dunlap* both occurred while Dunlap was employed by the employer.  *Id.* at *10.

Plaintiff submits no case law to support his statement that "Post-employment actions that may be viewed as retaliatory include but are not limited to refusals to give a job reference…" Response at page 31.

The statutory language is clear. ORS 659A.203 and .199 apply to "employers" and "employees."  Plaintiff was not an employee when the Brady disclosure was made.  He cannot, therefore, rely on that alleged retaliation as a basis for his claims under ORS 659A.203 and .199.

## IX.     MOTIONS 9 AND 10

Plaintiff has agreed to dismiss his claims for declaratory and injunctive relief.  Motions 9 and 10 should be granted.

DATED this 8th day of May, 2015.

HARRANG LONG GARY RUDNICK P.C.


By:    s/ Andrea D. Coit
       Andrea D. Coit, OSB #002640
       Jonathan M. Hood, OSB #133872
       Attorneys for Defendants

**Page 22 –    DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

## CERTIFICATE OF SERVICE

I certify that on May 8, 2015, I served or caused to be served a true and complete copy of the foregoing **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** on the party or parties listed below as follows:

☑    Via CM / ECF Filing

☐    Via First Class Mail, Postage Prepaid

☐    Via Email

☐    Via Personal Delivery

Mark McDougal
Gregory Kafoury
Jason Kafoury
Grand Stable & Carriage Building
411 SW Second Avenue, Suite 200
Portland, OR 97204
  Attorneys for Plaintiff

HARRANG LONG GARY RUDNICK P.C.


By:   s/ Andrea D. Coit
         Andrea D. Coit, OSB #002640
         Jonathan M. Hood, OSB #133872
         Attorneys for Defendants

00711622.v1

**CERTIFICATE OF SERVICE**