**Andrea D. Coit, OSB #002640**
**andrea.coit@harrang.com**
**Jonathan M. Hood, OSB #133872**
**jonathan.hood@harrang.com**
HARRANG LONG GARY RUDNICK P.C.
360 East 10th Avenue, Suite 300
Eugene, OR 97401-3273
Telephone:      541-485-0220
Facsimile:      541-686-6564
Attorney for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **JAMES M. CLEAVENGER,** | Case No. 6:13-cv-01908-DOC |
| Plaintiff, | **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| | **PURSUANT TO FED. R. CIV. P. 56** |
| **UNIVERSITY OF OREGON (an Agency and Instrumentality of the State of Oregon), et al.,** | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

## TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................8

II.     CLAIMS REMAINING IN THE LAWSUIT .....................................................9

III.    STANDARD OF REVIEW ..................................................................................9

IV.     42 U.S.C. § 1983: FIRST AMENDMENT (PUBLIC EMPLOYEE).................10

        A.      Plaintiff's Allegedly Protected Speech ....................................................10

                1.      Corruption, Wrongdoing, Misconduct, Abuse of Authority and
                        Wastefulness of UOPD Employees ..............................................11

                2.      Violations of the Collective Bargaining Agreement.....................13

                3.      UOPD Violations of Policies and Procedures ...............................13

                4.      Treatment and Dehumanization of Certain Groups .......................14

                5.      Defendants Issuing Unlawful Orders.............................................14

                6.      Complaints of Receiving Disparate Treatment..............................14

                7.      UOPD Non-Compliance and Non-Implementation of State Law ............14

        B.      Retaliation/Adverse Employment Actions ...............................................14

        C.      Law and Argument ...................................................................................15

                1.      Speech Not on Matters of Public Concern.....................................16

                2.      Speech Was Not Made as a Private Citizen...................................19

                3.      Complaints were Not Substantial or Motivating Factors in Adverse
                        Employment Actions .....................................................................20

        D.      Qualified Immunity..................................................................................25

V.      42 U.S.C. § 1983: FIRST AMENDMENT (PRIVATE CITIZEN)...................26

        A.      Plaintiff's Allegations ..............................................................................26

        B.      Applicable Law and Argument.................................................................28

        C.      Qualified Immunity..................................................................................29

VI.    42 U.S.C. § 1983: DUE PROCESS (LIBERTY INTEREST)...........................................30

    A.    Plaintiff's Allegations ........................................................................30

    B.    Applicable Law and Argument .........................................................30

        1.    Defendants Caufield, Cameron and Lebrecht ..........................31

        2.    There Was No Public Disclosure ..............................................31

        3.    Defendants' Disclosure of Information was Not Made in Connection with Plaintiff's Termination ...................................32

    C.    Qualified Immunity............................................................................34

VII.    42 U.S.C. § 1983 SUBSTANTIVE DUE PROCESS .........................................35

    A.    Plaintiff's Allegations ........................................................................35

    B.    Applicable Law and Argument .........................................................35

        1.    Deprivation of Liberty ..............................................................35

        2.    Conscience Shocking Behavior ................................................37

    C.    Qualified Immunity............................................................................40

VIII.    CONCLUSION.................................................................................................41

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).....................................................9, 21

*Bhan v. NME Hosps., Inc.*,
929 F.2d 1404, 1409 (9th Cir. 1991) ...................................................................................9

*Blair v. Bethel Sch. Dist.*,
608 F.3d 540 (9th Cir. 2010) ...........................................................................................28

*Bollow v. Federal Reserve Bank of San Francisco*,
650 F.2d 1093 (9th Cir. 1981) .........................................................................................30

*Borough of Duryea, Pa. v. Guarnieri*,
131 S. Ct. 2488, 180 L. Ed. 2d 408 (2011) .......................................................................16

*Brady v. Maryland*,
373 U.S. 83 (1963).....................................9, 30, 32, 33, 34, 35, 36, 37, 38, 39, 40

*Brittain v. Hansen*,
451 F.3d 982 (9th Cir. 2006) .......................................................................................35, 39

*Broam v. Bogan*,
320 F.3d 1023 (9th Cir. 2003) .........................................................................................36

*Campanelli v. Bockrath*,
100 F.3d 1476 (9th Cir. 1996) .........................................................................................32

*Celotex Corp. v. Catrett*,
477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)..........................................................9

*Chavez v. Martinez*,
538 U.S. 760, 123 S. Ct. 1994, 155 L. Ed. 2d 984 (2003)......................................................37

*Codd v. Velger*,
429 U.S. 624, 97 S. Ct. 882, 51 L. Ed. 2d 92 (1977)...........................................................30

*Connick v. Myers*,
461 U.S. 138 (1983)...................................................................................................16, 17

*Coszalter v. City of Salem*,
320 F.3d 968 (9th Cir. 2003) ....................................................................................16, 17, 21

*County of Sacramento v. Lewis*,
 523 U.S. 833, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998)......................................37

*Curley v. Vill. of Suffern*,
 268 F.3d 65 (2d Cir. 2001)........................................................................................28

*Dahlia v. Rodriguez*,
 735 F.3d 1060 (9th Cir. 2013) ...........................................................15, 19, 20, 21

*Davis v. McKinney*,
 518 F3d 304, 313 n.3 (5th Cir. 2008) .....................................................................20

*DeLarge v. Hayward Unified Sch. Dist.*,
 543 F. App'x 682 (9th Cir. 2013) .............................................................................40

*Desrochers v. City of San Bernadino*,
 572 F.3d 703 (9th Cir. 2009) ...................................................................16, 17, 18

*Eng v. Cooley*,
 552 F.3d 1062 (9th Cir. 2009) .................................................................................15

*Engquist v. Oregon Dep't of Agr.*,
 553 U.S. 591, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008)................................35, 37

*Fairbank v. Wunderman Cato Johnson*,
 212 F.3d 528 (9th Cir. 2000) .....................................................................................9

*Freitag v. Ayers*,
 468 F.3d 528 (9th Cir. 2006) ...................................................................................19

*Garcetti v. Cebellos*,
 547 U.S. 410, 417, 126 S. Ct. 1951 (2006)........................................................15, 19

*Hagen v. City of Eugene*,
 736 F.3d 1251 (9th Cir. 2013) .................................................................................15

*Harlow v. Fitzgerald*,
 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed .2d 396 (1982).........................................25

*Huppert v. City of Pittsburg*,
 574 F.3d 696 (9th Cir. 2009) ...................................................................................19

*Matthews v. Harney County*,
 819 F.2d 889, 891-92 (9th Cir. 1987) ......................................................................30

*McKinley v. City of Eloy*,
 705 F.2d 1110 (9th Cir. 1983) .................................................................................16

Page 5 –   **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

*Millman v. Inglish,*
    461 Fed. App'x 627 (9th Cir. 2011) .................................................................31, 32

*Moreland v. Las Vegas Metropolitan Police Dept.,*
    159 F.3d 365 (9th Cir. 1998) ...................................................................................38

*Mustafa v. Clark Cnty. Sch. Dist.,*
    157 F.3d 1169 (9th Cir. 1998) .................................................................................30

*Nunez v. City of Los Angeles,*
    147 F.3d 867 (9th Cir. 1998) ...................................................................................28

*Olivieri v. Rodriguez,*
    122 F.3d 406, 408 (7th Cir. 1997) ..........................................................................35

*Parker v. Board of Regents of Tulsa Jr. College,*
    981 F.2d 1159 (10th Cir. 1992) ...............................................................................33

*Pearson v. Callahan,*
    555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). Case ...............................25

*Pinard v. Clatskanie Sch. Dist. 6J,*
    467 F.3d 755, 770 (9th Cir. 2006) ..........................................................................28

*Reichle v. Howards,*
    132 S. Ct. 2088, 182 L. Ed. 2d 985 (2012) .............................................................26

*Reyes v. City of Pico Rivera,*
    370 Fed. App'x 844 (9th Cir. 2010) ........................................................................32

*Saucier v. Katz,*
    533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).....................................25

*Scott v. Harris,*
    550 U.S. 372, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).....................................24

*Taylor*, 2015 WL 2464055, at *2 .................................................................................25

*Watson v. Nationwide Ins. Co.,*
    823 F.2d 360 (9th Cir. 1987) ...................................................................................34

*Wenger v. Monroe,*
    282 F.3d 1068 (9th Cir. 2002) .................................................................................31

*Williams v. Town of Greenburgh,*
    535 F.3d 71 (2d Cir. 2008).......................................................................................28

**Statutes**

20 U.S.C. § 1092(f) ................................................................................................14

42 U.S.C. § 1983 .......................................................9, 10, 25, 26, 28, 29, 34

ORS 236.350-370 .........................................................................................14, 15

First Amendment ..........................................................................................15, 26, 29

Fed. R. Civ. P. 56 ...............................................................................................8

Fed. R. Civ. P. 56(c) ..........................................................................................9

Fed. R. Civ. P. 56(e) ..........................................................................................9

## LR 7-1(a) CERTIFICATION

The undersigned certifies that the parties made a good faith effort through telephonic conferences to resolve the issues which are the subject of this motion, but are unable to resolve them.

## MOTION

Pursuant to Fed. R. Civ. P. 56(a), Defendants move for summary judgment. This motion is based on the following Memorandum of Law, the Statement of Uncontroverted Facts filed herewith, and the declarations of Carolyn McDermed, Michael Morrow, Brandon Lebrecht and Andrea Coit, with attached exhibits, all filed herewith, and the court's file.

## MEMORANDUM OF LAW

## I.      INTRODUCTION

Plaintiff James Cleavenger (Plaintiff) worked as a public safety officer for the University of Oregon Police Department (UOPD) from March 2011 to October 2012, when his employment was terminated. Plaintiff filed this lawsuit on October 25, 2013. Plaintiff's Third Amended Complaint is against the University of Oregon (UO), Chief Carolyn McDermed (Chief McDermed), Lieutenant Brandon Lebrecht (Lt. Lebrecht), Sergeant Scott Cameron (Sgt. Cameron), and Brian Caufield (Caufield) (collectively referred to in this motion as "Defendants").

Plaintiff claims that each individual Defendant retaliated against him throughout his employment for engaging in protected speech in violation of his First Amendment right to free speech. Plaintiff also claims each individual Defendant submitted information to the Lane County District Attorney on June 17, 2014 in violation of his substantive and liberty interest Due Process rights.

Each Defendant denies violating Plaintiff's Constitutional rights. For the following reasons, each Defendant is entitled to summary judgment on each of Plaintiff's claims.

## II.    CLAIMS REMAINING IN THE LAWSUIT

Pursuant to the Court's May 28, 2015 Order on Defendants' Motions to Dismiss, the only claims remaining at issue in this case are pending against the individual Defendants in their individual capacity and arise under 42 U.S.C. § 1983 based on alleged violations of (1) the First Amendment; (2) Substantive Due Process; and, (3) Liberty Interest Due Process.  The latter two claims are limited to claims arising out of the individual Defendants' disclosure of information to the Lane County District attorney on June 17, 2014 (the *Brady* Disclosure).[1]

## III.    STANDARD OF REVIEW

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *Bhan v. NME Hosps., Inc*., 929 F.2d 1404, 1409 (9th Cir. 1991). The moving party meets its burden by identifying portions of the record on file that demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once the initial burden is satisfied, the burden shifts to the non-moving party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id.*

The court views the evidence in the light most favorable to the non-moving party. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (citations omitted). However, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The "mere existence of a scintilla of evidence in support of the [non-moving party's] position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

---

[1] *See* Dkt. #77, Order, 5/28/15: "Plaintiff also alleges that the Brady List disclosures violated his substantive and procedural due process right…. Defendants are incorrect that the SAC did not provide notice of substantive due process and protectable liberty interest theory as a basis of the claim.  The SAC alleges general 'due process' violations, and notes that the submission of the Brady list materials may hinder Plaintiff's ability to practice his profession."  *Id.* at 8 & n.1.

## IV.    42 U.S.C. § 1983: FIRST AMENDMENT (PUBLIC EMPLOYEE)

Plaintiff's first claim for relief is asserted against the four individual Defendants and arises under 42 U.S.C. § 1983 for alleged violations of his First Amendment rights based on speech he made while an employee of the University of Oregon.

### A.    Plaintiff's Allegedly Protected Speech

The majority of speech on which Plaintiff relies for his First Amendment claim is alleged to have taken the form of several reports and/or complaints he made during an August 13, 2012 meeting with Chief McDermed, an October 2, 2012 meeting with former University of Oregon Assistant Vice President of Financial Affairs Brian Smith, and an October 12, 2012 meeting with Linda King.  Cleavenger Depo 42:12-14.  The meeting with Brian Smith occurred October 2, 2012 as a follow-up to the Step 2 grievance hearing Smith conducted per the terms of Plaintiff's union contract on September 25, 2012.[2]  Cleavenger Depo 42:12-25; 43:1-13.  The meeting with Linda King was Plaintiff's predismissal hearing, which occurred on September 12, 2012.  Cleavenger Depo 172:2-21.

The only other speech Plaintiff claims he engaged in and for which he claims he was retaliated against occurred sometime in 2011 when he and his fellow officers asked Lt. Lebrecht to stop having political discussions during briefings.[3]  Cleavenger Depo 54:22-25; 55:1-17.

Plaintiff specifically identifies the categories of reports/complaints at issue in this claim in his Third Amended Complaint (Complaint) at paragraph 143.  The specific speech falling

---

[2] In an email from Plaintiff's union steward to Plaintiff dated September 28, 2012, the steward recounts Smith's response to her request for a follow-up meeting, explaining that Smith said "it would be important for me to hear anything that is relevant to the grievance that we met about on Tuesday.  If there is additional information of that nature, I would ask for an extension on the decision deadline and we could meet again."  Coit Dec, Ex. 3, at p. 6 (underlining added).

[3] Plaintiff complains about a lot of things in his Complaint.  However, he also affirmatively denies having made those complaints prior to the meetings with McDermed, Smith and King.  See e.g., ¶ 32 (did not contemporaneously complain about Occupy Eugene discussion "to avoid confrontation"); ¶ 36 (did not contemporaneously complain about letter of clarification); ¶¶ 40-44 (no allegation that he complained to anyone about denied trainings); Cleavenger Depo 55:1-4 ("We didn't say stop the list; we talked about wanting to cease the political discussions.").

under each category was identified by Plaintiff in his depositions.

The following is a complete list of the allegedly protected speech Plaintiff claims he engaged in while a public employee for which he received retaliation in violation of his First Amendment rights.

### 1.   Corruption, Wrongdoing, Misconduct, Abuse of Authority and Wastefulness of UOPD Employees

#### a.   Wastefulness/Misconduct

Plaintiff complained that officers were wasting time during briefings talking about politics, the alleged bowl of dicks list and watching Lt. Lebrecht's old football tapes. He also complained how he and other officers were referring to the Occupy Eugene movement during one or more briefings. Cleavenger Depo 168:23-25; 169:1-8.

#### b.   Corruption

Plaintiff's complaint about corruption referred to the "corruption in terms of the due process issues … connected to the [written reprimand] grievance and the way the investigations were conducted." *Id.*, 192:18-25. Plaintiff explained that "leading someone to believe an interview is not a big deal, just a formality, that could be corrupt; the way in which I was lied to and led to believe I was being investigated by one person when actually it was another person, and then eventually both people because, as I explained, no names, no specific allegations, that could be corrupt." *Id.*, 193:4-11.

#### c.   Abuse of Authority

Plaintiff complained Sgt. Cameron and Lt. Lebrecht abused their authority by harassing and retaliating against him. For example, Plaintiff claims Sgt. Cameron harassed him by criticizing his report writing: "he didn't like some of my reports because I used some words that were too big." *Id.*, 74:11-20. Plaintiff also explained the harassment he complained of included Defendants "continuing these investigations that were secretive in nature that I was unaware of, didn't have notification of." *Id.*, 121:13-21.

Page 11 –  **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff further explained this category of protected speech when describing his

October 2, 2012 meeting with Brian Smith:

> Q. What was the purpose of the meeting?
>
> A. The purpose of the meeting was to allow me to tell Brian Smith about the ways I was being mistreated by my supervisors, because those were things that I was afraid to mention during Brian Smith's Step 2 meeting, because those supervisors were present at that meeting.
>
> * * *
>
> A. I told him everything that I could think of in regards to retaliation against me and disparate treatment, harassment, how I was being singled out.
>
> Q. What did you tell him about the list?
>
> A. I told him about the existence of the list and that it was a -- I felt that it was a waste of time and that it was inappropriate.
>
> * * *
>
> Q. What else did you discuss with Mr. Smith besides the list?
>
> A. I discussed my concerns about the treatment of students and certain citizen groups.
>
> Q. Can you be more specific?
>
> A. Yes. I mentioned the treatment of Occupy Eugene protestors.
>
> Q. What did you tell them about the treatment of Occupy Eugene protestors?
>
> A. I mentioned an incident where we had a shift briefing that actually included two shifts, graveyard and swing, where we discussed the Occupy Eugene movement and talked about how -- there was a misunderstanding among the officers on what Occupy protest was about. Their general understanding that it was all just dirt bags and homeless people. There was a rape joke mentioned, something along the lines of if you want your daughter to get raped, send her to the Occupy protest.

Page 12 –  **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Q. So your complaint was about how officers were referring to the protestors?

A. How they're referring to protestors.

Q. What else did you discuss with Mr. Smith besides the list and the way officers were referring to the Occupy Eugene protestors?

A. I discussed with him ways I had been singled out by my supervisors, specifically Cameron and Lebrecht.

Q. When you say "singled out," what did you tell Mr. Smith about being singled out by Cameron and Lebrecht?

A. I told him about instances where I was harassed or intimidated by them. For instance, there were a couple instances where I was strong-armed by Cameron to overcharge students, is how I would describe it. To give students criminal records versus warnings or using our University disciplinary system in lieu of actual criminal citations and arrests. And I believed in a couple of instances that the arrests would have been unwarranted.

Q. What else did you complain to Mr. Smith about being singled out and retaliated and harassed?

A. It would be as alleged in my complaint. I can't recall every single incident that I told him about, but, you know, complained generally about the Letters of Reprimand -- Letter of Reprimand, rather, and how the allegations were false.

Cleavenger Depo, 43-46.

### 2.    Violations of the Collective Bargaining Agreement

Plaintiff, through his union stewards, complained that he did not receive all the information he was entitled to receive under the collective bargaining agreement in connection with his reassignment and the investigation.  He also complained that his grievance of the letter of reprimand was not being handled according to the terms of the union contract.  *Id.*, 114:22-25; 115:1-5, 22-25; 116.

### 3.    UOPD Violations of Policies and Procedures

Plaintiff complained that his May 18, 2012 temporary reassignment violated UOPD general orders 1102.1 and 1102.2.  *Id.*, 113:23-25; 114:1-3.  He also complained that the manner in which

Page 13 –  **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

his performance evaluation was handled violated internal policy. *Id.*, 139:24-25; 140:1-6.

### 4. Treatment and Dehumanization of Certain Groups

Plaintiff claims that in his meeting with Brian Smith on October 2, 2012 and his meeting with Chief McDermed on August 13, 2012, he complained about how other UOPD officers were referring to the Occupy Eugene protestors during their pre-shift briefings. *Id.*, 45:3-19; 154:17-25; 155:1-4.

### 5. Defendants Issuing Unlawful Orders

Plaintiff complained about being instructed, while on non-enforcement parking assignment, not to report any crimes unless they were felonies. Plaintiff complained that this instruction was a violation of the Clery Act, 20 U.S.C. § 1092(f) and his duties as a sworn law enforcement officer. Cleavenger Depo, 182:20-25; 183:1-7. The instruction was given on September 7, 2012. Complaint ¶ 83; Cleavenger Depo, 184:1-8. Plaintiff confirms this complaint could not have been made prior to that date. Cleavenger Depo, Vol. 3, 111:21-25.

### 6. Complaints of Receiving Disparate Treatment

Plaintiff complained of receiving disparate treatment that included: receiving the letters of reprimand and clarification, being denied training requests, being temporarily reassigned to parking duties, and receiving his annual performance evaluation. *See* Cleavenger Depo, 185-191, generally.

### 7. UOPD Non-Compliance and Non-Implementation of State Law

Plaintiff complained that he was not afforded the Law Enforcement Officers' Bill of Rights (ORS 236.350-370) during his investigations because he was not given proper notice of who was conducting an investigation or the contents of the investigations, and was not always allowed to record meetings. *Id.*, 156:21-25; 157.

## B. Retaliation/Adverse Employment Actions

Plaintiff claims the individual Defendants retaliated against him for engaging in the identified speech through the following adverse employment actions: the November 2011 letter

Page 14 – **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

of clarification; the May 18, 2012 letter of reprimand; the May 18, 2012 temporary reassignment; the investigations into his conduct; termination; and, the June 2014 disclosure of information to the District Attorney.[4]  *Id.*, 193:15-25; 194:1-2; 196:2-18.

## C.   Law and Argument

The First Amendment shields public employees from employment retaliation for their protected speech activities.  *Hagen v. City of Eugene*, 736 F.3d 1251, 1257 (9th Cir. 2013) (citing *Garcetti v. Cebellos*, 547 U.S. 410, 417, 126 S. Ct. 1951 (2006)).  A court asks five questions to determine whether the public employee is entitled to relief under this claim:

> (1) whether the plaintiff spoke on a matter of public concern;
> (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009).  "[A]ll the factors are necessary, in the sense that failure to meet any one of them is fatal to the plaintiff's case."  *Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 n.4 (9th Cir. 2013).  Plaintiff has the burden of proof on the first three factors.  *Eng*, 552 F.3d at 1070-71.

The individual Defendants are entitled to summary judgment on Plaintiff's First Claim for Relief for three reasons: (1) Plaintiff did not speak on a matter of public concern; (2) Plaintiff did not speak in his capacity as a private citizen; and (3) Plaintiff cannot show that his protected speech was a substantial or motivating factor in any of the adverse employment actions taken by any of the individual Defendants.

---

[4] The disclosures to the District Attorney occurred after Plaintiff's employment with UOPD. That action is not an adverse employment action for purposes of a First Amendment retaliation claim.

Page 15 –  **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1.      **Speech Not on Matters of Public Concern**

For speech to be on a matter of public concern, it must fairly be considered as relating to

a matter of political, social, or other concern to the community. "When employee expression

cannot fairly be considered as relating to any matter of political, social, or other concern to the

community, government officials should enjoy wide latitude in managing their offices, without

intrusive oversight by the judiciary in the name of the First Amendment." *Connick v. Myers*, 461

U.S. 138, 146 (1983). "[T]he essential question is whether the speech addressed matters of

'public' as opposed to 'personal' interest." *Desrochers v. City of San Bernadino*, 572 F.3d 703,

709 (9th Cir. 2009). The plaintiff has the burden of proving that the speech addressed a matter of

public concern based on "the content, form, and the context of a given statement, as revealed by

the whole record." *Id*., (quoting *Connick*, 461 U.S. at 147-48) (internal quotation marks omitted).

Whether speech is on a matter of public concern is a question of law for the court to decide.

*Desrochers*, 572 F.3d at 709.

The content of the speech is the most important factor in determining whether the speech

was on a matter of public concern. *Id.* at 710. To address a matter of public concern, the speech

must involve "issues about which information is needed or appropriate to enable the members of

society to make informed decisions about the operation of their government." *McKinley v. City

of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983) (internal quotation marks and citations omitted).

"On the other hand, speech that deals with 'individual personnel disputes and grievances' and

that would be of 'no relevance to the public's evaluation of the performance of governmental

agencies' is generally not of 'public concern.'" *Coszalter v. City of Salem*, 320 F.3d 968, 973

(9th Cir. 2003) (quoting *McKinley*, 705 F.2d at 1114).

Similarly, *Borough of Duryea, Pa. v. Guarnieri*, 131 S. Ct. 2488, 2501, 180 L. Ed. 2d

408 (2011), explains that a public employee "using an internal grievance procedure in many

cases will not seek to communicate to the public or to advance a political or social point of view

beyond the employment context." *See also Connick*, 461 U.S. at 154 (stating that speech limited

to "an employee grievance concerning internal office policy" is unprotected).

*Desrochers* held that the content of the speech of the two police sergeants weighed against a finding that their speech was on a matter of public concern because "[b]oiled down to its essence, the speech at issue reflects dissatisfaction with a superior's management style and the ongoing personality dispute which resulted." 572 F.3d at 714; *see also Connick*, 461 U.S. at 148 (parts of plaintiff-employee's speech which were "mere extensions of [her] dispute over her transfer to another section" of her office were not on matters of public concern).

The "form of speech" inquiry looks at whether the statements were made in and confined to the workplace, as opposed to being disseminated to the public. *Desrochers*, 572 F.3d at 714-15. *Desrochers* held that the fact that the plaintiffs' speech was in the form of an internal grievance weighed against a finding that their speech was on a matter of public concern.

Finally, with respect to the "context" factor, speech that is motivated by an employee's dissatisfaction with his or her work situation, as opposed to being motivated by a desire to bring to light actual or potential wrongdoing or breach of public trust, is generally not addressing a matter of public concern. *Desrochers*, 572 F.3d at 715-17.

Turning to the present case, the content of Plaintiff's speech is limited to: his personal working conditions, including discussions with his co-workers he now claims were offensive; his conflicts with his supervisors over policing style and personality traits; and the handling of his own personnel matters, including investigations, evaluations and grievances. These are internal complaints to supervisors and during the grievance process about working conditions, a traditional internal work-place complaint. Plaintiff's complaints dealt exclusively with "individual personnel disputes and grievances" that would be of "no relevance to the public's evaluation of the performance of governmental agencies." *Coszalter*, 320 F.3d at 973. The content factor weighs against finding Plaintiff spoke on a matter of public concern.

With regard to form, all of Plaintiff's complaints were confined to the workplace "as opposed to being disseminated to the public in order to inform the public about the operation of a

Page 17 –   **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

public agency." *Desrochers*, 572 F.3d at 714-15.  Plaintiff claims he complained to Lt. Lebrecht about his political discussions in person, at UOPD.  He complained to Chief McDermed, Linda King and Brian Smith in closed-door, unrecorded meetings, at the University.  Plaintiff made no effort to disseminate his concerns to the public.  His complaints concerned himself and his own particular interests.  The form factor weighs against finding Plaintiff's speech involved matters of public concern.

Finally, the context of Plaintiff's complaints shows he was speaking on issues that concerned only him.  Plaintiff testified he sought out a meeting with Chief McDermed on August 13, 2012, because he wanted help dealing with his supervisors, Sgt. Cameron and Lt. Lebrecht.  "I was just trying to find someone who would step in and do something, and I hoped that McDermed would, and I thought maybe she would if I could tell her what was really going on."  Cleavenger Depo 156:15-18.  Plaintiff's complaints to Brian Smith were made in the context of follow-up to his Step 2 grievance meeting, and his complaints to Linda King were made during the course of his pre-dismissal hearing in his attempt to avoid termination.

Plaintiff confirms these and other post-termination meetings involved his personal disciplinary issues:

> Q. So the complaints to Smith, Hagemann, King, Wardlow, and union stewards was all in the context of your grievance of the written reprimand and later your termination, right?
>
> A. There was some connection between the two.
>
> Q. Well, I mean, the only reason you were talking to Linda King, for example, was because she had written a Notice of Termination, and your meeting with her was the predismissal hearing, right?
>
> A. That is true. That's why I was talking to Linda King.
>
> Q. And similar, Mr. Smith, the reason you were talking to Mr. Smith is because you were grieving your written reprimand?
>
> A. When I told him about most of these things, it was not during the reprimand hearing.

Q. But during that other meeting you mentioned?

A. Correct. It was during the other meeting.

Cleavenger Depo 172:2-21.

The context factor counsels against a finding of speech on a matter of public concern.

In sum, Plaintiff's speech, made as an employee of UOPD, had at its core his dissatisfaction with his employment situation and his attempts to overturn his discipline. Plaintiff himself admits: "[t]he same claims I had been bringing in the grievances are the same claims that are in the lawsuit." Cleavenger Depo, Vol. 3, 28:4-6. Plaintiff did not seek to communicate with the public or to raise awareness of matters impacting anyone other than himself. Plaintiff did not speak on matters of public concern for purposes of his First Amendment claim.

### 2.    Speech Was Not Made as a Private Citizen

"A public employee's speech is not protected by the First Amendment when it is made pursuant to the employee's official job responsibilities." *Garcetti v. Ceballos*, 547 U.S. 410, 426 (2006). Statements do not lose First Amendment protection simply because they concern "the subject matter of [the plaintiff's] employment." *Freitag v. Ayers*, 468 F.3d 528, 544 (9th Cir. 2006). But "speech which owes its existence to an employee's professional responsibilities is not protected by the First Amendment." *Huppert v. City of Pittsburg*, 574 F.3d 696, 704 (9th Cir. 2009) (quoting *Garcetti*, 547 U.S. at 421).

In *Dahlia*, the court discussed the analyses employed when determining whether a public employee, specifically a law enforcement officer, has engaged in speech as a private individual. *Dahlia* first discussed the factor of how the complaint is made, explaining that if the employee reports his or her complaint up the chain of command, the speech is generally not protected because it is that of a public employee. *Dahlia* explained:

> First, particularly in a highly hierarchical employment setting such as
> law enforcement, whether or not the employee confined his
> communications to his chain of command is a relevant, if not

> necessarily dispositive, factor in determining whether he spoke
> pursuant to his official duties. * * * Thus, we agree with the Fifth
> Circuit that, generally, "when a public employee raises complaints or
> concerns up the chain of command at his workplace about his job
> duties, that speech is undertaken in the course of performing his job."

*Dahlia*, 735 F3d at 1074 (citing *Davis v. McKinney*, 518 F3d 304, 313 n.3 (5th Cir. 2008)).

Plaintiff's complaint regarding political discussions was made directly to his supervisor, up the chain of command. His complaints to Chief McDermed were made up the chain of command, skipping the sergeant and lieutenant levels, because the complaints concerned those two individuals. Finally, Plaintiff's complaints to King and Smith were made in meetings held pursuant to Plaintiff's collective bargaining agreement. The complaints made during those meeting were made pursuant to Plaintiff's duties as a public employee.

Plaintiff did not engage in speech in his role as a private citizen.

### 3. Complaints were Not Substantial or Motivating Factors in Adverse Employment Actions

Plaintiff's Complaint affirmatively alleges that he did not engage in the identified protected speech until *after* he received the Letter of Clarification, the Letter of Reprimand, all versions of his performance evaluation, and his Notice of Temporary Reassignment. Complaint ¶ 115. In his deposition, Plaintiff revised that contention to add that he made one complaint prior to that time – the 2011 request to Lt. Lebrecht to stop discussing politics. He also clarified paragraph 115 of the Complaint to explain that only pre-termination meetings during which he engaged in protected speech were the August 13, 2012 meeting with Chief McDermed, the October 2, 2012 meeting with Brian Smith, and the October 12, 2012 meeting with Linda King. Cleavenger Depo 42:12-14.

Each Defendant is entitled to summary judgment because Plaintiff cannot prove that his protected speech was a substantial or motivating factor in their actions against him.

### a. Sergeant Cameron

Sgt. Cameron issued Plaintiff the letter of reprimand on May 18, 2012. The only allegedly protected speech made prior to that date is the officers' request to Lt. Lebrecht to stop

discussing politics.  There is no evidence Sgt. Cameron was aware of that speech.  With regard to the letter of reprimand, Plaintiff himself admits "He [Cameron] also said that in regards to the Letter of Reprimand that he didn't want to write it, but that Randy Wardlow of HR made him write it, but that if it were up to him, it just could have been a training issue."  Cleavenger Depo 108:13-17.

### b.  Brandon Lebrecht

Lt. Lebrecht issued Plaintiff the November 2011 Letter of Clarification and consulted with Sgt. Cameron on the May 18, 2012 letter of reprimand.  Viewing the facts in the light most favorable to Plaintiff, prior to both of those actions, Lt. Lebrecht was aware that Plaintiff and other officers had asked him to stop discussing politics at work.  *See* Cleavenger Depo 94:6-11 ("Q. At this point you haven't made any complaints or reports of anything, at the point you get the Letter of Clarification? A. We had made complaints about the political discussions and hoping those would stop.").

Lt. Lebrecht denies that this complaint occurred.  Lebrecht Dec ¶ 10.  Regardless, Lt. Lebrecht states affirmatively that he did not take any adverse employment actions against Plaintiff in retaliation for any speech he engaged in.  Lebrecht Dec ¶ 14.  Plaintiff has no evidence to the contrary.  His speculation as to Lt. Lebrecht's motives is not enough to create a disputed issue of fact.  *Anderson*, 477 U.S. at 252.  Furthermore, the internal complaint to a direct supervisor regarding working conditions is not protected speech as a matter of law.  *Coszalter*, 320 F.3d at 973; *Dahlia*, 735 F3d at 1074.

### c.  Brian Caufield

Defendant Caufield's only alleged involvement in this case is presiding over Plaintiff's Step 3 grievance termination hearing and issuing the decisions in that and Plaintiff's Step 3 grievance of the written reprimand.  Complaint ¶¶ 109-113.  Neither of these actions occurred while Plaintiff was an employee.  Defendant Caufield did not take an adverse employment action against Plaintiff as a matter of law.

Page 21 –  **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

### d.      Carolyn McDermed

Chief McDermed took several adverse employment actions against Plaintiff, including: instructing Lt. Morrow to conduct an internal affairs investigation into specific incidents of Plaintiff's conduct; temporarily reassigning Plaintiff to parking duties; and recommending his termination.  Prior to the April 2012 commencement of Lt. Morrow's internal investigation and the May 18, 2012 reassignment, the only protected speech Plaintiff claims he engaged in is the request to Lt. Lebrecht to stop talking about politics.  There is no evidence Defendant McDermed was aware of this complaint when she took those actions and that is not protected speech as a matter of law.

Chief McDermed assigned Lt. Bechdolt to conduct a performance review of Plaintiff's September call-outs in September 2012 and recommended Plaintiff's dismissal by letter dated October 1, 2012.  Prior to those adverse employment decisions, Plaintiff claims he engaged in protected speech during a meeting with Chief McDermed on August 13, 2012.[5]  The only reasonable interpretation of the facts shows this cannot be true.

Plaintiff testified:

> Q. What was discussed [at the August 13 meeting with Chief McDermed]?
>
> A. It was very similar to the meeting with Brian Smith. I discussed all the ways I had been mistreated by my supervisors, how this pattern of retaliation had been going on for a long time, and explained to her how it was getting worse, escalating, and I told her of all the instances of being harassed.
>
> * * *
>
> A.  I told her about the constant wasting time in the department, especially on the first graveyard shift, spending time watching

[5] Plaintiff's meetings with Brian Smith on October 2 and Linda King on October 12, 2012 are not relevant to this analysis because (1) Chief McDermed had already made the decision to recommend Plaintiff's termination by this date, and (2) there is no evidence Smith or King ever told Chief McDermed about the content of their meeting with Plaintiff.  Chief McDermed is sued individually.  Smith and King are not defendants.

Lebrecht's college football highlight videos, which I was fine with watching some of, but when it ended up watching nearly the whole game I believe that became a waste of time, a waste of state resources.

Q. What were you watching?

A. Lebrecht's college football tapes from when he played football.

Cleavenger Depo 151:19-25; 152:1; 158:15-24.

Chief McDermed denies that any such complaints were made to her during a brief meeting she had with Plaintiff on August 13, 2012.  McDermed Dec ¶ 12.  In fact, she testified the meeting was short and consisted primarily of Plaintiff complaining to her that he thought Lt. Lebrecht and Lt. Morrow had stood in the parking lot outside of the training room where he was sitting and pointed and laughed at him.  Chief McDermed looked into that allegation and determined it was unfounded.  McDermed Depo 33:12-25, 34:1-20; McDermed Dec ¶¶ 12, 13. Defendant McDermed also recalls that Plaintiff expressed his general frustration with the investigation process and being on parking duties.  McDermed Depo 37, 38:1-4; McDermed Dec ¶ 12.  Chief McDermed specifically denies Plaintiff making any of the complaints he now claims were the subject of that August 13, 2012 meeting.  McDermed Depo 36-45; McDermed Dec ¶ 12.

Chief McDermed's recollection of what transpired at this August 13 meeting should be accepted as true.  Plaintiff's current version of what he reported during that meeting is directly contradicted by his and his agents' prior admissions.

In the previously mentioned September 28, 2012 email, Lois Yoshishige explained to Plaintiff and his other stewards that Brian Smith had called and emailed her regarding a follow-up to the Step 2 written reprimand grievance and had said that "it would be important for me to hear anything that is relevant to the grievance that we met about on Tuesday."  Coit Dec, Ex 3, p.6.

Page 23 –  **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

In response, another of Plaintiff's union stewards, Donna Laue wrote:

> So would it be appropriate <u>to share about Lebrecht's football tapes or the "bowl of dicks" discussions during briefings</u> at this meeting with Brian?

*Id.*, p. 5.

To which Ms. Yoshishige responded:

> Donna: yes, if we met with Brian Smith it would be talking about all that stuff you mentioned.

*Id.*

After some discussion among the stewards about the wisdom of proceeding with the second meeting with Smith, <u>Plaintiff</u> made his thoughts known on **October 1, 2012**, in an email to his three union stewards, stating:

> I would prefer to go to both meetings (10:00am with Brian Smith and 11:15 am at HR). The reason is because <u>up to now, no one besides you three have any clue that I have been harassed, threatened and intimidated by Lebrecht and Cameron. If I don't meet with Smith, he will be making his decisions without hearing the whole truth, just like Wardlow did.</u> I feel that we need to get some of this stuff out there instead of being passive and reactive.

*Id.* p. 1 (underlining added).

On a motion for summary judgment, facts must generally be viewed in the light most favorable to the nonmoving party. However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007).

Blatant contradiction requires some type of physical proof showing that one party's story could not reasonably be believed – that is, one party's story is visibly false. *Id.* at 380-81. In *Scott*, the plaintiff's version of events was contradicted by video evidence. The U.S. Supreme Court held that the district court and the court of appeals "should not have relied on [the plaintiff's] visible fiction; it should have viewed the facts in the light depicted by the videotape." *Id.*

Page 24 –  **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Here, Plaintiff and his agents' written admissions in the emails set forth in Exhibit 3 directly contradict his self-serving statement in this lawsuit that he disclosed these complaints to Chief McDermed in a meeting on August 13, 2012. This is not a credibility determination. The emails in Exhibit 3 are physical proof that Plaintiff's version of what transpired at the August 13 meeting cannot be believed. In deciding this motion, the court should not rely on Plaintiff's "visible fiction."

There is no credible evidence that Chief McDermed knew that Plaintiff had made any of the complaints he now claims were protected speech when she made the decision to add to Lt. Morrow's investigation or to recommend Plaintiff's termination.

In addition, none of the speech Plaintiff claims he engaged in with Chief McDermed on August 13, 2012 is protected speech, as a matter of law.

Each of the individual Defendants is entitled to summary judgment on Plaintiff's claim under 42 U.S.C. § 1983 for violations of his First Amendment rights exercised while a public employee.

## D.      Qualified Immunity

Public officials sued in their individual capacity, as here, are immune from suit if "their conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed .2d 396 (1982); *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). A right is clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.*; *also Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009). Case law directly on point is not required, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Taylor*, 2015 WL 2464055, at *2 (citing *Reichle v. Howards*, 132 S. Ct. 2088, 2093, 182 L. Ed. 2d 985 (2012)). A government official may rely on cases from other jurisdictions or existing district court cases; if the Circuits are split on the relevant issue, the

Page 25 –  **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

official will not be subjected to money damages for "picking the losing side." *Pearson*, 555 U.S. at 244-45. Furthermore, the right must be established, "not as a broad general proposition," but 'in a particularized' sense so that the contours of the right are clear to a reasonable official." *Reichle v. Howards*, 132 S. Ct. 2088, 2093, 182 L. Ed. 2d 985 (2012). In other words, the inquiry is not whether a plaintiff has a clearly established right not to be retaliated against for engaging in protected speech, but rather whether under the specific circumstances of the case, the defendant should have been aware that his or her conduct was violating that right.

As is evident from the cases discussed above, in 2011 and 2012, it was not clearly established that a public safety officer's complaints to his supervisors, his union, and those overseeing his grievance hearings about issues related to his workplace complaints and his discipline constituted speech made as a private citizen on matters of public concern. Plaintiff will point to no case, in the Ninth Circuit or otherwise, that would have put the individual Defendants on notice that Plaintiff's complaints regarding his workplace issues and problems, made up the chain of command and in the context of his grievances, was protected speech.

The individual Defendants are entitled to qualified immunity on Plaintiff's First Amendment Claims for speech he engaged in while employed by UOPD.

### V.     42 U.S.C. § 1983: FIRST AMENDMENT (PRIVATE CITIZEN)

**A.     Plaintiff's Allegations**

Plaintiff also asserts a First Amendment claim based on speech he made in 2008 while a law student and member of the UO student government. Plaintiff alleges:

> Plaintiff expressed his personal opinions on the use of Tasers by UODPS while Plaintiff was in law school at UofO in 2008. These opinions were later used by Defendants to justify retaliation, discipline and termination.

Complaint ¶ 143(h).

When questioned about what actions the Defendants took against Plaintiff for his Taser speech, Plaintiff explained:

Page 26 – **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Q. What do you mean by that? What does "justify retaliation" mean?

A. What I'm referring to is Sergeant Scott Cameron showing these videos, press articles, et cetera, to other U of O employees to garner support for his position that I wasn't a good officer and should never have been hired and should be fired.

Q. Do you claim anyone else at the University of Oregon, other than Scott Cameron, retaliated against you because of your position on Tasers?

A. Yes. But I claimed that Scott Cameron started that.

Q. Who else?

A. Brandon Lebrecht.

Cleavenger Depo, Vol. 3, 92:12-25.

Plaintiff describes his speech regarding Tasers as follows:

A. I had been part of the student government, the ASUO student government while I was in law school. Part of my duties was to research the issue of Tasers, because the chief at the time at UODPS, Kevin Williams, wanted to get Tasers for the officers in the department. The student government, student body, was against this idea. And my job was to help organize the students' resistance to that plan.

Q. This is while you were in law school?

A. Yes.

Q. And did you hold office in the ASUO?

A. My title was ASUO graduate student representative.

* * *

Q. So you felt that Sergeant Cameron held it against you that you had been part of the ASUO resistance to the DPS officers having Tasers; is that right?

A. Yes.

Cleavenger Depo 48.

Page 27 –  **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff makes no allegation in his Complaint that he continued engaging in speech related to his opinions on Tasers or UOPD's plan to arm itself with Tasers after 2008.  Nor has he, nor can he, allege that he was engaged in that speech activity in 2011 or 2012 when he was no longer a student or member of the student government, but rather an employee of UOPD.

**B.      Applicable Law and Argument**

A private citizen asserting a First Amendment violation under 42 U.S.C. § 1983 by a public official must prove: "(1) he has an interest protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) defendant's action effectively chilled the exercise of his First Amendment right." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).

The third element requires plaintiffs to prove that the retaliatory official conduct actually deprived them of their First Amendment rights by either silencing them or having some "actual, non-speculative chilling effect on [their] speech." *Williams v. Town of Greenburgh*, 535 F.3d 71, 78 (2d Cir. 2008).  The plaintiff must prove that he was "subjected to adverse action by the defendant that would chill a person of ordinary firmness from *continuing* to engage in the protected activity[.]" *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010) (italics added) (citing *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006)).  "Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech."  *Curley*, 268 F.3d at 73.

Plaintiff's position appears to be that Sgt. Cameron violated his First Amendment rights by talking about Plaintiff's 2008 speech on Tasers in an effort to get others to agree with him that Plaintiff should be retaliated against and terminated.  This position has no support under any interpretation of First Amendment law.  *See, e.g.*, *Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (9th Cir. 1998) (holding that bad-mouthing and verbal threatening was insufficient to state a First Amendment retaliation claim; "[i]t would be the height of irony, indeed, if mere speech, in response to speech, could constitute a First Amendment violation").  If this is the basis for

Plaintiff's First Amendment claim for speech engaged in as a student, it fails miserably.

Defendants will nonetheless assume Plaintiff is actually alleging that the adverse employment actions at issue here were taken by Sgt. Cameron and Lt. Lebrecht in an effort to chill his speech regarding the public expression of he and his fellow students' position on UOPD arming itself with Tasers. Even with this liberal reading of the claim, it fails as a matter of law.

Plaintiff makes no allegation that any of the actions taken against him by any of the individual Defendants "actually chilled" his speech about Tasers. Plaintiff was not engaging in the public expression of his personal opinion regarding UODPS arming itself with Tasers in 2011 or 2012. Cleavenger Depo 168:19-22 ("Q. Okay. And you made those statement [about Tasers] before you were an employee of the U of O Department of Public Safety, right? A. Correct."). There can be no "actual chilling" of conduct that has long since ceased. Likewise Plaintiff has not alleged, and cannot show, an actual change in his behavior regarding his public expression of his personal opinions on Tasers resulting from any of the alleged retaliation at issue in this case. He was not engaging in this conduct at the time the material actions were taken.

Plaintiff's claim under 42 U.S.C. § 1983 for a violation of his First Amendment rights for speech he made while a law student fails as a matter of law. Each of the Defendants is entitled to summary judgment on this claim.

## C.    Qualified Immunity

In 2011 and 2012 it was not well established that taking adverse employment actions against an employee for speech he engaged in as a student three and four years prior but was no longer engaged in at the time of the adverse act, would violate that employee's First Amendment rights. Plaintiff will present no case law that would have put the Defendants on notice that their conduct would chill speech that Plaintiff was no longer engaged in.

The individual Defendants are entitled to qualified immunity on Plaintiff's First Amendment Claims.

Page 29 –  **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## VI.        42 U.S.C. § 1983: DUE PROCESS (LIBERTY INTEREST)

### A.        Plaintiff's Allegations

Plaintiff asserts that he was denied due process because UOPD "fail[ed] to notify Plaintiff that *Brady* List materials were going to be provided to the district attorney, and in further embellishing, exaggerating, and providing false and/or materially misleading information concerning plaintiff within the materials submitted to the DA." Complaint ¶ 164. Plaintiff asserts that the submission of the *Brad*y materials was an attempt by each Defendant to prevent him from getting or maintaining other law enforcement jobs or employment in the legal profession. Complaint ¶¶ 128, 129.

### B.        Applicable Law and Argument

A public employee is entitled to due process protection if the employee's termination includes the publication of stigmatizing charges. *Mustafa v. Clark Cnty. Sch. Dist.*, 157 F.3d 1169, 1179 (9th Cir. 1998). To prove that claim, the "employee must show that '(1) the accuracy of the charge is contested; (2) there is some public disclosure of the charge; and (3) the charge is made in connection with termination of employment.'" *Id.* (citing *Matthews v. Harney County,* 819 F.2d 889, 891-92 (9th Cir. 1987). "[T]he reasons for dismissal must be sufficiently serious to 'stigmatize' or otherwise burden the individual so that he is not able to take advantage of other employment opportunities." *Bollow v. Federal Reserve Bank of San Francisco*, 650 F.2d 1093, 1101 (9th Cir. 1981). "If a liberty interest is thereby implicated, the employee must be given an opportunity to refute the stigmatizing charge." *Mustafa*, 157 F.3d at 1179 (citing *Codd v. Velger,* 429 U.S. 624, 627, 97 S. Ct. 882, 51 L. Ed. 2d 92 (1977)).

Defendants are entitled to summary judgment on Plaintiff's due process claim for three reasons: (1) the *Brady*-related materials were not publicly disclosed; (2) the materials were not submitted in connection with Plaintiff's termination; and (3) the Defendants are entitled to qualified immunity.

Page 30 – **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

### 1.    Defendants Caufield, Cameron and Lebrecht

As an initial matter on this claim, there is no allegation or evidence that anyone other than Chief McDermed is responsible for the submission of material regarding Plaintiff to the District Attorney.  She was the sole and final decisionmaker on that issue.  McDermed Dec ¶¶ 24, 25, 26; Lebrecht Dec ¶ 13; McDermed Depo 199:19-24; 203:23-25.  There is no evidence that Caufield or Sgt. Cameron knew anything about the submission when it was made. Lt. Lebrecht voiced his hesitation about making the submission because of the pending lawsuit. McDermed Dec 26; McDermed Depo 205:8-15.  Lt. Lebrecht and Capt. Deshpande were complying with their Chief's order to gather the information and deliver it to the district attorney's office.[6]  Lebrecht Dec ¶ 13.

Each of the individual Defendants besides Chief McDermed are entitled to summary judgment on this claim on the basis of causation. There is no evidence they played a role in the alleged Constitutional violation and therefore could not have caused any harm.[7]

### 2.    There Was No Public Disclosure

Plaintiff cannot prove that the Defendants publicly disclosed stigmatizing information when it submitted information to the Lane County District Attorney's office.  Providing allegedly stigmatizing information to another public agency is not a public disclosure.

In *Wenger v. Monroe*, 282 F.3d 1068 (9th Cir. 2002), the plaintiff, a teacher, argued that stigmatizing information was publically disclosed when his employer, the National Guard, informed the Army War College of the stigmatizing information and when the Guard informed the Department of the Army Inspector General's Office of the information.  In rejecting the claim, the

---

[6] Plaintiff's allegation that Lt. Lebrecht intentionally falsified information and exaggerated facts in the Brady submission does not set forth a cause of action for a liberty interest violation against Lt. Lebrecht.  Contesting the statements made in the disclosure is an element of the claim itself. The violation requires disclosure made in connection with termination.  Only Chief McDermed is responsible for the disclosure at issue here.

[7] Notwithstanding this argument, all Defendants will move for summary judgment on the additional bases included for this and the Substantive Due Process claim.

Page 31 –  **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

court held that "there was no 'public disclosure'—as the district court recognized, both of these disclosures were made to other branches of the military, not to the public." *Id.* at 1074 n.5

Similarly, in *Millman v. Inglish*, 461 Fed. App'x 627 (9th Cir. 2011), the plaintiff, a pharmacist, was suspected of fraud by the California Department of Health Care Services (CDHCS). The Ninth Circuit found that CDHCS's disclosure of the information thought to be fraudulent to the California Department of Justice, the California Pharmacy Board, and the Medicare administration did not constitute a "public" disclosure of the allegedly stigmatizing information. "[N]otification of the alleged fraud to other public agencies is not a public disclosure." *Id.* at 628.

In *Reyes v. City of Pico Rivera*, 370 Fed. App'x 844, 844 (9th Cir. 2010), the court explained that:

> [D]issemination of an allegedly stigmatizing report to two City decision-makers did not, on its own, constitute publication, because there was no public disclosure. Similarly, the provision of the allegedly stigmatizing information to opposing counsel during discovery in a related lawsuit did not constitute publication, both because it lacked the "public" element contemplated by our stigma-plus cases, and because adopting such a rule would inhibit "forthright and truthful communication ... between litigants."

*Id.* (citing *Bishop v. Wood*, 426 U.S. 341, 348-49 (1976)).

Here, UOPD, a state agency, shared information with the Lane County District Attorney's office, another state agency, for the purpose of complying with its obligation to alert the latter agency of information that might implicate *Brady* concerns. This sharing of information between state agencies was not a "public" disclosure as that term is interpreted by the Ninth Circuit.

**3. Defendants' Disclosure of Information was Not Made in Connection with Plaintiff's Termination**

Due process requires a terminated employee be given an opportunity to clear his name if a stigmatizing statement is made to a third party in connection with termination. A stigmatizing

Page 32 – **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

charge is connected to the termination "when defamatory statements are so closely related to discharge from employment that the discharge itself may become stigmatizing in the public eye." *Campanelli v. Bockrath*, 100 F.3d 1476, 1482 (9th Cir. 1996).  Plaintiff was terminated in October 2012.  But subsequent to that termination, Plaintiff was reinstated, and then voluntarily resigned.  At the time the Defendants submitted information to the District Attorney, there was no termination, so no process was due. *See Parker v. Board of Regents of Tulsa Jr. College*, 981 F.2d 1159, 1161–62 (10th Cir. 1992) ("If Plaintiffs resigned of their own free will, even as a result of Defendant's actions, then they voluntarily relinquished their property interests and, thus, Defendant did not deprive them of property without due process of law.").

As set forth in the Statement of Facts, Plaintiff appealed his termination to arbitration, as was his right as a member of the union.  By decision dated February 24, 2013, Plaintiff's termination was reversed by the arbitrator, entitling him to back pay from the date of termination through the date he went back to work. Coit Dec, Ex. 5.  Plaintiff was instructed to return to work on April 21, 2014.  He was told that he would be returned to his former position of public safety officer, not his most recent assignment of parking enforcement.  Coit Dec, Exs. 6, 7.  At that same time, Plaintiff was working full time as a federal district court law clerk.  Returning to work as a UOPD officer would have required he resign that position. *Id.*  Just prior to his scheduled return date, Plaintiff's counsel informed UOPD that Plaintiff had decided not to return to work after all.  Coit Dec ¶ 8.  Plaintiff thereafter agreed he would formally resign from UOPD, effective June 14, 2013, and never reapply.  Coit Dec ¶ 8, Ex. 8.  On June 4, 2014, Plaintiff sent to the undersigned a draft of a settlement agreement, setting forth his decision to resign, along with additional agreements. *Id.*, Ex. 8.

Plaintiff did not learn about the disclosure to the District Attorney until after July 14, 2014, almost two months after he had decided to resign from UOPD and remain at the federal court.  "Plaintiff was never given prior notice [of the Brady disclosure] and only learned of it through defense counsel's disclosure in this case, over a month *after* it had been submitted."

Page 33 –  **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Complaint ¶ 124 (italics in original).  Plaintiff's decision in April 2012 to resign <u>could not</u> have been impacted by either a Defendants' plan to make a *Brady* disclosure, or the disclosure itself. Plaintiff cannot, therefore, rely on the theory of constructive discharge to satisfy the termination requirement of his claim.  "A constructive discharge occurs when, looking at the totality of the circumstances, a reasonable person in the employee's position would have felt that he was forced to quit because of intolerable and discriminatory working conditions." *Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir. 1987).

Plaintiff was not working at UOPD when he decided to resign, he did not know anything about the disclosures to the District Attorney when he decided to resign, and he had been informed that he would be returned to his usual job when he reported for work on April 21, 2014. Plaintiff voluntarily chose to resign before the disclosures were made to the District Attorney. He was not, therefore, entitled to due process in connection with that disclosure.

## C.    Qualified Immunity

Even if Plaintiff was entitled to procedural due process before or after the information was provided to the District Attorney, Defendants are entitled to qualified immunity because Plaintiff's right to that process was not clearly established at the time of disclosure.

It was not clearly established in July 2014 that providing possible Brady information to a prosecutor regarding a former employee also required notice and a name-clearing hearing to the former employee.  Rather, a reasonable police department official would understand, based on what little precedent that does exist on this issue, that her communications with a prosecutor regarding *Brady* concerns about a former employee, even if stigmatizing, would not be considered a public disclosure because it was made solely between two public agencies.  It also was not clearly established that a former employee's decision to resign after being reinstated through arbitration was a constructive discharge triggering due process rights.

Because under the circumstances here Plaintiff did not have a clearly established due process right to notice and a name-clearing hearing, the Defendants are entitled to qualified

Page 34 –  **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

immunity on Plaintiff's due process liberty interest claim.

### VII.      42 U.S.C. § 1983 SUBSTANTIVE DUE PROCESS

**A.      Plaintiff's Allegations**

Plaintiff asserts that Defendants violated his substantive liberty and due process rights by preventing him from pursuing law enforcement and legal professions.  Complaint ¶¶ 128, 129. He claims this deprivation occurred as a result of the submission of material to Alex Gardner for purposes of a *Brady* material review.  *Id.*

For the reasons stated in Section VI(B)(1), above, Defendants Caufield, Cameron and Lebrecht are entitled to summary judgment on this claim.

**B.      Applicable Law and Argument**

"Substantive due process protects individuals from arbitrary deprivation of their liberty by government." *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006). The Ninth Circuit has stated that "to establish a constitutional violation based on substantive due process, [a plaintiff] must show both a deprivation of her liberty <u>and</u> conscience-shocking behavior by the government." *Id.* (underlining added).

**1.      Deprivation of Liberty**

Substantive due process claims involving occupation liberty are limited to "extreme cases, such as a 'government blacklist, which when circulated or otherwise publicized to prospective employers effectively excludes the blacklisted individual from his occupation, much as if the government had yanked the license of an individual in an occupation that requires licensure.'"  *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 997-98 (9th Cir. 2007) (quoting *Olivieri v. Rodriguez*, 122 F.3d 406, 408 (7th Cir. 1997)), *aff'd sub nom. Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008).  To prove a substantive due process claim, Plaintiff must show that Defendants' actions were stigmatizing and "impose[d] a complete prohibition on entry into a profession." *Id.* at 998 (internal quotation marks omitted).  Plaintiff claims Defendants' disclosure of possible *Brady* information to the

District Attorney has prohibited his entry into both the legal and law enforcement professions. Complaint ¶¶ 128, 129. This is not true.

Plaintiff currently works as a judicial law clerk for Judge Michael McShane in the U.S. District Court for the District of Oregon. Coit Dec ¶ 18; *see also* the federal district court website at www.ord.uscourts.gov/index.php/court-info/judges/judge-mcshane. He is also currently licensed to practice law in the State of Washington. Coit Dec, Ex 9 (printout from WA state bar website dated June 2, 2015). Plaintiff is not licensed to practice law in Oregon because he failed the bar examination and does not plan to retake the Oregon bar exam. Cleavenger Depo 34:5-14. Plaintiff also currently works as a reserve police officer on solo status for the City of Coburg Police Department. Coit Dec, ¶ 19 (relating telephone call with Coburg Police Department on June 1, 2015, confirming Plaintiff's current employment); Cleavenger Depo, Vol. 3, 32:9-24. Plaintiff cannot show he has suffered a "complete prohibition" on the entry into the legal or law enforcement profession.

Furthermore, it is not Defendants' conduct of which Plaintiff complains in this substantive due process claim. Defendants' conduct did not rise to the level of completely prohibiting him from obtaining employment in law enforcement or legal professions. Defendants provided material they felt was concerning to the Lane County District Attorney *upon his request* after discussing with him the general facts of the situation. Gardner Depo 39:11-25; 40:1-25. Plaintiff himself agrees that the decision of "whether or not [he] goes on the *Brady* list is up to the district attorney." Cleavenger Depo, Vol. 3, 89:20-23. The Ninth Circuit has held that a "prosecutor's decision not to preserve or turn over exculpatory material before trial, during trial, or after conviction is a violation of due process under *Brady v. Maryland*. It is, nonetheless, an exercise of the prosecutorial function and entitles the prosecutor to absolute immunity from a civil suit for damages." *Broam v. Bogan*, 320 F.3d 1023, 1030 (9th Cir. 2003) (underlining added).

Finally, providing information to a district attorney for his review does not restrict Plaintiff's employment options. Even if Plaintiff is ultimately flagged as having disclosable

Page 36 – **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

information, all that means is criminal defendants will be entitled to receive that information in any case he is scheduled to testify.  Plaintiff's theory rests on the suggestion that being placed on a "*Brady* list" prohibits a person from working as a police officer because he can no longer testify.  If this were the case, there would be no point of maintaining a *Brady* list at all.

As Gardner explained, the Lane County District Attorney's office maintains a database that flags potential *Brady* issues with witnesses.  Gardner Depo 11:15-20.  Simply because an officer is flagged does not mean that the officer is prohibited from testifying.  *Id.* 24:4-5.  Rather, the decision of whether the district attorney will have a witness testify is determined based on whether the District Attorney believes the witness is credible.  *Id.* 26:24-27:2.  Gardner may have a witness testify despite *Brady* material existing for that witness because Gardner believes the witness is credible.  *Id.* 23:13-17.  Gardner may not have a witness testify despite no *Brady* material existing for that witness because Gardner does not believe the witness is credible.  *Id.* 24:14-20.  Gardner has not yet determined Plaintiff's credibility as a witness.  He has agreed to meet with Plaintiff before deciding whether he believes Plaintiff is credible.  *Id.* 6:9-19, 27:3-21. That meeting has not occurred because Plaintiff has refused to meet with Gardner until this litigation has concluded.  *Id.* 6:9-7:2.

There is no evidence showing that Plaintiff has been precluded from even testifying, let alone being precluded from employment as a police officer.[8]

### 2.      Conscience Shocking Behavior

The Ninth Circuit has held that "a plaintiff can make out a substantive due process claim if she is unable to pursue an occupation and this inability is caused by government actions that were arbitrary and lacking a rational basis." *Engquist v. Oregon Dept. of Agriculture*, 478 F.3d 985, 997 (9th Cir. 2007). A violation of substantive due process must be demonstrated by more than mere harm; it is demonstrated by conduct that shocks the conscious. *County of Sacramento*

---

[8] Plaintiff's claim that this disclosure may also impact his ability to get a legal job is pure speculation, well below the required showing of total preclusion from entering the field of law.

Page 37 –  **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

*v. Lewis*, 523 U.S. 833, 846–49, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998). Conduct that

"shocks in one environment may not be so patently egregious in another...." *Id*. at 850.

"Deprivations of liberty caused by 'the most egregious official conduct,' may violate the Due

Process Clause." *Chavez v. Martinez*, 538 U.S. 760, 774, 123 S. Ct. 1994, 155 L. Ed. 2d 984

(2003) (quoting *Lewis*, 523 U.S. 846, 847–48, n.8).

Here, Plaintiff must not only show he is precluded from his profession, but also that the

conduct resulting in that preclusion was shocking and patently egregious.  As the Ninth Circuit

has noted, where defendants act reasonably, their actions cannot violate the more stringent

shocks-the-conscience standard for a substantive due process violation. *See Moreland v. Las*

*Vegas Metropolitan Police Dept.*, 159 F.3d 365, 371 n.4 (9th Cir. 1998) (noting that if

defendants' "actions were objectively reasonable, it follows that [their] conduct did not offend

the more stringent standard applicable to substantive due process claims.").

Here, the undisputed facts show Chief McDermed acted reasonably when she made the

decision to turn material over to the Lane County District Attorney.  When asked to explain

why she instructed Lt. Lebrecht to compile information for Gardner's review, Chief McDermed

testified:

> A. Alex Gardner, via email, sent Brady best practices, or
> something like that, to me and it outlined, you know, more
> information about it. And that the -- what I got from that was that it
> would be important to be transparent and provide information that
> you think might be important to the district attorney's office. But
> then it would be their decision whether or not that information
> would rise to the level of impacting a particular officer or
> department or some kind of case that was being prosecuted. So it
> was just our responsibility to provide possible information that
> would have a Brady impact or be impacted by Brady and allow the
> district attorney to review it and decide if, in fact, that information
> was pertinent.
>
> Q. Okay. What type of information was your understanding back at
> the beginning of this year that the Brady law required disclosure
> of?

Page 38 –  **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

A. About truthfulness.

* * *

A. No, not in January. It wasn't until June [2014] when Patty
[Perlow, Lane Cty. Sr. ADA] spoke specifically about it, how very
important it was that agencies provide information for them to
make determinations when they thought veracity was an issue, that
is when I decided to -- we needed to compile information.

* * *

Q. Okay. What was it about these guidelines [Brady Best
Practices] that you felt compelled you to disclose nearly 200 pages
of information about Officer Cleavenger to the district attorney?

A. The reason he was terminated from our department was -- was
partially because of his untruthfulness.

* * *

A. After consulting with counsel, I put the packet together because
I felt I had a duty to report possible instances of untruthfulness.

McDermed Depo196, 199, 201, 203; *see also* McDermed Dec ¶¶ 24, 25, 26.

    Based on the foregoing, it cannot be said that Chief McDermed acted arbitrarily when

making the decision to comply with her understanding of her obligations under *Brady v.*

*Maryland*.  Chief McDermed was informed by the Lane County District Attorney that police

departments had an affirmative obligation to turn over information that may bear on an officer's

credibility.  Chief McDermed knew that UOPD had such information relating to Plaintiff.  It was

reasonable for her to believe she had the legal obligation to provide this information to the

District Attorney for his review.

    Plaintiff alleges that the decision to turn over the information was motivated by an effort

to discredit him and thwart his attempt to return to work at UOPD.  The facts do not support this

theory.  Chief McDermed was aware on April 21, 2014, two months prior to making the

disclosure, that Plaintiff had chosen to resign from UOPD and had agreed to never reapply.

McDermed Dec ¶ 23.  Regardless, though, the allegations of improper motives are irrelevant to

Page 39 –  **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

the substantive due process inquiry if the conduct taken was reasonable. *See Brittain*, 451 F. 3d at 998 (After finding that the officer's actions were a reasonable exercise of his statutory duties, the Ninth Circuit found that the plaintiff's evidence that the officer conspired with the plaintiff's ex-husband was immaterial to its analysis of whether the officer's conduct was conscience-shocking. "[C]onspiracy allegations all amount to issues of intent, which while disputed, are not relevant" to the question of whether an officer's conduct shocks the conscience.)

Defendants are entitled to summary judgment on Plaintiff's substantive due process claim because there is no evidence that Chief McDermed's decision to provide possible *Brady* material to the District Attorney foreclosed Plaintiff's access to legal or law enforcement professions, and because the decision to provide that information was not conduct that would "shock the conscience." To the contrary, Chief McDermed's decision under the circumstances presented to her was reasonable. *DeLarge v. Hayward Unified Sch. Dist.*, 543 F. App'x 682, 683 (9th Cir. 2013).

## C.    Qualified Immunity

Defendants are entitled to qualified immunity on Plaintiff's claim for substantive due process violations because in July 2014, it was not clearly established that reporting to a District Attorney information regarding findings of untruthfulness regarding an officer was conscience-shocking conduct. Rather, the relevant case law led the Defendants to believe that such conduct was a reasonable exercise of their legal responsibility to provide information to the District Attorney's office. Furthermore, at the time the disclosure was made, Defendants were aware that Plaintiff had declined to return to work, but rather was planning to continue in his profession as a law clerk in the federal court. There was no case law, then or now, that would put Defendants on notice that revealing possible *Brady* information to the district attorney would result in a complete prohibition against Plaintiff continuing in his current employment.

/ / / /

Page 40 –  **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## VIII.    CONCLUSION

For the forgoing reasons, this court should grant summary judgment to Defendants on all claims.

DATED this 11th day of June, 2015.

HARRANG LONG GARY RUDNICK P.C.

By:    s/ Andrea D. Coit
       Andrea D. Coit, OSB #002640
       Jonathan M. Hood, OSB #133872
       Attorney for Defendants

## Local Rule 7-2 Certification

The undersigned certifies that the foregoing memorandum complies with the page count limitation of LR 7-2.  The memorandum contains less than 35 pages, including headings, footnotes and quotations, but excluding caption, table of contents, table of authorities, signature block, exhibits, and any certificates of counsel.

s/ Andrea D. Coit

## CERTIFICATE OF SERVICE

I certify that on June 11, 2015, I served or caused to be served a true and complete copy of the foregoing **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** on the party or parties listed below as follows:

    ☑    Via CM / ECF Filing

    ☐    Via First Class Mail, Postage Prepaid

    ☐    Via Email

    ☐    Via Personal Delivery

Mark McDougal
Gregory Kafoury
Jason Kafoury
Grand Stable & Carriage Building
411 SW Second Avenue, Suite 200
Portland, OR 97204
  Attorneys for Plaintiff

                HARRANG LONG GARY RUDNICK P.C.

                By:  s/ Andrea D. Coit
                    Andrea D. Coit, OSB #002640
                    Jonathan M. Hood, OSB #133872
                    Attorney for Defendants

00720013.v1

**CERTIFICATE OF SERVICE**