**Andrea D. Coit, OSB #002640**
**andrea.coit@harrang.com**
**Jonathan M. Hood, OSB #133872**
**jonathan.hood@harrang.com**
HARRANG LONG GARY RUDNICK P.C.
360 East 10th Avenue, Suite 300
Eugene, OR 97401-3273
Telephone:     541-485-0220
Facsimile:     541-686-6564
Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **JAMES M. CLEAVENGER,** | Case No. 6:13-cv-01908-DOC |
| Plaintiff, | **DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| **UNIVERSITY OF OREGON (an Agency and Instrumentality of the State of Oregon), et al.,** | |
| Defendants. | |

Pursuant to the Court's Civil Minute Order dated June 8, 2015, Defendants submit the following Statement of Uncontroverted Facts[1] in support of their Motion for Summary Judgement.

_____

[1] Defendants have reviewed the Central District of California's Local Rule 56.1 in an effort to become as knowledgeable as possible with the required content and form for this pleading in the four days since the issuance of the Court's order requiring it.  The federal district of Oregon does not require a similar document.  If Defendants have not included required content in this pleading or have presented it in unacceptable form, Defendants ask for an opportunity to remedy that deficiency in their Reply submissions after further study of the Central District of California's Local Rules.

Page 1 –     **DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

| No. | Statement of Uncontroverted Facts | Evidence |
|---|---|---|
| 1 | In March 2010, Plaintiff began working for UOPD[2] as a part-time Auxiliary Public Safety Officer.  UOPD hired Plaintiff as a full-time Public Safety Officer in March 2011. | Third Amended Complaint (Complaint) ¶ 12. |
| 2 | A public safety officer (now referred to as a "special campus security officer") has limited enforcement authority, is not allowed to carry a firearm in the course of employment, and is not considered a police officer under Oregon law.  Public safety officers do not receive similar training as Oregon police officers who are required to successfully complete a 16 week police academy through the Department of Public Safety Standards and Training. | ORS 352.385 |
| 3 | Plaintiff's employment as a public safety officer with UOPD was governed by a Collective Bargaining Agreement between Oregon University System (OUS) and SEIU Local 503, OPEU ("Union"), dated 2011-2013 (hereinafter, "union contract"). This agreement sets forth the procedure for imposing discipline on union members and those member's rights to challenge discipline through grievances. | Complaint ¶¶ 54, 56. |
| 4 | From March 2011 to October 2011, Plaintiff's direct supervisor was Sergeant Andy Bechdolt.  Defendant Sgt. Scott Cameron became Plaintiff's direct supervisor in October 2011, continuing through the remainder of Plaintiff's employment. | Deposition of James Cleavenger ("Cleavenger Depo"), attached as Ex.10 to Coit Dec, 67:5-7; 68:5 7. |
| 5 | Defendant Lt. Brandon Lebrecht supervised Plaintiff from February 2011 through January 2012 as the Lieutenant in charge of the graveyard shift. | Deposition of Brandon Lebrecht ("Lebrecht Depo"), attached as Ex. 11 to Coit Dec, 24:13-25:9. |
| 6 | Defendant Carolyn McDermed was Deputy Chief of UOPD when Plaintiff began his employment, and she became Acting Chief around February 2012, and was named Chief of Police on July 13, 2012. | Deposition of Carolyn McDermed ("McDermed Depo"), attached as Ex. 12 to Coit Dec, 70:17-78:4. |

---

[2] Defendants will refer to the University of Oregon Department of Public Safety and the University of Oregon Police Department both as UOPD.  UODPS was converted to UOPD on January 1, 2012.

Page 2 –    **DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

| No. | Statement of Uncontroverted Facts | Evidence |
|---|---|---|
| 7 | Defendant Brian Caufield became Associate General Counsel for Labor Employment for the Oregon University System ("OUS") around August 2012. | Deposition of Brian Caufield ("Caufield Depo"), attached as Ex. 13 to Coit Dec, 19:15-18, 20:3-6. |
| 8 | In November 2011, near the end of Plaintiff's public safety officer evaluation period, a series of incidents led to Lt. Lebrecht issuing Plaintiff a memo clarifying UOPD's expectations of safety and grooming standards.  Lt. Lebrecht did not issue the Letter of Clarification to retaliate against Plaintiff. | Lebrecht Dec ¶ 6, Ex. 1. |
| 9 | The letter of clarification is a non-disciplinary teaching tool that has no impact on terms of employment. | Lebrecht Dec ¶ 6. |
| 10 | On November 4, 2011, Plaintiff sent Lt. Lebrecht a text message thanking Lt. Lebrecht for not including other incidents in the Letter of Clarification: "Thanks for keeping most of my shinanigans [sic] out of the letter.  I know it could have been worse/more." <br><br> Plaintiff explained this text in his deposition: <br><br>   Q. Were there other, I guess, shenanigans, for lack of a better word, other than the incident with the angel's wings and the incident with the ninja costume? <br>   A. Yes, there were. You know, humor was encouraged and was part of our culture. <br>   Q. What were the other shenanigans? <br>   A. There were all kinds of practical jokes we would pull on each other or we would joke. You know, this is a graveyard shift and it's very taxing on the body, and you've got to have humor, otherwise the job is going to get to you. And so there were lots of -- the dancing on the table was one of them. | Cleavenger Depo 84:21-87:22. |
| 11 | On April 1, 2012, Plaintiff responded to a neighbor dispute at Spencer View Apartments. | Complaint ¶ 47. |

Page 3 –    **DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

| No. | Statement of Uncontroverted Facts | Evidence |
|---|---|---|
| 12 | Plaintiff was advised by a fellow public safety officer over the radio that one of the neighbors had psychological problems and that Plaintiff should not park near the involved apartment, but rather out of view, in the back. | Deposition of Officer Zachary Hermens ("Hermens Depo") attached to Coit Dec as Ex 14, 91:6-21; Deposition of Scott Cameron ("Cameron Depo") attached as Ex 16 to Coit Dec, 126:18-21. |
| 13 | Plaintiff drove directly in front of the responding address, slowed down, almost stopped, then proceeded past the apartment to a parking area. | Cleavenger Depo 127:10-16; 156:3-10; Cameron Depo 127:10-14. |
| 14 | Later on the afternoon of April 1, 2012, Sgt. Cameron discussed with Plaintiff the safety issues involved with Plaintiff's decision to drive in front of the apartment. Plaintiff's responses concerned Sgt. Cameron, causing him to discuss the issue with his supervisor, Lt. Lebrecht. | Cameron Depo 134:11-16.<br><br>Lebrecht Dec ¶ 8. |
| 15 | Sgt. Cameron and Lt. Lebrecht met with Plaintiff a week later to discuss their concerns regarding his performance at the April 1, 2012 Spencer View call. Plaintiff's explanation for his conduct was that he felt the call was a cold call, and that Officer Hermens had parked in view of the apartment prior to Plaintiff's arrival. | Cameron Depo 134:17-25; 135:1-12; 139:13 16.<br><br>Lebrecht Dec ¶ 8, Ex. 3. |
| 16 | Sgt. Cameron and Lt. Lebrecht reviewed Plaintiff and the other involved officers' dash cam video from the incident and discovered Plaintiff's description of where Officer Hermans was parked was not accurate. | Cameron Depo 135:20-22; Lebrecht Dec ¶ 9. |
| 17 | The facts Plaintiff had given to Sgt. Cameron and Lt. Lebrecht regarding what occurred at the Spencer View call were so inconsistent with the video footage, that Sgt. Cameron was concerned that either Plaintiff's memory was "troublingly askew, or he was lying." | Cameron Depo 138:20-23. |
| 18 | On May 18, 2012, Sgt. Cameron issued Plaintiff a written reprimand arising out of the Spencer View call and Plaintiff's subsequent troubling explanation for his conduct. The reprimand cited Plaintiff's "continued failure to follow department standards regarding officer safety tactics and procedures." | Lebrecht Dec ¶ 7, Ex 2. |

Page 4 –   **DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

| No. | Statement of Uncontroverted Facts | Evidence |
|---|---|---|
| 19 | Sgt. Cameron felt a written reprimand was needed because "he [Plaintiff] refused to accept what he did was a bad idea and then went so far as to blame everyone else for his actions. And it's dangerous. I can't stress enough how dangerous that is. That he ignored it completely is -- is concerning." | Cameron Depo 141:5-10. |
| 20 | Lieutenant Mike Morrow was the Standards and Training Lieutenant for UPOD in 2012, and was in charge of internal affairs investigations for the department. Lt. Morrow developed his internal investigation skills during his 20 year career as an agent with the Federal Bureau of Investigation. | Morrow Dec ¶¶ 4, 6. |
| 21 | On April 11, 2012, a female student called UOPD dispatch to voice concerns she had with the conduct of a UOPD officer during a traffic stop. The caller communicated her belief that she felt this officer was acting weird and she was unsure of his actions. The student wanted to let UOPD know how the officer had behaved. She was transferred Lt. Morrow's voicemail, where she left a brief message. | Morrow Dec ¶ 7. |
| 22 | Lt. Morrow determined that it was Plaintiff who had conducted the stop of the student. Lt. Morrow requested a copy of the in-car video and audio of the encounter, which was provided by Lt. Lebrecht, Plaintiff's supervising lieutenant. Upon review of that video, Lt. Morrow noted several concerning issues with Plaintiff's conduct during the encounter. | Morrow Dec ¶ 8, Ex. 2. |
| 23 | Lt. Morrow discussed the student's complaint and his review of the video with Chief McDermed, who instructed him to open an internal investigation into the incident. Chief McDermed did not instruct Lt. Morrow to open an investigation to retaliate against Plaintiff. | Morrow Dec ¶ 8; McDermed Dec ¶ 5. |
| 24 | Within a day or two of instructing Lt. Morrow to open the internal investigation, Chief McDermed became aware of another stop Plaintiff made, this one on April 1, 2012, that caused her to have concerns about Plaintiff's performance and his potentially illegal stops. Chief McDermed instructed Lt. Morrow to include that second encounter in his investigation. She did not include these issues in Lt. Morrow's investigation to retaliate against Plaintiff. | McDermed Dec ¶¶ 7, 5 Morrow Dec ¶ 9. |

Page 5 –    **DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

| NO. | STATEMENT OF UNCONTROVERTED FACTS | EVIDENCE |
|---|---|---|
| 25 | On June 18, 2012, Lt. Morrow interviewed Plaintiff regarding the two incidents that, at that time, were at issue in the internal affairs investigation.  One of Plaintiff's union stewards, Donna Laue, attended that interview with Plaintiff.  The meeting was intended to be recorded, but due to a technical malfunction, only the first half was.  A memorandum recounting the second half of the interview was prepared by Lt. Morrow and reviewed by Plaintiff.  After Plaintiff's review of the memorandum, he requested that Lt. Morrow add the statement that "I [Plaintiff] also mentioned that I had been up for 35 hours at the time of the statement….My recall could have been impacted from this sleep deprivation." | Morrow Dec ¶ 10, Exs 4 and 5. |
| 26 | Lt. Morrow concluded his investigation on July 27, 2012.  No one, including Chief McDermed, influenced the outcome in anyway. | Morrow Dec ¶ 11. |
| 27 | Per UOPD policy, Lt. Morrow's report was sent to Capt. Deshpande for his review.  It was then sent to Chief McDermed for her review.  Neither Capt. Deshpande nor Chief McDermed made edits or revisions to Lt. Morrow's report. | McDermed Dec ¶ 7. |
| 28 | Lt. Morrow sustained the allegations that: Plaintiff had conducted an illegal stop on April 1, 2012, when he pulled over a person for an offense he did not have authority to cite for; and, that Plaintiff failed to advise to contacts in both of the reviewed incidents that he was recording the conversation.  Lt. Morrow also held as "pending" the allegation that Plaintiff could not competently and safely perform his job functions.  Lt. Morrow held his conclusion on this issue in anticipation of the results of a fitness for duty examination. | Morrow Dec ¶ 12. |
| 29 | Around May 14, 2012, Chief McDermed was informed that Plaintiff had transported a subject with a loaded gun in the back of his patrol car.  The subject was unstable and unknown to Plaintiff.  Chief McDermed was extremely alarmed at Plaintiff's lack of judgment and the safety risk he created with this conduct. | McDermed Dec ¶ 8.<br><br>McDermed Depo 176:21-25; 177:1-7. |

| NO. | STATEMENT OF UNCONTROVERTED FACTS | EVIDENCE |
|---|---|---|
| 30 | Around that same time period, Chief McDermed had been informed by her command staff of another concerning incident when Plaintiff offered to give a homeless man cans from his car in exchange for his identification, and an incident when Plaintiff had difficulty properly running a subject for warrants.  Chief McDermed was also informed that Plaintiff had failed to notify the subjects that they were being recorded in both of the incidents Lt. Morrow was investigating. | McDermed Dec ¶ 8. |
| 31 | Chief McDermed asked Lt. Lebrecht to conduct a performance review of video recordings from Plaintiff's encounters to see if his failure to notify of recording was a regular oversight that we needed to address with Plaintiff as well. | McDermed Dec ¶ 8. |
| 32 | On May 18, 2012, the same day that Plaintiff received the reprimand, Chief McDermed issued a memo to Plaintiff "temporarily reassign[ing] [him] to parking enforcement related duties . . . . based upon concern of [his] ability to safely and lawfully perform the duties of a Public Safety Officer." | McDermed Dec ¶ 11, Ex 2. |
| 33 | Chief McDermed's decision to temporarily reassign Plaintiff to non-enforcement duties "was because of that armed woman in the back seat of his car – that was like this has to happen, because I was concerned for his safety and my officer's safety and the University." | McDermed Depo 176:21-25; 177:1-7. |
| 34 | Plaintiff acknowledges that he did, in fact, transport a distraught woman in the back of his public safety car while she was carrying a loaded gun.  Plaintiff acknowledges that the female offered to remove her gun before the transport, but that he told her to leave it on. | Cleavenger Depo, 108:21-25; 110:24-25; 111:1-11. |
| 35 | Sgt. Cameron did not know the woman was carrying a loaded gun when he approved Plaintiff's request to transport her to a hotel. | Cameron Depo 155:21-25; 156:1 |
| 36 | Officer Zach Hermens was present for part of the gun transport incident and confirms that it was not until after Plaintiff transported the woman that Plaintiff reported to Sgt. Cameron and Hermens that the woman had been armed in his car. | Hermens Depo 128:2-9 |
| 37 | Then-Chief Doug Tripp was at the police academy when the foregoing incidents occurred.  Chief McDermed did not think she could wait for his return before taking actions to ensure Plaintiff's safety. | McDermed Dec ¶ 9. |

Page 7 –   **DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

| NO. | STATEMENT OF UNCONTROVERTED FACTS | EVIDENCE |
|---|---|---|
| 38 | On May 14, 2012, Chief McDermed sent an email to Chief Tripp, expressing her concerns about Plaintiff and asking his counsel.  She wrote:<br><br>    "I am seriously considering pulling JC [Plaintiff] from field duty due to his extreme disregard for officer safety and unlawful stops.  This in (sic) information comes [from] reviewing his recorder and video and contacting people he contacts. A couple of nights ago he was flagged down in the DPS East p/lot by a female who was frightened that her boyfriend was stalking her.  She was carrying a gun at her side (had a concealed weapons permit).  Cleavenger gave her a ride to a downtown hotel, allowing him to remain armed in his backseat.  He did get permission for the transport from Cameron, but failed to tell him she was armed.<br><br>    About the same day, Cleavenger observed a guy at the recycling and tells him he thinks he saw him canning [illegally collecting cans].  He tells the guy he will make him a deal, show him his ID and he will give him the cans from his trunk! The guy declined and then Cleavenger demanded the ID but said he would only get a warning.  He runs the guy – no record, releases him.  Hermens contacts JC [Plaintiff] later and said he checked the guy JC ran and there should have been a long record.  JC wrote his name wrong.  JC hunts for the guy and detains/run him again (no warrant) and while explaining, he lets the guy walk along behind him."<br><br>Chief Tripp responded that same evening, stating:<br><br>    "I see this as unlawful in nature and gross negligence. If true and supported by facts, I really believe he needs to be released from employment. …. Please take a firm stance on this situation, you have my support."<br><br>Chief McDermed immediately responded, saying:<br><br>    "Copy. Thanks.  I truly believe we need to remove him [from field duty] as soon as possible.  We will make sure to document everything (there is a running log) and work swiftly. I have not ever heard of such bizarre behavior by a uniformed officer." | McDermed Dec ¶ 9, Ex 1. |

| No. | Statement of Uncontroverted Facts | Evidence |
|---|---|---|
| 39 | Defendant McDermed consulted with her lieutenants and Associate Human Resources Director Randy Wardlow, and made the decision to reassign Plaintiff to non-enforcement duties pending the outcome of Lt. Morrow's internal affairs investigation.  That reassignment was effective upon receipt by Plaintiff of the May 18, 2012 Notice of Reassignment letter. Chief McDermed did not reassign Plaintiff as a means to retaliate against him. | McDermed Dec ¶ 10, Ex 2. |
| 40 | Plaintiff obtained union representation in connection with his grievance of the May 18 Letter of Reprimand. | Cleavenger Depo 51:12-19. |
| 41 | While the grievance process was proceeding, Chief McDermed continued to struggle with her concerns regarding Plaintiff's ability to safely perform the job of a public safety officer.  Chief McDermed ultimately concluded that Plaintiff should be given the opportunity to improve his officer safety skills before any final decisions were made.  She instructed Lt. Lebrecht to prepare a re-training plan that would give him the additional time needed to develop his safety and judgment skills, but would also keep him and others safe by requiring that Plaintiff work with another officer at all times. | McDermed Dec ¶ 14, Ex 3. |
| 42 | Chief McDermed instructed Wardlow to present the retraining offer to Plaintiff and his union stewards. | McDermed Dec ¶ 14. |
| 43 | On September 10, 2012 Plaintiff rejected that offer. | McDermed Dec ¶ 14. Coit Dec, Ex 1. |
| 44 | During September 2012, Chief McDermed was informed that Plaintiff was calling out enforcement related information over the UOPD radio that was both inaccurate and causing a diversion of resources. | McDermed Dec ¶ 15. |
| 45 | Chief McDermed met with her command staff to discuss the issue of Plaintiff continuing to insert himself in enforcement activities after he had been reassigned to parking.  It was determined that the conduct did not rise to the level of an internal affairs investigation, but rather should be reviewed as a performance issue. | McDermed Dec ¶ 16. |
| 46 | Chief McDermed instructed Lt. Bechdolt to conduct this performance review of the seemingly improper radio call-outs. His investigation was concluded with a reporting memorandum on September 25, 2012. | McDermed Dec ¶ 16 Coit Dec Ex. 2. |

Page 9 –    **DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

| NO. | STATEMENT OF UNCONTROVERTED FACTS | EVIDENCE |
|---|---|---|
| 47 | Because of the disruption Plaintiff was continuing to have on the functioning of the department despite him being instructed not to engage in enforcement activities, Chief McDermed made the decision to place Plaintiff on paid administrative leave pending the outcome of the supplemental investigation. She did not place Plaintiff on paid administrative leave to retaliate against him. | McDermed Dec ¶ 16. |
| 48 | On September 20, 2012, Lt. Morrow and Wardlow met with Plaintiff to inform him that he was being suspended with pay pending the supplemental investigation into the recent enforcement related radio call-outs.  Wardlow gave written notice of the suspension in a letter dated September 26, 2012. | McDermed Dec ¶ 17, Ex. 5. |
| 49 | In a letter dated October 1, 2012, Linda King, UO Associate Vice President for Human Resources, and Chief McDermed notified Plaintiff that he was being suspended without pay and that dismissal was recommended by Chief McDermed based on ongoing performance problems. | McDermed Dec ¶ 18, Ex. 6. |
| 50 | Plaintiff's pre-dismissal hearing with Linda King took place on October 12, 2012. | Complaint ¶ 93. |
| 51 | Ms. King terminated Plaintiff's employment in a letter dated October 25, 2012. | McDermed Dec ¶ 20, Ex. 7. |
| 52 | Plaintiff and his union stewards grieved both his written reprimand and his termination.  Both were denied by Oregon University System employee Brian Caufield at Step 3. | Complaint ¶ 113. |
| 53 | Plaintiff appealed the grievances to arbitration. | Complaint ¶ 119. |
| 54 | The arbitration was held over a period of three days in late 2013.  Plaintiff was represented by attorney Marc Stefan. | Complaint ¶ 119; Coit Dec ¶ 6. |
| 55 | On February 24, 2014, the arbitrator issued his decision denying Plaintiff's grievance of his written reprimand, and upholding the grievance of his termination.  Rather than termination, the arbitrator imposed a second written reprimand and a three day unpaid suspension for the conduct at issue in Lt. Morrow's internal affairs investigation.  The arbitrator ordered Plaintiff reinstated to his position as a public safety officer and awarded him back pay. | Complaint ¶ 119; Coit Dec¶ 5, Ex. 5. |

Page 10 –  **DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

| No. | STATEMENT OF UNCONTROVERTED FACTS | EVIDENCE |
|---|---|---|
| 56 | After receipt of the arbitration decision, the undersigned and Attorney Stefan discussed various settlement options.  When it became apparent that a global settlement of the arbitration award and this lawsuit was not feasible, the parties decided to simply comply with the arbitration award and defend this lawsuit. | Coit Dec ¶ 6. |
| 57 | On April 7, 2014, the undersigned wrote to Attorney Stefan:<br><br>"Thank you for forwarding Mr. Cleavenger's draft settlement proposals to me.  The first proposal does not appear to involve any sort of compromise, but rather seems to be Mr. Cleavenger's interpretation of the arbitration award, adding to it an extra two weeks to give notice to his current employer.  The second, global settlement proposal is simply far beyond any sort of numbers the UO will consider, making further discussion seemingly futile.<br><br>Therefore, we will go ahead and resolve the arbitration award and defend against the lawsuit.<br><br><u>Mr. Cleavenger can give a two week notice as requested [to his employer, the federal district court], but is expected to report to the UOPD, specifically to Chief McDermed, on April 21, 2014, at 9:00 a.m.</u>"<br><br>Attorney Stefan then asked UO to confirm that Plaintiff would be returning to his prior position as a public safety officer. The undersigned confirmed, writing on April 17, 2014:<br><br>"Mr. Cleavenger will be returned to his prior position of public safety officer. His duties in the short term will be limited until the Chief has the opportunity to analyze what additional training is needed and available and what limitations, if any, the sustained disciplines have on Mr. Cleavenger's ability to fully perform his job duties. He will not lose pay, rank, benefits, seniority, etc. during this period.<br><br><u>Please let us know if he will be reporting for work Monday morning [April 21, 2014]</u>." | Coit Dec ¶¶ 6, 7, Exs. 6, 7 (underlining added). |
| 58 | Prior to April 21, 2012, Attorney Stefan informed the undersigned by telephone that Plaintiff had decided not to return to work at UOPD, but rather would resign from UOPD and continue in his employment as a federal law clerk. Plaintiff never reported for work at UOPD after the arbitrator ordered his reinstatement. | Coit Dec ¶ 8. |

Page 11 – **DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

| No. | STATEMENT OF UNCONTROVERTED FACTS | EVIDENCE |
|---|---|---|
| 59 | On April 21, 2012 Chief McDermed was made aware of Plaintiff's decision to resign and not reapply for work at UOPD. | McDermed Dec ¶ 23. |
| 60 | Plaintiff resigned his position with UOPD, effective the day he began working for the federal government, July 13, 2013. His decision to resign was made well before June 17, 2014. | Coit Dec ¶ 9, Exs. 4, 8. |
| 61 | In early 2014, the Lane County District Attorney Alex Gardner was part of a team that was tasked with putting together a "Best Practices" model to serve as a guide for Oregon law enforcement to follow when dealing with possible *Brady* material.[3] In an effort to get the message out about *Brady* reporting obligations, Gardner was speaking with chiefs of police throughout the state to "get out to law enforcement agencies is that it is incumbent upon the agency to disclose information about the officer." | Deposition of Alex Gardner ("Gardner Depo"), attached to Coit Dec as Ex. 17, 17:17-20. |
| 62 | Gardner described his message to police chiefs as asking law enforcement agencies to provide as much information as possible regarding *Brady* information. "We tell them that we have an obligation -- an ethical obligation to demand it, basically, and I typically also say that justice requires it. And so I think law enforcement agencies understand that we're saying they have to produce it. . . . [L]aw enforcement leadership understands if they have this information they need to get it to the DA's office." | Gardner Depo 12:16-18; 85:6-17. |
| 63 | Chief McDermed heard Gardner speak at a seminar in early 2014 about the development of the *Brady* best practices and about police departments' responsibilities to supply information to the district attorneys under *Brady*. Later that same year, Patty Perlow, Chief Deputy District Attorney of Lane County spoke at a Chiefs of Police meeting about the importance of submitting information to their district attorneys regarding a possible issue of credibility involving police officers. Chief McDermed was at that meeting and was aware that Plaintiff continued to work as a police officer for neighboring jurisdictions. | McDermed Depo, 196:1-15; 199:7-17; McDermed Dec ¶¶ 24, 25. |

---

[3] *Brady v. Maryland*, 373 U.S. 83 (1963), holds that a district attorney has an affirmative obligation to provide information to a criminal defendant that could improve his or her defense. This includes any information that calls into question the veracity or credibility of an involved law enforcement officer.

Page 12 –  **DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

| NO. | STATEMENT OF UNCONTROVERTED FACTS | EVIDENCE |
|---|---|---|
| 64 | Also in 2014, UOPD Capt. Pete Deshpande had a conversation with Gardner to get a better understanding of whether the information they had regarding Plaintiff's credibility implicated *Brady* reporting obligations.  Gardner recalled speaking with Capt. Deshpande about his concerns regarding Plaintiff and telling Capt. Deshpande to give him the actual documents so he could assess whether *Brady* was implicated. Gardner recalled telling Deshpande that he needed "the meat of the investigation.  I'm not going to, you know, sort of forecast what my position might be.  I need to see it.  And he [Deshpande] basically said, 'We'll get it to you.'" | Gardner Depo 39:11-25; 40:1-25. |
| 65 | In June 2014, Chief McDermed believed she had a legal obligation to provide information to the district attorney's office about Plaintiff's credibility issues.  McDermed was aware at that time that Plaintiff had decided to resign from his employment with UOPD and not to reapply in the future. | McDermed Depo 205:1-15; McDermed Dec ¶¶ 23, 25, 26. |
| 66 | On June 17, 2014, two months after Plaintiff had made the decision to resign from employment with UOPD, Chief McDermed instructed UOPD employees to submit to the Lane County District Attorney information that could reflect on Plaintiff's veracity. | McDermed Depo 199:7-17; 203:23-25; Vol 3: 327:3-4;  McDermed Dec ¶ 26. |
| 67 | Lt. Lebrecht voiced concern to Chief McDermed about the timing of the submission given the pending lawsuit. He stated Plaintiff would claim the action was retaliatory.  Chief McDermed did not believe this concern relieved her of her legal obligation to provide the information to the District Attorney. | McDermed Dec ¶ 26; Lebrecht Dec ¶ 13. |
| 68 | Gardner believes the information provided by UOPD may need to be disclosed to a criminal defendant.  Gardner has not "come to a final determination as to whether [Plaintiff] is or isn't credible."  Gardner has been in direct contact with Plaintiff, invited Plaintiff to submit any information he feels is relevant to his analysis, and to meet with him at any time. Plaintiff has declined having a meeting with Gardner until the conclusion of this litigation. | Gardner Depo 6:9-22; 26:12-13; 27:3-21. |
| 69 | Plaintiff was not aware that UOPD was compiling a disclosure to make to the district attorney or that the disclosure of information had been made until a month after it had been submitted. | Complaint ¶ 124. |

Page 13 –  **DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

| No. | Statement of Uncontroverted Facts | Evidence |
|---|---|---|
| 70 | Plaintiff currently works as a judicial law clerk for Judge Michael McShane in the U.S. District Court for the District of Oregon. He is also currently licensed to practice law in the state of Washington. Plaintiff also currently works as a reserve police officer on solo status for the City of Coburg Police Department. | Coit Dec ¶¶ 18, 19, Ex. 11; Cleavenger Depo Vol. 3, 32:9-24. |
| 71 | In 2011 Plaintiff and other public safety officers asked Lt. Lebrecht to stop discussing politics in the workplace. | Cleavenger Depo 54:22-25; 55:1-17.<br><br>Defendants dispute this occurred. For purposes of summary judgment, they assume it to be true. |
| 72 | Plaintiff made the remaining complaints at issue in his First Amendment claims during a meeting with Chief McDermed on August 13, 2012, a follow-up grievance meeting with UO Assistant Vice President of Financial Affairs Brian Smith on October 2, 2012 and with UO Associate Vice President of Human Resources Linda King in his pre-dismissal hearing on October 12, 2012. | Complaint ¶ 115.<br><br>Cleavenger Depo 42:12-25; 43:1-13; 172:2-21.<br><br>Defendants dispute the alleged content of August 13, 2012 meeting with Chief McDermed. However, for specific arguments in support of summary judgment, they assume Plaintiff's version to be true. For other arguments, as set forth in the Motion, Defendants specifically deny the alleged content of this meeting. |

Page 14 – **DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

| NO. | STATEMENT OF UNCONTROVERTED FACTS | EVIDENCE |
|---|---|---|
| 73 | During one or more of the meetings referred to in paragraph 72, Plaintiff complained about: wasting time during work talking about politics, a list and watching football tapes; how officers referred to the Occupy Eugene movement during a briefing; that Lt. Lebrecht and Sgt. Cameron harassed and retaliated against him; that UOPD did not follow state law, the union contract or its own policies when investigating his conduct and when conducting his written reprimand grievance; that UO did not provide him all the documents he was entitled to receive under the union contract in connection with his grievance; that he was temporarily reassigned; that he was instructed not to call out misdemeanor crimes over the radio while assigned to non-enforcement duty; that he received disparate treatment when he received his letters of clarification and reprimand, his temporary reassignment and his performance evaluation. | Complaint ¶ 143; Cleavenger Depo 43-46; 74:11-20; 113:23-25; 114:1-3,22-25; 115:1-5, 22-25; 116, 121:13-21; 139:24-25; 140:1-6; 154:17-25; 155:1-4; 156:21-25; 157; 168:23-25; 169:1-8; 182:20-25; 183:1-7; 184:1-8; 185-191; 192:18-25; 193:4-11; Vol. 3, 111:21-25. |
| 74 | In 2008 Plaintiff was a law student at UO. While there, he was part of the student government and part of his duties included researching Tasers and speaking out on behalf of himself and the student body against the UODPS arming itself with Tasers. Plaintiff was not engaged in this speech in 2011 or 2012. | Complaint ¶ 143(h); Cleavenger Depo 48; 168:19-22. |
| 75 | Plaintiff received the following adverse employment actions while an employee of UOPD: November 2011 Letter of Clarification; May 18, 2012 Letter of Reprimand; May 18 2012 Reassignment; investigations and reviews of his performance. | Cleavenger Depo 193:15-25; 194:1-2; 196:2-18. |

DATED this 11th day of June, 2015.

HARRANG LONG GARY RUDNICK P.C.

By:    s/ Andrea D. Coit
          Andrea D. Coit, OSB #002640
          Jonathan M. Hood, OSB #133872
          Attorneys for Defendants

Page 15 –  **DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS IN
              SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## CERTIFICATE OF SERVICE

I certify that on June 11, 2015, I served or caused to be served a true and complete copy of the foregoing **DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** on the party or parties listed below as follows:

    ☑    Via CM / ECF Filing

    ☐    Via First Class Mail, Postage Prepaid

    ☐    Via Email

    ☐    Via Personal Delivery

Mark McDougal
Gregory Kafoury
Jason Kafoury
Grand Stable & Carriage Building
411 SW Second Avenue, Suite 200
Portland, OR 97204
  Attorneys for Plaintiff

HARRANG LONG GARY RUDNICK P.C.

By: _ s/ Andrea D. Coit _____
    Andrea D. Coit, OSB #002640
    Jonathan M. Hood, OSB #133872
    Attorneys for Defendants

00720367.v1

**CERTIFICATE OF SERVICE**