**Andrea D. Coit, OSB #002640**
**andrea.coit@harrang.com**
**Jonathan M. Hood, OSB #133872**
**jonathan.hood@harrang.com**
HARRANG LONG GARY RUDNICK P.C.
360 East 10th Avenue, Suite 300
Eugene, OR 97401-3273
Telephone:     541-485-0220
Facsimile:     541-686-6564
Attorney for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **JAMES M. CLEAVENGER,** | Case No. 6:13-cv-01908-DOC |
| Plaintiff, | **DEFENDANTS' ANSWER TO PLAINTIFF'S THIRD AMENDED COMPLAINT** |
| vs. | |
| **UNIVERSITY OF OREGON (an Agency and Instrumentality of the State of Oregon), et al.,** | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Defendant University of Oregon has been dismissed from this lawsuit by Order of the Court dated May 28, 2015, Document #77. It does not appear herein or otherwise respond to Plaintiff's allegations contained in the Third Amended Complaint.

Defendants Carolyn McDermed, Brandon Lebrecht, Scott Cameron, and Brian Caufield (Defendants) appear and respond to Plaintiff's Third Amended Complaint (Complaint) as follows:

1.

Plaintiff's "Preliminary Statement" is unnecessary and inaccurate. To the extent it calls for

a response, Defendants admit Plaintiff brings a claim under 42 U.S.C. § 1983 against the Defendants alleging violations of his First and Fourteenth Amendment rights. Defendants deny Plaintiff brings claims in this lawsuit under state law because those claims are barred by the Eleventh Amendment and were dismissed on May 28, 2015. Defendants deny that Plaintiff is bringing a claim under the Fifth Amendment for Due Process violation because no such claim exists under the facts of this case. Defendants deny all allegations Plaintiff claims to make in this case. Defendants deny that Plaintiff is bringing claims for injunctive and declaratory relief because those claims were dismissed by the Court's May 28, 2015 Order. Defendants admit Plaintiff seeks monetary damages but specifically deny he is entitled to any.

2.

In response to paragraph 1, Defendants admit that the court has jurisdiction over Plaintiff's First and Second Claims for Relief under 28 U.S.C. § 1331. Defendants otherwise deny paragraph 1.

3.

Defendants admit paragraph 2.

4.

In response to paragraph 4, Defendants admit Plaintiff was a resident of Lane County, Oregon during the times relevant to this Complaint. Defendants deny that the year 2005 is a time period in any way relevant to this Complaint.

5.

Defendants admit paragraph 4.

6.

In response to paragraph 5, Defendants admit that University of Oregon ("UO") was, at all material times herein, a public body; admit that UO is a member of the Oregon University System established under ORS 352.002 until July 1, 2014; admit that UO was at all material times, and will be until July 1, 2014, a "public employer" within the meaning of ORS 659A.200(3); and

admit that, at all material times, Defendants Carolyn McDermed ("McDermed"), Brandon Lebrecht ("Lebrecht"), and Scott Cameron ("Cameron") were acting within the course and scope of their employment by the UO.  Defendants otherwise deny paragraph 5.

7.

In response to paragraph 6, Defendants admit that, at all material times, University of Oregon Police Department ("UOPD") was a department of UO; that Defendants McDermed, Lebrecht and Cameron were acting within the course and scope of their employment with UO; admit that UOPD was formerly known as the University of Oregon Department of Public Safety (UODPS); deny that the UODPS became UOPD by virtue of a name change; and admit that Plaintiff uses the current name "UOPD" in his Third Amended Complaint.  Defendants otherwise deny paragraph 6.

8.

In response to paragraph 7, Defendants admit that, at all material times, McDermed was Acting Chief, Interim Chief and Chief of UOPD, Lebrecht was a lieutenant, and Cameron was a sergeant in UOPD. Defendants McDermed, Lebrecht and Cameron were at all material times acting within the scope of their employment for the UO.  Defendants admit that Plaintiff alleges that he is suing Defendants in their individual and official capacities.  The remaining allegations are denied.

9.

In response to paragraph 8, Defendants admit that, at all material times, Linda King was the Associate Vice-President for Human Resources for the UO until she retired, and that Randy Wardlow was the Employee and Labor Relations Manager for the UO until he resigned.

10.

In response to paragraph 9, Defendants admit that Defendant Brian Caufield ("Caufield") was at all material times Associate General Counsel for Labor & Employment for the Oregon University System and was acting within the scope of his employment.

11.

Defendants admit paragraph 10.

12.

In response to paragraph 11, Defendants deny this court has jurisdiction over Plaintiff's state law claims due to Eleventh Amendment Immunity. Defendants admit Plaintiff's state law claims arise out of the same nucleus of operative fact as his federal claims.

13.

Defendants admit paragraph 12.

14.

Defendants admit paragraph 13 but specifically allege Plaintiff's duties as a Traffic Petitions Officer was limited to reviewed appeals of traffic tickets and that the skills and judgment required for that position are distinctly different than the skills and judgment required for a public safety officer.

15.

In response to paragraph 14, Defendants deny the allegation that a reserve police officer for Junction County has the same authority and responsibility as a regular police officer. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations of paragraph 14, and therefore deny those other allegations.

16.

In response to paragraph 15, Defendants deny that Junction City Police Department transferred Plaintiff to the Coburg Police Department; deny that a reserve police officer has full police authority; and deny the allegation "etc." as being a meaningless allegation. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations of paragraph 15, and therefore deny those other allegations.

/ / / /

17.

In response to paragraph 16, Defendants deny that Plaintiff has excelled in law enforcement; deny that he was an extremely productive public safety officer for UOPD; deny Plaintiff has received several internal and public commendations and recommendations; deny that the Letter of Recommendation and Support signed by Junction City personnel was a public or internal commendation because Plaintiff wrote that letter and asked his co-workers to sign it. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations of paragraph 16, and therefore deny those other allegations.

18.

Defendants deny paragraph 17.

19.

In response to paragraph 18, Defendants deny that Plaintiff began a six month FTEP program in March 2011; deny that Lt. Bechdolt was Plaintiff's direct supervisor during the entirety of the specified period; deny that Chris Phillips was Plaintiff's secondary field training officer but admit he supervised Plaintiff in that role on one or two occasions; deny Plaintiff received very positive Daily Observation Reports ("DOR") during his FTEP process; deny that the End of Phase Evaluations were very positive; deny that Officer Drake reconfirmed anything in an email to Plaintiff on April 2, 2013; and deny that other officers will confirm that Plaintiff was well liked and highly competent. The remaining allegations of paragraph 18 are admitted.

20.

In response to paragraph 19, Defendants admit Plaintiff's Trial Period Evaluation contained some positive comments written by Lebrecht; admit Plaintiff received scores of "highly competent" or "competent" in six categories but affirmatively allege there were more than seven rated categories in the Evaluation; deny that Plaintiff did not receive any scores within the "competent" range in the referenced Annual Performance Evaluation and allege only five of eleven categories had "competent" as a selectable option; admit Lebrecht issued Plaintiff

a letter of reprimand; admit Plaintiff was under investigation; and admit that there was some overlap in time covered by the Trial Period Evaluation and the referenced Annual Performance Evaluation. Defendants affirmatively allege Plaintiff was never demoted while employed by Defendants and Lebrecht never instituted an investigation, special or otherwise, into Plaintiff's conduct. The remaining allegations of paragraph 19 are denied.

21.

In response to paragraph 20, Defendants admit the drafting of Plaintiff's 2012 performance evaluation was started around April 2012. Defendants deny the drafts of Plaintiff's performance evaluation formally gave him any scores, but rather Plaintiff received scores in the issued performance evaluation he received on May 31, 2012. The remaining allegations of paragraph 20 are denied.

22.

In response to paragraph 21, Defendants admit Plaintiff commenced full-time employment in March 2011 on the graveyard shift under Lebrecht's command; admit that Plaintiff, Abbott, Drake, Lillengreen, LeRoy, and Bechdolt were on the referenced shift along with other officers Plaintiff has not identified. The remaining allegations of paragraph 21 are denied.

23.

In response to paragraph 22, Defendants deny the prior or current existence of a list that was at any time titled or referred to by anyone other than Plaintiff in this lawsuit as a "bowl of dicks" list; deny that the list of people, places, things, and activities Officer Leroy kept on his cell phone ever contained the following entries: US District Court Judge Ann Aiken, civil rights activist Al Sharpton, Rev. Jesse Jackson, Civil Liberties Defense Center lawyer Lauren Reagan, Eugene Mayor Kitty Piercy, Al Gore, 2010/2011 ASUO Student Body President Amelie Rousseau, UO Housing Staff and RAs, defense lawyers, dirty hippies, or "etc." and allege Plaintiff's statement in his Complaint that it did contain such entries is pure fabrication; deny

that Plaintiff felt Officer Leroy's conduct in keeping a list on his personal cell phone of people, places, things and activities was reprehensible or an act of waste; deny Plaintiff in any opposed Officer Leroy's making the list and specifically allege Plaintiff has admitted in deposition that he suggested additional entries to Officer Leroy for his list; deny Officer Leroy ever sent to Plaintiff a text message "acknowledging the existence of a bowl of dicks list"; deny any officer will confirm the existence of a list titled or referred to by anyone other than Plaintiff in this lawsuit as a bowl of dicks list. The remaining allegations of paragraph 22 are admitted.

24.

In response to paragraph 23, Defendants admit Plaintiff did not complain about the practice of a list on Officer Leroy's cell phone; admit Plaintiff could be terminated at will within the constraints of applicable laws during his trial period; and admit Smith left UO employment. The remaining allegations of paragraph 23 are denied.

25.

In response to paragraph 24, Defendants admit Cameron became Plaintiff's direct supervisor. The remaining allegations of paragraph 24 are denied.

26.

Defendants deny paragraphs 25, 26 and 27.

27.

In response to paragraph 28, Defendants admit Plaintiff, like all UOPD applicants, was required to disclose his prior employment history in the context of his application process; and admit Lebrecht sporadically engaged in banter of a political nature with another UOPD employee, not Plaintiff. The remaining allegations of paragraph 28 are denied.

28.

In response to paragraphs 29 and 30, Defendants deny that any statements made during a shift briefing are "public." The remaining allegations of direct quotations attributed to Lebrecht in paragraphs 29 and 30 are denied.

Page 7 –   **DEFENDANTS' ANSWER TO PLAINTIFF'S THIRD AMENDED COMPLAINT**

29.

In response to paragraph 31, Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations about what Plaintiff saw on a bulletin board, on Lebrecht's desk or what he took pictures of and therefore denies paragraph 31.

30.

In response to paragraph 32, Defendants deny Lebrecht oversaw the referenced briefing but admit another officer referred to the Occupy Eugene camp as District 9. Defendants have no idea who Plaintiff is quoting with the allegations "dirty hippies," "dirtbags," and "lazy democrats who don't want to get a job!" and therefore deny those allegations. Defendants admit Plaintiff and Lebrecht spoke after the referenced briefing and Plaintiff denied being upset by his fellow officers referring to the Occupy camp as District 9; admit Plaintiff stated to Lebrecht that he was only upset because the assignment he was given for the shift was boring; and admit Plaintiff raised his voice at Lebrecht when complaining about his assignment. The remaining allegations of paragraph 32 are denied

31.

In response to paragraph 33, Defendants admit that Lebrecht presented Plaintiff with a Letter of Clarification in his office on November 4, 2011; admit this letter discussed instances of unsafe conduct Plaintiff engaged in and identified instances in which Plaintiff continued to violate policy; admit Plaintiff asked to makes notes on the Letter of Clarification regarding his responses to the statements contained therein; admit Lebrecht made some of the changes Plaintiff requested to the Letter of Clarification; admit the revised Letter of Clarification was issued to Plaintiff on November 18, 2011; and admit this is the only Letter of Clarification Lebrecht issued to Plaintiff. The remaining allegations of paragraph 33 are denied.

32.

In response to paragraph 34, Defendants admit Plaintiff affirmatively states he violated the written grooming policy on more than one occasion; admit Plaintiff was told he could receive

an exemption from the grooming requirement with a doctor's note confirming his claim that he had sensitive skin but deny Plaintiff ever provided Defendants with such a note. The remaining allegations of paragraph 34 are denied.

33.

In response to paragraph 35, Defendants do not know in what context Plaintiff claims he was "accused" of the conduct set forth in paragraph 35 or the context in which he claims he set forth what "his explanation was" for his conduct, and therefore deny the allegations of paragraph 35.

34.

In response to paragraph 36, Defendants admit Plaintiff made additional transgressions, including parading around UO campus with a pair of angel wings over his uniform and cans of beer in his hands while on duty during an ESPN Game Day event; admit some of the additional transgressions were noted in the Performance Review prepared by Defendant Cameron. Defendants affirmatively allege Plaintiff had no right to appeal the November 18, 2011 Letter of Clarification, but that Plaintiff was allowed to request changes to the Letter, which were made by Lebrecht prior to the revised version being issued on November 18, 2011. The remaining allegations of paragraph 36 are denied.

35.

In response to paragraph 37, Defendants admit Plaintiff was placed on weekly evaluations for a period of time to track his improvement, if any, in the areas of concern noted in the November 18, 2011 Letter of Clarification. Defendants deny Lebrecht created this evaluation tool. Defendants deny the remaining allegations of paragraph 37.

36.

In response to paragraph 38, Defendants admit that Lebrecht wrote in his memorandum on "Clarification of Expectations" that the weekly summaries would continue "until the end of the current 2011 shift rotation, which is approximately eight (8) to ten (10) weeks;" admit that

the last weekly summary ended December 17, 2011; and admit that the last weekly summary states in part as follows: "Officer Cleavenger's overall performance was at an acceptable level this week. * * * Cleavenger's overall performance continues to improve in all areas. I don't see it as necessary to continue weekly evaluations at this point as Officer Cleavenger immediately took it upon himself to quickly correct the points that were to be addressed. He is working at a level that is equal to that of his peers." Defendants admit the evaluation period did not last the entire time originally anticipated. The remaining allegations of paragraph 38 are denied.

37.

Paragraph 39 re-alleges the allegations set forth in paragraph 19. Defendants incorporate their responses to those allegations in their response to paragraph 39.

38.

In response to paragraph 40, Defendants admit Tripp and Morrow spoke at an all-employee meeting at the UO Alumni Center concerning the creation of UOPD. The remaining allegations of paragraph 40 are denied.

39.

In response to paragraph 41, Defendants allege numerous of the training requests Plaintiff claims he submitted were found in his employee box, presumably unsubmitted, after his termination; admit Plaintiff's training requests for dates after Plaintiff was terminated were not approved; admit Plaintiff made batch requests for multiple trainings, most of which were inapplicable to his duties as a public safety officer. For example, Plaintiff asked to attend the training "bullet proof mind" despite the fact public safety officers are not armed, and asked to attend the training "high risk traffic stops," despite the fact unarmed public safety officers are never permitted to make high risk traffic stops. Defendants admit some of the trainings were denied for various reasons, including budgetary and staffing concerns, the fact Plaintiff was the least senior public safety officer, and most of the trainings had no relevance to his job. The remaining allegations of paragraph 41 are denied.

40.

In response to paragraph 42, Defendants admit Plaintiff went outside of his chain of command and in direct violation of policy to inquire about training requests with Lt. Michael Morrow, the Professional Standards and Training Lieutenant. The remaining allegations of paragraph 42 are denied.

41.

In response to paragraph 43, Defendants admit Lt. Morrow responded to Plaintiff by email. Defendants assert the email speaks for itself and therefore deny Plaintiff's attempt to characterize its content.

42.

In response to paragraph 44, Defendants admit Plaintiff did not receive a formal notification of a decision regarding his training requests from Chief Tripp or McDermed and allege that he was not entitled to such a response from those two people. The remaining allegations are denied.

43.

In response to paragraph 45, Defendants admit Lt. Morrow asked Lebrecht to speak with Plaintiff about the proper chain of command for making training requests and that Lebrecht did so; deny Plaintiff's attempt to directly quote from a conversation he claims he had with Lebrecht. Defendants admit Lebrecht asked Plaintiff why he went outside the chain of command to inquire about his training requests; admit Plaintiff denied contacting Lt. Morrow about his training requests; admit Lt. Lebrecht offered to show Plaintiff the email Lt. Morrow sent to Lebrecht asking Lebrecht why Plaintiff was contacting Lt. Morrow about training requests; deny that Plaintiff's email to Lt. Morrow contained a complaint about Lebrecht. The remaining allegations of paragraph 45 are denied.

/ / / /

44.

In response to paragraph 46, Defendants deny Lebrecht ever threatened Plaintiff; deny Plaintiff's ruminations about hidden meanings in Lebrecht's alleged statements; deny the statements attributed to Lebrecht; deny that Plaintiff made an internal complaint to Lt. Morrow about Lebrecht in the February 2, 2012 email he sent to Lt. Morrow; deny that employee complaints made to Lt. Morrow must remain confidential; and deny that anything Lebrecht said or did violated any policy, contract, memo or state law.

45.

In response to paragraph 47, Defendants admit that Plaintiff was dispatched to respond to an active disturbance call at Spencer View Apartments on April 1, 2012; admit Plaintiff did not and does not appreciate the fact this call was remarkable or that his conduct was troublesome. Defendants deny the remaining allegations of paragraph 47.

46.

In response to paragraph 48, Defendants deny the date of the meeting as April 8, 2012 and affirmatively allege it was April 7, 2012.  Defendants admit that after being read his Garrity rights, Plaintiff was talked to about why he responded to the Spencer View call in the manner he did; admit Plaintiff was not shown dash cam video prior to or at this meeting because the footage was immaterial to the subject of the meeting until Plaintiff made accusations against a fellow officer, claiming that Plaintiff drove in front of the apartment in question when responding to the call because his fellow officer had parked in sight of the apartment.  The remaining allegations are denied.

47.

In response to paragraph 49, Defendants admit Plaintiff's access to UOPD videos was blocked at some point and that Plaintiff was not given a simultaneous explanation.  Defendants deny that Plaintiff was entitled to an explanation; and deny that the conduct violated any policy.

48.

In response to paragraph 50, Defendants deny ever making any statement to Plaintiff regarding whether or not he should obtain union representation. The remaining allegations are denied.

49.

In response to paragraph 51, Defendants admit that Cameron issued Plaintiff a written reprimand dated May 18, 2012. Defendants otherwise deny paragraph 51.

50.

Defendants admit paragraph 52.

51.

In response to paragraph 53, Defendants admit that McDermed wrote Plaintiff a memorandum dated May 18, 2012, stating that Plaintiff was reassigned to parking enforcement duties pending an investigation concerning his job performance and conduct. Defendants otherwise deny paragraph 53, specifically the allegations that Plaintiff was demoted, transferred to another department, or told he was under "special investigation."

52.

In response to paragraph 54, Defendants deny the existence of a "special investigation letter" and therefore cannot respond to the allegations, so they are denied.

53.

In response to paragraph 55, Defendants deny Plaintiff's purported direct quote of an alleged oral conversation; deny there was no discussion about the written reprimand; deny Plaintiff was told to sign the memo from McDermed; and admit Plaintiff was told to sign the written reprimand acknowledging receipt. Defendants otherwise deny paragraph 55.

54.

Defendants deny the hypothetical ponderings contained in paragraph 56. The remaining allegations are denied.

55.

In response to paragraph 57, Defendants admit that neither Cameron's written reprimand of May 18, 2012 nor McDermed's memorandum of the same date provided Plaintiff with contact information for SEIU stewards, and admit that such contact information was required on Cameron's written reprimand under Article 17, Section 2(C) of the 2011-2013 Collective Bargaining Agreement between the Oregon University System and SEIU Local 503, OPEU, and further allege that Plaintiff has exhausted all remedies in regard to challenging the substance or form of that reprimand through an arbitration that upheld the entirety of the reprimand. Defendants otherwise deny paragraph 57.

56.

In response to paragraph 58, Defendants admit Plaintiff told only Cameron that he intended to grieve the May 18, 2012 written reprimand.  The remaining allegations of paragraph 58 are denied.

57.

Defendants deny paragraph 59 as written.

58.

In response to paragraph 60, Defendants deny UO Department of Parking and Transportation became a separate department during the times material to this case; admit Plaintiff was instructed not to take enforcement actions while on parking assignment but deny that Plaintiff complied with that instruction; admit Plaintiff's responsibilities included writing parking tickets and impounding bikes; admit Plaintiff was instructed to drive vehicles used in exercising parking functions; admit Plaintiff was instructed not to drive enforcement vehicles but deny Plaintiff complied with that instruction; admit Plaintiff was assigned to work two baseball games and one football game while on parking assignment, further allege he was assigned to another officer during those assignments and was not allowed to work alone; admit Plaintiff was also allowed to wear a public safety uniform during those assignments so he appeared consistent

with his fellow workers; admit Plaintiff was allowed access to the keys needed to perform the tasks he was assigned. The remaining allegations of paragraph 60 are denied.

59.

In response to paragraph 61, Defendants admit Plaintiff was not allowed to take any enforcement action while serving as a parking enforcement officer but could report crimes in progress and further allege Plaintiff was later instructed not to call out over the UOPD radio (but could still report via other means) the alleged crimes he thought he was witnessing unless they were felonies. The remaining allegations of paragraph 61 are denied.

60.

In response to paragraph 62, Defendants deny Plaintiff's reassignment was unprecedented; deny Plaintiff was demoted; and deny Herb Horner was ever Chief. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations and therefore deny those allegations.

61.

Defendants deny paragraph 63.

62.

In response to paragraph 64, Defendants admit Plaintiff asked Cameron several times about the investigation into his conduct and admit that Cameron did not know the details of any investigations involving Plaintiff. The remaining allegations are denied.

63.

Defendants deny paragraph 65 and specifically allege that Cameron never lied to Plaintiff.

64.

Defendants deny paragraph 66.

////

////

65.

In response to paragraph 67, Defendants deny that any of the alleged conduct is in violation of UOPD policy; deny ORS 236.360 has ever applied to UOPD or its employees. The remaining allegations are admitted.

66.

In response to paragraph 68, Defendants admit Cameron told Plaintiff he would have preferred to handle the Spencer View incident as a training issue but deny Cameron told Plaintiff Wardlow made him write the Letter of Reprimand. The remaining allegations are denied.

67.

In response to paragraph 69, Defendants cannot answer an allegation regarding what Plaintiff's union steward thinks she may have told Plaintiff about what she thought Wardlow had told her in a meeting or respond to the purported direct quotes of a purported oral conversation that neither Plaintiff nor Defendants were present to witness. Defendants deny the allegations of paragraph 69.

68.

In response to paragraph 70, Defendants admit Plaintiff was first given a copy of his Performance Evaluation on May 31, 2012 by Lebrecht; admit Lebrecht was instructed to ask Plaintiff to sign the document to acknowledge receipt; admit Lebrecht did not discuss the evaluation with him because that was Cameron's responsibility but Cameron was not at work that day. Defendants admit Plaintiff did later have a three hour meeting with Cameron to discuss his evaluation; that Plaintiff requested numerous changes to the evaluation; that Plaintiff was given a revised version with his changes to review; that Plaintiff requested more changes; and that Plaintiff was given a second revised and final version of his evaluation by Cameron with numerous changes to the original version as had been requested by Plaintiff. Defendants deny the allegation that Lebrecht's signature on a specific location of a document somehow violates an unnamed UOPD policy. The remaining allegations of paragraph 70 are denied.

69.

Defendants deny paragraphs 71 and 72.

70.

In response to paragraph 73, Defendants deny that the Performance Review issued to Plaintiff on May 31, 2012 was a draft; admit Lt. Morrow informed Plaintiff of his internal affairs investigation on June 1, 2012. The remaining allegations are denied.

71.

In response to paragraph 74, Defendants admit Plaintiff was terminated in part due to the findings of Lt. Morrow's investigation. The remaining allegations are denied.

72.

In response to paragraph 75, Defendants deny that Plaintiff "announced" his intent to file a grievance, but rather mentioned that option to Cameron in a private discussion. The remaining allegations of paragraph 75 are denied.

73.

In response to paragraph 76, Defendants admit Plaintiff's union filed a grievance of the written reprimand on his behalf. The remaining allegations are denied.

74.

In response to paragraph 77, Defendants admit McDermed became Interim Chief in February 2012, competed for that position of Chief in a nationwide search and was selected and hired as Chief in July 2012. The remaining allegations are denied.

75.

In response to paragraph 78, Defendants deny that UOPD and UO HR ignored Plaintiff's union's request for a Step-1 hearing and allege that Wardlow and Lebrecht offered Plaintiff that hearing during a meeting Plaintiff attended with his steward. Defendants deny they were required to give Plaintiff a Step 1 hearing under the terms of the CBA. Defendants admit Plaintiff's union appealed his grievance of the written reprimand to Step 2.

76.

In response to paragraph 79, Defendants admit Plaintiff drove a vehicle appropriate for parking duties while accomplishing those tasks. The remaining allegations are denied.

77.

In response to paragraph 80, Defendants admit Plaintiff met with McDermed on August 13, 2012 but deny the meeting lasted for anywhere close to an hour; admit Plaintiff told McDermed the purpose of the meeting was to complain that Lt. Morrow and Lt. Lebrecht had stood in the parking lot outside of a training room where Plaintiff was seated and pointed and laughed at him for five minutes; admit McDermed likely took notes of this complaint; admit McDermed told Plaintiff she would look into it and allege that she did look into it and determined Lt. Morrow and Lebrecht could not have seen into the training room from where they were standing in the UOPD parking lot. Defendants deny Plaintiff made any additional complaints about any person; deny he complained about evidence of violations of federal law and allege that the conduct Plaintiff claims in this lawsuit was a violation of federal law had not yet even occurred on August 13, 2012. Defendants deny Plaintiff complained during his brief meeting with McDermed on August 13, 2012 about violations of state law, rules or regulations; deny he complained about acts of mismanagement; deny he complained about abuse of authority or a gross waste of funds; and deny that any such factual allegations are made in this Complaint. The remaining allegations are denied.

78.

In response to paragraph 81, Defendants admit they had grave concerns about Plaintiff's ability to safely perform the functions of a public safety officer and believed additional training was needed before he could be returned to his normal duties; admit they, through Wardlow, presented a retraining plan to Plaintiff on August 21, 2012 that had been carefully structured in such a way as to give Plaintiff the optimum chance of success; admit that in exchange for Defendants' agreement and efforts to provide this extensive additional training, Plaintiff was to

Page 18 – **DEFENDANTS' ANSWER TO PLAINTIFF'S THIRD AMENDED COMPLAINT**

dismiss his grievance of the warranted Letter of Reprimand. Defendants deny Plaintiff requested additional information from Wardlow about the re-training offer. Defendants deny that Plaintiff accepted Defendants' offer on September 10, 2012 and allege that Plaintiff actually responded to Wardlow, through his union: "After careful consideration and Union and legal consultation, James has made the following decision regarding your offer (referenced below): James will continue to comply with any 're-assignment' orders he is given. James is also willing to change his work schedule to include night work. However, James is not willing to relinquish his rights afforded to him by union contract. So if UODPS managers feel a re-training program is necessary, James will participate as ordered, but will not trade-away his rights as part of a 'deal' to resolve his current Grievance." Defendants deny the remaining allegations.

79.

Defendants deny paragraph 82.

80.

In response to paragraph 83, Defendants admit that despite being assigned to parking duties, Plaintiff continued to assert himself in enforcement related matters; admit that on September 7, 2012, Plaintiff was instructed to cease calling out enforcement related matters over the UOPD radio unless he was witnessing a felony in progress; deny Plaintiff was ever instructed that he could not report crimes via means other than the UOPD radio, including those falling under the Clery Act. The remaining allegations are denied.

81.

In response to paragraph 84, Defendants deny Plaintiff was ever demoted or told by Cameron that he was being promoted. The remaining allegations are admitted.

82.

In response to paragraph 85, Defendants admit Plaintiff was placed on paid administrative leave on September 20, 2012 and escorted off UOPD property by Lt. Morrow; admit this was apparently Plaintiff's birthday but deny any of the Defendants had actual

knowledge of this fact.  Defendants admit Plaintiff was not presented with a birthday card signed by all employees when he was escorted off UOPD property by Lt. Morrow. Defendants deny the remaining allegations of paragraph 85.

83.

In response to paragraph 86, Defendants deny that Morrow told Plaintiff he could not see the results of his internal affairs investigation because he was on administrative leave. Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation of when Plaintiff saw that investigation and therefore deny those allegations. Defendants otherwise deny paragraph 86.

84.

In response to paragraph 87, Defendants admit Plaintiff had the first of his Step 2 grievance meetings with Brian Smith on September 25, 2012; admit extensions to the meeting date occurred and allege some were at the request of Plaintiff and his union.  The remaining allegations of paragraph 87 are admitted.

85.

Defendants deny paragraphs 88, 89 and 90.

86.

In response to paragraph 91, Defendants admit that Brian Smith issued UO's Step 2 response to Plaintiff's grievance October 4, 2012, and that Smith left UO to begin a new job shortly thereafter. Defendants otherwise deny paragraph 91.

87.

In response to paragraph 92, Defendants admit that King and McDermed signed a letter to Plaintiff dated October 1, 2012, which stated that Plaintiff' termination had been recommended by McDermed and that Plaintiff was placed on disciplinary suspension without pay effective October 3, 2012.  Defendants admit the letter did not state the dates of the inaccurate call outs which were referred to in the letter.  Defendants otherwise deny paragraph 92.

88.

In response to paragraph 93, Defendants admit that Plaintiff and his union stewards attended a pre-dismissal hearing on October 12, 2012, and admit that King and Wardlow also attended. Defendants otherwise deny paragraph 93.

89.

In response to paragraph 94, Defendants admit that King wrote Plaintiff a letter dated October 25, 2012, that confirmed her previous communication with Plaintiff's union stewards that Plaintiff's employment was terminated.

90.

Defendants deny paragraphs 95 and 96.

91.

In response to paragraph 97, Defendants admit Plaintiff was afforded a Step 3 hearing on his grievance of the May 18, 2012 written reprimand on October 30, 2012; admit John Ahlen represented the Union and Ryan Hagemann represented OUS/UofO and that Plaintiff, through his representative, presented information in an attempt to explain why he disagreed with his supervisors' opinions that the Spencer View call was an active call for service and that Plaintiff's decision to drive in front of the residence announcing his presence was an unsafe act. The remaining allegations of paragraph 97 are denied.

92.

In response to paragraph 98, Defendants admit Plaintiff was no longer allowed to use his employee email account after he ceased to be an employee. The remaining allegations of paragraph 98 are denied.

93.

In response to paragraph 99, Defendants admit that Plaintiff filed two additional "Due Process" grievances at Step 3, both of which were denied by OUS; admit Plaintiff's remedy for those denials was arbitration; admit Plaintiff appealed those denials to arbitration; and admit

Plaintiff withdrew both of the "Due Process" grievances at arbitration and thereby waived his claims. The remaining allegations of paragraph 99 are denied.

94.

In response to paragraph 100, Defendants admit that, on November 12, 2012, Caufield granted an extension for the hearing on the grievance of Plaintiff's termination until December 10, 2012, and stated that Ryan Hagemann would hear that grievance. Defendants deny Hagemann asked the union for permission to perform his job. The remaining allegations are denied.

95.

In response to paragraph 101, Defendants deny Caufield prevented Hagemann, Caufield's boss, from doing anything; deny the union had standing to dictate who from OUS General Counsel's Officer would adjudicate Step 3 hearings; and deny the existence of the referenced grievance. The remaining allegations are denied.

96.

In response to paragraph 102, Defendants admit that, on February 7, 2013, John Ahlen wrote an email to Ryan Hagemann stating that SEIU appealed the grievance of the letter of reprimand to arbitration. Defendants further admit that on February 7, 2013, Ahlen wrote an email to Caufield stating "we would like to have an opportunity to read the step three adjudications for his grievances before discussing whether we feel that they should be bundled for arbitration"; admit Caufield's legal assistant was cc'd on the email but deny that has any relevance to this case. Defendants otherwise deny paragraph 102.

97.

In response to paragraph 103, Defendants do not know what Plaintiff is quoting from, and therefore deny the allegations.

/ / / /

98.

Paragraph 104 re-alleges the allegations set forth in paragraph 95. Defendants incorporate their response to paragraph 95 in response to paragraph 104.

99.

In response to paragraph 105, Defendants state the union contract speaks for itself; admit Plaintiff was given all information required under the union contract in a timely fashion. The remaining allegations are denied.

100.

In response to paragraph 106, Defendants admit that, on February 26, 2013, Caufield sent an email to John Ahlen requesting that he submit dates of availability during the week of March 18 for the Step 3 hearing on the grievance of the termination. Defendants further admit that Caufield ordered sequestration of witnesses. Defendants otherwise deny paragraph 106.

101.

In response to paragraph 107, Defendants admit Caufield hung up the phone twice on Brailey because Brailey was yelling at Caufield, screaming over the phone, and talking over Caufield. Defendants admit Caufield stated at the Step-3 meeting that he was not going to tolerate that kind of abusive behavior during the meeting. Otherwise the allegations are admitted.

102.

In response to paragraph 108, Defendants admit the arbitrator disagreed with UOPD's decision to skip a step in progressive discipline when terminating Plaintiff, ordered that Plaintiff be disciplined at the prior step in progressive discipline, which was an unpaid suspension and a second letter of reprimand, and ordered Plaintiff reinstated. The remaining allegations are denied.

103.

Defendants deny paragraphs 109 and 110.

104.

Defendants lack knowledge and information sufficient to form a belief as to the truth of the other allegations of paragraph 111, and therefore deny the other allegations of paragraph 111.

105.

Defendants deny paragraph 112.

106.

In response to paragraph 113, Defendants admit Caufield denied Plaintiff's Step 3 grievances by letter dated April 22, 2103. The remaining allegations are denied.

107.

Defendants deny paragraph 114.

108.

Defendants deny paragraph 115 and allege Plaintiff made no complaints or reports regarding the allegations contained in this Complaint to any of the Defendants prior to the time the decisions to take adverse employment actions against him were made.

109.

In response to paragraph 116, Defendants admit Brian Smith did not respond to Plaintiff's email and allege Plaintiff had actual knowledge that Brian Smith had already left employment with UO when the alleged email was sent. Defendants deny the content of the email Plaintiff claims he sent and deny the truth of the allegations allegedly set forth in the email. The remaining allegations of paragraph 116 are denied.

110.

Defendants deny paragraph 117.

111.

In response to paragraph 118, Defendants admit that Plaintiff disputes the allegations set forth in his written reprimand, despite the fact the reprimand has been upheld through every stage of the grievance process, including arbitration, and his Letter of Termination. Defendants

deny Plaintiff's conduct did not rise to the level of a terminable offense; deny that a Junction City Police officer could possibly have conducted an independent investigation into acts for which Plaintiff was terminated because he or she would have had no access to any of the relevant information other than Plaintiff's rendition of his version of the truth. The remaining allegations are denied.

112.

In response to paragraph 119, Defendants admit Plaintiff grieved his written reprimand, termination and two due process grievances to arbitration; admit Plaintiff dismissed his due process grievances at the beginning of that arbitration; admit the arbitration of the written reprimand and termination was held in late 2013; admit the arbitrator issued a decision dated February 24, 2014; admit the decision found misconduct by Plaintiff; admit the arbitrator upheld the written reprimand; admit the arbitrator determined progressive discipline should have been followed for the conduct supporting the termination; admit the arbitrator imposed that progressive discipline, namely a three day unpaid suspension and a second letter of reprimand; and admit the termination was reversed, Plaintiff was awarded reinstatement rights and backpay.

113.

Defendants deny paragraphs 120 and 121.

114.

In response to paragraph 122, Defendants admit McDermed complied with UOPD's obligations under *Brady v. Maryland* and the instruction of the District Attorney by providing information to the District Attorney's office on June 17, 2014 for its review in consideration of possible *Brady* implications. The remaining allegations are denied.

115.

Defendants deny paragraph 123 and allege all information provided to the District Attorney's office is accurate to the best of their knowledge; deny Plaintiff has not responded to the information and allege he has responded to the District Attorney; deny Plaintiff has not been

offered an in-person meeting with the District Attorney to present his information and argument and allege Plaintiff has been offered this opportunity but has declined it until he is done litigating this case. The remaining allegations are denied.

116.

In response to paragraph 124, Defendants admit Plaintiff had no prior knowledge that information was being submitted to the District Attorney before it was submitted and allege Plaintiff was not entitled to that information as he was no longer an employee, having agreed to voluntarily relinquish his reinstatement rights and resign his employment on or around April 21, 2014. The remaining allegations are admitted.

117.

In response to paragraph 125, Defendants admit they responded to a letter from the District Attorney regarding Plaintiff after the information had been submitted for the District Attorney's review. Defendants deny the remaining allegations.

118.

In response to paragraph 126, Defendants deny Alex Gardner ever sent a letter to UOPD confirming Plaintiff had been placed on a Brady list, to the contrary Gardner testified in his deposition that no such list exists. The letter speaks for itself, therefore the remaining allegations are denied.

119.

Defendants deny paragraph 127 and allege the District Attorney has told Plaintiff on numerous occasions that he has not reached a formal determination.

120.

Defendants deny paragraphs 128 and 129.

121.

In response to paragraph 130, Defendants admit Lebrecht voiced his belief that Plaintiff would characterize this fulfillment of UOPD's obligations as retaliation because that is what

Plaintiff does; admit this concern as to how Plaintiff would mischaracterize Defendants' actions did not justify Defendants ignoring their legal obligations. The remaining allegations are denied.

122.

Defendants deny paragraphs 131 and 132.

123.

In response to paragraph 133, Defendants admit a tort claim notice was sent to various people and entities on December 14, 2104 and specifically raised claims limited to the June 17, 2014 disclosure to the District Attorney's office.

124.

In response to paragraph 134, Defendants deny that Caufield, an individual defendant and an associate general counsel for OUS, could or did ratify the conduct of the individual defendants, presumably to include himself; deny UO could or did ratify the conduct of the individual defendants; and deny Caufield or UO can be held liable to Plaintiff under a ratification theory under 42 U.S.C. § 1983.

125.

In response to paragraph 135, Defendants object to this apparent request for extension of the discovery deadlines to allow Plaintiff to gather "additional evidentiary support" or "uncover additional claims or causes of action." The discovery deadline had long since elapsed when Plaintiff filed his Third Amended Complaint. Defendant denies Plaintiff has any evidentiary support for his claims.

126.

Defendants deny paragraphs 136, 137, 138, and 139.

127.

In response to paragraph 140, Defendants admit all claims are brought against all Defendants, but Defendants deny all of Plaintiff's claims.

128.

In response to paragraph 141, Defendants respond to the re-alleged paragraphs as set forth above.

129.

In response to paragraph 142, Defendants deny that 42 U.S.C. § 1983 provides that "a party shall be liable…." The remaining allegations are admitted.

130.

Defendants deny paragraphs 143 and 144.

131.

In response to paragraph 145, Defendants admit they were acting in performance of their official duties at all times material. The remaining allegations are denied.

132.

Defendants deny paragraph 146, 147, 148, 149, and 150.

133.

In response to paragraph 151, Defendants respond to the re-alleged allegations as set forth above.

134.

In response to paragraph 152, Defendants deny that the Fifth Amendment gives to him any of the rights he has enumerated and denies that 42 U.S.C. § 1983 provides that "a party shall be liable…." Assuming Plaintiff is referring to the Fourth Amendment in this paragraph, the remaining allegations are admitted but any violations of Plaintiff's alleged rights are denied. The remaining allegations are denied.

135.

In response to paragraph 153, Defendants assert the contract speaks for itself and therefore deny Plaintiff's characterization of its content and meaning.

136.

Defendants deny paragraph 154, 155 and 156.

137.

In response to paragraph 157, Defendants admit Plaintiff was afforded a pre-dismissal hearing; admit Plaintiff attended his pre-dismissal hearing with union representation; admit after the hearing Linda King agreed with McDermed's recommendation for termination; deny that the pre-dismissal hearing is an adversarial process or that King's role was to find in favor of or against employees. The remaining allegations are denied.

138.

In response to paragraph 158, Defendants deny that Step 3 or pre-dismissal hearings are adversarial, with findings in favor of or against employees. The remaining allegations are denied.

139.

In response to paragraph 159, Defendants admit Plaintiff's union submitted one or more due process grievances which were denied. Defendants allege Plaintiff voluntarily withdrew consideration of those grievances from arbitration and therefore has waived any complaint regarding them. The remaining allegations are denied.

140.

Defendants deny paragraphs 160 and 161.

141.

In response to paragraph 162, Defendants admit Plaintiff tried to give Lt. Morrow great quantities of irrelevant documents and video recordings pertaining to the Spencer View incident during the course of Lt. Morrow's internal affairs investigation; admit the internal affairs investigation did not involve the Spencer View incident; deny the information Plaintiff wanted to submit was exculpatory; admit Lt. Morrow declined Plaintiff's offer of information; admit Lt. Morrow is a highly skilled and experienced investigator quite capable of conducting an internal

affairs investigation; and admit Plaintiff was interviewed with union representation during the course of the internal affairs investigation. The remaining allegations are denied.

142.

In response to paragraph 163, Defendants deny Lebrecht had any involvement in Lt. Morrow's internal affairs investigation. The remaining allegations are denied.

143.

Defendants deny paragraphs 164, 165 and 166.

144.

In response to paragraph 167, Defendants admit that on May 14, 2014, McDermed emailed to Chief Tripp stating, in part, that she thought Plaintiff needed to be immediately removed from active duty because he had transported a distraught subject in the back of his public safety car while allowing her to hold her loaded gun on her lap. The remaining allegations are denied.

145.

Defendants deny paragraphs 168, 169 and 170.

146.

In response to paragraph 171, Defendants respond to the re-alleged allegations as set forth above.

147.

Defendants deny paragraphs 172, 173 and 174.

148.

In response to paragraph 175, Defendants respond to the re-alleged allegations as set forth above.

149.

Defendants deny paragraphs 176, 177 and 178.

150.

In response to paragraph 179, Defendants respond to the re-alleged allegations as set forth above.

151.

Defendants deny paragraphs 180, 181, 182, and 183.

152.

Except as otherwise admitted or alleged herein, Defendants deny every allegation of Plaintiff's Third Amended Complaint.

**FIRST AFFIRMATIVE DEFENSE**

**(Limit on Claims and Damages - May 28, 2015 Order on Motions to Dismiss)**

153.

The Court's May 28, 2015 Order on Defendants' Motions to Dismiss limits the claims Plaintiff may pursue in this case, the Defendants who may be pursued and the relief that may be awarded herein. Specifically, UO is not a defendant in this lawsuit, the state law statutory and common law claims have been dismissed and are not at issue, and claims for injunctive and equitable relief have been dismissed.

**SECOND AFFIRMATIVE DEFENSE**

**(Statute of Limitations)**

154.

One or more of Plaintiff's claims or portions thereof are barred by the applicable statute of limitations.

**THIRD AFFIRMATIVE DEFENSE**

**(Capacity to Be Sued)**

155.

UOPD is not a legal entity that can be sued.

## FOURTH AFFIRMATIVE DEFENSE

### (Qualified Immunity)

156.

McDermed, Lebrecht, Cameron, and Caufield are entitled to qualified immunity against Plaintiff's First and Second Claims for Relief.

## FIFTH AFFIRMATIVE DEFENSE

### (Oregon Tort Claims Act)

157.

Plaintiffs state law statutory and common law claims are subject to the terms, conditions and limitations in the Oregon Tort Claims Act.

## SIXTH AFFIRMATIVE DEFENSE

### (Adequate Statutory Remedy)

158.

Plaintiff's state law claim for wrongful discharge is barred because he has an adequate statutory remedy under ORS Chapter 659A.

## SEVENTH AFFIRMATIVE DEFENSE

### (Legitimate, Non-Retaliatory, Non-Discriminatory Motives)

159.

All of Defendants' actions towards Plaintiff were based on legitimate, non-retaliatory and non-discriminatory motives.

## EIGHTH AFFIRMATIVE DEFENSE

### (Neutral Basis for Defendants' Actions)

160.

Defendants would have taken the same actions towards Plaintiff even if he had not engaged in his alleged protected activity.

## NINTH AFFIRMATIVE DEFENSE

### (Comparative Fault)

161.

Plaintiff's claim for damages, if any, resulting from the estrangement and ultimate divorce from his wife were caused in whole or in substantial part from his own conduct, including his decision to engage in an extramarital affair.

## TENTH AFFIRMATIVE DEFENSE

### (Eleventh Amendment Immunity)

162.

UO is immune from liability on Plaintiff's First and Second Claims for Relief under the Eleventh Amendment to the United States Constitution.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Eleventh Amendment Immunity)

163.

All Defendants are immune under the Eleventh Amendment from suit in federal court for all claims arising under the Oregon Tort Claims Act, ORS 30.265, *et. seq*.

## TWELFTH AFFIRMATIVE DEFENSE

### (Failure to Give Timely Tort Claim Notice)

164.

Plaintiff's claims arising under the Oregon Tort Claims Act are barred as a result of his failure to give timely notice of his claims in the manner required by ORS 30.275.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Settlement – Bar to Claim for Lost Wages)

165.

Plaintiff was a party to a settlement agreement with the UO and SEIU, which Plaintiff signed September 4, 2014, regarding his grievances from the written reprimand he received on

May 18, 2012 and his termination from employment. Under the settlement agreement, and for valuable consideration, Plaintiff agreed to and did resign from his employment with the UO, effective June 14, 2013. Plaintiff also agreed not to apply for employment with the UOPD at any time in the future. Plaintiff received all of the back pay wages he was due up to the time he resigned and agreed to not reapply for employment with UO. The effect of the settlement agreement is to bar Plaintiff's claim in this lawsuit for income he would or could have earned at the University of Oregon had he not been terminated.

## CLAIM FOR ATTORNEY FEES

166.

Defendants are entitled to recover their attorney fees and costs under 42 U.S.C. § 1988, ORS 20.105 and ORS 659A.885.

## DEMAND FOR JURY TRIAL

167.

Defendants request a jury trial.

WHEREFORE, Defendants pray for a judgment in their favor dismissing Plaintiff's Third Amended Complaint with prejudice and awarding Plaintiff no attorney fees or costs, and awarding Defendants their attorney fees and costs.

DATED this 22nd day of June, 2015.

HARRANG LONG GARY RUDNICK P.C.


By:   s/ Andrea D. Coit
      Andrea D. Coit, OSB #002640
      Jonathan M. Hood, OSB #133872
      Attorney for Defendants

# CERTIFICATE OF SERVICE

I certify that on June 22, 2015, I served or caused to be served a true and complete copy

of the foregoing **DEFENDANTS' ANSWER TO PLAINTIFF'S THIRD AMENDED**

**COMPLAINT** on the party or parties listed below as follows:

- ☑ Via CM / ECF Filing
- ☐ Via First Class Mail, Postage Prepaid
- ☐ Via Email
- ☐ Via Personal Delivery


Mark McDougal
Gregory Kafoury
Jason Kafoury
Grand Stable & Carriage Building
411 SW Second Avenue, Suite 200
Portland, OR 97204
  Attorneys for Plaintiff

HARRANG LONG GARY RUDNICK P.C.


By:   s/ Andrea D. Coit       
       Andrea D. Coit, OSB #002640
       Jonathan M. Hood, OSB #133872
       Attorney for Defendants

00721615.v1

**CERTIFICATE OF SERVICE**