University of Oregon Police Department

TO: Lane County District Attorney's Office

FROM: University of Oregon Police Department

DATE: June 17, 2014

SUBJECT: Brady v. Maryland Disqualifier Review

Due to the Brady v. Maryland March 31, 2014 Guidelines, the University of Oregon Police Department feels compelled to bring forth this information for review of possible witness disqualification regarding former Public Safety Officer James Cleavenger.

James Cleavenger was employed at the University of Oregon Department of Public Safety (UODPS), now known as the University of Oregon Police Department (UOPD), as a Public Safety Officer. Public Safety Officers are commissioned under ORS 352.385 as Special Campus Security Officers. Special Campus Security Officers have stop and frisk authority set forth in ORS 131.605 to 131.625, probable cause arrest authority and all the accompanying immunities set forth in ORS 133.310 and 133.315 when acting in the scope of employment as defined by the State Board of Higher Education. Special Campus Security Officers are not authorized to carry firearms as police officers and except as provided in 352.385(3) shall not be considered police officers for purposes of ORS 181.610, 238.005, 243.005 or 243.736.

Cleavenger was hired as a full time Public Safety Officer on March 7, 2011. He was officially commissioned as a Special Campus Security Officer under ORS 352.385 on August 19, 2011. Cleavenger received a sixteen (16) week Field Training and Evaluation Program with two Field Training Officers between March 2011 and August 2011. Cleavenger had previously completed the Lane County Regional Reserve Academy which he attended 01/01/10 to 06/26/10. Cleavenger was also a Reserve Police Officer with the Junction City Police Department during his employment at UODPS.

On 05/18/12, Cleavenger was reassigned to Parking Enforcement and related duties based upon concern of his ability to safely and lawfully perform the duties of a Public Safety Officer. Cleavenger also received a Written Reprimand on 05/18/12 that dealt with Unsafe Acts, Incompetent Performance, Fail to Obey Directives and Procedures and Dishonesty and Untruthfulness.

On 10/03/12, Cleavenger was placed on Investigatory Suspension without Pay. Cleavenger was terminated from employment with UOPD on 10/25/2012. The release from employment decision included the Written Reprimand Cleavenger had received and the results of an Internal Affairs Investigation that was conducted by former UOPD Professional Standards and Training Lieutenant Mike Morrow which included Illegal Recording of contacts and an Unlawful Stop. Cleavenger and the SEIU Union filed a grievance on both the Written Reprimand and the

1



EXHIBIT 16 - Page 1 of 10

 University of Oregon Police Department

Discharge. Both Matters were heard in Arbitration on November 25th – 26th and December 12, 2013. The Arbitrator upheld aspects of the Written Reprimand and findings from the Internal Affairs Investigation, but felt the punishment was too severe. Cleavenger was awarded re-instatement rights with back pay per the arbitrator's decision. Cleavenger currently identifies as being a Reserve Police Officer with the Coburg Police Department. Cleavenger is commissioned as a lawyer through the State of Washington. Cleavenger has filed a Federal lawsuit against UOPD, UOPD employees, the University of Oregon and other affiliates.

UOPD personnel received a telephone complaint from a female Cleavenger had contacted via a traffic stop he had conducted on 04/02/12. The complaint caused Cleavenger's assigned watch lieutenant, Brandon Lebrecht, to review videos from Cleavenger's patrol vehicle Watch Guard video dashboard camera system. A performance review investigation and a separate internal affairs investigation of Cleavenger resulted after viewing of the videos. It was determined via reviewed audio/video that Cleavenger had conducted an unlawful stop for which he had no authority, illegally recorded his contacts twenty-seven (27) times, and committed various other policy and ORS violations. The Performance Review Investigation that was conducted by Lieutenant Lebrecht was not considered at the time Cleavenger was discharged. Former University of Oregon Human Resources Representative Randy Wardlow chose to not include Lebrecht's investigation which contained twenty-five (25) of the misdemeanor illegal recording allegations.

During the course of both investigations, Cleavenger provided false, misleading and deceptive responses to questions and questioned the accuracy of video evidence that was taken by his own patrol vehicle. This was a continuous pattern that Cleavenger had displayed previously with supervisors when questioned and/or counseled for performance related issues during his course of employment with UOPD. Below are examples of untruthfulness and deceptive responses by Cleavenger during an n Internal Affairs Investigation with the Lieutenant of Professional Standards and Training, Mike Morrow.

## INTERNAL AFFAIRS INVESTIGATION

The Internal Affairs Investigation was conducted on 06-18-12 by former University of Oregon Professional Standards and Training Lieutenant Mike Morrow. Cleavenger made the following untruthful/deceptive statements during this investigation:

Morrow advised Cleavenger there were two separate complaints regarding alleged misconduct; one on April 1, 2012 and the other on April 2, 2012. Cleavenger was advised of his right to have a union steward represent him and he chose to exercise this right by having Union Steward Donna Lane present during the interview. Cleavenger was also advised this was a voluntary statement, not compelled, though Lieutenant Morrow had the authority to compel a statement under Garrity Rights. Lieutenant Morrow cautioned Cleavenger to answer the questions truthfully and completely because untruthfulness could be more of an issue than the alleged incidents. Cleavenger advised he understood Lieutenant Morrow's admonishments and agreed

2

EXHIBIT 16 - Page 2 of 10

 University of Oregon Police Department

to fully cooperate by voluntarily providing truthful and complete responses to all of his questions; SEIU Union Steward Donna Laue was present during the interview.

Cleavenger signed a written statement he had made during the IA investigation that he did not advise the driver or passenger of a stop that he was recording the contact. He claimed to start immediately fielding questions from them and failed to inform them of being recorded. Cleavenger then claimed he generally advises the persons he contacts that he is recording them. Cleavenger continued that it is part of my routine here (UOPD), but is not part of my duties with JCPD. Cleavenger told Morrow at the time of his statement review that they don't usually make recordings of traffic stops or contacts at JCPD. Cleavenger later had Morrow add that JCPD only has one vehicle equipped with an operational video system and often the system is broken.

1) Because there were twenty-five (25) other situations found in 2012 Watch Guard Videos prior to Cleavenger's testimony, it is determined to be an untruthful statement that Cleavenger generally advises people he is recording them. It in fact, determined quite the opposite. Cleavenger's general practice is to not advise contacts he is recording them.
2) Lt. Lebrecht spoke with Junction City PD Chief Mark Chase on 05/30/14. Chief Chase advised that Junction City PD purchased three Chevy Tahoe patrol vehicles in 2009 and all were already pre-equipped with Watch Guard Video systems. Chase added that one additional Watch Guard system was available in a K-9 vehicle in 2011. Chase believed one of the Watch Guard systems went to the shop to be fixed in 2012; however, there were two others available for general patrol duties in addition to the K-9 vehicle system which was still functional as well. Chase added that Junction City PD had Lexipol Polices that covered Watch Guard use and an additional directive that had come out as well during Cleavenger's employment as a Reserve Police Officer at JCPD.
3) Chief Chase sent Lebrecht an email on 06-05-14 that showed policies and directives involving the in-car camera system. On February 12, 2011, a department directive (11-005) refers to policy 446 and reads in 446.2- Officer Responsibilities, "Prior to going into service, each officer shall insert their assigned video card or DVD, and attach the microphone to their uniform. The MAV should be tested and working properly." The directive reads under 446.3.1- Required Activation of MAV, "The activation of the MAV system is required in any of the following situations:

    (a) All field contacts involving actual or potential criminal conduct, within video or audio range, which includes:
    1. Vehicular pursuits
    2. Traffic stops
    3. Transports
    4. DUII investigations including field sobriety tests
    (b) Any other contact that becomes adversarial after the initial contact in a situation that would not otherwise require recording, or
    (c) Any other circumstance where the officer believes that a recording of the incident would be appropriate.

EXHIBIT 16 - Page 3 of 10

 University of Oregon Police Department

Cleavenger signed his name on a New Directive Sign-off Sheet on 02/1/12, indicating he understood this directive (See attached).

4) Cleavenger's signed statement from the Internal Affairs Investigation read in one part:

"I always act in good faith when working, and never deliberately disregard instructions, policies, or other department procedures. I am always trying to do a good job and make a difference by being the most active on my watch. There is no maliciousness to my activities."

Cleavenger's statement that he never deliberately disregards instructions, policies or other department procedures is a false statement. Cleavenger received a non-disciplinary Letter of Clarification on 11-18-11 for repeatedly disregarding the department grooming policy (1001.1). Cleavenger had admitted to his supervisors the first time they spoke with him on 09-17-11 that he only shaved on average about every other day. Cleavenger later received the Letter of Clarification after again intentionally violating the policy. Cleavenger was seen by supervisors to having an unshaven appearance on both 10-27-11 and 10-28-11. The policy dictated that a male employee must be clean shaven, which Cleavenger clearly was not. Cleavenger later admitted in a grievance he had filed to breaching the grooming policy, but claimed it was discriminatorily applied.

Also, an internet history check of Cleavenger's work account on computers that were in the officer report writing area revealed numerous occasions where he used department computers for personal use, which is directly in violation of department policy (302.4 and 1001.1). Cleavenger also signed a Letter of Expectation, dated 03/26/11 that detailed access to the internet shall be for work related purposes. Cleavenger had signed the expectation prior to the dates of the internet history check. Cleavenger knowingly and deliberately violated department policy and expectations with department computers by accessing Facebook, EBay, Craigslist, Home Depot, Groupon, his private Hotmail email account on numerous occasions, Tickets West, Evite, and google searches for other employment, lawyers and grievances among other intentional violations of the policy and expectations.

5) In regards to a traffic stop Cleavenger had conducted on 04-01-2012, he claimed during the IA investigation, "I did not stop the driver due to her race or gender. I could not see into the vehicle when I first observed it to determine a race or gender. As I explained earlier, I stopped the vehicle due to the suspicious nature of the vehicle; expired tags appearing to have been tampered with, left signal then making several right turns and accelerating away quickly."

A review of the video from Cleavenger's Watch Guard in-car camera system shows the vehicle driving past the front of Cleavenger's vehicle, which was stopped, and in close proximity. It is difficult to imagine that anyone else in a similar circumstance would not

4

EXHIBIT 16 - Page 4 of 10

 University of Oregon Police Department

see the driver as the vehicle approached and then passed by the way Cleavenger's vehicle was positioned. The video also did not indicate that the vehicle quickly accelerated away as Cleavenger claimed.

6) On a Traffic stop that Cleavenger had conducted on 04-02-11, he had claimed during the IA investigation that he did not activate his patrol vehicle's lighting equipment prior to the vehicle stopping (Doing so would indicate that he had conducted a traffic stop of a vehicle which unarmed University of Oregon Public Safety Officers were not to do. At the time there were various forms of contact that was deemed acceptable. It was widely known that officers were not to conduct actual traffic stops, which would be to activate their emergency lighting equipment before a driver had stopped. The most accepted variation was for officers to contact a driver who had stopped and already exited their vehicle.)

During Cleavenger's IA Investigation, Morrow advised and demonstrated to Cleavenger he did in fact turn on his vehicle's lighting equipment prior to the vehicle stopping and showed him where the computer program of the Watch Guard video indicated such. Instead of accepting this as true, Cleavenger initially questioned the accuracy and proper functioning of the equipment. Cleavenger eventually down played the equipment activation and advised he may have activated his lights a little early. After the discussion of when Cleavenger activated his vehicle's lights, Morrow reminded Cleavenger that he needed to provide truthful statements. Again, Cleavenger had provided an untruthful statement in an attempt to justify his actions.

7) Cleavenger was also questioned why he had a records check run of the driver (traffic stop indicated as #4 above) when he told her he tends to give warnings. Cleavenger advised Morrow that he runs everyone because he was issued a Letter of Clarification for not running someone before. This is an untruthful and deceptive answer provided by Cleavenger. The Letter of Clarification Cleavenger was referring to was issued by Lt. Lebrecht, November 18, 2011. The only thing relevant to Cleavenger not running someone in regards to the Letter of Clarification was that Cleavenger and been untruthful to Lt. Lebrecht and advised he had run a subject (described as intoxicated and aggressive) that Cleavenger had placed in his vehicle and transported, when he had not conducted a pat down or a records check. After no radio traffic or phone call was able to prove Cleavenger's claim that he conducted a records check, it was found that he had called dispatch on a non-recorded line and asked if the subject was merely in jail. Cleavenger also claimed that he had previously voiced this subject as a missing person. It was found that he never voiced the subject was missing. Cleavenger did not receive a Letter of Clarification as he indicated for merely not running a records check. This was again a deceptive answer in an attempt to justify why he conducted a records check on someone he had advised was going to get a warning.

8) During the IA investigation questioning as to why he did not advise his contacts that he was recording them, Cleavenger told Morrow that he was thrown off by the female driver

5

EXHIBIT 16 - Page 5 of 10

 University of Oregon Police Department

questioning him on one occasion and did not advise the driver or passenger of the second stop in question because "I started immediately fielding questions from them and failed to inform them of being recorded. I generally advise the persons I contact that I am recording them. It is part of my routine here, but is not part of my duties with JCPD. We don't usually make recordings of traffic stops or contacts at JCPD."

Cleavenger later asked Morrow to add to his typewritten Internal Affairs statement:

- JCPD only has one vehicle equipped with an operational video system and often the system is broken.

- I also mentioned I had been up for 35 hours at the time of the statement. (This however did not impact my ability to voluntarily give a statement and my responses were true and accurate to the best of my recollection. My recall could have been impacted from this sleep deprivation).

Cleavenger clearly had the 35 hour disclaimer added to his statement as he had provided false testimony during the IA investigation. If any other information is required, please feel free to contact Lt. Brandon Lebrecht at the University of Oregon Police Department.

6

EXHIBIT 16 - Page 6 of 10



**Alex R. Gardner**
**Lane County District Attorney**

LANE COUNTY DISTRICT ATTORNEY'S OFFICE
125 EAST 8th AVENUE, ROOM 400
EUGENE, OREGON 97401-2926
FAX ONLY (541) 682-3890
(541) 682-4261

June 30, 2014

Chief Carolyn McDermed
University of Oregon Police Department
1319 E 15th Ave.
Eugene, OR 97403

Re: James Cleavenger

Dear Chief McDermed:

We are in receipt of information with Brady implications concerning your former officer James Cleavenger. Based on the information reviewed to date, we are confident of a duty to disclose related information to the defense in any criminal case in which Officer Cleavenger is a potential witness. We are now in the process of determining whether Cleavenger's transgressions are of such significance they rise to the level of eliminating him as a potential State's witness. We're asking for your help in gathering relevant information bearing on his training, experience, veracity and credibility.

I have attached a summary of a related University of Oregon DPS investigation. The investigation raises questions about Officer Cleavenger's prior training, experience and conduct that may influence our understanding of his responses before and during the formal investigation. Since you supervised Officer Cleavenger and your agency contributed to his experience and training, we're asking you to review the attached report and provide any additional relevant background you can share. If you are aware of any other information relevant to assessing the veracity of Officer Cleavenger, or you are aware of his local reputation for veracity, please share whatever you can with me, Patty Perlow or Paul Graebner, so we can make the best possible decision.

Since this matter involves personnel matters and, potentially, former employee reputation, I ask that you not share the attached report with anybody who isn't essential to developing your response.

Thanks in advance for any assistance you can provide.

Sincerely,

Alex Gardner
Lane County District Attorney

UO 003156

EXHIBIT 16 - Page 7 of 10



**Alex R. Gardner**
**Lane County District Attorney**

LANE COUNTY DISTRICT ATTORNEY'S OFFICE
125 EAST 8th AVENUE, ROOM 400
EUGENE, OREGON 97401-2926
FAX ONLY (541) 682-3890
(541) 682-4261

July 7, 2014

Chief Carolyn McDermed
University of Oregon Police Department
1319 E 15th Ave.
Eugene, OR 97403

Re: Brady v. Maryland Review concerning Ofc. James Cleavenger

Dear Chief McDermed:

My office has reviewed the contents of a loose leaf binder with an attached six page summary that was reportedly prepared by UOPD Lieutenant Brandon Lebrecht on behalf of UOPD on June 17, 2014. Based upon this material and a follow-up telephone conversation, we understand the UOPD command staff has a very poor opinion of Officer Cleavenger's veracity. I'm writing to confirm that's accurate and the unfavorable opinion is shared by you and your senior command staff, including Lt. Pete Deshpande.

We are aware of only one pending criminal case in which Officer Cleavenger is a potential witness. We have informed defense counsel in that case of potential Brady evidence and our ongoing inquiry, but we can't arrive at a more formal determination until we have additional clarification from you. I'll appreciate any clarification you can provide.

Sincerely,

Alex Gardner
Lane County District Attorney

UO 014069

EXHIBIT 16 - Page 8 of 10

 UNIVERSITY OF OREGON

July 28, 2014

Mr. Alex Gardner
Lane County District Attorney
125 East 8th Ave.
Eugene, OR 97401

Re: Brady v. Maryland Review concerning Officer James Cleavenger

Dear District Attorney Gardner:

I am responding to your letter dated July 7th, 2014, in which you asked me to confirm that "UOPD command staff has a very poor opinion of [James] Cleavenger's veracity."

UOPD provided your office with a loose leaf binder and six-page summary dated June 17, 2014, in response to your April 28, 2014 email re-emphasizing a police department's reporting obligations to a district attorney under Brady v. Maryland. The six-page summary and supporting materials accurately states concerns Captain Pete Deshpande, Lieutenant Brandon Lebrecht and I share concerning Mr. Cleavenger's veracity in certain specific instances while he was employed by UOPD.

At this point, based on the information referenced above, I believe your office will need to decide the impact of this information under Brady v. Maryland, and whether the information must be disclosed to the defense in criminal cases in which Mr. Cleavenger is a witness.

Sincerely,

Carolyn McDermed / Chief of Police
University of Oregon Police Department
541-346-4127
mcdermed@uoregon.edu

OFFICE OF THE CHIEF OF POLICE
2141 East 15th Avenue, University of Oregon, Eugene OR 97403-2004 T 541-346-4127 F 541-346-0047
police.uoregon.edu

An equal-opportunity, affirmative-action institution committed to cultural diversity and compliance with the Americans with Disabilities Act.

UO 013165

EXHIBIT 16 - Page 9 of 10

EXHIBIT 16 - Page 10 of 10