**Andrea D. Coit, OSB #002640**
**andrea.coit@harrang.com**
**Jonathan M. Hood, OSB #133872**
**jonathan.hood@harrang.com**
HARRANG LONG GARY RUDNICK P.C.
360 East 10th Avenue, Suite 300
Eugene, OR 97401-3273
Telephone:      541-485-0220
Facsimile:      541-686-6564
Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**JAMES M. CLEAVENGER,**

             Plaintiff,

    vs.

**UNIVERSITY OF OREGON (an Agency and Instrumentality of the State of Oregon), et al.,**

         Defendants.

Case No. 6:13-cv-01908-DOC

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Page 1 –      **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I.  First Amendment Claim (Public Employee) ..................................................... 7

    A.  October 2, 2012 Meeting with Brian Smith ............................................. 7

        1.  Not Protected Speech ...................................................................... 7

        2.  Not a Substantial or Motivating Factor in Adverse Employment Decision .......... 9

    B.  Additional Instances of Allegedly Protected Speech ................................. 10

        1.  Email to Lt. Morrow ..................................................................... 10

        2.  Email to Ryan Hagemann ............................................................. 11

    C.  Clery Act Complaint ............................................................................ 11

    D.  Sexual Harassment Disclosure ............................................................. 12

    E.  Actions That Are Not Adverse Employment Actions by Individual Defendants ........................................................................ 12

        1.  Termination Decision ................................................................... 12

        2.  Alleged "Brady listing" ................................................................ 12

    F.  Conclusion to First Amendment Claim (Public Employee) ...................... 16

        1.  No Evidence of Protected Speech ................................................. 16

        2.  No Evidence of Causation by Individual Defendants ...................... 16

        3.  Qualified Immunity ..................................................................... 18

II.  First Amendment Claim (Private Citizen) ..................................................... 18

    A.  Plaintiff Cannot Prove the Alleged Retaliation Would Chill a Person of Ordinary Firmness from Continuing to Speak out Against UOPD's Arming Itself with Tasers ...................................................................... 19

Page 2 –   **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

B.  No Evidence of a Substantial Causal Relationship Between the
Constitutionally Protected Activity and the Adverse Action ...................................... 21

1.  Loss of Job ............................................................................................................ 21

2.  Written Reprimand and Performance Evaluation ................................................. 22

3.  Sgt. Cameron's Statements .................................................................................. 24

C.  Conclusion to First Amendment Claim (Private Citizen) ............................................ 24

1.  Plaintiff Cannot Meet the Elements of the Claim ................................................ 24

2.  No Causation ........................................................................................................ 24

3.  Qualified Immunity .............................................................................................. 25

III.  Due Process – Liberty Interest ............................................................................................ 25

A.  No Public Disclosure .................................................................................................... 25

1.  Submission to District Attorney is Not Public Disclosure .................................. 25

2.  Plaintiff Publicly Disclosed the Information ....................................................... 27

B.  Disclosure Was Not in Connection with Termination .................................................. 28

1.  Constructive Discharge ........................................................................................ 28

2.  Relinquishment of Reinstatement Rights and Decision to Resign Were Effective
on April 21, 2012 ................................................................................................. 29

C.  Conclusion to Due Process Claim (Liberty Interest) .................................................... 32

1.  Plaintiff Cannot Meet the Elements of the Claim ................................................ 32

2.  No Causation ........................................................................................................ 32

3.  Qualified Immunity .............................................................................................. 33

Page 3 –    **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT**

IV.  Due Process – Substantive Due Process Claim ...................................................... 34

    A.  No Evidence of a Deprivation of Liberty ................................................... 34

        1.  Plaintiff Remains in his "Chosen Profession" ..................................... 34

        2.  The District Attorney Made the Allegedly Depriving Decision .......................... 36

    B.  Defendants' Conduct was Not Arbitrary or Conscious-Shocking ............................. 37

    C.  Conclusion To Substantive Due Process ................................................... 38

        1.  Plaintiff Cannot Meet the Elements of the Claim ................................... 38

        2.  Causation of Harm ............................................................... 38

        3.  Qualified Immunity .............................................................. 38

V.  CONCLUSION ................................................................................ 38

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

<u>**TABLE OF AUTHORITIES**</u>

**Cases**                                                                 **Page(s)**

*Blair v. Bethel Sch. Dist.,*
    608 F.3d 540 (9th Cir.2010) .........................................................................19, 22

*Boyd v. Edwards,*
    No. 6:15-CV-238-MC, 2015 WL 3407890 (D. Or. May 27, 2015) ........................................37

*Brady v. Maryland,*
    373 U.S. 83 (1963).........................................................................................28

*Braswell v. Shoreline,*
    622 F.3d 1099 (9th Cir. 2010) ........................................................................37

*Britt v. Thorsen,*
    258 Or. 135, 481 P.2d 352 (1971) ...................................................................30

*Coszalter v. City of Salem,*
    320 F.3d 320 F.3d 968, 973 (9th Cir. 2003) .........................................................9

*Cox v. Roskelley,*
    359 F.3d 1105 (9th Cir. 2004) ...............................................................27, 28, 34

*Crawford-El v. Britton,*
    523 U.S. 574, 118 S. Ct. 1584 (1998)................................................................24

*Desrochers v. City of San Bernardino,*
    572 F.3d 703 (9th Cir. 2009) .........................................................................10

*Enquist v. Or. Dept. of Agric.,*
    478 F.3d 985 (9th Cir. 2007) ....................................................................35, 36

*Garcetti v. Ceballos,*
    547 U.S. 410 (2006)....................................................................................10

*Hafer v. Melo,*
    502 U.S. 21 (1991)......................................................................................34

*Lakeside-Scott v. Multnomah Cnty.,*
    556 F.3d 797 (9th Cir. 2009) .........................................................................23

*McKinley v. City of Eloy,*
    705 F.2d 1110 (9th Cir. 1983) .........................................................................9

Page 5 –    **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR
                 SUMMARY JUDGMENT**

*Mendocino Envtl. Ctr. v. Mendocino Cnty.*,
   192 F.3d 1283 (1999) ..................................................................................20

*Millman v. Inglish*,
   461 Fed. App'x 627 (9th Cir. 2011) ........................................................26, 28

*Monico v. City of Cornelius*,
   No. 03:13-CV-02129-HZ, 2015 WL 1538786 (D. Or. Apr. 6, 2015)
   *reconsideration denied,* No. 03:13-CV-02129-HZ, 2015 WL 1579516 (D. Or.
   Apr. 9, 2015) ........................................................14, 15, 16, 17, 34, 38

*Moreland v. Las Vegas Metropolitan Police Dept.*,
   159 F.3d 365 (9th Cir. 1998) ....................................................................38

*Nunez v. City of Los Angeles*,
   147 F.3d 867 (9th Cir. 1998) ....................................................................25

*Pearson v. Callahan*,
   555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) ..........................19

*Pinard v. Clatskanie Sch. Dist.*
   6J, 467 F.3d 755 (9th Cir. 2006) ..........................................................20, 22

*Reyes v. City of Pico Rivera*,
   370 Fed. App'x 844 (9th Cir. 2010) ........................................................26, 28

*Watson v. Nationwide Ins. Co.*,
   823 F.2d 360 (9th Cir. 1987) ....................................................................29

*Wenger v. Monroe*,
   282 F.3d 1068 (9th Cir. 2002) ..............................................................26, 28

**Statutes**

42 U.S.C. § 1983 ..................................................................................17, 34

Clery Act ..............................................................................................12

ORS 192.501(3) ......................................................................................27

ORS 192.501(12) ....................................................................................27

ORS 192.502(4) ......................................................................................27

ORS 192.502(10) ................................................................................27, 28

Page 6 –    **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR
             SUMMARY JUDGMENT**

## REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## I.    FIRST AMENDMENT CLAIM (PUBLIC EMPLOYEE)

Plaintiff agrees with Defendants' identification of both the content of the speech at issue in this claim, and the timing and context in which that speech was delivered, with the exception of the specific additional instances of speech discussed further in section I(B), below.  Pl's Response at page 5; Cleavenger Depo 42:12-14 (confirming the only pre-termination meetings in which he engaged in allegedly protected speech were the August 13, 2012 meeting with Chief McDermed, the October 2, 2012 meeting with Brian Smith, and his October 12, 2012 pre-dismissal meeting with Linda King).  Further, Plaintiff does not refute the facts that (1) he made no effort to bring his alleged concerns to the attention of the public; and, (2) all of his complaints were made to individuals either in his chain of command or directly involved in his grievance process.  Pl's Response pages 5-10. The unrefuted material facts show Plaintiff did not speak out as a private citizen on matters of public concern.  The arguments raised in his response do not change that conclusion.

## A.    October 2, 2012 Meeting with Brian Smith

### 1.    Not Protected Speech

In his Response, Plaintiff argues that he did in fact speak out on matters of public concern during the October 2, 2012 meeting he had with Brian Smith.  Pl's Response page 5.  Plaintiff alleges the speech engaged in during this meeting included: (1) disclosures about time wasted during briefings watching Lebrecht's football tapes and discussing a bowl of dicks; (2) disclosures that he and other officers referred to the Occupy Eugene camp as "district 9"; and, (3) a complaint that he, Lt. Lebrecht and Officer Leroy sometimes would "spend a majority of an eight hour shift talking inside Lebrecht's office."  Pl's Response page 7.

None of these alleged complaints involve "issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of

Page 7 –    **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

their government." *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983). Plaintiff did not, for instance, complain that UOPD was lax in performing its duties as a result of this alleged time wasted, or that any public service was overlooked or improperly handled.  With regard to Occupy Eugene, Plaintiff has admitted he had no concerns about how UOPD treated the protestors; rather, his complaint is that he did not like that other officers (none of the individual defendants) referred to the camp as "district 9" during a private briefing.  Coit Dec, Ex. 10, Cleavenger Depo 45:3-19.   Rather, Plaintiff is complaining about internal banter (all of which he participated in) that occurred in private briefings at work with no impact on the public order. Plaintiff's complaints dealt exclusively with "individual personnel disputes and grievances" that would be of "no relevance to the public's evaluation of the performance of governmental agencies." *Coszalter v. City of Salem*, 320 F.3d 320 F.3d 968, 973 (9th Cir. 2003).

The fact Plaintiff made these reports to Brian Smith, a UO employee who was not in Plaintiff's chain of command, does not change their character from matters of private to public concern.  Smith was an employee of UO tasked with the responsibility to hear Step 2 grievance meetings for SEIU Local 503 members.  The only reason Plaintiff was in touch with Brian Smith was because of his role as the Step 2 grievance decider.  Coit Dec, Ex. 10, Cleavenger Depo 42:12-25; 43:1-13.  Plaintiff admits he wanted to have the October 2 follow up meeting with Smith because he wanted Smith to have additional information about his supervisors before he made a decision on Plaintiff's Step 2 grievance.  In his October 1, 2012 email to his union stewards, Plaintiff stated:

> I would prefer to go to both meetings (10:00am with Brian Smith
> and 11:15 am at HR).  The reason is because up to now, no one
> besides you three have any clue that I have been harassed,
> threatened and intimidated by Lebrecht and Cameron.  If I don't
> meet with Smith, <u>he will be making his decisions without hearing
> the whole truth, just like Wardlow did</u>."

Page 8 –    **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR
                   SUMMARY JUDGMENT**

Coit Dec, Ex. 3, page 1 (underlining added).  The only decision Smith was making that concerned Plaintiff was on the Step 2 grievance.

Plaintiff does not allege, nor do any facts support, a claim that he reported information to Brian Smith with the intent that Smith would take action on the issues, make them known to the public, or otherwise remedy a problem that was concerning to the public good.  Plaintiff's speech to Smith was "motivated by dissatisfaction with his [] work situation, as opposed to being motivated by a desire to bring to light actual or potential wrongdoing or breach of public trust." *Desrochers v. City of San Bernardino*, 572 F.3d 703, 715 (9th Cir. 2009). The complaints to Smith were not on matters of public concern.

Furthermore, the second meeting with Smith was held as a consequence of Plaintiff's participation in his union's grievance process.  His union stewards arranged for and attended the meeting with him.  "A public employee's speech is not protected by the First Amendment when it is made pursuant to the employee's official job responsibilities." *Garcetti v. Ceballos*, 547 U.S. 410, 426 (2006).  Plaintiff was not speaking as a private citizen when meeting with Smith on October 2, 2012.

### 2.    Not a Substantial or Motivating Factor in Adverse Employment Decision

The adverse employment actions taken by the individual defendants all occurred before the October 2, 2012 meeting with Brian Smith.  The letter of clarification was given by Lt. Lebrecht in November 2011, the written reprimand was given by Sgt. Cameron on May 18, 2012, the reassignment to parking duties was made by Chief McDermed on May 18, 2012, the allegedly poor performance evaluation was delivered by Sgt. Cameron on May 31, 2012, and the decision to terminate was made by Chief McDermed on October 1, 2012.  Lebrecht Dec, Exs. 1, 2; McDermed Dec, ¶ 18, Exs. 2, 6; TAC ¶ 70.  Plaintiff cannot, as a matter of law, prove that his complaints to Brian Smith on October 2, 2012 were substantial and motivating factors in these decisions.

Page 9 –    **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**B.      Additional Instances of Allegedly Protected Speech**

Plaintiff asserts that, in addition to the speech identified in Defendants' Motion, he also spoke on matters of public concern in an email to Lt. Morrow dated February 20, 2012, and in an email to Ryan Hagemann dated October 30, 2012.

**1.      Email to Lt. Morrow**

Plaintiff asserts he sent an email to Lt. Morrow on February 20, 2012 "disclosing deficiencies and policy violations related to training requests that Plaintiff had made to Lt. Lebrecht and others." Pl's Response pages 7-8. In retaliation for this speech, Plaintiff claims Lt. Lebrecht threatened him. *Id.* This email was not protected speech.

Plaintiff's email to Lt. Morrow states:

> I was just curious if you had ever received any of my training requests that I submitted to my sergeant almost a month ago? My requests so far have been immediately denied by my sergeant, "on the basis of fairness to other officers." I was under the impression the process for the review of such requests included a recommendation from my sergeant prior to a final/official decision by you. But perhaps my understanding of the process is wrong? I still have copies of my initial requests and their denials if you would like to see them.
>
> I am merely seeking clarification on the process, so I can determine if making any further requests would be worthwhile.

Supplemental Declaration of Andrea Coit (Coit Supp Dec), Ex. 17.

This email is not a "disclos[ure] [of] deficiencies and policy violations related to training requests that Plaintiff had made to Lebrecht and others." Rather, Plaintiff was "merely seeking clarification of the process." Plaintiff is not bringing to light an institutional deficit in officer training; he is, rather, complaining that his Sergeant (Cameron, not Lebrecht) is not letting him go to all the trainings he has asked for. Plaintiff does not report to Lt. Morrow that he is concerned that he and his fellow public safety officers are inadequately trained to perform their public safety duties. To the contrary, Plaintiff is annoyed that other officers are being chosen to go to trainings over him.

Page 10 –      **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Lt. Morrow was the professional standards and training lieutenant. Plaintiff was asking clarification from the Lieutenant in charge of training on an issue related to his training requests, a matter purely personal to him. He was speaking as a public employee, not a private citizen.

Plaintiff's complaint to Lt. Lt. Morrow, such that it was, was not protected speech under the First Amendment. Whether or not Defendant Lebrecht threatened Plaintiff in retaliation for engaging in unprotected speech is of no consequence to Plaintiff's First Amendment claim.

## 2.    Email to Ryan Hagemann

Plaintiff claims he also engaged in protected speech in the course of his Step 3 grievance hearing when he sent an email to Ryan Hagemann, OUS General Counsel, on October 30, 2012. Pl's Response page 9, Ex. 3. A review of the email, titled "Updated and Additional Documents for Grievance," leaves little doubt Plaintiff sent this communication in an effort to support his grievance. Plaintiff does not ask Hagemann to bring his concerns to the public or to do anything in response to his alleged concerns other than uphold his grievance and overturn his written reprimand. This is not protected speech.

Regardless of the nature of the speech, it comes too late. All adverse employment decisions made by the individual defendants were made well before October 30, 2012.

## C.    Clery Act Complaint

Plaintiff also argues that he reported a matter of public concern when he reported to Brian Smith on October 2, 2012 an alleged Clery Act violation that occurred on September 7, 2012. Complaint ¶ 83; Coit Dec, Ex. 10, Cleavenger Depo, 184:1-8; Vol. 3, 111:21-25. Whether this is a matter of public concern is of no consequence because reports to Smith on October 2, 2012 came too late for purposes of claims against the individual Defendants.[1]

---

[1] In his Response at page 10, Plaintiff refers to an outside investigation of UO regarding Clery Act reporting in an attempt to mislead the court into believing his alleged complaint led to an outside investigation. It did not. The investigation Plaintiff refers to is confidential and has absolutely nothing to do with Plaintiff or his alleged complaints. Neither Plaintiff nor his

**D.     Sexual Harassment Disclosure**

Plaintiff now claims for the first time that he also disclosed to Brian Smith on October 2, 2012, "information related to the culture of harassment against female officers."  Pl's Response page 6.  This allegation has never before been raised, either in Plaintiff's four voluminous complaints or in his three days of depositions.  *See e.g.,* Complaints; Cleavenger Depo 151:19-25; 152:1; 158:15-24.  Regardless the legitimacy of this allegation, it is alleged to have been disclosed only to Brian Smith, on October 2, 2012.  It was too late for purposes of this lawsuit.

**E.     Actions That Are Not Adverse Employment Actions by Individual Defendants**

Plaintiff continues to mistakenly reference his termination and the submission of information to the district attorney in June 2014 as adverse employment actions for purposes of his First Amendment claim against the individual defendants.  They are not.

**1.     Termination Decision**

The ultimate termination decision was made by Associate Vice President for Human Resources, Linda King, around October 24, 2012. McDermed Dec ¶ 20, Ex. 7.  However, Ms. King is not a defendant.  Plaintiff also claims a "constructive discharge" occurred in September 2014, when he signed the arbitration award settlement agreement.  As discussed in Defendants' Motion for Summary Judgment and again in Section III(B), *infra*, Plaintiff was not constructively discharged.

**2.     Alleged "Brady listing"**

The disclosure to the District Attorney made on June 17, 2014, occurred after both Plaintiff's termination and his subsequent resignation.  McDermed Dec ¶ 26.  Plaintiff was not an employee of UOPD, nor was he in the process of returning to employment with UOPD, when the submission was made. *Id.* The action cannot be an adverse employment action as a matter of law.

---

attorneys should have had access to this confidential information and it is unknown how they obtained it.

Page 12 –     **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Furthermore, Plaintiff makes no showing how the submission of information was, itself, adverse to him. Plaintiff has suffered no harm as a result of this submission. As explained in section III(C)2(c), *infra*, Plaintiff has not alleged that his being on a Brady list has prevented him from obtaining employment or any other benefit. Plaintiff's own evidence, submitted as Exhibit 16 to his declaration, pages 7 and 8, affirmatively demonstrate that the district attorney has not declined to prosecute any of his cases.

Finally, it is uniformly agreed by Defendants, Plaintiff and District Attorney Alex Gardner, that it is the district attorney who makes the ultimate decision as to whether a person has disclosable Brady information after the district attorney's independent review of the information. *See* Coit Supp Dec, Ex. 21, Cleavenger Depo Vol. 3 89:20-90:11 ("Q. Okay. Do you agree with me that whether or not you go on this Brady list is up to the district attorney? A. Yes. Yes. Q. Do you believe the district attorney would be putting you on the Brady list as some sort of retaliation? A. No. I believe that submission of these Brady list materials was retaliation. Q. Okay. That's fine. Let's take that out of the equation. The materials are in the Brady --are in the district attorney's hands. Do you agree that it's up to him to review them impartially and make the decision whether or not you should be on a Brady list? A. I think we've covered this. Yes, it's up to him. It's within his purview."); Coit Dec, Ex. 16, Gardner Depo 22-27; McDermed Dec ¶ 25.

If Brady listing is considered an adverse action, it was not caused by Defendants. The submission of information itself did not result in a Brady listing.

A similar case was recently decided by this court and is instructive on the Brady issue. In *Monico v. City of Cornelius*, No. 03:13-CV-02129-HZ, 2015 WL 1538786, at *6 (D. Or. Apr. 6, 2015) *reconsideration denied,* No. 03:13-CV-02129-HZ, 2015 WL 1579516 (D. Or. Apr. 9, 2015), the plaintiffs, Monico and Watts, were two police officers who had submitted a letter to the City Manager and City Council alleging "misconduct and corruption" within the command

Page 13 –    **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

staff of the Cornelius Police Department (the Corruption Complaint).  *Id.* at *1.   After submission of the Corruption Complaint, Monico and the City of Cornelius were named as defendants in a federal civil rights action, also in this court, in which the plaintiff/arrestee, Mata-Gonzalez, claimed Monico had fabricated drug evidence.  *Id.* at *5.  Monico and the City moved for summary judgment against Mata-Gonzales's claims.  Magistrate Judge Papak heard the motion and denied summary judgment, stating in his Findings & Recommendation ("F&R") that a finder of fact could reasonably determine that Monico had fabricated evidence.  *Id.*  The Cornelius Police Chief received a copy of the F&R and immediately sent it to the Washington County District Attorney's office, believing it raised Brady issues.  *Id.*  The district attorney agreed, concluding that "his office had to consider Monico to be a "Brady List" witness immediately."  *Id.*

Thereafter, Monico and Watts filed their civil rights case in this court arguing, among other things, that the Chief's submission of Judge Papak's F&R to the district attorney violated Monico's First Amendment rights because it was done in retaliation for Monico's role in disclosing the Corruption Complaint.  *Id.* at *7.  The defendants argued on summary judgment that the Chief's submission of the F&R to the district attorney was not actionable as an adverse employment action as a matter of law because it was the district attorney's office that placed the officer on the Brady List, not the Chief, and there was no evidence presented by Monico in opposition to summary judgment that he suffered harm as a result of the submission or the listing.  *Id.* at *13.

Judge Hernandez for this court agreed, holding:

> While the response by the District Attorney's Office to the F&R suggests that it considered Monico to be a "Brady List" witness, this was, as Defendants note, <u>an action by the District Attorney's Office, not [the Chief]</u>.  [The Chief], not the District Attorney's Office, is the Defendant here and only his actions are at issue. Additionally, <u>because the District Attorney's Office was not his employer, this was not an adverse "employment"</u> action.

Page 14 –   **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

*Id.* (underlining added).

The court further concluded that Monico "fail[ed] to establish how placement on the Brady List was adverse to him." *Id.* The District Attorney's office had never refused a case from Monico and actively prosecuted his cases. *Id.* Moreover, the court stated that Monico had not experienced any adverse effects as a result of being on a "Brady List":

> The action taken by the District Attorney's Office has been limited to notifying those defendants with pending matters in which Monico is a witness, of the F&R. Monico fails to show how this notification has negatively affected him. As a result, without any evidence that he suffered harm in some way, he fails to show that [the Chief's] provision of the F&R to the District Attorney's Office in April 2013 was reasonably likely to deter protected speech. The allegation that [the Chief] violated Monico's First Amendment rights by forwarding a copy of the F&R to the District Attorney's Office does not support a claim.

*Id.*

The facts here are nearly identical to *Monico*, with the exception Monico was actually still an employee of the Cornelius Police Department when the submission to the district attorney was made. Chief McDermed's submission of information to the district attorney was not an adverse employment action as a matter of law.

Even assuming the post-termination submission the district attorney could be considered an adverse employment action, the Defendants are entitled to qualified immunity on that issue. As explained by Judge Hernandez in *Monico*:

> [M]y research has found no cases clearly establishing that a supervisor's provision of a publicly available judicial opinion to an attorney employed by a public agency is retaliatory conduct in violation of the First Amendment. Although the general relevant legal standard for First Amendment retaliation claims has been clearly established for some time, existing precedent has not placed the particular constitutional questions raised by the facts of this case, beyond debate. . . . [E]ven if the law on this issue was clearly established, [the plaintiffs] are still entitled to qualified immunity

Page 15 –    **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

because any mistake as to what the law requires in these circumstances was reasonable.

*Id.* at *17.

**F.    Conclusion to First Amendment Claim (Public Employee)**

**1.    No Evidence of Protected Speech**

Plaintiff has the burden of proof on the first three elements of his First Amendment claim. Plaintiff has not presented sufficient evidence to create a triable issue of fact that (1) he spoke on matters of public concern, (2) he made any complaints in his role as a private citizen rather than as a public employee, or (3) his protected speech was a substantial or motivating factor in any of the adverse employment actions taken against him by the individual defendants. All of the Defendants are entitled to summary judgment on this claim.

**2.    No Evidence of Causation by Individual Defendants**

**a.    Brian Caufield**

There is no evidence Caufield took any adverse employment actions against Plaintiff. Caufield's only interaction with Plaintiff occurred in the course of the hearing on Plaintiff's grievance of his termination. Furthermore, Caufield was an employee of Oregon University Systems, not the University of Oregon. He cannot be considered Plaintiff's employer for purposes of a 42 U.S.C. § 1983 claim. Caufield is entitled to summary judgment on this claim as a matter of law.

**b.    Sgt. Cameron**

Plaintiff presents no evidence that Sgt. Cameron was aware of any of Plaintiff's alleged protected speech when Sgt. Cameron made the decision to issue the written reprimand and the performance evaluation.[2] Sgt. Cameron is entitled to summary judgment on this claim.

---

[2] This claim does not include Plaintiff's speech regarding Tasers made while a student.

Page 16 – **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

### c.    Lt. Lebrecht

Plaintiff alleges Lt. Lebrecht was aware of the email Plaintiff sent to Lt. Morrow regarding training.  That email was not protected speech.  The only other alleged protected speech Plaintiff claims he engaged in prior to the November 2011 letter of clarification, the May 18, 2012 written reprimand, the May 31, 2012 performance evaluation is his and his fellow officers' request to Lt. Lebrecht that he stop talking about politics at work.  That request was made to a direct supervisor and involved a complaint about working conditions.  It was not protected speech.  Furthermore, Plaintiff makes no comment on this issue in his Response and has presented nothing in the record that would tend to show that this request to Lt. Lebrecht was a substantial or motivating factor in Lt. Lebrecht's decisions to support the identified adverse employment actions.  Lt. Lebrecht is entitled to summary judgment on this claim.

### d.    Chief McDermed

Plaintiff presents no evidence that Chief McDermed was aware of any of his alleged protected speech prior to her decision to reassign him to parking duties on May 18, 2012 or instruct Lt. Morrow to open an internal investigation into Plaintiff's conduct.  The only other adverse employment action Chief McDermed is alleged to have participated in is the October 1, 2012 recommendation for Plaintiff's termination.  Prior to this action, Plaintiff claims he reported numerous of his concerns to Chief McDermed in a meeting on August 13, 2012.  Defendants have presented Plaintiff's own admission that he did not, in fact, make any such reports to Chief McDermed on August 13, 2012.  Coit Dec, Ex. 3, page 1.  But regardless, the alleged reports were not protected speech.  Plaintiff testified he sought out a meeting with Chief McDermed on August 13, 2012, because he wanted help dealing with his supervisors, Sgt. Cameron and Lt. Lebrecht.  "I was just trying to find someone who would step in and do something, and I hoped that McDermed would, and I thought maybe she would if I could tell her what was really going on."  Coit Dec, Ex. 10, Cleavenger Depo 156:15-18.  This is speech as a

Page 17 –   **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

public employee complaining about his supervisors.  Chief McDermed is entitled to summary judgment on this claim.

### 3.    Qualified Immunity

The Defendants are entitled to qualified immunity on this claim.  Under the case law then existing, it was more than reasonable for Defendants to believe that Plaintiff's complaints concerned private matters, personal to him and were not protected speech under the First Amendment.  If this court disagrees and finds Plaintiff did speak as a private citizen on matters of public concern, qualified immunity should still be given.  There is sufficient case law supporting Defendants' characterization of Plaintiff's speech to make any wrong decision a reasonable mistake.  "A government official will not be subjected to money damages for picking the losing side."  *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009).

## II.    FIRST AMENDMENT CLAIM (PRIVATE CITIZEN)

Defendants cited a Second Circuit case rather than one from the Ninth Circuit when setting forth the applicable standard for Plaintiff's First Amendment claim based on speech engaged in before he became a public employee.  Plaintiff is correct that the Ninth Circuit test applies here and that the Ninth Circuit does not require proof of actual chilling of speech.  This, however, has no impact on Defendants' analysis of this claim.

The elements of the Ninth Circuit's private citizen First Amendment test is set forth in *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir.2010).  Under *Blair,* a private citizen must show that: "(1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Id.,* 608 F.3d at 543.   The Ninth

Circuit, as opposed to the Second Circuit, has made the decision not to require a plaintiff prove actual chilling for a First Amendment retaliation claim because:

> [i]t would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity.

*Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (1999).

Thus, under Ninth Circuit law, actual chilling is not required because to do so would punish the plaintiff who, despite the retaliation, continued to engage in the protected speech and therefore cannot prove a concrete infringement.  The Ninth Circuit is deferring to the plaintiff who is more than "a person of ordinary firmness."  That is not the case we have here.

A.    **Plaintiff Cannot Prove the Alleged Retaliation Would Chill a Person of Ordinary Firmness from Continuing to Speak out Against UOPD's Arming Itself with Tasers**

*Pinard v. Clatskanie Sch. Dist.* 6J, 467 F.3d 755, 770 (9th Cir. 2006) explains that "to meet the first element of a First Amendment claim, plaintiffs must allege that they were engaged in constitutionally protected activity."  The second element requires proof that the alleged retaliation would "chill a person of ordinary firmness from continuing to engage in the protected activity."  Reading those elements together, a successful plaintiff must show that he, or if he is extraordinarily strong-willed, a person of ordinary firmness, would have occasion, means, or opportunity to continue engaging in the same protected activity after the alleged retaliation. Absent that evidence, there is no objective way to prove the conduct at issue would have a chilling effect.

Plaintiff concedes the speech at issue in this claim is a speech he made in 2008 in which he took the position that UODPS public safety officers should not be armed with Tasers because the public safety officers were not qualified to use Tasers.  Plaintiff further concedes that he made that speech in his role as a student representative of the student government.  Coit Dec, Ex. 10, Cleavenger Depo 48; Coit Supp Dec, Ex. 21, Cleavenger Depo Vol 3 91:20-92:2.

Page 19 –    **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Plaintiff states that the adverse employment actions at issue in this claim are (1) the May 18, 2012 written reprimand; (2) the May 30, 2012 allegedly negative performance review; and, (3) discharge from employment.  Plaintiff's Response page 14.  All of these actions occurred in 2012, after UODPS had transitioned to a full police department with police officers trained and qualified in the use of Tasers through the Oregon Department of Public Safety Standards and Trainings 16 week police academy.[3]

In 2012, Plaintiff was not a student government representative.  Rather, he was a public safety officer for UOPD.  In 2012, if Plaintiff had made a public speech on behalf of the student government disparaging UOPD's qualifications and ability to safely use Tasers to protect the public, he would have been subject to discipline by his supervisors.  For example, UOPD policy 1011.6 prohibits employees from creating a conflict of interest with the duties and obligations of their profession; policy 1011.13 prohibits employees from making disparaging remarks about authority to the extent the conduct disrupts the Department or would tend to discredit one of its members; and policy 1060, generally, restricts speech of employees that could contravene the policies and performance of the Department.  Coit Supp Dec, Ex. 18, pages 3, 4, 6-9.  It is also reasonable to assume that Plaintiff's status as a non-student, UOPD employee would have precluded him in 2012 from speaking out on behalf of UO's student government.

Therefore, in 2012, neither Plaintiff, nor a person of ordinary firmness in Plaintiff's position as a public safety officer for UOPD, would or could continue to speak out on behalf of the student government against the University's Department of Public Safety's public safety officers' lack of training and ability to arm themselves with Tasers.  Plaintiff cannot, as a matter of law, make the required showing that Sgt. Cameron and Lt. Lebrecht's issuance of a written reprimand and negative performance review, or Chief McDermed's decision to recommend

---

[3] Public safety officers do not attend the police academy.

Page 20 –    **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

termination would, or even could, chill a person of ordinary firmness in Plaintiff's position from continuing to speak out against UODPS being armed with Tasers. *See Pinard*, 467 F.3d at 770.

**B.    No Evidence of a Substantial Causal Relationship Between the Constitutionally Protected Activity and the Adverse Action**

Plaintiff has the burden of proving that there is a "substantial causal relationship between the constitutionally protected activity and the adverse action." *Blair*, 608 F.3d at 543. In support of this link, Plaintiff states: "James Cleavenger was subjected to significant adverse employment action, including loss of his job. The evidence supports a link between these adverse actions and the 2008 Taser speech." Pl's Response page 15. It is worth the time to look more closely at this "evidence" to which Plaintiff refers.

**1.    Loss of Job**

Plaintiff's first piece of evidence is his claim that "Sgt. Cameron used the Taser speech to consistently lobby for Plaintiff's termination, which he was eventually able to achieve through false pretenses." Pl's Response page 15. First off, there is no evidence in the record that Chief McDermed had any knowledge of Plaintiff's 2008 Taser speech when she made the decision to recommend Plaintiff's termination. To the contrary, Chief McDermed testified that she had no knowledge of the Taser speech until this lawsuit was filed. Coit Supp Dec, Ex. 19, McDermed Depo Vol. 3, 353:2-6. Nor is there any evidence in the record to support an allegation that Sgt. Cameron's feelings about Plaintiff's Taser speech played any, let alone a substantial, role in Chief McDermed's decision. Sgt. Cameron testified:

> Q. Let's talk about the actual termination process. What role, if any, did you have in that process?
>
> A. None --
>
> Q. Okay.
>
> A. -- that I'm aware of.

**Page 21 –    DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Q. Were you ever interviewed by anyone and asked your opinions, for example, about his -- how he was as an officer?

A. No.

Q. Do you know whose decision it was to terminate him?

A. No. I assume it's the chief's.

Coit Supp Dec, Ex. 20, Cameron Depo 161:11-23.  As explained in *Lakeside-Scott v. Multnomah Cnty.*, 556 F.3d 797 (9th Cir. 2009), unless the biased subordinate "had a pervasive influence" on the process that led to the adverse action or "participated directly" in the adverse action, the biased subordinate cannot be liable for the ultimate adverse action that occurred.

Plaintiff presents no evidence of a substantial link between his 2008 speech about Tasers and Chief McDermed's decision to recommend his termination.

**2.     Written Reprimand and Performance Evaluation**

Plaintiff's second piece of "evidence" of a substantial link is his statement that "the May 18, 2012, letter of reprimand, signed by Cameron, and the May 31, 2012 performance evaluation, authored by Cameron, were also motivated at least in part by Plaintiff's 2008 exercise of free speech." Pl's Response page 15.  Plaintiff cites to nothing in the record to support this alleged "motivation."[4]  Defendants have set forth in their Motion a non-discriminatory basis for the adverse actions.  In addition, Sgt. Cameron has affirmatively denied any connection between his feelings about Plaintiff and his job as his supervisor.

A. (Sgt. Cameron). Off the top of my head I don't remember exactly what the quote was, [from Plaintiff in 2008] but it was along the lines of something -- that "The only thing I'm more passionate about than cricket is making sure that the University of Oregon doesn't become a police department."

---

[4] Plaintiff's citations are to the documents themselves and Sgt. Cameron's deposition testimony confirming he wrote Plaintiff's evaluation.

Page 22 –    **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Q. Okay. Did either -- so were you, at that point, unhappy that someone with those opinions was planning on joining the department?

A. I think it was irrelevant at the time.

Q. It was irrelevant?

A. Yeah. My opinions on it were irrelevant. The chief said that we were going to hire him so we did.

Q. Do you still hold the same opinion that you did originally when you learned this information?

A. I think I was baffled but I don't think I was – we're a paramilitary organization and we do what we're told.

* * *

Q. Why was he given a letter of reprimand?

A. Again, in my mind, it was because he refused to accept what he did was a bad idea and then went so far as to blame everyone else for his actions. And it's dangerous. I can't stress enough how dangerous that is. That he ignored it completely is -- is concerning. I felt that had he just said, I understand. I'm still in the process of learning. I made a mistake. Even veteran officers make mistakes. It would have been a no deal. But he refused to see that, that we felt that a letter of reprimand to correct this action was a proper course.

Cameron Depo 44:4-18; 47:2-15;141:3-17.

Plaintiff had the burden in Response to come forward with something from which a jury could find a substantial link between the protected speech and the adverse actions. Plaintiff and his friends Hayles and Drake's unsupported opinions that Sgt. Cameron was "out to get" Plaintiff, in the face of the mountain of evidence showing the adverse actions were warranted, including being upheld at every grievance step and at arbitration, is insufficient to survive summary judgment as a matter of law. *See Crawford-El v. Britton*, 523 U.S. 574, 593, 118 S. Ct. 1584 (1998) (stating that, "with certain types of claims, proof of an improper motive is not

Page 23 –    **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

sufficient to establish a constitutional violation—there must also be evidence of causation," such as when protected speech is a "motivating factor" in an adverse employment decision).

### 3.    Sgt. Cameron's Statements

Sgt. Cameron's alleged statements that he did not agree with Plaintiff's 2008 speech or thought he should not have been hired do not, in and of themselves, constitutes adverse employment actions actionable on a First Amendment claim.  "It would be the height of irony, indeed, if mere speech, in response to speech, could constitute a First Amendment violation." *Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (9th Cir. 1998).

## C.    Conclusion to First Amendment Claim (Private Citizen)

### 1.    Plaintiff Cannot Meet the Elements of the Claim

Plaintiff cannot show that any action taken against him in 2012 would chill a person of ordinary firmness in Plaintiff's position from continuing to speak out on behalf of the UO student government against the UODPS arming itself with Tasers.  Such continuing conduct was not possible given the circumstances.

### 2.    No Causation

#### a.    Brian Caufield

Plaintiff makes no allegations against Caufield under this claim.  He is entitled to summary judgment.

#### b.    Lt. Lebrecht

Plaintiff presents to evidence or argument that Lt. Lebrecht either opposed his Taser speech or took adverse employment action against him in retaliation for the speech.  Lt. Lebrecht is entitled to summary judgment.

#### c.    Chief McDermed

Chief McDermed affirmatively denies any knowledge of the Taser speech when she took adverse actions against Plaintiff.  Plaintiff makes no allegations to the contrary or otherwise

suggests Chief McDermed retaliated against him based on his 2008 protected speech.  Chief
McDermed is entitled to summary judgment.

### d.    Sgt. Cameron

Plaintiff has failed to present any evidence from which a reasonable juror could find a
substantial link between his protected speech and an adverse action taken by Sgt. Cameron.  Sgt.
Cameron's expression of his opinion is not an adverse action.  Plaintiff's friends' opinions that
they thought Sgt. Cameron didn't like Plaintiff is not sufficient to withstand summary judgment
on the issue of causation.

### 3.    Qualified Immunity

The individual Defendants are entitled to qualified immunity on this claim.  It was
reasonable for Defendants to believe that, in 2012, Plaintiff could be disciplined for violating
department policies on unbecoming conduct and disparaging speech if he made a public speech
on behalf of the student government calling into question the abilities of his supervisors.  It was
not, therefore, clearly established in 2012 that adverse employment actions could chill a person
of ordinary firmness in Plaintiff's position from continuing to engage in speech that the person
no longer had the ability to engage in.

## III.    DUE PROCESS – LIBERTY INTEREST

### A.    No Public Disclosure

### 1.    Submission to District Attorney is Not Public Disclosure

Plaintiff ignores all of the case law cited in Defendants' motion establishing that
disclosures of information between public agencies are not public disclosures.  See *Wenger v.
Monroe*, 282 F.3d 1068 (9th Cir. 2002) (no public disclosure when stigmatizing information is
shared among branches of the military); *Millman v. Inglish*, 461 Fed. App'x 627 (9th Cir. 2011)
(notifying other public entities of stigmatizing information is not a public disclosure); *Reyes v.*

Page 25 –    **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT**

*City of Pico Rivera*, 370 Fed. App'x 844, 844 (9th Cir. 2010) (sharing a stigmatizing report with two city decision makers was not a public disclosure).

Instead, Plaintiff relies on *Cox v. Roskelley*, 359 F.3d 1105 (9th Cir. 2004) for the argument that (1) all documents created by a public body are public records; (2) all public records are subject to disclosure under the public records laws; (3) therefore UOPD's creation of the documents and the submission to the district attorney's office was a public disclosure. Pl's Response page 19. This argument lacks sense and misstates *Cox's* holding.

In *Cox*, a stigmatizing document was placed in the plaintiff's personnel file and was later disclosed pursuant to a public records request. *Cox* arises out the state of Washington, where public employee personnel files are subject to disclosure without exemption under the state's public records laws. *Cox* explained that the facts there differed from the facts in other disclosure cases because "in this case, the parties agreed, and argued in their briefs and during oral argument, that once the stigmatizing information was placed into Cox's personnel file, it became a public record under Washington law, mandating disclosure upon request." *Id.,* 359 F.3d at 1111. *Cox* identified the importance of this disclosure mandate, stating:

> We now hold explicitly that placement of the stigmatizing information in Cox's personnel file, in the face of a state statute mandating release upon request, constituted publication sufficient to trigger Cox's liberty interest under the Fourteenth Amendment.

*Id.*, at 1112.

Oregon has no such mandate. Under Oregon's public records laws, materials and documents supporting personnel discipline actions, and those actions themselves, are exempted from disclosure unless the public interest requires it. ORS 192.501(12). *See also* ORS 192.501(3) (exempting "[i]nvestigatory information compiled for criminal law purposes"); ORS 192.502(4) (exempting confidential information).

ORS 192.502(10) is also of note here. That provision exempts from disclosure information between public officers and public bodies in connection with the performance of the

Page 26 –   **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

duties of the recipient.  Here, District Attorney Alex Gardner has given unrefuted testimony that he asks law enforcement agencies to provide him possible Brady information so he can comply with his disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963).  "We tell them that we [district attorneys] have an obligation -- an ethical obligation to demand it, basically, and I typically also say that justice requires it.  And so I think law enforcement agencies understand that we're saying they have to produce it. . . . [L]aw enforcement leadership understands if they have this information they need to get it to the DA's office."  Coit Dec, Ex. 17, Gardner Depo 12:16-18; 85:6-17.  The information Chief McDermed provided was used by Gardner in furtherance of his responsibilities and obligations to criminal defendants and is exempt from disclosure under ORS 192.502(10).

Furthermore, as set forth in the arbitration award settlement agreement, none of Plaintiff's disciplinary information is maintained in a personnel file.  It is all secured in a confidential file that UO has agreed not to disclose unless compelled to do so by court order, or local, state or federal law.  Coit Supp Dec, Ex. 26.

*Cox* is inapposite here.  *Wegner, Millman* and *Reyes* control.  The sharing of information between public agencies is not a public disclosure.

## 2.    Plaintiff Publicly Disclosed the Information

It should also be noted that Plaintiff disclosed the contents of Lt. Morrow's internal affairs investigation, which constitutes the majority of the information submitted to the district attorney's office, in October 2013 when he filed this lawsuit.  See Complaint, Dkt. No. 1, e.g., ¶¶ 70-71.  Plaintiff also disclosed all of his disciplinary information to the Junction City Police Department prior to Defendants' submission to the district attorney.  Plaintiff testified:

> Q.  Junction City Police Department learned of your termination at
> U of O and conducted their own investigation?
>
> A.  That's correct.
>
> * * *

Page 27 –    **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Q. So what materials did they have available to them?

A. All the discipline letters, termination letters.

Q. Where did they get them?

A. From me.

Coit Supp Dec, Ex. 21, Cleavenger Depo 231:8-11, 232:1-6.

Defendants' cannot "disclose" information Plaintiff already made public.

**B.    Disclosure Was Not in Connection with Termination**

    **1.    Constructive Discharge**

Plaintiff argues he was constructively discharged after being awarded reinstatement rights in the arbitration award, thereby making the submission to the district attorney "in connection with termination."

"A constructive discharge occurs when, looking at the totality of the circumstances, a reasonable person in the employee's position would have felt that he was forced to quit because of intolerable and discriminatory working conditions." *Watson v. Nationwide Ins. Co*., 823 F.2d 360, 361 (9th Cir. 1987).  In support of this theory, Plaintiff cites to an email from Chief McDermed to her command staff in which she vents her frustration that Plaintiff was awarded reinstatement rights.  Plaintiff did not know about this internal email until it was produced to him by the undersigned on January 22, 2015 during the discovery phase of this lawsuit.  Coit Supp Dec ¶ 6.  Its existence could not have influenced his decision not to return to UOPD.

Plaintiff also argues that his previous position of public safety officer was being phased out of the police department at the time he made the decision to relinquish his reinstatement rights.  Plaintiff would have faced that same problem had he not been terminated in the first place. The arbitration award gave Plaintiff the right to be reinstated to his prior position of public safety officer.  That is what he was offered and that is was he declined.

Plaintiff also cites to an email from the undersigned shortly after the arbitration award in which it was stated that UO did not agree with the arbitration decision and was considering an

Page 28 –    **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

appeal.  Plaintiff claims this statement was a threat to try to block his reinstatement.  Pl's Response page 21, citing Ex. 23.  The quoted email between attorneys discussing a possible appeal is dated March 7, 2014.  An appeal was not pursued.  Rather, on April 7, 2014, the undersigned expressly acknowledged Plaintiff's decision to return to work, telling him to report for his first day on April 21, 2014.  This gave Plaintiff the two weeks he had requested so he could give notice to his current employer.  *See* Coit Dec, Ex. 6 ("Mr. Cleavenger can give a two week notice as requested, but is expected to report to the UOPD, specifically to Chief McDermed, on April 21, 2014, at 9:00 a.m.").  On April 18, the undersigned confirmed that UO planned to fully comply with the arbitration award and reinstate Plaintiff to his prior position of public safety officer.  *Id.*, Ex. 7.  A day or two later, Plaintiff formally declined reinstatement, choosing instead to resign effective the date he began working for the federal court.  Coit Dec ¶ 8.  UO's attorney's discussion of a possible appeal with the union attorney in March 2014 is not evidence of intolerable and discriminatory working conditions forcing this decision.

Plaintiff presents no other evidence in support of his constructive discharge claim.  It fails as a matter of law.

## 2. Relinquishment of Reinstatement Rights and Decision to Resign Were Effective on April 21, 2012

Plaintiff also makes a novel argument that he did not actually agree to resign and not return to work at UOPD until the written settlement agreement was signed on September 4, 2014.  His argument appears to be that because he did not sign the settlement agreement until September 4, 2014, all knowledge that came before that signature contributed to his decision to resign.  This argument ignores the basic concept of contract formation.  When parties agree on the essential terms of a contract and there is nothing left for future negotiations, the fact that they also intended there to be a future writing that expresses their agreement more formally does not affect the immediately binding nature of the agreement. *Britt v. Thorsen*, 258 Or. 135, 137, 481

P.2d 352 (1971). There was a binding settlement agreement long before July 24, 2014, the date Plaintiff was informed of the submission to the district attorney.

On or before April 21, 2014, Plaintiff's counsel informed the undersigned he would not return to work at UOPD on April 21, 2014, or anytime thereafter. Coit Dec ¶ 8. Counsel for Plaintiff and UO then began discussing the terms of the agreement that would settle the arbitration award. The essential terms were agreed on and the undersigned prepared a first draft of the written document and sent it to Plaintiff's counsel on May 7, 2014. Coit Supp Dec, Ex. 22. The terms in that first draft included: (1) Plaintiff's agreement to relinquish his reinstatement rights and resign, effective June 14, 2013; (2) Plaintiff's agreement never to apply for employment at UOPD in the future; (3) Employer's [UO] agreement to pay full back pay through the date of resignation, June 14, 2013; (4) Employer's agreement to segregate Plaintiff's disciplinary records into a confidential file; and, (5) Employer's agreement to provide a neutral reference. *Id.,* page 3.

On May 22, Plaintiff's attorney responded to the undersigned with some requested changes to the language of the agreement. The essential terms were not modified. Coit Supp Dec, Ex. 23. On June 4, 2014, **Plaintiff himself** sent the undersigned and his attorney an email, attaching to it **his** revised form of the settlement agreement. The essential terms noted above remained the same. Coit Supp Dec, Ex. 24, page 3.

Thereafter the undersigned, Plaintiff and his counsel exchanged several more drafts of the settlement agreement for consideration. The two issues of contention were the correct totals for the back pay award and the exact wording of term 3(b), which was Employer's agreement to segregate Plaintiff's disciplinary files. *See* Coit Supp Dec, Ex 25. As the email exchanges demonstrate, the essential term of the agreement to segregate did not change; the discussion revolved around the process of segregation and details for ensuring the material remained confidential. On June 11, Plaintiff sent the undersigned another draft settlement agreement,

Page 30 –    **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

making additional changes to term 3(b).  With this draft, Plaintiff also sent a draft of his resignation letter, resigning his employment with UOPD effective June 14, 2013.  *Id,* pages 10-16.  The signed resignation letter is identical to the draft Plaintiff submitted on June 11.  *See* Coit Dec, Ex. 4.  On July 8, the undersigned sent a proposed final version of the settlement agreement to Plaintiff and his counsel for signature.  Coit Supp Dec, Ex 25, pages 17-20.  On July 9, 2014, Plaintiff responded with some edits to the dollar amounts of the back pay award and to correct a typo.  The essential terms remain the same.  *Id*, pages 21-22.

On July 23, 2014, the undersigned sent Plaintiff another proposed final draft of the settlement agreement for signature.  The essential terms remained the same as they existed in the June 4, 2014 version prepared by Plaintiff.  *Id,* pages 23-27.  That same date, Plaintiff acknowledged he was ready to sign the settlement agreement. *Id,* pages 28-29.

On July 24, 2014, the undersigned informed Plaintiff and his counsel that she had just become aware that UOPD had submitted some of the information within the scope of term 3B to the district attorney.  Therefore a revision to that term was needed.  *Id,* pages 30-33.  Plaintiff responded that same date, asking questions about the documents submitted to the district attorney and indicating he had no previous knowledge of the submission.  *Id*, page 34.  Plaintiff agreed to modify the language to Term 3B to take into account the recent submission.  After some final discussions about tax withholdings and interest from the back pay calculation, the final settlement agreement was circulated for signature.  *Id,* pages 35-39.  Plaintiff signed the settlement agreement on September 4, 2014.  Coit Supp Dec, Ex. 26.  The essential terms are consistent with those set forth in the first draft of the agreement circulated on May 7, 2014.  Terms 1 and 2, setting forth Plaintiff's decision to resign and agreement never to apply for employment with UOPD in the future are identical in the first and last versions of the settlement agreement.  Coit Supp Dec, Exs. 22, 26.

Page 31 –    **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Plaintiff entered into a binding settlement agreement no later than April 21, 2014.  In that agreement, Plaintiff agreed to relinquish his reinstatement rights, to submit a letter of resignation effective June 14, 2013, and to never apply for employment with UOPD in the future.  Coit Supp Dec Exs. 22, 24, 26.  Plaintiff made this decision with the assistance of counsel and without any knowledge of the May 10, 2014 email from Chief McDermed to her command staff, or of the June 17, 2014 submission of information to the district attorney.

## C.    Conclusion to Due Process Claim (Liberty Interest)

### 1.    Plaintiff Cannot Meet the Elements of the Claim

Defendants are entitled to summary judgment because the unrefuted facts in the record establish as a matter of law that they did not make a public disclosure and they did not make stigmatizing statements in connection with Plaintiff's termination.

### 2.    No Causation

#### a.    Brian Caufield and Sgt. Cameron

Plaintiff concedes Sgt. Cameron and Caufield are entitled to summary judgment on both of his Due Process claims because there is no evidence they played any role in the decision to submit information to the district attorney.

#### b.    Lt. Lebrecht

Lt. Lebrecht is also entitled to summary judgment on this claim because there is no evidence he played a role in the decision to submit information to the district attorney.

It remains unrefuted that Chief McDermed was the sole decision maker on the issue of preparing and submitting material for the district attorney's review.  She testified that she instructed Lt. Lebrecht to proceed with the submission over his voiced concern that doing so would be portrayed in this lawsuit as retaliation.  Despite this, Plaintiff argues Lt. Lebrecht is not entitled to dismissal based on lack of causation solely because he was the person Chief

Page 32 –    **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

McDermed tasked with putting the information together and delivering it to the district attorney. Pl's Response page 19.

To establish personal liability in a § 1983 action, the plaintiff must show that the official, acting under state law, caused the deprivation of a federal right. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Lt. Lebrecht simply followed the instruction of his Chief to gather information and deliver it to the appropriate person. McDermed Dec ¶ 26; Lebrecht Dec ¶13. He did this despite his personal reservations on the issue. *Id.* Chief McDermed could have had her administrative assistant accomplish this same task. The cause of the harm, if harm occurred, was the decision and instruction to do the act, not the act itself.

### c.   Chief McDermed

In addition to the reasons set forth above, Chief McDermed is also entitled to summary judgment on the issue of causation because Plaintiff has failed to show how the submission to the district attorney caused him harm. *See Monico,* No. 03:13-CV-02129-HZ, 2015 WL 1538786, at *3 (finding no adverse action when employee failed to show how placement on a Brady list had caused him actual harm.). Plaintiff has not lost his job as either a federal clerk or a reserve officer, despite allegedly being on a Brady list. None of his cases have been refused for prosecution. He has not alleged that he has been denied any employment because of this listing. There can be no recovery absent a showing of harm suffered.

### 3.   Qualified Immunity

Under case law existing in June 2014, it was not clearly established that a public agency's sharing of information with another public agency constituted a public disclosure. To the contrary, all case law with the exception of *Cox* held that such disclosures were not public. *Cox* is inapplicable here. There was nothing to put Lt. Lebrecht and Chief McDermed on notice that the submission of information to the district attorney for a confidential Brady review constituted a public disclosure of the information.

Page 33 –   **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Furthermore, the case law in June 2014 was clear that due process safeguards came into play only when the public disclosure of stigmatizing information was made in connection with an employee's termination.  Here, the unrefuted facts show Plaintiff made the independent and voluntary decision, with the advice of counsel, to relinquish his reinstatement rights and resign from employment with UOPD well before the submission was made to the district attorney.  Chief McDermed knew on or around April 21, 2012, that Plaintiff was not returning to work at UOPD, then or ever.  McDermed Dec ¶ 23

## IV.    DUE PROCESS – SUBSTANTIVE DUE PROCESS CLAIM

**A.    No Evidence of a Deprivation of Liberty**

**1.    Plaintiff Remains in his "Chosen Profession"**

Defendants move for summary judgment on this claim on the basis Plaintiff cannot show a deprivation of liberty because he continues in his employment as a reserve officer and a federal law clerk.  In response, Plaintiff argues his substantive due process rights have been violated because he really hoped to be a paid police officer someday.  "Plaintiff wanted a law enforcement career, not the ability to volunteer [as a reserve officer for the City of Coburg]." Pl's Response page 24.  Plaintiff's career aspirations are irrelevant to the substantive due process analysis.

A substantive due process claim for occupational liberty is limited to extreme cases and protects only the plaintiff's ability to continue in his actual profession.  "We limit the claim to extreme cases, such as a government blacklist, which when circulated or otherwise publicized to prospective employers effectively excludes the blacklisted individual *from his occupation*, much as if the government had yanked the license of an individual in an occupation that requires licensure."  *Enquist v. Or. Dept. of Agric.*, 478 F.3d 985, 997-8 (9th Cir. 2007) (emphasis added).  Merely showing that the defendants' "stigmatizing conduct has some adverse effect on [his] job prospects" is not enough; "instead, the employee must show that the stigmatizing actions make it

virtually impossible for the employee to find new employment in his chosen field." *Engquist*, 478 F.3d at 998.

When Chief McDermed made the disclosure to the district attorney that Plaintiff claims violated his substantive due process rights, Plaintiff was an unpaid reserve police officer for the City of Coburg and he was a federal law clerk.  Plaintiff remains in those positions today.  Coit Dec ¶¶ 18, 19, Ex. 11.  In fact, Plaintiff just received a promotion from the federal courts.  Coit Supp Dec Ex. 27.  Plaintiff has not been blacklisted from his occupations.

Plaintiff argues his status as a Brady officer may prevent him from being hired as a full time paid police officer sometime in the future.  But the fact is, Plaintiff has never been hired as a full time paid police officer.  The jury would have to take quite an impermissible leap to conclude that anything Defendants did has impacted his future employment prospects.

Plaintiff was a reserve police officer for Junction City, Oregon, from January 2010 through March 2013.  In March 2013, he obtained his current position as a reserve officer for Coburg, Oregon.  Plaintiff applied for a paid officer position in Junction City in March 2012 (while also employed full time at UOPD), but he did not get the job.  Prior to that, Plaintiff had also unsuccessfully applied for paid officer positions in Milwaukie, Oregon (March 2010); White Salmon, Washington (January 2010); Canby, Oregon (June 2010); Ashland, Oregon (January 2012).  Coit Supp Dec, Ex 18, pages 10-13.  According to Plaintiff's ex-wife Chelsea Brandenburg, Plaintiff applied for several police officer positions prior to getting the job as a public safety officer with UO.  Ms. Brandenburg testified:

> Q. Do you know if Mr. Cleavenger tried to become a police officer anywhere other than Junction City?
>
> A. Yes.
>
> Q. Where else?
>
> A. Too many to count. I mean, I don't even know all the places. All over.

Page 35 –    **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Coit Supp Dec, Ex. 29, Brandenburg Depo 32:11-17.

A similar claim was recently rejected by this court in *Boyd v. Edwards*, No. 6:15-CV-238-MC, 2015 WL 3407890, at *2-3 (D. Or. May 27, 2015).  In that case, Oregon State Police Officer Mark Boyd filed suit against several individual OSP supervisors, claiming retaliation for his whistleblowing and other activities.  Among other claims, Boyd asserted a substantive due process claim on the basis that stigmatizing information from the defendants violated his occupational liberty interest.  On a motion to dismiss, this court found that Boyd's substantive due process claim was barred as a matter of law because he was still employed in the position he had held at the time of the allegedly constitutionally offending conduct.  The court explained:

> Boyd is still employed as an OSP officer, so he cannot meet the extremely high bar to make out a substantive due process violation.

*Id.*, *3.

Plaintiff's reliance on *Braswell v. Shoreline*, 622 F.3d 1099 (9th Cir. 2010) is not helpful.  In *Braswell*, the plaintiff, a paramedic, operated under the medical license of a specific doctor.  Based on information provided by Shoreline, the plaintiff's employer, the doctor revoked the plaintiff's ability to practice as a paramedic under his license.  The revocation of the license precluded the plaintiff from continuing in his position at Shoreline and led, the court decided, to a triable issue of fact on whether or not the revocation "made it virtually impossible" to "ever finding other employment in his field [paramedicine]."  *Id.,* 622 F.3d at 1101-1103.

There is no similar triable issue in this case.  Plaintiff remains in his positions as a reserve officer and a federal law clerk.  Defendants' conduct has not deprived him of liberty as a matter of law.

### 2.    The District Attorney Made the Allegedly Depriving Decision

Plaintiff's substantive due process claim is premised on the idea that he has been "Brady listed" and therefore may not be able to find a job as a full time paid police officer.  Plaintiff cites his former co-worker for his argument that "an applicant who had been Brady listed would

Page 36 –    **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

be virtually unhirable (sic) as a police officer." Pl's Response page 24.   The government

conduct Plaintiff claims deprived him of his liberty interest is Gardner's decision that Plaintiff

has Brady information, not the submission of information for Gardner's consideration.

Defendants only submitted information.   The harm Plaintiff claims did not result from their

conduct. *See Monico*, No. 03:13-CV-02129-HZ, 2015 WL 1538786 *13.

**B.      Defendants' Conduct was Not Arbitrary or Conscious-Shocking**

Plaintiff argues Chief McDermed's decision to submit information to the district attorney

was arbitrary and lacked a rational basis because she had an evil motive.  In sum, Plaintiff

appears to believe that Chief McDermed did not want him back at the department, so she

submitted the information to the district attorney to prevent his return.   Because of this possible

evil motive, Plaintiff argues, there is a triable issue as to whether Defendants' conduct was

arbitrary.  While Defendants' certainly deny any such mal-intent by Chief McDermed, the

allegations themselves are immaterial to the inquiry; they do not create a triable issue of fact.

First off, Defendants have demonstrated in their Motion for Summary Judgment that

Chief McDermed's decision to submit material about Plaintiff to the district attorney was

objectively reasonable based on all the facts known to her at the time.   Motion for Summary

Judgment pages 38-40.  The district attorney himself testified that he asked UOPD Captain

Deshpande to submit the information to him.  Coit Dec, Ex. 17, Gardner Depo 39:11-25, 40. As

explained in *Moreland v. Las Vegas Metropolitan Police Dept.*, 159 F.3d 365, 371 n.4 (9th Cir.

1998), "if defendants' actions were objectively reasonable, it follows that [their] conduct did not

offend the more stringent standard applicable to substantive due process claims."  Plaintiff

presents nothing calling into question the objective reasonableness of Chief McDermed's

conduct in submitting possible Brady information to the district attorney.  The fact the district

attorney has made the preliminary determination that the information does, in fact, raise Brady

concerns, solidifies the conclusion that turning this information over to him was reasonable.

Page 37 –    **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR
              SUMMARY JUDGMENT**

In light of this, Chief McDermed's motive is irrelevant.  Defendants point out, though, that on April 21, 2014, almost two months prior to the submission to the district attorney, Chief McDermed knew Plaintiff had chosen to relinquish his reinstatement rights and never apply for employment at UOPD in the future.  McDermed Dec ¶ 23; Coit Supp Dec, Ex. 24.

## C.    Conclusion To Substantive Due Process

### 1.    Plaintiff Cannot Meet the Elements of the Claim

Plaintiff was and remains employed in his profession as a reserve officer and a federal law clerk.  Plaintiff also presents no evidence to refute the conclusion that, based on the facts known to her at the time, Chief McDermed's decision to submit information concerning Plaintiff's credibility to the district attorney's office was objectively reasonable.  Plaintiff's substantive due process claim fails as a matter of law.

### 2.    Causation of Harm

The individual Defendants are entitled to summary judgment in this claim for the same reasons as set forth in Claim III, above.

### 3.    Qualified Immunity

The individual defendants are entitled to qualified immunity.  It was not clearly established in June 2014 that an occupational liberty interest encompassed all occupations the plaintiff may wish to pursue at any time in his life.  It was also not clearly established that providing credibility-related information to a district attorney, information the district attorney independently found rose to the level of Brady concerns, was arbitrary conduct, shocking to the conscience.

## V.    CONCLUSION

For the reasons set forth in Defendants' Motion for Summary Judgment and above, Defendants are entitled to judgment as a matter of law on all of the claims asserted against them

in this lawsuit.  This case should be dismissed.

DATED this 21st day of July, 2015.

HARRANG LONG GARY RUDNICK P.C.


By: s/ Andrea D. Coit
    Andrea D. Coit, OSB #002640
    Jonathan M. Hood, OSB #133872
    Attorneys for Defendants

## CERTIFICATE OF SERVICE

I certify that on July 21, 2015, I served or caused to be served a true and complete copy of the foregoing **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** on the party or parties listed below as follows:

- ☑ Via CM / ECF Filing
- ☐ Via First Class Mail, Postage Prepaid
- ☐ Via Email
- ☐ Via Personal Delivery

Mark McDougal
Gregory Kafoury
Jason Kafoury
Grand Stable & Carriage Building
411 SW Second Avenue, Suite 200
Portland, OR 97204
  Attorneys for Plaintiff

                           HARRANG LONG GARY RUDNICK P.C.


                        By: s/ Andrea D. Coit
                             Andrea D. Coit, OSB #002640
                             Jonathan M. Hood, OSB #133872
                             Attorneys for Defendants

00726198.v1

**CERTIFICATE OF SERVICE**