**Jason L. Kafoury (OSB #091200)**
**Mark McDougal (OSB #890869)**
**Kafoury & McDougal**
**411 SW Second Avenue, Suite 200**
**Portland, OR 97204**
**(503) 224-2647**
**Fax: (503) 224-2673**
**jkafoury@kafourymcdougal.com**
**mcdougal@kafourymcdougal.com**
**Attorneys for Plaintiff**

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

Eugene Division

| | |
|---|---|
| JAMES M. CLEAVENGER,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSITY OF OREGON (an Agency and Instrumentality of the State of Oregon), et al.,<br><br>Defendants. | Case No.  6:13-cv-01908-DOC<br><br>**PLAINTIFF'S WITNESS LIST AND WITNESS STATEMENTS** |

# WITNESS LIST

Plaintiff may call some or all of the following witnesses at trial.  Many of the following witnesses may only be used for impeachment witnesses, but Plaintiff reserves the right to call additional impeachment if necessary.

For the purposes of this list, "UODPS" and "UOPD" have been used interchangeably.

Plaintiff's witnesses:

    A.       Defendant Chief Carolyn McDermed (Video/Live, 2 hours)

    B.       Defendant Lt. Brandon Lebrecht (Video/Live, 2.5 hours)

    C.       Defendant Former Sgt. Scott Cameron (Video/live, 1.5 hours)

    D.       Former Lt. Mike Morrow (Video, 30 minutes)

    E.       Lt. Andy Bechdolt (Video, 20 minutes)

    F.       Officer Eric LeRoy (Video, 30 minutes)

    G.       Officer Jared Davis (Video, 20 minutes)

    H.       Officer Zach Hermens (Video/Live, 30 minutes)

    I.       Officer Kent Abbott (Video/Live, 20 minutes)

    J.       Officer Larry Black (20 minutes)

    K.       Officer Royce Myers (20 minutes)

    L.       Brian Caufield (Video, 30 minutes)

    M.       Ryan Hagemann (Video, 10 minutes)

    N.       Randy Wardlow (Video, 20 minutes)

    O.       Linda King (Video, 15 minutes)

    P.       Plaintiff James Cleavenger (Video/Live, 3.5 hours)

    Q.       Former Lt. Casey Boyd (1.5 hours)

    R.       Former Officer Sean Brathwaite (15 minutes)

    S.       Former Officer Chris Waggoner  (15 minutes)

    T.       Former Officer Amanda Hayles (45 minutes)

    U.       Former Officer & Dispatcher Elizabeth Nix

    V.       Dispatcher and Former Ofc. Michael Drake (1 hour)

    W.       Chief Larry Larson (15 minutes)

X.          Officer Ken Jackson (20 minutes)

Y.          Officer Corey Mertz (45 minutes)

Z.          Sgt. Eric Markell (15 minutes)

AA.         Fmr. Police Sgt./current Fire Chief Brandon Nicol (20 minutes)

BB.         Fmr. Sgt. John Thornburg (15 minutes)

CC.         Officer Brian Patterson (20 minutes)

DD.         Dispatcher Myrria Jones (15 minutes)

EE.         Dispatcher April Hogan (15 minutes)

FF.         SEIU Chief Steward John Ahlen (45 minutes)

GG.         Former SEIU Chief Steward Donna Laue (30 minutes)

HH.         Former SEIU MRC Organizer Sean Brailey (30 minutes)

II.         John Hoffmann (10 minutes)

JJ.         Daniel Pearce (10 minutes)

KK.         Dave Villalobos (15 minutes)

LL.         Chelsea Brandenburg (20 minutes)

MM.         Timothy Ranger (15 minutes)

NN.         Michael Cleavenger (30 minutes)

OO.         Defense Counsel Andrea Coit (30 minutes)


The estimates for plaintiff's witnesses are for direct examination.

# WITNESS STATEMENTS

A. **Defendant UOPD Chief Carolyn McDermed**.  She will testify as to her interactions with plaintiff, other UOPD supervisors, UofO HR staff, JCPD employees, and the Lane County District Attorneys Office.  She will be questioned about her response to the arbitrator's decision, her decision to discipline and terminate plaintiff, her decision to reassign plaintiff, her decision to investigate plaintiff, plaintiff's training requests, the decision to try to Brady List plaintiff, when she first learned of the Brady requirements, participation in the arbitration process, violations of the Clery Act and other state and federal laws.  This description of testimony will be supplemented later by designations of portions of her deposition transcripts.

B. **Defendant UOPD Lt. Brandon Lebrecht**.  He will testify as to his interactions with plaintiff, other UOPD supervisors, UofO HR staff, JCPD employees, and the Lane County District Attorneys Office.  He will be questioned about the department's response to the arbitrator's decision, his role in the decision to discipline and terminate plaintiff, the decision to reassign plaintiff, the decision to investigate plaintiff, his investigation of plaintiff, plaintiff's training requests, the plaintiff's evaluations, the decision to try to Brady List plaintiff, participation in the arbitration process, violations of the Clery Act and other state and federal laws.  This description of testimony will be supplemented later by designations of portions of the witness's deposition transcripts.

C. **Defendant Former UOPD Sgt. Scott Cameron.**  He will testify as to his interactions with plaintiff, other UOPD supervisors, UofO HR staff.  He will be questioned about the department's response to the arbitrator's decision, his role in the decision to terminate plaintiff, the decision to reassign plaintiff, the decision to investigate plaintiff, his

investigation of plaintiff, the plaintiff's evaluations, his reaction and opinions regarding plaintiff's prior speech on Tasers, participation in the arbitration process, plaintiff's training requests, the decision to try to Brady List plaintiff, violations of the Clery Act and other state and federal laws, and the reasons behind his own recent constructive termination from UOPD.  This description of testimony will be supplemented later by designations of portions of the witness's deposition transcripts.

D. **Former UOPD Lt. Mike Morrow**.  He will testify as to his interactions with plaintiff, other UOPD supervisors, and UofO HR staff.  He will be asked about his role in the decision to discipline and terminate plaintiff, the decision to reassign plaintiff, the decision to investigate plaintiff, his investigation of plaintiff, plaintiff's training requests, participation in the arbitration process, violations of the Clery Act and other state and federal laws.  This description of testimony will be supplemented later by designations of portions of the witness's deposition transcripts.

E. **UOPD Lt. Andy Bechdolt**.   He will testify as to his interactions with plaintiff, other UOPD supervisors, and UofO HR staff.  He will be asked about his role in the decision to discipline and terminate plaintiff, the decision to reassign plaintiff, the decision to investigate plaintiff, the decision to attempt to Brady List the plaintiff, his investigation of plaintiff, participation in the arbitration process, violations of the Clery Act and other state and federal laws.  This description of testimony will be supplemented later by designations of portions of the witness's deposition transcripts.

F. **UOPD Officer Eric LeRoy**.  He will testify as to his interactions with plaintiff, UOPD supervisors, and UofO HR staff.  He will be asked about his participation in the creation and title of the "Bowl of Dicks List," waste of department resources, the incident at

Spencer View on 4/1/12, his involvement in investigations of the plaintiff by UOPD
supervisors, his recent promotion from the position of Public Safety Officer to Police
Officer, his own disciplinary record, and the anonymous letter postmarked 8/21/14
regarding allegations of his untruthfulness sent to the Lane County DA and the UofO
President.

G.  **UOPD Officer Jared Davis**.  He will testify as to his interactions with plaintiff, UOPD
supervisors, and UofO HR staff.  He will be asked about his participation in the incidents
involving the interaction with Dean Commissiong on 4/1/12, the Spencer View
Apartments incident on 4/1/12, his annual evaluations, his recent promotion from the
position of Public Safety Officer to Police Officer, and his involvement in investigations
of the plaintiff by UOPD supervisors.

H.  **UOPD Officer Zach Hermens**.  He currently works as an officer for UOPD.  He will
give his background and state that he worked with plaintiff during plaintiff's entire tenure
at UOPD from 2010-2012.  He will testify as to his interactions with plaintiff, UOPD
supervisors, and UofO HR staff.  He will be asked about waste of department resources,
the incident at Spencer View on 4/1/12, his previous involvement at similar incidents at
the same location, the "woman with a gun" incident on 5/6/12, his involvement in
investigations of the plaintiff by UOPD supervisors, his disciplinary record, his annual
investigations, his participation in the BOLI investigations of former Sgt. Scott Cameron,
his recent promotion from the position of Public Safety Officer to Police Officer.

I.  **UOPD Officer Kent Abbott**.  He currently works as Public Safety Officer for UOPD.
He will give his background and state that he worked with plaintiff during plaintiff's
entire tenure at UOPD from 2010-2012.  He will testify as to his interactions with

plaintiff, UOPD supervisors, SEIU ("Union") officials, and UofO HR staff.  He will be asked about his decision to retire from UOPD, his involvement in prior BOLI investigations, the "Bowl of Dicks List," and his decision to burn all of his Field Notebooks despite this being prohibited by department policy and Tort Claim Notices in multiple cases.

J.  **UOPD Officer Larry Black**.  He currently works as an officer for UOPD.  He will give his background and state that he worked with plaintiff during plaintiff's entire tenure at UOPD from 2010-2012.  He will state that plaintiff was a competent, honest, professional, and unbiased officer, and did not display poor judgment, deficient officer safety skills, or lack of veracity as defendants claim.  He will state that defendant Cameron told other officers about plaintiff's 2008 pre-employment speeches regarding Tasers, and that Cameron expressed his belief that plaintiff should not have been hired and should not remain in the department because of this.  He will also be asked about the "Bowl of Dicks List," his involvement in investigations of the plaintiff by UOPD supervisors and defense counsel, and other forms of disparate treatment he's observed.

K.  **UOPD Officer Royce Myers**.  He currently works as an officer for UOPD.  He will give his background and state that he worked with plaintiff during plaintiff's entire tenure at UOPD from 2010-2012.  He will state that plaintiff was a competent, honest, professional, and unbiased officer, and did not display poor judgment, deficient officer safety skills, or lack of veracity as defendants claim.  He will give his background and state that he is familiar with the department's culture, and past practices and procedures.  He will state that plaintiff has been subject to disparate treatment based on his prior knowledge.  He will provide testimony supporting why punitive damages are justified

due to the department's continuous and unchecked retaliatory conduct of subjecting

employees to adverse employment actions including termination for attempting to

complain or disclose matters of pubic concern.  He will also describe the department's

training standards and training requests process.

L.  **Brian Caufield.**  Former Oregon University System (OUS) Associate General Counsel

for Labor and Employment, acting as an agent of the UofO while in the role of a

grievance hearing officer.  He will be asked about the documents and materials plaintiff

tried to present to him as evidence of misconduct and matters of public concern during

and after the grievance hearing.  This description of testimony will be supplemented later

by designations of portions of the witness's deposition transcripts.

M.  **Ryan Hagemann**.  Former Oregon University System (OUS) Associate General Counsel

for Labor and Employment, acting as an agent of the UofO while in the role of a

grievance hearing officer.  He will be asked about the documents and materials plaintiff

tried to present to him as evidence of misconduct and matters of public concern during

and after the grievance hearing.  This description of testimony will be supplemented later

by designations of portions of the witness's deposition transcripts.

N.  **Randy Wardlow**.  Former UO HR Assistant Director.  He will be asked about his

involvement in plaintiff's discipline, annual evaluation, and termination.  This description

of testimony will be supplemented later by designations of portions of the witness's

deposition transcripts.

O.  **Linda King**.  Former UofO HR Director.  She will be asked about her involvement in

plaintiff's termination and plaintiff's disclosure of matters of public concern to her.  This

description of testimony will be supplemented later by designations of portions of the witness's deposition transcripts.

P.  **Plaintiff James Cleavenger.**  Will testify as to all the pertinent claims and allegations found in the complaint and his depositions.

Q.  **Former UOPD Lt. Casey Boyd.**  She will give her background and state that she was one of plaintiff's supervisors when plaintiff worked at UOPD.  She will state that plaintiff was a competent, honest, professional, and unbiased officer, and did not display poor judgment, deficient officer safety skills, or lack of veracity as defendants claim.  She will state that defendant Cameron told other officers about plaintiff's 2008 pre-employment speeches regarding Tasers, and that Cameron expressed his belief that plaintiff should not have been hired and should not remain in the department because of this.  She will state that she used to share an office with Lebrecht and overheard him and Cameron planning to try to *find* reasons to fire plaintiff because they did not like him and wanted him gone. She will state that it was common practice in the department to do this and that she herself was tasked with doing this.  She will also testify to Lebrecht loving to "motherfuck" people he did not like him or he thought had complained about him. She will also state that she warned Chief McDermed of inappropriate conversations she overheard during defendant Lt. Lebrecht's shift briefings, but McDermed failed to investigate those claims.  She will state that these conversations later revealed to be related to the "Bowl of Dicks List."  She will state that she made similar complaints about former Lt. Mike Morrow, but they were also ignored.  She will state she also made her complaints to Jamie Moffitt's office but they were ignored there as well.  She will also state that she was the author of the "Computer Use Memo" that defendants claim

plaintiff breached and submitted to the Lane County DA years later.  She will state that

based on her understanding of the purpose of her own memo, plaintiff did not actually

break the policy.  She will state that she decided to quit UOPD as opposed to having to

work under defendant Lebrecht.

R.    **Former UOPD Officer Sean Brathwaite.**  He previously worked with plaintiff at

UOPD and also at Coburg PD.  He will give his background and state that he worked

with plaintiff during plaintiff's entire tenure at UOPD from 2010-2012.  He will state that

plaintiff was a competent, honest, professional, and unbiased officer, and did not display

poor judgment, deficient officer safety skills, or lack of veracity as defendants claim.  He

will state that defendant Cameron told other officers about plaintiff's 2008 pre-

employment speeches regarding Tasers, and that Cameron expressed his belief that

plaintiff should not have been hired and should not remain in the department because of

this.

S.    **Former UOPD Officer Chris Waggoner.**  He previously worked with plaintiff at

UOPD and now works for the Linn County Sheriff's Department.  He will testify about

his interactions with plaintiff and his participation in the defendants' investigations of

plaintiff.  He will state that defendant Cameron told other officers about plaintiff's 2008

pre-employment speeches regarding Tasers, and that Cameron expressed his belief that

plaintiff should not have been hired and should not remain in the department because of

this.  He will also be asked about the "Bowl of Dicks List," his involvement in

investigations of the plaintiff by UOPD supervisors, and other forms of disparate

treatment he's observed.

T. **Former UOPD Officer Amanda Hayles**.  She previously worked with plaintiff at UOPD before she quit on her own accord.  She will testify to receiving retaliatory threats from UOPD supervisors if she made complaints similar to plaintiff's after plaintiff was fired.  She will also testify about her own BOLI complaint and lawsuit against former Sgt. Scott Cameron and UOPD and similar BOLI and internal complaints involving other female officers.  She will also be asked about the incident on 9/10/12 involving plaintiff, herself, and Zach Hermens.

U. **Former UODPS Officer & Dispatcher Elizabeth Nix**.

She worked for UODPS from 2000-2010, before leaving to work in another UofO department from 2010 to 2015.  She will give her background and state that she is familiar with the department's culture, and past practices and procedures.  She will state that plaintiff has been subject to disparate treatment based on her past knowledge.  She will provide testimony supporting why punitive damages are justified due to the department's continuous and unchecked retaliatory conduct of subjecting employees to adverse employment actions including termination after they attempt to disclose matters of pubic concern.  She will also authenticate the "Joint Statement of Support by Former UODPS Officers" letter.

V. **UOPD Dispatcher (and Former Officer) Michael Drake**.  He will give his background and state that he was one of plaintiff's Field Training Officers.  He will state plaintiff excelled during FTEP and received positive evaluations by all of his training officers.  He will state that he became the target of retaliation for supporting plaintiff after he plaintiff was terminated.  He will further testify as to being threatened with retaliation to include termination, after his deposition testimony was taken in this case.  He will also testify as

to observing plaintiff being subject to retaliation, disparate treatment, etc. He will state

that defendant Cameron told other officers about plaintiff's 2008 pre-employment

speeches regarding Tasers, and that Cameron expressed his belief that plaintiff should not

have been hired and should not remain in the department because of this.  He will also be

asked about the "Bowl of Dicks List," his involvement in investigations of the plaintiff

by UOPD supervisors, and other forms of disparate treatment he's observed.

W. **Coburg Police Chief Larry Larson**.

He is plaintiff's current supervisor at the Coburg Police Department (CPD).  He will give

his background and describe plaintiff's performance as a reserve police officer for CPD

from 2013 to the present. He will confirm that plaintiff has achieved the highest level of

"Solo" reserve officer and that he also selected plaintiff to become a DPSST certified

"Field Training Officer" (FTO), responsible to training new officers.  He will state that

plaintiff has been a competent, honest, professional, and unbiased officer, and does not

display poor judgment, deficient officer safety skills, or lack of veracity as defendants

claim.  He will also state that despite plaintiff's excellent performance for the department,

he has concerns regarding plaintiff's ability to continue his volunteer employment with

the department due to the "Brady List" issue.  He will also describe the general

ramifications being "Brady Listed" has on any police officer applicant's future job

prospects and career.

X. **Current JCPD Officer (and former UOPD Officer) Ken Jackson**.

He currently works as a police officer for the Junction City Police Department (JCPD).

He also previously worked as a Public Safety Officer for UODPS from 2008-2009,

before taking his current position with JCPD.   He will give his background and state that

he worked with plaintiff during plaintiff's entire tenure at JCPD from 2010-2013.  He
will state that plaintiff was a competent, honest, professional, and unbiased officer, and
did not display poor judgment, deficient officer safety skills, or lack of veracity as
defendants claim.  He will also provide testimony regarding his prior experience working
at UODPS and why he decided to leave.

Y.  **JCPD Officer Corey Mertz**.  He currently works as a police officer for the Junction City
Police Department (JCPD).  He will give his background and state that he worked with
plaintiff during plaintiff's entire tenure at JCPD from 2010-2013 and was plaintiff's
primary Field Training Officer and the former Reserve Coordinator.  He will state that
plaintiff was a competent, honest, professional, and unbiased officer, and did not display
poor judgment, deficient officer safety skills, or lack of veracity as defendants claim.  He
will also authenticate the letter sent signed by JCPD officers to the Lane County DA in
response to the Brady List allegations.  He will also describe the ramifications being
"Brady Listed" has on a law enforcement officer's career.  He will also testify that
aspects of plaintiff's UOPD discipline (letters of clarification, reprimand, termination,
etc.) were unwarranted based on his knowledge and experience of standard law
enforcement policies, practices, and procedures.  He will also describe his observations of
the detrimental impact the defendant's termination of plaintiff has had on plaintiff's
overall wellbeing.

Z.  **JCPD Sgt. Eric Markell**.  He currently works as a Sergeant for the Junction City Police
Department (JCPD) and also previously served as the department's Acting Police Chief.
He will give his background and state that he worked with plaintiff during plaintiff's
entire tenure at JCPD from 2010-2013 and was the former Reserve Coordinator.  He will

state that plaintiff was a competent, honest, professional, and unbiased officer, and did not display poor judgment, deficient officer safety skills, or lack of veracity as defendants claim. He will also authenticate the letter sent signed by JCPD officers to the Lane County DA in response to the Brady List allegations. He will also describe the ramifications being "Brady Listed" has on a law enforcement officer's career. He will also testify that aspects of plaintiff's UOPD discipline (letters of clarification, reprimand, termination, etc.) were unwarranted based on his knowledge and experience of standard law enforcement policies, practices, and procedures.

AA.       **Fmr. JCPD Sgt./current Junction City Deputy Fire Chief Brandon Nicol**. He currently works as the Deputy Fire Chief for the Junction City Fire Department, but worked as a Sergeant for the Junction City Police Department (JCPD) until 2015. He will give his background and state that he worked with plaintiff during plaintiff's entire tenure at JCPD from 2010-2013 and was the former Reserve Coordinator. He will state that plaintiff was a competent, honest, professional, and unbiased officer, and did not display poor judgment, deficient officer safety skills, or lack of veracity as defendants claim. He will also authenticate the letter sent signed by JCPD officers to the Lane County DA in response to the Brady List allegations. He will also describe the ramifications being "Brady Listed" has on a law enforcement officer's career. He will also testify that aspects of plaintiff's UOPD discipline (letters of clarification, reprimand, termination, etc.) were unwarranted based on his knowledge and experience of standard law enforcement policies, practices, and procedures, and after being asked to investigate the defendants' claims by JCPD Chief Mark Chase in 2012.

BB.      **Fmr. Sgt. John Thornburg**.  He was the former Junction City Police Department Sgt. and plaintiff's former supervisor.  He will give his background and state plaintiff was a competent, honest, professional, and unbiased officer, and did not display poor judgment, deficient officer safety skills, or lack of veracity as defendants claim.  He will also describe the ramifications being "Brady Listed" has on a law enforcement officer's career.  He will also testify that aspects of plaintiff's UOPD discipline (letters of clarification, reprimand, termination, etc.) were unwarranted based on his knowledge and experience of standard law enforcement policies, practices, and procedures.

CC.      **JCPD Officer Brian Patterson**.  He currently works as a police officer for the Junction City Police Department (JCPD).  He will give his background and state that he worked with plaintiff during plaintiff's entire tenure at JCPD from 2010-2013.  He will state that plaintiff was a competent, honest, professional, and unbiased officer, and did not display poor judgment, deficient officer safety skills, or lack of veracity as defendants claim.  He is a DPSST certified Drug Recognition Expert (DRE) and will explain the theories and practices of "interdiction" used in law enforcement.

DD.      **JCPD Dispatcher Myrria Jones**.  She currently works as a Dispatcher for the Junction City Police Department (JCPD).  She will give her background and state that she worked with plaintiff during plaintiff's entire tenure at JCPD from 2010-2013, and continues to dispatch for plaintiff in his current role as a reserve officer with the Coburg Police Department (JCPD dispatches calls for CPD).  She will state that plaintiff was a competent, honest, professional, and unbiased officer, and did not display poor judgment, deficient officer safety skills, or lack of veracity as defendants claim.  She will also testify that aspects of plaintiff's UOPD discipline (letters of clarification, reprimand,

termination, etc.) were unwarranted based on her knowledge and experience of standard law enforcement policies, practices, and procedures.

EE.    **JCPD Dispatcher April Hogan**.  She currently works part-time as a Dispatcher for the Junction City Police Department (JCPD), after having retired from similar full-time work as the supervisor of the Lane County's region dispatch center.  She will give her background and state that she worked with plaintiff during plaintiff's entire tenure at JCPD from 2010-2013.  She will state that plaintiff was a competent, honest, professional, and unbiased officer, and did not display poor judgment, deficient officer safety skills, or lack of veracity as defendants claim.  She will also testify that aspects of plaintiff's UOPD discipline (letters of clarification, reprimand, termination, etc.) were unwarranted based on her knowledge and experience of standard law enforcement policies, practices, and procedures.

FF. **SEIU Chief Steward John Ahlen**.  He was one of plaintiff's Union (SEIU) Stewards during plaintiff's grievance process after plaintiff was terminated from UOPD.  He is a current UofO employee, the current SEIU Chief Steward at UofO, and a former member of the City of Eugene's Police Commission. He will state that plaintiff made multiple attempts to alert multiple UOPD supervisors and UofO administrators of the defendants' misconduct including acts of bias, retaliation, harassment, disparate treatment, waste of resources, and failure to follow applicable laws and regulations.

GG.    **Former SEIU Chief Steward Donna Laue**.  She was one of plaintiff's Union (SEIU) Stewards during plaintiff's grievance process and was a UofO employee until her recent retirement.  She will state that plaintiff made multiple attempts to alert multiople UOPD supervisors and UofO administrators of the defendants' misconduct including acts

of bias, retaliation, harassment, disparate treatment, waste of resources, and failure to
follow applicable laws and regulations.

HH.      **Sean Brailey**.  He was plaintiff's SEIU Member Resource Center Union
Organizer assigned to assist during plaintiff's grievance process.  He will state that
plaintiff made multiple attempts to alert multiple UOPD supervisors and UofO
administrators of the defendants' misconduct including acts of bias, retaliation,
harassment, disparate treatment, waste of resources, and failure to follow applicable laws
and regulations.

II.      **John Hoffmann**.  He is the Lane County Soccer Referees Association President.
He will state that he has assigned and supervised plaintiff as a soccer referee for almost
10 years and that he is aware of and encourages plaintiff's use of a British accent while
refereeing soccer matches.

JJ. **Daniel Pearce**.  He is a British citizen and the student President of the University of
Oregon Cricket Club Team.  He will state that plaintiff has been and still is the official
Head Coach of the university's registered club sports team.  He will state that he is aware
of plaintiff's use of a British accent while playing cricket and that plaintiff asked him
permission to continue doing so after he joined the team.  We will file a motion to allow
for this witness to be able to testify via videoconference for good cause and compelling
circumstances because he recently moved to San Diego, CA.

KK.      **Dave Villalobos**.  He will state that he is a current UofO employee, employed as
a manager at the University of Oregon Outdoor Program.  He will testify that plaintiff has
initiated over 50 Outdoor Program trips for UofO students from 2007 to the present.  He
will state that plaintiff has never been in an accident on any of these trips and remains

one of the most respected, safe, and trusted Trip Initiators in the program.  He will also
state that plaintiff never attempted or even suggested that he steal bikes on campus as a
Public Safety Officer to then sell or give to the UofO Outdoor Program as defendants
ludicrously insinuated during a deposition.

LL.        **Chelsea Brandenburg**.  She is plaintiff's ex-wife.  She will testify to the affects
on their marital relationship from the stress caused by defendants during plaintiff's tenure
with UOPD and the acts of the defendants.  She will also verify plaintiff made disclosures
of misconduct and issues of public concerns to UofO employees UOPD supervisors.

MM.        **Timothy Ranger**.  He will testify that he is plaintiff's friend and that he has
observed the detrimental effects plaintiff's termination and related acts of retaliation by
the defendants has had on plaintiff's physical and emotional wellbeing.  He will also
testify that he is British by birth and has witnessed plaintiff's use of a British accent but
that plaintiff does not do use it for nefarious reasons or personal gain.

NN.        **Michael Cleavenger**.  He will testify that he is a retired police officer, detective,
corporal and sergeant, a police academy instructor, and plaintiff's father.  He will provide
testimony regarding plaintiff's prior intent to enter into a career in law enforcement and
the ramifications plaintiff's termination and related acts of retaliation by the defendants
have had on plaintiff's future job prospects and overall wellbeing.


//


//

OO.        **Defense Counsel Andrea Coit.**  Defense Counsel Andrea Coit may be called to testify regarding her participation in the Arbitration Settlement Agreement negotiations as well as her involvement in the Brady List disclosers made by the defendants to the Lane County DA.

DATED:  August 10, 2015.

Respectfully submitted,

*/s/ Mark McDougal*

**Jason L. Kafoury  (OSB#091200)**
**Mark McDougal (OSB #890869)**
**Kafoury & McDougal**
**411 SW Second Ave., Ste. 200**
**Portland, OR 97204**
**(503) 224-2647**
**Fax: (503) 224-2673**
**jkafoury@kafourymcdougal.com**
**mcdougal@kafourymcdougal.com**
**Attorney for Plaintiff**

## CERTIFICATE OF SERVICE

I certify that on August 10, 2015, I served or caused to be served a true and complete copy of the foregoing **PLAINTIFF'S WITNESS LIST** on the party or parties listed below as follows:

> Andrea Coit
> Andrea.coit@harrang.com
> Harrang Long Gary Rudnick P.C.
> 360 E 10th Ave, Ste 300
> Eugene  OR 97401-3273

☑       Via CM / ECF Filing

*/s/ Mark McDougal*
_____

**Jason L. Kafoury  (OSB#091200)**
**Mark McDougal (OSB #890869)**
**Kafoury & McDougal**
**411 SW Second Ave., Ste. 200**
**Portland, OR 97204**
**(503) 224-2647**
**Fax: (503) 224-2673**
**jkafoury@kafourymcdougal.com**
**mcdougal@kafourymcdougal.com**
**Attorney for Plaintiff**