**Andrea D. Coit, OSB 002640**
**andrea.coit@harrang.com**
**Jonathan Hood, OSB 133872**
**jonathan.hood@harrang.com**
HARRANG LONG GARY RUDNICK P.C.
360 East 10th Avenue, Suite 300
Eugene, OR 97401-3273
Telephone:    541.485.0220
Facsimile:     541.686.6564

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| **JAMES M. CLEAVENGER,** | Case No. 6:13-cv-01908-DOC |
| Plaintiff, | **DEFENDANTS' ALTERNATIVE** |
| vs. | **MOTIONS FOR JUDGMENT AS A** |
| | **MATTER OF LAW AND FOR NEW** |
| **UNIVERSITY OF OREGON (an Agency** | **TRIAL OR REMITTITUR** |
| **and Instrumentality of the State of** | |
| **Oregon), et al.,** | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

# TABLE OF CONTENTS

Page(s)

I.  Factual and Procedural Background ........................................................................ 2

II. Plaintiff failed to prove any actual harm as a result of any defendants' conduct. .. 11

    A.  Plaintiff failed to prove any non-economic damages. .................................. 11

    B.  Plaintiff failed to prove any non-speculative economic damages. .............. 13

III. Defendants are entitled to judgment as a matter of law. .......................................... 22

IV. All defendants are entitled to an order requiring plaintiff to remit the award of compensatory damages to nominal damages or face a new trial because the award is against the clear weight of the evidence. ................................................... 25

V.  Defendants are also entitled to a new trial or remittitur of punitive damages. ....... 27

    A.  The punitive damages awards are against the clear weight of the evidence and they are unconstitutional because they punish defendants for unrelated conduct that allegedly harmed third parties. ......................... 27

    B.  The punitive damages awards against defendants are against the clear weight of the evidence and they are unconstitutionally excessive. ....................... 29

VI. Scope of new trial .................................................................................................... 32

    A.  A grant of judgment as a matter of law as to any one defendant necessitates, at a minimum, a new trial on damages as to the remaining defendants. .................................................................................. 32

    B.  Any grant of new trial should not be limited to damages, but should instead be plenary. ................................................................................... 35

VII. Conclusion ............................................................................................................... 38

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. City of Milwaukie*,
    474 F.3d 437 (7th Cir. 2007) ................................................................. 20, 21

*Brady v. Maryland*,
    373 U.S. 83, 83 S. Ct. 1194 (1963) ................................ 6, 7, 8, 9, 10, 14, 15, 16, 17, 24
                                                                                            25, 32, 35, 37

*Carey v. Piphus*,
    435 U.S. 247, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978) ............................... 13

*Del Monte Dunes at Monterey, Ltd. v. City of Monterey*,
    95 F.3d 1422 (9th Cir. 1996) ................................................................. 27

*Gasoline Prods. Co.*, v. Champlin Ref. Co,
    283 U.S. 494, 51 S. Ct. 513, 75 L. Ed. 1188 (1931) ............................... 36, 37

*Hounshel v. Battelle Energy Alliance, LLC*,
    No. 4:11-CV-00635-BLW, 2013 WL 6073878 (D. Idaho Nov. 18, 2013) .......... 19, 20

*McCollough v. Johnson, Rodenburg & Lauinger, LLC*,
    637 F.3d 939 (9th Cir. 2011) ................................................................. 31

*Memphis Community School District, et al., v. Stachura*,
    477 U.S. 299, 106 S. Ct. 2537, 91 L. Ed. 2d 249(1986) ............... 11, 12, 13, 33, 34, 35

*Moist Cold Refrigerator Co. v. Lou Johnson Co.*,
    249 F.2d 246 (9th Cir. 1957) ................................................................. 26

*Molski v. M.J. Cable, Inc.*,
    481 F.3d 724 (9th Cir. 2007) ................................................................. 26

*Monico v. City of Cornelius*,
    No. 03:13-CV-02129-HZ, 2015 WL 1538786, at *6 (D. Or. Apr. 6,
    2015) *reconsideration denied*, No. 03:13-CV-02129-HZ, 2015 WL
    1579516 (D. Or. Apr. 9, 2015) ................................................................. 15

*Monico v. City of Cornelius*,
 No. 03:13-CV-02129-HZ, 2015 WL 1538786 (D. Or. Apr. 6, 2015)
 *reconsideration denied*, No. 03:13-CV-02129-HZ, 2015 WL 1579516
 (D. Or. Apr. 9, 2015) ................................................................................ 24

*Newport v. Fact Concerts, Inc.*,
 453 U.S., 101 S.Ct. ........................................................................... 34, 35

*Nunez v. City of Los Angeles*,
 147 F.3d 867 (9th Cir. 1998) ...................................................... 22, 23, 24

*Oregon–Washington R.R. & Nav. Co. v. Branham*,
 259 F. 555 (9th Cir. 1919) ......................................................................... 18

*Peters v. Lines*,
 275 F.2d 919 (9th Cir. 1960) ..................................................................... 18

*Philip Morris USA v. Williams*,
 549 U.S. 346, 127 S. Ct. 1057, 166 L. Ed. 2d 940 (2007) ......................... 29

*Pierce v. Texas Dept. of Criminal Justice*,
 37 F.3d 1146 (5th Cir. 1994) ...................................................... 22, 23, 24

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
 538 U.S. 408, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003) ........... 29, 30, 31, 32

*Sunkist Growers, Inc. v. Winckler & Smith Citrus Products Co.*,
 370 U.S. 19, 82 S. Ct. 1130, 8 L. Ed. 2d 305 (1962) ........................... 34, 35

*Walden v. U.S.*,
 31 F. Supp. 2d 1230 (S.D. Cal. 1998) ........................................................ 18

*Watson v. City of San Jose*,
 800 F.3d 1135 (9th Cir. 2015) ...................................................... 13, 14, 30

*Williams v. Pharmacia*,
 137 F.3d 944 (7th Cir. 1998) ..................................................................... 18

**Statutes**

42 U.S.C. § 1983 ................................................................... 11, 12, 25, 31

ORS 165.540 ............................................................................................. 2, 3

**Other Authorities**

Federal Rule of Civil Procedure 50(b) ................................................................. 1

Federal Rule of Civil Procedure 59(a)............................................................. 1, 26

Federal Rule of Civil Procedure 59(a)(1) ........................................................... 25

U.S. Const amend I ................................................... 10, 11, 14, 22, 23, 24, 25

U.S. Const amend VII.......................................................................................... 36

U.S. Const amend XIV ................................................................................... 27, 30

## LOCAL RULE 7-1 CERTIFICATION

In compliance with L.R. 7-1, the undersigned certifies that counsel for defendants made a good-faith effort with plaintiff's counsel to resolve the matters contained in these motions and that the parties were unable to do so.

## MOTION FOR JUDGMENT AS A MATTER OF LAW

Pursuant to Federal Rule of Civil Procedure 50(b), defendants move for judgment as a matter of law because plaintiff has failed to prove that defendants caused him any harm. Lebrecht moves for judgment as a matter of law for the further reason that there is no evidence from which a reasonable trier of fact could infer that he acted with a retaliatory motive.

## MOTION FOR NEW TRIAL OR, IN THE ALTERNATIVE, REMITTITUR

Pursuant to Federal Rule of Civil Procedure 59(a), Defendants McDermed, Lebrecht, and Cameron move for a new trial in this matter because the jury's award of $650,000 in economic damages is against the clear weight of the evidence and is based only on speculation, and because the jury's punitive damages awards are against the clear weight of the evidence and are based on plaintiff's counsel's argument that the jury should punish the individual defendants for unrelated conduct that allegedly harmed nonparties. In the alternative, the court should remit the economic damages award to an award of nominal damages and it should remit the punitive damages to an amount that is not unconstitutionally excessive.

**PAGE 1 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF
LAW AND FOR NEW TRIAL OR REMITTITUR**

In support of the above motions, defendants rely on the pleadings and other documents comprising the record herein, the Declaration of Andrea D. Coit ("Coit Decl.") with attached Exhibits 1 through 18, and the following Memorandum in Support.

## MEMORANDUM IN SUPPORT

### I.    Factual and Procedural Background

Plaintiff was a Public Safety Officer for the University of Oregon Police Department (UOPD).  On April 1, 2012, plaintiff made a traffic stop without lawful authority, blocked the driver from leaving the scene, and recorded the stop without informing the driver that he was doing so, in violation of ORS 165.540.  Excerpts of Pl.'s Ex. 150 (attached as Ex. 2 to Coit Decl., hereinafter "Pl.'s Ex. 150"), at 41-42.  The driver was Assistant Dean of the University of Oregon's Knight School of Law, Nicole Commissiong.  *Id.* at 2, 7.  The facts surrounding that event came to the attention of the UOPD.

On April 2, 2012, plaintiff stopped a University of Oregon student.  *Id.* at 2.  Approximately ten days later, the student made multiple telephone calls to the UOPD to report concerns regarding plaintiff's behavior during that stop.  *Id.* at 5-6.  She described plaintiff's behavior as "weird," and said he had made her "uncomfortable."  *Id.* at 2.  That complaint came to the attention of Defendant Carolyn McDermed, Chief of the UOPD.  *Id.* at 6.  At Defendant McDermed's request, Lieutenant Mike Morrow undertook an internal investigation of both stops.  *Id.* at 6-7.

**PAGE 2 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL OR REMITTITUR**

On May 18, 2012, Defendant Scott Cameron issued to plaintiff a written reprimand for "continued failure to follow department standards regarding officer safety tactics and procedures."  Pl.'s Ex. 1 (attached as Ex. 1 to Coit Decl.).  Defendant Cameron specified in the written reprimand a factual inaccuracy in plaintiff's explanation of the event that was the subject of the reprimand.  *Id.* at 2.

On July 27, 2012, Lieutenant Morrow produced a report of his investigative findings in which he concluded, among other things, that plaintiff had acted without lawful authority in stopping and detaining Ms. Commissiong on April 1, 2012, thereby causing "an unlawful detention of a citizen for an unenforceable traffic violation."  Pl.'s Ex. 150, at 41-42.  Lt. Morrow noted his concern with this finding:  "This incident was a very serious breach of the employee's assigned duties and professional judgment.  It also demonstrated his potential to disregard the constitutionally protected rights of citizens."  *Id.* at 42.

Lt. Morrow also found that plaintiff had recorded both of the stops he reviewed (the stop of Ms. Commissiong on April 1, 2012, and the stop of the University of Oregon student on April 2, 2012) without advising the affected citizens that he was doing so.  *Id*. at 43, 45.  In so doing, plaintiff had violated ORS 165.540, which "prohibits the recording of a conversation of others without first advising the participants that the conversation is being recorded."  *Id.*

Lt. Morrow reported that, during the investigation of that issue, plaintiff had represented that he routinely advises contacts that he is recording the conversation, but

**PAGE 3 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF**
**LAW AND FOR NEW TRIAL OR REMITTITUR**

claimed that he had simply failed to do so in those isolated instances.  *Id.* at 45.  Lt.

Morrow found that, while plaintiff's explanation was "plausible," it was "not

reasonable" in the circumstances.  *Id.*  Lieutenant Morrow noted in his report that

plaintiff's explanation for his conduct raised a question about plaintiff's fitness for duty

and suggested that whether the two investigated instances of non-notifications were

anomalies or were representative of a bigger problem could be determined by reviewing

video recordings of plaintiff's other encounters.  To that end, Defendant Lebrecht

reviewed 31 additional video recordings of plaintiff's encounters.  Pl.'s Ex. 150, at 1.

That review revealed that, in 25 of the 31 instances, plaintiff had failed to advise that he

was recording the conversation.  *Id.*  Defendant Lebrecht wrote up a report of those

findings.  *Id.*

On October 1, 2012, Defendant Carolyn McDermed issued a recommendation

that plaintiff's employment be terminated.  Pl.'s Ex. 80 (attached as Ex. 3 to Coit Decl.).

That recommendation went to Linda King, Associate Vice President for Human

Resources, the appointing authority under plaintiff's collective bargaining agreement, to

determine whether a termination decision should go forward.  Linda King, Rough Tr.,

Day 7 (attached as Ex. 17 to Coit Decl.), at 110:1-6.  On October 25, 2012, Linda King

accepted the recommendation to terminate plaintiff's employment.  Pl.'s Ex. 86

(attached as Ex. 4 to Coit Decl.).  The SEIU (Union) appealed to arbitration.

On or about June 16, 2013, plaintiff, a lawyer, commenced employment as a

judicial law clerk for a federal judge, a position he still holds.  *See* Cleavenger, Rough

**PAGE 4 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF**
**LAW AND FOR NEW TRIAL OR REMITTITUR**

Tr., Day 5 (attached as Ex. 5 to Coit Decl.), at 27:13-15; Jury Instruction No. 18

(attached as Ex. 6 to Coit Decl.).

On October 25, 2013, plaintiff commenced this lawsuit alleging state and federal

claims against various defendants.

On February 24, 2014, the arbitrator issued an Arbitration Award that, among

other things, denied plaintiff's grievance over Defendant Cameron's written reprimand,

found that the University had failed to use progressive discipline, and converted the

termination to a three-day suspension without pay and a written reprimand for recording

a traffic stop without notice to the person whom plaintiff was recording. The arbitration

award gave plaintiff reinstatement rights. Pl.'s Ex. 178 (attached as Ex. 7 to Coit Decl.),

at 30.

The arbitrator, of course, did not have all of the facts that went into the

termination decision. *See generally* McDermed, Rough Tr., Day 10 (attached as Ex. 18

to Coit Decl.), at 86-90. For example, the arbitrator did not know that, contrary to

plaintiff's representation that he routinely advised persons whom he stopped that he was

recording the conversation, Lt. Lebrecht's performance review revealed a failure to

advise 27 of 31 stops he was recording. *Id.* at 89:22-25, 90:1-4. Also, in accordance

with the requirements of the Union contract, the arbitrator was not allowed to consider

the fact that plaintiff had transported an armed woman (Harder) in the back of his patrol

car or that the internal investigation had disclosed concerns about plaintiff's fitness for

duty. *Id.* at 86:19-23, 89:19-25, 90:1-8.

**PAGE 5 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF
        LAW AND FOR NEW TRIAL OR REMITTITUR**

At all times material to this case, Alexander Gardner was the Lane County District Attorney.  At trial, he testified about the duty of district attorneys to disclose exculpatory evidence to criminal defendants under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963), and its progeny.  In *Brady*, the Supreme Court held that suppression by the prosecution of evidence favorable to an accused violates due process.  In so holding, the U.S. Supreme Court stated:

> Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly.

*Id.* at 87.  Echoing that view, Gardner testified:

> I believe that the DAs in this state do their best to serve justice, and justice requires that if you know of something in your case that tends to make it weaker, you * * * share that, because it would * * * frustrate justice if the defendant did not have a chance at an adequate defense.

Gardner, Rough Tr., Day 7 (attached as Ex. 8 to Coit Decl.), at 173:17-21.

In an effort to educate law enforcement agencies about the obligation to provide information under *Brady* and its progeny, then-District Attorney Gardner helped to establish a work group in late 2012.  *Id.* at 171:16-25; 172:1-11.  That work group started a continuous process of training regarding possible *Brady* reporting, and that conversation is still ongoing.  *Id.* at 172:16-25, 173:1-11.

On March 31, 2014, Gardner's work group circulated a final draft of "*Best Practices for Navigating Brady v. Maryland in Oregon*."  Pl.'s Ex. 209 ("Best Practices", attached as Ex. 10 to Coit Decl.).  It stated in part:

**PAGE 6 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL OR REMITTITUR**

> Understanding that a *Brady* designation for a law enforcement witness occurs solely at the discretion of the prosecutor, law enforcement agencies must take steps to address circumstances as a result. * * * Recognizing that prosecutors have a further ethical obligation to disclose [exculpatory or impeachment information], open communication lines between law enforcement leadership, labor leadership and the prosecutor must be established and maintained.

*Id.* at 3-4; *see* Coit Decl., Ex. 8 (Gardner, Rough Tr., Day 7, at 175:2-11).  The "Best Practices" publication identifies three "tiers" of material and includes non-exhaustive examples of each to help law enforcement departments determine what should be disclosed under *Brady* and its progeny.  Coit Decl., Ex. 10 (Pl.'s Ex. 209, at 3, 7).

Included in the first tier are "[d]eceptive conduct in [a] formal setting," such as an internal affairs investigation that resulted in a finding of dishonesty; "[r]epeated, habitual or a pattern of dishonesty, however minor, during internal affairs investigation"; and "[o]ther deceitful acts that demonstrate disregard for constitutional rights of others or the laws, policies and standards of proper police practice."  *Id.* at 7.

The second tier includes "[a] deceptive statement made in an effort to conceal minor unintentional misconduct" or "[a]n isolated dishonest act that occurred years prior."  *Id.*

The third tier includes "[i]naccurate or false statements based on misinformation or a genuine misunderstanding of the applicable facts, procedures or law."  *Id.*  Although this category is unlikely to disqualify an officer as a witness, Gardner testified that, "As a general rule, I want all the information people are willing to share, anything they think

**PAGE 7 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL OR REMITTITUR**

might bear on [his analysis of *Brady* information]."  Coit Decl., Ex. 8 (Gardner, Rough

Tr., Day 7, at 184:11-12).  He explained:

> Even if something was factually incorrect, but the entire community
> of police officers with whom the subject officer works believes that
> the officer is not truthful, for example, that fact alone, even if
> they're mistaken about the basis upon which they're making that
> decision, that belief that they all hold alone is *Brady*, *Brady*
> material, because those officers in that community could then
> potentially testify for the defense and say, 'My opinion is that this
> officer is not truthful.'

*Id.* at 179:18-25, 180:1.

On June 17, 2014, Defendant Carolyn McDermed, with assistance from

Defendant Brandon Lebrecht, submitted to the Lane County District Attorney

information that included the internal investigation report conducted by Lt. Morrow and

Defendant Lebrecht's report of his findings that plaintiff had failed to disclose that he

was recording the conversation in 25 of the additional 31 stops that Lebrecht had

reviewed.  Pl.'s Ex. 150.

Former District Attorney Alex Gardner testified that the information "that was

provided by the University of Oregon was the sort of information that [the DA] should

have."  Coit Decl., Ex. 8 (Gardner, Rough Tr., Day 7, at 187:9-11).  Gardner testified

that he would want to know if "the police officer was not honoring his or her oath of

office," and stated specifically that he would want to know if an officer illegally

detained a citizen by making an unauthorized stop.  *Id.* at 178:6-23.

**PAGE 8 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF
LAW AND FOR NEW TRIAL OR REMITTITUR**

Then-District Attorney Alex Gardner further testified that district attorneys are obliged to exercise independent judgment in making a *Brady* determination.  *Id.* at 178:24-25-179:1-2.  He testified that, "* * * we have a duty to inquire to do our best to learn about whatever evidence there might be."  *Id.* at 171:2-3.  Consistent with that duty, Gardner testified that he had sought and obtained information about plaintiff on his own.  He testified that he had written and asked for a more complete appraisal, or another appraisal from command staff at the University of Oregon (*id.* at 182:17-19) and that he had sought additional information from the chiefs of police of Coburg and Junction City.  *Id.* at 183:4-7.  He also testified about his telephone conversation with University of Oregon Police Captain Pete Deshpande, whom he had known for a long time and whose opinion he respected.  *Id.* at 180:20-25, 181:1-4.  District Attorney Gardner said he had asked Captain Deshpande's opinion about plaintiff and testified:

> My memory is that [Captain Deshpande] * * * was not -- that he was cautious, but that his appraisal was not favorable.

*Id.* at 181:1-9.

District Attorney Gardner also explained that the decision to make a *Brady* designation for a law enforcement witness is solely up to the prosecutor (*id.* at 176:3-8) and further testified:

> Q:  Does the ultimate decision on what information means and how it bears on an officer's credibility, does that lie with the district attorney's office?
>
> A:  Yes.  100 percent.

*Id.* at 180:3-6.

**PAGE 9 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL OR REMITTITUR**

Notwithstanding the facts that the UOPD was under a duty to provide the *Brady* materials to the District Attorney and that the information defendants submitted was the kind of information the District Attorney needed to have, and notwithstanding the fact that the District Attorney had an independent duty to make a *Brady* designation and only he could decide what, if any, significance to assign to the submitted materials, plaintiff claimed that Defendants McDermed and Lebrecht had violated his First Amendment rights by submitting the *Brady* materials to the District Attorney's Office.  *See, e.g.*, Pl.'s Closing Arg. (attached as Ex. 13 to Coit Decl.), at 195:18-20; Order on Motion for Summary Judgment, at 20-23 (Docket No. 105).   Plaintiff did not allege that Defendant Cameron had any involvement with the *Brady* submission, but claimed that he had violated plaintiff's First Amendment rights by issuing the written reprimand and a negative performance valuation.  *See* Order on Motion for Summary Judgment, at 17 & n.3.  Plaintiff alleged that he had suffered damages as a result.  Complaint ¶ 148.

On September 4, 2014, plaintiff and the University entered into a settlement agreement "to fully resolve all issues related to the Arbitration Award."  Defs.' Ex. 376 (attached as Ex. 9 to Coit Decl.).  The settlement agreement included, among other things, plaintiff's resignation from employment by the University effective June 14, 2013, back pay, and his agreement not to reapply for future employment with the UOPD.  *Id.*  The settlement agreement also included the University's agreement to give plaintiff a neutral employment reference and not to disclose various documents, including Defendant Cameron's letter of reprimand and his performance evaluation, as

**PAGE 10 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL OR REMITTITUR**

well as Defendant McDermed's notice of termination, unless compelled to do so by law or in defense of this lawsuit. *Id.* at 2.

The court dismissed all of plaintiff's claims before trial except his claim that Defendants McDermed, Lebrecht and Cameron had retaliated against him for exercising his First Amendment rights by taking adverse employment actions against him. The jury found all three defendants liable.

The jury awarded no non-economic damages. Verdict (attached as Ex. 11 to Coit Decl.), at 4. It made a unitary award of $650,000 in economic damages against the three defendants. *Id.* It did not apportion liability for that award among the three defendants and did not specify to what extent, if any, that award resulted from any particular adverse employment action. *Id.* The jury also awarded punitive damages of $51,000 against Defendant Lebrecht, $36,000 against Defendant McDermed, and $18,000 against Defendant Cameron. *Id.* For the reasons that follow, defendants are entitled to relief from that judgment.

## II.   Plaintiff failed to prove any actual harm as a result of any defendants' conduct.

### A.   Plaintiff failed to prove any non-economic damages.

The United States Supreme Court has repeatedly stated that 42 U.S.C. § 1983 creates "'a species of tort liability' in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Memphis Community School District, et al., v. Stachura*, 477 U.S. 299, 106 S. Ct. 2537, 91 L. Ed. 2d

**PAGE 11 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL OR REMITTITUR**

249(1986) (citations omitted).  "Accordingly, when Section 1983 plaintiffs seek

damages for violation of constitutional rights, the level of damages is ordinarily

determined according to principles derived from the common law of torts."  *Id.* at 307.

"Whatever the constitutional basis for section 1983 liability, such damages must always

be designed to compensate injuries caused by the [constitutional] deprivation.  That

conclusion simply leaves no room for non-compensatory damages measured by the

jury's perception of the abstract 'importance' of a constitutional right."  *Stachura*, 477

U.S. at 310 (citations omitted).  The Court explained:

> Deterrence is also an important part of this system, but it operates
> through the mechanism of damages that are compensatory --
> damages grounded in determinations of plaintiff's actual losses.
> *E.g.,* 4 Harper, James & Gray, [Law of Torts], Section 25.3
> (discussing need for certainty in damages determinations) * * *.
> Congress adopted this common-law system of recovery when it
> established liability for 'constitutional torts.'  Consequently, 'the
> basic purpose' of Section 1983 damages is 'to compensate persons
> for injuries that are caused by the deprivation of constitutional
> rights.' Carey v. Piphus, 435 US at 254. * * * ." *Id.* (holding that
> damages based on the abstract 'value' or 'importance' of
> constitutional rights are not a permissible element of compensatory
> damages in 1983 case for impairment of First Amendment right).
> Compensatory damages "may include not only out-of-pocket loss
> and other monetary harms, but also such injuries as 'impairment of
> reputation * * * personal humiliation, and mental anguish and
> suffering.

*Id.*, at 307.

In this case, the jury was given the opportunity to award non-economic damages

and was instructed to consider any "mental, emotional pain and suffering experienced

and which with reasonable probability will be experienced in the future."  Coit Decl.,

**PAGE 12 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF
LAW AND FOR NEW TRIAL OR REMITTITUR**

Ex. 6 (Jury Instruction No. 18).  By instructing the jury to consider any mental or emotional pain and suffering, the jury was correctly given the opportunity to award non-economic damages for such injuries as humiliation or stigmatization.

But the jury awarded no non-economic damages whatsoever.  Coit Decl., Ex. 11(Verdict), at 4.

### B.     Plaintiff failed to prove any non-speculative economic damages.

As the Supreme Court explained in *Stachura*, compensatory damages must be based on the plaintiff's actual losses and must be proved in accordance with the principles of common law torts, including the requirement of certainty in damages determinations.  477 U.S. at 306, 310.  As that Court made clear, compensatory damages may not be awarded because of a deprivation of constitutional rights that causes no actual injury.  Compensatory damages may be awarded "only to compensate actual injury" caused by the deprivation of rights at issue, and only upon "proof that such injury actually was caused."  *Carey v. Piphus*, 435 U.S. 247, 264-66, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978).  Thus, for example, in *Watson v. City of San Jose*, 800 F.3d 1135 (9th Cir. 2015), the Ninth Circuit Court of Appeals upheld a trial court's grant of new trial against two officers who had unlawfully failed to obtain a warrant to support their actions, where the amount of the jury's verdict did not reflect the injury actually suffered as a result of that failure to obtain a warrant.  *Id.* at 1141.  As the court explained, "the officers could be held liable for damages suffered from their failure to obtain a warrant or court order, but Plaintiffs were required to prove that the injuries suffered *stemmed*

**PAGE 13 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL OR REMITTITUR**

*from that failure*" to have done so.  *Id*. at 1139 (emphasis added).  Applying those principles, the appeals court concluded that the amount of the jury's compensatory damages award "did not reasonably reflect the actual injury suffered as a result of" the constitutional deprivation at issue, but instead reflected harm that largely "could not be attributed to Defendants" at all.  *Id*. at 1142-43.

Plaintiff failed to prove economic damages in accordance with those principles. Plaintiff did not contend that Defendant Cameron had any involvement in gathering *Brady* materials or in submitting them to the District Attorney.  Instead, plaintiff contended that Defendant Cameron had violated his First Amendment rights by giving him the written reprimand and negative performance evaluation during plaintiff's employment.  At trial, plaintiff acknowledged that, at plaintiff's request, Defendant Cameron had modified the performance evaluation to make it read more favorably. Cleavenger, Rough Tr., Day 6 (attached as Ex. 16 to Coit Decl.), at 66:23-25; 67:1-10. Plaintiff neither argued nor proved that he suffered any compensatory damages as a result of either the reprimand or the evaluation.  Nor could he have done so, since he had settled all issues related to the arbitration award, resigned his employment, received back pay, and the University had agreed not to disclose the letter of reprimand, or any other records related to plaintiff's discipline or termination unless compelled by law to do so or unless such disclosure was necessitated to defend plaintiff's lawsuit.  Coit Decl., Ex. 9 (Defs.' Ex. 376), at 2.

**PAGE 14 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL OR REMITTITUR**

Plaintiff's claim of economic damages was based solely on the so-called *Brady* submissions by Defendant McDermed, assisted by Defendant Lebrecht. Because Defendant Cameron had no involvement in the submission of the *Brady* materials, he cannot be liable for any injury that the *Brady* materials may have caused.

As for Defendants McDermed and Lebrecht, the jury's compensatory award represents only a single element of alleged harm: "The reasonable value of wages which with reasonable probability were lost after June 16, 2013." *See* Coit Decl., Ex. 6 (Jury Instruction No. 18). Thus, the threshold question is this: Did the submission of *Brady* materials to the District Attorney reduce "the reasonable value of wages" that plaintiff "with reasonable probability" will earn in the future?

On the evidence in this case, the answer is no. First, it is undisputed that submission of the *Brady* materials to the District Attorney did not place plaintiff on any "*Brady* List." As Gardner testified, Lane County has no "*Brady* list" and plaintiff is therefore not "*Brady* listed." Coit Decl., Ex. 8 (Gardner, Rough Tr., Day 7), at 189:13. Moreover, as this court recognized at the summary judgment stage, "there is no evidence that anyone but the DA could control who went in the *Brady* index." Order on Motion for Summary Judgment, at 26. That was confirmed by the evidence at trial. *See, e.g.*, Coit Decl., Ex. 10 (Pl.'s Ex. 209) at 3-4 ("Best Practices", stating in part that, "a *Brady* designation for a law enforcement witness occurs solely at the discretion of the prosecutor."); *see also Monico v. City of Cornelius*, No. 03:13-CV-02129-HZ, 2015 WL

**PAGE 15 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL OR REMITTITUR**

1538786, at *6 (D. Or. Apr. 6, 2015) *reconsideration denied*, No. 03:13-CV-02129-HZ,

2015 WL 1579516 (D. Or. Apr. 9, 2015) (dismissing plaintiff's 1983 claim for violation

of First Amendment rights by submitting material to the District Attorney's Office that

resulted in his designation as a "*Brady* List" witness because, "[w]hile the response by

the District Attorney's Office to the [submission] suggests that it considered [plaintiff]

to be a '*Brady* List' witness, this was, as Defendants note, an action by the District

Attorney's Office, not the [defendant].").

        And, even if defendants could have caused a *Brady* designation, plaintiff has

failed to prove any resulting damages.  As the court recognized at summary judgment:

> [T]here is a notable absence of evidence to support plaintiff's claim
> that the submission of *Brady* materials has prevented his
> employment in law enforcement.  Plaintiff was never a police
> officer, despite applying to numerous positions before working as a
> PSO for UOPD.  Police officers go through separate training and
> have additional responsibilities.  He has presented no evidence that,
> since the disclosure, he has attempted to obtain a law enforcement
> position and has been denied.  He is currently working as a law
> clerk to a federal judge, and is volunteering in law enforcement.  In
> sum, he has not presented any evidence that he in fact has been
> foreclosed from work in the field of law enforcement as a result of
> Defendants' actions. * * *  A complete absence of evidence as to a
> causal connection between the release of materials and his inability
> to find a job in law enforcement, or that he is currently foreclosed
> from employment in the field, is fatal to this [substantive due
> process] claim.

Order on Motion for Summary Judgment, at 26-27.  The court further stated:

> Plaintiff claims that he does not want to merely volunteer in the law
> enforcement profession, but to pursue law enforcement as a career.
> Plaintiff presented evidence [in the form of the Corey Mertz
> declaration] that a law enforcement officer who has been '*Brady*

**PAGE 16 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF
LAW AND FOR NEW TRIAL OR REMITTITUR**

> Listed' would be 'virtually unhireable as a police officer.'
>
> The [Corey] Mertz declaration lacks foundation and is not clearly applicable to the facts of this case, where the Defendants submitted the *Brady* materials to the DA but did not, themselves, put plaintiff on the '*Brady* List.'

*Id*. at 26.

At trial, plaintiff could only speculate as to what the adverse career impacts of his termination and release of the *Brady* materials might be.  He candidly acknowledged that he did not know whether or to what degree submission of the *Brady* materials to the District Attorney might affect his professional career:

> Q. Let's talk a little bit about how -- how far [do you] think this is going to impact your future career?
>
> A. I really have -- I have no idea. * * *"

Coit Decl., Ex. 5 (Cleavenger, Rough Tr., Day 5), at 244:10-12.  Plaintiff then proceeded to offer only speculation and conjecture as to any economic damages allegedly caused by defendants' conduct.  Even if defendants' conduct could be said to have caused an impairment in plaintiff's future earning capacity, the necessary inquiry remains: "Then by how much?"  In this case, the answer is "There is no evidence to know."

An award of lost future earnings is a common-law tort remedy.  "To recover for lost earning capacity, a plaintiff must produce 'competent evidence suggesting that his injuries have narrowed the range of economic opportunities available to him * * *.  [A] plaintiff must show that his injury has caused a diminution in his ability to earn a

**PAGE 17 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL OR REMITTITUR**

living." *Williams v. Pharmacia*, 137 F.3d 944, 952 (7th Cir. 1998) (internal citations omitted).  An award for lost or future earnings must be based on actual proof of the amount of impairment and not mere conjecture. *Oregon–Washington R.R. & Nav. Co. v. Branham*, 259 F. 555, 557 (9th Cir. 1919); *Walden v. U.S.*, 31 F. Supp. 2d 1230 (S.D. Cal. 1998).  The base figure used to calculate future wage loss is the difference between what a person earned before the incident at issue and what he would be able to earn upon returning to work, not necessarily in the same job.

The process of making that calculation is subject to the same standard governing all compensatory damages awards:  A plaintiff can only recover those elements that he can prove with reasonable certainty.  *See Peters v. Lines*, 275 F.2d 919, 930 (9th Cir. 1960) ("The burden of proof is upon the party claiming damage to prove that he has suffered damage and to prove the elements thereof with reasonable certainty.").  Thus, "any claim by plaintiff for * * * impaired future earning capacity must be supported by concrete evidence, not merely an optimistic forecast of loss divorced from plaintiff's past history substantiated by the facts;" any such award "must be based on actual proof of the amount of impairment and not mere conjecture." *Walden*, 31 F. Supp. 2d at 1235; *see also Oregon-Washington R.*, 259 F. at 557 (mere "evidence that plaintiff was a dressmaker at the time of her injury and dependent upon that pursuit as a livelihood, and that because of her injuries she had not been able to carry on her business since her injury, and would not be able to use her foot freely upon a sewing machine for some

**PAGE 18 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL OR REMITTITUR**

time to come" was insufficient to support any award of damages for future earning

capacity; plaintiff was thus entitled only "to nominal damages therefor").

Similarly, the case of *Hounshel v. Battelle Energy Alliance, LLC*, No. 4:11-CV-

00635-BLW, 2013 WL 6073878 (D. Idaho Nov. 18, 2013), illustrates the legal standard.

In *Hounshel*, plaintiff testified that he believed the defendant's actions impaired his

future earning capacity:

> Q. Are you claiming that Battelle somehow injured you in -- or that
> you're suffering a loss of income going forward?
>
> A. I would say that it's very well likely that my reputation has been
> damaged, which may in the future affect employment, and by
> affecting employment, may affect income.
>
> Q. Okay. And what evidence would you offer to prove that?
>
> A. Well, there's a huge EAP file that I'm going to have to explain
> away at every security investigation now and forever onward.
>
> Q. Is that it?
>
> A. Well, that's a good start. There's going to be a—you know, this is
> something that's going to be a topic at every security investigation
> from this point forward, you know, and it's not like it's easy to
> explain away.

*Hounshel*, at *1.  The District Court analyzed the plaintiff's testimony as follows:

> Hounshel's testimony that he believes having 'to explain away' his
> EAP file 'may' affect employment, which 'may' affect income—is
> sheer speculation, and it is not enough to justify presenting the issue
> of lost earning capacity to the jury. * * * A claim for 'impaired
> future earning capacity must be supported by concrete evidence' and
> 'must be based on actual proof of the amount of impairment and not
> mere conjecture.' Hounshel's mere conjecture about how Battelle's

**PAGE 19 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF**
**LAW AND FOR NEW TRIAL OR REMITTITUR**

actions may affect his ability to obtain a job that he may apply for in the future does not meet this standard.

*Id.*

Plaintiff's evidence was no better.  Plaintiff testified:

> Obviously I've never been *Brady* listed before. So I've got a year and a half left of the job that I have now, but it's limited. I mean it's nothing -- I can't -- there's no way around it. It's federal law. It what I'm going to do after this, I don't know, because I was focus on law enforcement of that now I'm 37 years old trying -- I'm back to square one. Yeah it's tough.

Coit Decl., Ex. 5 (Cleavenger, Rough Tr., Day 5), at 244:12-18.

Plaintiff failed to offer any proof of his income before or after his termination. He offered no evidence regarding how long he could have expected to be employed as a Public Safety Officer.  He offered no expert testimony on lost earning capacity and, although the jury was instructed to discount any lost future income to present value, he offered no explanation as to how that should be done.

Plaintiff speculated that he had lost the chance eventually to become a police chief, but he made no showing that he was qualified for that position or that he had any probability of achieving that goal over all other potential candidates.  The "lost chance doctrine" allows for compensatory damages where an alleged wrong causes the plaintiff to lose out on a competitive promotion.  *See, e.g.*, *Alexander v. City of Milwaukie*, 474 F.3d 437 (7th Cir. 2007) (applying the lost chance doctrine in an employment discrimination case).  Under that doctrine, a plaintiff bears the burden of establishing his losses and "the probability that they would be promoted over all other potential

**PAGE 20 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL OR REMITTITUR**

candidates." *Id*. at 451.  Plaintiff testified that he felt that his dream of being a police

chief was in jeopardy, but he failed to establish that he was qualified for the job or had

any probability of achieving that goal over all other potential candidates.  Plaintiff

offered only conjecture as to what police chiefs made — a job that plaintiff concedes

that he only ever hoped to have one day.  If indeed plaintiff was attempting to invoke a

lost chance theory of compensation, he failed to meet his evidentiary burden.

     Plaintiff's testimony about the supposed effect of his decision to file this lawsuit

on his ability to get a job with a law firm after completing his stint as a judicial law clerk

was equally speculative:

> I just -- I don't know how I'm going to go into interviews anywhere,
> let alone police department, but any law firm [unintelligible] say hi
> I'm James Cleavenger, if you Google me, which employers tend to
> do when they interview people, this lawsuit is going to come up and
> they'll notice he's *Brady* listed.  This guy is a liar.  Do we want a
> lying attorney in our firm.  It's concern.

Coit Decl., Ex. 5 (Cleavenger, Rough Tr., Day 5), at 244:18-24.

     In his closing argument, plaintiff's counsel told the jury that the impact on

plaintiff was unknowable, but he invited the jury to speculate:

> We don't know what's going to happen with him down the road, but
> I'll tell you this: You eight people are the only jury that will get to
> hear his economic damages in relation to this First Amendment
> claim, and I am certain that this is going to be a tattoo on him,
> marked, this *Brady* listing for the rest of his life.

Coit Decl., Ex. 13 (Pl.'s Closing Arg., Rough Tr., Day 10), at 235:13-18.  In his rebuttal

argument, plaintiff's counsel sounded the same theme again:

**PAGE 21 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF
LAW AND FOR NEW TRIAL OR REMITTITUR**

> My client, in terms of his employment, only has this job for the next year and a half. It's really uncertain what's going to happen. A legal job with all this *Brady* stuff over him, signing documents, putting that into the public record, going before judges, uncertain. This is very uncharted territory. But I'll tell you right now, after a year and a half, you're the only people in this world who can give him any justice for the economic damages, future lost income, that this might impact him. He told you chiefs of police [make] $100,000, $200,000 a year.

*Id.* at 283:12-21. In essence, plaintiff's counsel told the jury that it is anyone's guess whether or to what extent plaintiff might lose future income, but this is his only chance to be made whole, so the jury should award something. The law requires more.

## III.    Defendants are entitled to judgment as a matter of law.

In order to state a First Amendment retaliation claim, "a plaintiff must show, in the first instance, that he has suffered an adverse employment action." *Nunez v. City of Los Angeles*, 147 F.3d 867 (9th Cir. 1998). In addressing what constitutes "adverse employment action" in this context, the Fifth Circuit has explained that "[a]dverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Pierce v. Texas Dept. of Criminal Justice*, 37 F.3d 1146, 1149 (5th Cir. 1994). In *Pierce*, the plaintiff was subjected to an official reprimand, a probation, a reduction in pay, and a disciplinary write-up — all potentially "adverse employment actions" under that standard. In addition to those things, however, plaintiff attempted to "include other events within the scope of harm actionable under the First Amendment," including being investigated for trafficking, being investigated for a verbal altercation, being subjected to a polygraph examination, and being subjected by a superior's "threat

**PAGE 22 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL OR REMITTITUR**

to her to mind her own business."  As the Fifth Circuit explained, those events "do not

amount to adverse employment decisions" and "are not actionable."  *Id.*

The Ninth Circuit, citing the Fifth Circuit's opinion in *Pierce*, has agreed.  In

*Nunez*, a law enforcement officer had "complained to the Office of the Chief of Police,

the City Ethics Commission, the City Personnel Department, and the Board of Police

Commissioners" about failure to adhere to certain rules regarding officer candidates'

qualifications.  Plaintiff alleged "that, because of these protests, his superiors retaliated

by scolding him and threatening to transfer or dismiss him."  *Id.* at 874.  The Ninth

Circuit concluded that plaintiff had not stated a claim for First Amendment retaliation.

It explained:

> Although "the type of sanction ... need not be particularly great in
> order to find that rights have been violated," *Hyland*, 972 F.2d at
> 1135 (*quoting Elrod v. Burns*, 427 U.S. 347, 359 n. 13, 96 S.Ct.
> 2673, 49 L.Ed.2d 547 (1976)); *see also Manhattan Beach Police
> Officers Ass'n v. City of Manhattan Beach*, 881 F.2d 816, 818–19
> (9th Cir.1989) (denial of promotion); *Allen v. Scribner*, 812 F.2d
> 426, 434–35 (9th Cir.1987) (transfer to less desirable job
> assignment), the plaintiff must nonetheless demonstrate the loss of
> "a valuable governmental benefit or privilege." *Hyland*, 972 F.2d at
> 1136. Mere threats and harsh words are insufficient. *See Pierce*, 37
> F.3d at 1150; *cf. Gini v. Las Vegas Metropolitan Police Depart.*, 40
> F.3d 1041, 1045 (9th Cir.1994) ("[D]amage to reputation is not
> actionable under § 1983 unless it is accompanied by 'some more
> tangible interests.' ") (*quoting Paul v. Davis*, 424 U.S. 693, 701, 96
> S.Ct. 1155, 47 L.Ed.2d 405 (1976)).

*Nunez*, 147 F.3d at 875.  Applying those standards, the Ninth Circuit concluded that

plaintiff's claim "does not survive this threshold inquiry," because he had shown merely

**PAGE 23 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF
LAW AND FOR NEW TRIAL OR REMITTITUR**

"that he was bad-mouthed and verbally threatened" about being transferred or dismissed. *Id.* at 875.  That was not enough.

Here, as submitted to the jury, plaintiff's claim of actual damages was based solely on the submissions of *Brady* materials to the District Attorney by Defendant McDermed, assisted by Defendant Lebrecht.  Under *Nunez* and *Pierce*, that alone does not constitute an "adverse employment action" sufficient to support a claim of retaliation for First Amendment rights.

Even if that were not the case, any decision to enter the *Brady* materials into the District Attorney's database, to determine whether they needed to be disclosed to a criminal defendant, or otherwise to determine their significance, was entirely within the control of the District Attorney and was beyond the legal control of defendants.  And, plaintiff has failed to show that the actions that Defendants McDermed and Lebrecht *did* take — fulfilling their duty to provide information to the District Attorney's Office, as requested by the District Attorney himself — caused him any harm.  *See Monico v. City of Cornelius*, 2015 WL 1538786, at *13 (D. Or. 2015) (a police officer's allegation that his superior's provision to the District Attorney's Office of information caused him to be considered as a "*Brady* List" witness does not support a claim for First Amendment retaliation in the absence of evidence that a *Brady* listing harmed the police officer). Defendants are entitled to judgment as a matter of law.

Defendant Lebrecht is entitled to judgment as a matter of law for the further reason that the evidence permitted no reasonable jury to find the requisite retaliatory

**PAGE 24 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL OR REMITTITUR**

state of mind for a claim under Section 1983 for violation of First Amendment rights.

Defendant Lebrecht testified at trial that the *Brady* submissions were completely

appropriate in light of the submission duties described in the Best Practices Guidelines,

but that he was afraid that plaintiff would sue him for fulfilling that duty.  Lebrecht,

Rough Tr., Day 9 (attached as Ex. 12 to Coit Decl.) at 19:1-13.  At trial, plaintiff

testified that he wished he could take back his statements about Defendant Lebrecht

having been "vindictive" in his actions, explaining that "if I could take anything back, I

would take that back," because "at the time I didn't know that it was Chief McDermed

who actually ordered Lebrecht to do this *Brady* list stuff… that he didn't particularly

want to do this *Brady* list stuff, but that he was ordered to do it by McDermed."  Coit

Decl., Ex. 5 (Cleavenger, Rough Tr. Day 5), at 243:23-25; 244:1-9.  In other words,

plaintiff acknowledged that Defendant Lebrecht had acted with no retaliatory intent.

Defendant Lebrecht is entitled to judgment as a matter of law.[1]

## IV.   All defendants are entitled to an order requiring plaintiff to remit the award of compensatory damages to nominal damages or face a new trial because the award is against the clear weight of the evidence.

Federal Rule of Civil Procedure 59(a)(1) provides that a court may grant a new

trial if it concludes that the verdict is against the weight of the evidence, that the

damages are excessive, or that, for other reasons, the trial was not fair to the moving

---

[1]     Counsel for defendants raised this point immediately after plaintiff's admission came to light.  Defs.' Arg. on Mot. for J. as Matter of Law, Rough Tr., Day 6 (attached as Ex. 14 to Coit Decl.), at 243:8-14.  Now, with the benefit of transcribed testimony, the point is even clearer and more salient.

**PAGE 25 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL OR REMITTITUR**

party. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (citing *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251, 61 S. Ct. 189, 85 L. Ed. 147 (1940)). Where the jury's verdict "is contrary to the clear weight of the evidence," the "district court has the duty * * * to set aside the verdict, even [if] supported by substantial evidence." *Molski*, 481 F.3d at 729 (internal alterations omitted) (quoting *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990)).  Thus, a motion for new trial under Rule 59 may be granted even if there was enough evidence in the record to justify sending the issue to the jury in the first instance.  *See Moist Cold Refrigerator Co. v. Lou Johnson Co.*, 249 F.2d 246, 256 (9th Cir. 1957) ("There was then, as after the verdict, some substantial evidence to go to the trier of fact on each of these two issues.  But having permitted the jury to come to its conclusion on the facts, the trial judge then had the right, and indeed the duty, to weigh the evidence as he saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in his conscientious opinion, the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial judge, a miscarriage of justice.").

Similar standards apply when a motion for new trial challenges the jury's damages award.  Thus, while as a general matter courts should allow "deference to a jury's finding of the appropriate amount of damages" in civil trials, the trial court may refuse to uphold the jury's award where, viewing the evidence in the light most favorable to the prevailing party, the jury's award is "clearly not supported by the

evidence" or is based solely on "speculation or guesswork." *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996).

Because the jury's economic damages award is contrary to the clear weight of the evidence, defendants are entitled to an order requiring plaintiff to remit that award to nominal damages or face a new trial.

## V. Defendants are also entitled to a new trial or remittitur of punitive damages.

### A. The punitive damages awards are against the clear weight of the evidence and they are unconstitutional because they punish defendants for unrelated conduct that allegedly harmed third parties.

The jury awarded punitive damages of $51,000 against Defendant Lebrecht, $36,000 against Defendant McDermed, and $18,000 against Defendant Cameron. Those awards are contrary to the clear weight of the evidence and they are tainted by plaintiff's counsel's argument — in violation of this court's order and in violation of defendants' due process rights under the Fourteenth Amendment to the United States Constitution — inviting the jury to punish the defendants for unrelated misconduct that allegedly harmed non-parties. Those awards must be vacated to prevent a miscarriage of justice.

Defendants moved in limine for an order excluding evidence of alleged mistreatment of nonparties. Defendants' Supplemental Motion in Limine (Docket No. 140); *also* Defendants' Objections to Plaintiff's Witness List and Witness Statements (Docket No. 126). The court correctly ruled:

> The Court: I'm going to hold to my tentative thought. I think
> plantiffs are limited to proving damages resulting from actions taken

**PAGE 27 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL OR REMITTITUR**

> by the individual defendants.  I don't think anyone else's conduct is
> relevant.

Hearing on Motion in Limine, Rough Tr., Day 1 (attached as Ex. 15 to Coit Decl.), at

20:16-19.  When plaintiff began to violate that ruling in his closing argument, defense

counsel objected:

> MR. KAFOURY:  * * * Michael Drake.  This is critical.  When you
> talk about punitive damages, Michael Drake was deposed.  He was
> the only officer before this lawsuit -- before this courtroom, that
> testified on behalf of my client that was deposed in this case, and
> what happened after his deposition.
>
> MS. COIT: Your Honor, I object. This is improper punitive damages
> argument. This is Michael Drake.
>
> KAFOURY:  Retaliation.  It's in evidence.
>
> THE COURT:   This -- this is not towards punitives.  This would be
> your argument concerning credibility.
>
> KAFOURY:  Okay.

Coit Decl., Ex. 13 (Pl's Closing Arg., Rough Tr., Day 10), at 218:24-25; 219:1-10.

But plaintiff's counsel persisted in violating the court's order.  Instead of

arguing that defendants' conduct toward plaintiff warranted punitive damages, he argued

that the jury should award punitive damages against the individual defendants to punish

the UOPD for wholly unrelated conduct that allegedly harmed non-parties.  For

example, he argued:

> What's left at this department?  There are no female officers left.  *
> * * What's going on at this department, ladies and gentlemen?  It's
> got serious problems -- this department does.  It's clear.

**PAGE 28 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF
LAW AND FOR NEW TRIAL OR REMITTITUR**

> If you feel in the last three weeks that what you've heard about this department is unacceptable * * * only you can let them know with your verdict. * * * I suggest you use your power wisely.

*Id.* at 237:16-25; 238:1-10.

In short, plaintiff's counsel expressly argued that the jury should punish the individual defendants for unrelated conduct that allegedly harmed non-parties. Plaintiff's argument was in flagrant violation of this court's order and of the well-established principle that the Due Process Clause prohibits the use of punitive damages to punish for harm to non-parties. *Philip Morris USA v. Williams*, 549 U.S. 346, 356-57, 127 S. Ct. 1057, 1065, 166 L. Ed. 2d 940 (2007) (in imposing a punitive damages verdict, "a jury may not punish for the harm caused others"); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 423, 123 S. Ct. 1513, 1523, 155 L. Ed. 2d 585 (2003) ("A defendant should be punished for the conduct that harmed the plaintiff.  * * * Due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis").

The punitive damages award should be vacated because the misconduct of plaintiff's counsel in closing argument has resulted in a denial of defendants' due process rights to be free from punishment for harm to non-parties.

**B.    The punitive damages awards against defendants are against the clear weight of the evidence and they are unconstitutionally excessive.**

The paucity of evidence to support the compensatory damages awarded in this case is equally fatal to the jury's awards of punitive damages.  Indeed, "[b]ecause one of

**PAGE 29 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL OR REMITTITUR**

the factors used to examine the excessiveness of a punitive damages award is the amount of compensatory damages awarded," a "flawed compensatory damages award" alone may "justif[y] a retrial for punitive damages." *Watson v. City of San Jose*, 800 F.3d 1135, 1142-43 (9th Cir. 2015).

Moreover, the jury's awards of punitive damages are excessive under the well-established due process standards that govern all awards of punitive damages. It is "well established that there are procedural and substantive constitutional limitations on [punitive damages] awards." *State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 416. In particular, "[t]he Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." *Id.* Punitive damages "pose an acute danger of arbitrary deprivation of property," a risk that is "heightened when the decisionmaker is presented * * * with evidence that has little bearing as to the amount of punitive damages that should be awarded." *Id.* at 418.

"In light of these concerns," the Supreme Court has instructed courts to consider three "guideposts" in assessing the excessiveness of a punitive damages award: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Id.* Among those guideposts, the degree of the defendant's reprehensibility is "[t]he most important indicium of the reasonableness of a punitive damages award." *Id.* at 419.

**PAGE 30 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL OR REMITTITUR**

To determine the reprehensibility of a defendant's conduct, the Supreme Court has instructed courts to consider whether: "the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." *Id.* "The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect." *Id.* Indeed, a plaintiff's "entitlement to punitive damages depend[s] on a showing of reprehensibility." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 954 (9th Cir. 2011).

Here, there is no evidence to support any finding of reprehensibility sufficient to sustain the punitive damages awarded. Plaintiff's alleged harm from defendants' conduct was not "physical as opposed to economic"; defendants' acts did not "evince an indifference to or a reckless disregard of the health or safety of others," and the jury found none; there is no evidence of particular "financial vulnerability," and the jury did not so find; and the alleged actions each occurred only once. The mere fact that the jury found plaintiff had satisfied the underlying elements of liability for his §1983 claim does not, without more, support a finding of reprehensibility under *State Farm*. The jury found nothing outside the required elements of the underlying claim to indicate a finding of "malice, trickery, or deceit." Particularly in light of the lack of evidentiary support

**PAGE 31 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL OR REMITTITUR**

for the jury's award of compensatory damages, the absence of reprehensibility — "[t]he most important indicium of the reasonableness of a punitive damages award," *id*. at 419 — precludes any significant award of punitive damages.  If the punitive damages awards are not vacated altogether, the court should remit them to a non-excessive amount.

## VI.   Scope of new trial

### A.   A grant of judgment as a matter of law as to any one defendant necessitates, at a minimum, a new trial on damages as to the remaining defendants.

The jury's verdict in this case was "general" in several key ways.  Most significantly, the jury did not identify what portion of its compensatory damages award was intended to compensate for harm resulting from one defendant's conduct as opposed to another's conduct, nor did it identify what portion of its compensatory damages award was intended to compensate for the harm resulting from one adverse employment action (e.g., his written reprimand) versus another (e.g., submission of the *Brady* materials to the District Attorney).

That in itself is not error.  But it is consequential: if this court, for example, grants Defendant Lebrecht's Motion for Judgment as a Matter of Law but denies the motions of the other two defendants, the court cannot uphold the jury's general compensatory damages award in full as to the remaining defendants.  Rather, a jury must determine anew what damages to assess against the remaining defendants.  That is because there is nothing in the jury's verdict indicating to what extent the jury intended its compensatory award to reflect harm flowing from Defendant Lebrecht's actions, and how much it

**PAGE 32 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL OR REMITTITUR**

intended that award to instead reflect harm flowing from the actions of Defendants McDermed and Cameron.

In such "we can't tell" cases, the Supreme Court has instructed that a new trial as to *all* compensatory damages will be necessary. For instance, in *Memphis Community School District v. Stachura*, 477 U.S. 299, 106 S. Ct. 2537, 91 L. Ed. 2d 249 (1986), the court held that one of the three potential legal grounds on which the jury had been instructed it could award compensatory damages was in error. However, the Supreme Court could not then uphold the entire compensatory damages verdict on the basis of the other two, error-free grounds, because the jury's general verdict did not indicate how much of the award was intended to reflect each of the three potential legal grounds for damages:

> When damages instructions are faulty and the verdict does not reveal the means by which the jury calculated damages, "[the] error in the charge is difficult, if not impossible, to correct without retrial, in light of the jury's general verdict." *City of Newport v. Fact Concerts, Inc.*, 453 U.S., at 256, n. 12, 101 S.Ct., at 2754, n. 12. The jury was authorized to award three categories of damages: (i) compensatory damages for injury to respondent, (ii) punitive damages, and (iii) damages based on the jury's perception of the "importance" of two provisions of the Constitution. The submission of the third of these categories was error. Although the verdict specified an amount for punitive damages, it did not specify how much of the remaining damages was designed to compensate respondent for his injury and how much reflected the jury's estimation of the value of the constitutional rights that were infringed. The effect of the erroneous instruction is therefore unknowable, although probably significant: the jury awarded respondent a very substantial amount of damages, none of which could have derived from any monetary loss. It is likely, although not certain, that a major part of these damages was intended to "compensate" respondent for the abstract "value" of his

**PAGE 33 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL OR REMITTITUR**

> due process and First Amendment rights. For these reasons, the case
> must be remanded for a new trial on compensatory damages.

*Id.* at 311.  Similarly, in *Sunkist Growers, Inc. v. Winckler & Smith Citrus Products Co.*,

370 U.S. 19, 82 S. Ct. 1130, 8 L. Ed. 2d 305 (1962), the jury entered a general verdict

without specifying to what extent its verdict rested on any of several potential legal

theories of liability.  Finding one of those potential bases to have been in error, the court

held that the general nature of the verdict prevented upholding the remainder of the

verdict without retrial:

> Since we hold erroneous one theory of liability upon which the
> general verdict may have rested—a conspiracy among petitioners
> and Exchange Lemon—it is unnecessary for us to explore the
> legality of the other theories. As was stated of a general verdict in
> *Maryland v. Baldwin*, 112 U.S. 490, 493, 5 S.Ct. 278, 280, 28 L.Ed.
> 822 (1884), '[I]ts generality prevents us from perceiving upon which
> plea they found. If, therefore, upon any one issue error was
> committed, either in the admission of evidence or in the charge of
> the court, the verdict cannot be upheld * * *.'

*Sunkist Growers, Inc.*, 370 U.S. at 29-30.

In contrast, where the jury renders a verdict that makes clear what portion of its

damages represented particular legal grounds or particular defendants, the remainder can

potentially stand without need for retrial.  Thus, in *City of Newport v. Fact Concerts,

Inc.*, 453 U.S. 247, 256, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981), the Supreme Court

dealt with a *specific* award (a particular amount in punitive damages), imposed against a

particular defendant (the municipality that employed an official found to have violated

plaintiff's constitutional rights), on a distinct legal basis.  The court could therefore

address that award in isolation, without need for retrial on any other damages:

**PAGE 34 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF
LAW AND FOR NEW TRIAL OR REMITTITUR**

> Ordinarily, an error in the charge is difficult, if not impossible, to correct without retrial, in light of the jury's general verdict. In this case, however, we deal with a wholly separable issue of law, on which the jury rendered a special verdict susceptible of rectification without further jury proceedings.

*Id.* at 256.

The problem illustrated in the *Memphis* and *Sunkist* cases — the court simply cannot tell what portion of the jury's general verdict is attributable to one theory or defendant versus another — is particularly present in this case. Here, the jury could have intended a majority of its compensatory award to represent harm flowing from one defendant's conduct, and only a small portion to represent harm flowing from the actions of the other two — or it could have intended just the opposite. It could have intended a majority of its award to represent harm flowing from plaintiff's written reprimand and his recommended termination, but not to harm flowing from the submission of *Brady* materials to the District Attorney — or it could have intended just the opposite. In light of the jury's general verdict, we cannot tell. Under *Memphis* and *Sunkist Growers*, such a problem is generally "impossible to correct without retrial." That is the case here.

### B.    Any grant of new trial should not be limited to damages, but should instead be plenary.

Any grant of new trial in this case should not be limited to damages alone, but should be plenary. The Supreme Court has instructed that a partial new trial — a grant of new trial as to fewer than all issues — "may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others

PAGE 35 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF
        LAW AND FOR NEW TRIAL OR REMITTITUR

that a trial of it alone may be had without injustice." *Gasoline Prods. Co., v. Champlin Ref. Co.*, 283 U.S. 494, 51 S. Ct. 513, 75 L. Ed. 1188 (1931).

*Gasoline Products* involved a verdict on plaintiff's claim for breach of contract, and defendant's counterclaim on the same contract. The jury returned verdicts in favor of both plaintiff's claim and defendant's counterclaim, leaving a balance in plaintiff's favor for which the court entered judgment. The Court of Appeals for the First Circuit reversed on the basis of errors as to the jury instructions concerning the measure of damages on the counterclaim, and ordered a new trial be held on the determination of damages only. The case was appealed on the sole issue of whether, consistent with defendant's right to a fair trial, the court could properly order a retrial limited to damages alone.

The Supreme Court noted that, "at common law there was no practice of setting aside a verdict in part. If the verdict was erroneous with respect to any issue, a new trial was directed as to all." *Id.* at 497. The Court noted that the Seventh Amendment did not necessarily "exact the retention of" that common-law rule, such that any error at all necessitates plenary retrial. *Id.* Nevertheless, the rule serves as context for the Constitution's protections. Accordingly, the Supreme Court explained:

> [A] partial new trial, * * * may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice. [In contrast, where] the question of damages * * * is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty, [a partial new trial] would amount to a denial of a fair trial.

**PAGE 36 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL OR REMITTITUR**

*Id.* at 497.   Thus, in such instances "[t]here should be a new trial of all the issues"

presented.   *Id.*   As to the contract claim at issue, the Court explained that the existing

verdict "may be taken to have established the existence of a contract and its breach,"

leading only damages to be determined.   "Nevertheless, upon the new trial, the jury

cannot fix the amount of damages unless also advised of the terms of the contract; and

the dates of formation and breach may be material, since it will be open to petitioner to

insist upon the duty of respondent to minimize the damages."   *Id.* at 499.   But, the Court

concluded, it would be "impossible" from the jury's existing verdict "to say precisely

what were the dates of formation and breach of the contract found by the jury, or [the

contract's] terms," or the "date [which] was set for performance," or "what the jury, by

its verdict, found to be the reasonable time for performance" — all issues bearing

directly on the question of damages.   Alone, "the present verdict * * * cannot be taken as

establishing any of [the] material facts" necessary to determine damages.   *Id.*

Accordingly, the court concluded that the issue of damages was not "so distinct and

separable from" liability that it could be tried alone.   *Id.*

    The same is true of this case, particularly given the jury's general verdict.   As

described above, the jury's general verdict could not inform a second jury whether the

first jury found defendants liable for damages flowing from one harm (e.g., submission

of *Brady* materials) or another (e.g., plaintiff's written reprimand).   The jury might have

found defendants liable for the former, but not the latter — or it might have reached the

opposite conclusion.   We do not know.   Because there is no way reliably and accurately

**PAGE 37 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF**
**LAW AND FOR NEW TRIAL OR REMITTITUR**

to inform any second jury as to the first jury's *basis* for awarding damages, we cannot ask a second jury to consider alone the question of the *amount* of damages. Accordingly, any remand for new trial must be plenary.

## VII.    Conclusion

For the reasons discussed above, the court should enter judgment as a matter of law for all defendants.  Plaintiff failed to prove that any of the three defendants' conduct caused him any harm and the closing argument of plaintiff's counsel violated this court's order and defendants' constitutional right to be free from punishment for unrelated conduct allegedly causing harm to non-parties.  In the alternative, the court should order plaintiff either to remit the compensatory damages to a nominal amount and the punitive damages to a non-excessive amount or to submit to a new trial because the verdict is against the great weight of the evidence.

DATED this 27th day of October, 2015

HARRANG LONG GARY RUDNICK P.C.


By:  __s/ Andrea D. Coit_____
       Andrea D. Coit, OSB 002640
       andrea.coit@harrang.com
       Jonathan Hood, OSB 133872
       jonathan.hood@harrang.com

       Attorneys for Defendants


**PAGE 38 - DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF
LAW AND FOR NEW TRIAL OR REMITTITUR**

## CERTIFICATE OF SERVICE

I certify that on October 27, 2015, I served or caused to be served a true and complete copy of the foregoing **DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL OR REMITTITUR** on the party or parties listed below as follows:

      ☑      Via CM / ECF Filing
      ☐      Via First Class Mail, Postage Prepaid
      ☐      Via Email
      ☐      Via Personal Delivery

Mark McDougal
Gregory Kafoury
Jason Kafoury
Grand Stable & Carriage Building
411 SW Second Avenue, Suite 200
Portland, OR 97204

Attorneys for Plaintiff

                HARRANG LONG GARY RUDNICK P.C.


                By:  s/ Andrea D. Coit
                   Andrea D. Coit, OSB 002640
                   andrea.coit@harrang.com
                   Jonathan Hood, OSB 133872
                   jonathan.hood@harrang.com

                   Attorneys for Defendants

P0583275.v1

**CERTIFICATE OF SERVICE**