**Jason L. Kafoury (OSB #091200)**
**Mark McDougal (OSB #890869)**
**Kafoury & McDougal**
411 SW Second Avenue, Suite 200
Portland, OR 97204
(503) 224-2647
Fax: (503) 224-2673
jkafoury@kafourymcdougal.com
mcdougal@kafourymcdougal.com
**Attorneys for Plaintiff**

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| JAMES M. CLEAVENGER, | Case No. 6:13-cv-01908-DOC |
| Plaintiff, | **PLAINTIFF'S REPLY ON MOTION FOR ATTORNEY FEES** |
| vs. | |
| CAROLYN McDERMED, BRANDON LEBRECHT, and SCOTT CAMERON, | |
| Defendants. | |

Plaintiff takes no issue with the reliance on *Hensley* and *Perdue* for the accepted standard in determining reasonable attorney's fees. It should be noted, however, that this standard is not as rigid as Defendants would have us believe. "[I]n some cases of exceptional success an enhanced award may be justified." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). "[A]n enhancement may be appropriate if the attorney's performance includes an extraordinary outlay

of expenses and the litigation is exceptionally protracted." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 555 (2010).

Although Plaintiff's attorneys have advanced considerable expenses, and believe they have achieved exceptional success, they seek no more than their actual hours worked multiplied by an hourly rate commensurate with their respective levels of experience and expertise. With the exception of David Hess' trial technologist rate, Defendants do not quibble with the reasonableness of the rates claimed.

## I.     Participation of Multiple Attorneys

Defendants state that Jason Kafoury and Mark McDougal "billed 310 hours for just the 17 days the trial spanned." (Defendants' Objections to Plaintiff's Petition for Attorney Fees and Non-Taxable Costs § III A). A more accurate representation of the billing is that Jason Kafoury and Mark McDougal *only* billed 310 hours for the 17 days the trial spanned. The billing for trial hours averages roughly 9 hours per day for each Mark McDougal and Jason Kafoury. At such a modest hourly billing during the span of the trial, it is clear that the assistance of Gregory Kafoury and Adam Kiel was not only reasonable, but necessary in achieving an excellent trial result.

Defendants cite to *Walker v. U.S. Dep't of House. & Urban Dev.*, 99 F.3d 761 (5th Cir. 1996) in support of their argument that the number of hours expended by Plaintiff's attorneys was unreasonable. The court in *Walker* found that the district court made no error when "[t]he [district] court specifically considered each duplication and found it reasonable." *Walker*, 99 F.3d at 768. Implicit in this statement is that duplicative effort can be reasonable. If duplicative effort can be reasonable, surely supplemental efforts in a trial involving novel issues would be reasonable.

**Page 2 - PLAINTIFF'S REPLY ON MOTION FOR ATTORNEY FEES**

The time spent by Gregory Kafoury and Adam Kiel was supplemental to the efforts of Jason Kafoury and Mark McDougal. The focus of Jason Kafoury and Mark McDougal at trial was an active focus on a flow of moving information, which does not afford time for deep rumination. The impressions, advice, and notes of Gregory Kafoury and Adam Kiel were a product of a less immediate presence in the courtroom that allowed time for analysis not available to Jason Kafoury and Mark McDougal but which certainly provided necessary support in achieving excellent trial results.

"Cases of first impression generally require more time and effort," therefore the attorney "should be appropriately compensated for accepting the challenge." *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 718 (5th Cir. 1974) (abrogated by *Blanchard v. Bergeron*, 489 U.S. 87, 90, 91-92, 109 S. Ct. 939, 943, 103 L. Ed. 2d 67 (1989) with regard to a cap on attorney's fees while acknowledging the staying relevance of the factors set forth in *Johnson* in assessing the reasonableness of attorney's fees). The Ninth Circuit has similarly acknowledged that "the novelty and difficulty of the questions involved, the results obtained by the litigation, and the time and labor required" are "[r]elevant to determining the reasonableness of the hours counsel expended." *McGrath v. Cnty. of Nevada*, 67 F.3d 248, 253 (9th Cir. 1995) (citing *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir.1975).

It was acknowledged during these proceedings that whether a free speech violation occurs when public employment is terminated, in retaliation for statements made as a private citizen prior to public employment, appeared to be an issue of first impression. Attorneys McDougal and Jason Kafoury averaged a reasonable amount of time during each of the days spanning trial. The amount of time spent was reasonable for the average trial. However, the trial in this case dealt with an apparently unaddressed issue, which removed it from the ranks of more

routine trial advocacy.  Because of this issue of first impression, additional manpower was required in order to succeed at trial.

Defendants also cite *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1286–87 (9th Cir. 2004) in arguing that Plaintiff's Petition for Attorney Fees should be reduced for duplication of effort.  In *Reed* it was argued that "three plaintiffs' lawyers billed for duplicated services produced by . . . having associates attend argument who did not argue."  *Democratic Party of Wash. State*, 388 F.3d at 1286.  The Court was "unpersuaded that there was needless duplication." *Id.*  "Participation of more than one attorney does not necessarily amount to unnecessary duplication of effort." *Id.*  If attorneys are in court "because their assistance is or may be needed by the lawyer arguing the case . . . then the assistance is most definitely necessary." *Id.* at 1287. Further, "a lawyer who has worked on the case and will be working on it subsequently may need to observe argument to judge how to proceed later." *Id.*

In determining the reasonableness of attorney's fees the "most critical factor is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S. Ct. 1933, 1941, 76 L. Ed. 2d 40 (1983).  The degree of success obtained at trial was exceptional.   The success in this case was due in part to the perspectives, advice, and assistance of Gregory Kafoury and Adam Kiel. The assistance of each was supplemental and contributed to the success of the jury verdict. Plaintiff's attorneys should recover a fully compensatory fee.

## II.     GREGORY KAFOURY

As noted above, Gregory Kafoury's efforts at trial were supplemental rather than duplicative.  In addition, there were two matters on which the elder Mr. Kafoury took a lead role in argument and obtained a successful result, the first occurring during voir dire and the other concerning the redaction of sensitive strategy discussions from a defense exhibit received into

evidence. See Decl. of Gregory Kafoury ¶¶ 3-4. A considerable portion of Gregory Kafoury's notes were used to help Jason Kafoury in crafting his closing argument. While an attorney must present closing argument alone, it is an unwise one who does not seek the advice of others in preparing that argument.

### III. ADAM KIEL

As noted above, Adam Kiel's efforts at trial were supplemental rather than duplicative. The case involved an unusually large number and volume of exhibits for a civil rights claim. This fact, coupled with the Court's decision to hold evidentiary arguments the evening before an exhibit was to be introduced, led Plaintiff's counsel to designate an associate attorney to manage the exhibits, and Mr. Kiel was chosen for this role. With respect to most of the witnesses, Mr. Kiel selected which exhibits would form the pool of evidence to be submitted through, or against, a particular witness. Decl. of Adam Kiel in Support of Reply on Petition for Attorney Fees, ¶2. This allowed Jason Kafoury and Mark McDougal a focused set of facts from which to conduct examination of witnesses. Mr. Kiel could not have performed this function without spending at least part of his day in the courtroom, during evidentiary arguments.

Furthermore, Mr. Kiel's time in the courtroom was not limited to, as Defendants put it, "watching testimony." Defendants' Objections to Plaintiff's Petition for Attorney Fees and Non-Taxable Costs § III(A)(2). Because of his familiarity with the exhibits, he was able on occasion to impact the course of cross-examination. The most salient example occurred during the testimony of defense witness Chris Phillips. See Decl. of Adam Kiel, ¶4.

With respect to Defendants' block billing argument, Plaintiff notes that the ordinary remedy for block billing is not, as Defendants suggest, a complete rejection of those items. Rather, "[w]hile block billing creates some impediments to the analysis of attorney fee bills, the

**Page 5 - PLAINTIFF'S REPLY ON MOTION FOR ATTORNEY FEES**

Supreme Court has indicated that it is not a basis for refusing to award attorneys' fees." *Trulock v. Hotel Victorville*, 92 F. App'x 433, 434 (9th Cir. 2004) (citing Hensley, 461 U.S. at 437 n. 12) (additional citiations omitted).  The appropriate solution is a reduction in the requested fee to a reasonable amount.  See *Gadberry v. Astrue,* No. CIV.08-314-KI, 2009 WL 2983086, at *1 (D. Or. Sept. 15, 2009).  It is also difficult to see what Defendants would view as an acceptable level of detail from Mr. Kiel for the trial dates; some of the entries that Defendants object to are more than fifty words long for one day of trial.

### IV.   DAVID HESS

Plaintiff's counsel elected to use a trial technologist at trial.  Plaintiff's counsel bore the risk of this expense if they lost.  This was an exercise of their professional judgment that as lawyers that they were not also going to act as trial technologists.  There is a reason why there are professionals who make a living doing so.  Technical difficulties can be extremely distracting to lawyers' focus and attention.  The cost of a trial technologist has become one that lawyers and law firms routinely pass on as an expense paid by the client.

### V.   FEES INCURRED PRIOR TO JUNE 6, 2015

"Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised."  *Hensley*, 461 U.S. at 440.

#### A.  State Law Claims

With regard to the state law claims, Defendants assert: "The majority of the claims Plaintiff pursued for the first 19 months of this lawsuit were frivolous because the court lacked jurisdiction to hear them."  Defendants' Objections to Plaintiff's Petition for Attorney Fees and Non-Taxable Costs § III(B).  This is an inaccurate statement of law.  "[T]he Eleventh

Amendment is not a true limitation upon the court's subject matter jurisdiction, but rather a personal privilege that a state may waive . . ." *Hill v. Blind Industries and Services of Maryland*, 179 F.3d 754, 760 (9th Cir.1999).  Eleventh Amendment immunity "should be treated as an affirmative defense."  *ITSI T.V. Prods., Inc. v. Agric. Associations*, 3 F.3d 1289, 1291 (9th Cir.1993).

The initial complaint in this case was filed on October 25, 2013.  The University of Oregon waited nearly eighteen months to move for dismissal of the state law claims on Eleventh Amendment grounds.  Defense counsel never conferred with Plaintiff or his counsel on the question of removing these claims to state court until shortly before filing the Motion to Dismiss.  The University's decision to invoke the Eleventh Amendment came at a late hour; indeed, had it waited much longer it may have been deemed to have waived the immunity.  See *Hill* 179 F.3d at 757-759.  For Defendants to now claim this long-delayed strategic decision as justification for reducing Plaintiff's attorney fee award is inappropriate.

### B.  Federal Law Claims

Nor is there any weight to Defendants' argument that only one of the Plaintiff's three §1983 claims survived summary judgment.

> Many civil rights cases will present only a single claim.  In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories.  Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.  Such a lawsuit cannot be viewed as a series of discrete claims.  Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. . . . Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.  The result is what matters."

*Hensley*, supra, at 435.

**Page 7 - PLAINTIFF'S REPLY ON MOTION FOR ATTORNEY FEES**

The same common core of facts runs throughout this litigation, beginning with Plaintiff's speech about TASERs while he was a student, up through the submission of the *Brady* materials that permanently damaged his career. At no point did the dismissal of any defendant or claim allow Plaintiff to significantly narrow the scope of evidence he needed to present at trial. The test for relatedness under *Hensley* is "whether relief sought on the unsuccessful claim 'is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised.'" *Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986) (quoting *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1279 (7th Cir.1983).

Defendants note that four of the individual defendants initially named in the suit were either dropped or dismissed prior to trial. It is doubtful that even the defense would argue that the claims against the dismissed defendants were "entirely distinct and separate" from the claims that survived to trial. It was not a rare occurrence during the trial for one of the Defendants or defense witnesses to attempt to shift the blame for a particular decision onto someone else who was formerly a defendant in the case. The efforts spent engaging in discovery against these former defendants was not wasted, as three of the four (Morrow, King, and Caufield) testified at length for the defense.

## VI. Conclusion

Ultimately, "the extent of Plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988." *Hensley*, supra, at 440. The verdict exceeded Defendants' best offer of $20,000 (inclusive of fees and costs) by a factor of thirty-seven. This result is exceptional enough that defense counsel has devoted thirty-eight

**Page 8 - PLAINTIFF'S REPLY ON MOTION FOR ATTORNEY FEES**

pages of post-trial motions attempting to undo it.  A fully compensatory attorney's fee is warranted.

DATED November 17, 2015.

>	*/s/ Jason Kafoury*
>	**Jason L. Kafoury (OSB#091200)**
>	**Mark McDougal (OSB #890869)**
>	**Kafoury & McDougal**
>	**411 SW Second Ave., Ste. 200**
>	**Portland, OR 97204**
>	**(503) 224-2647**
>	**Fax: (503) 224-2673**
>	**jkafoury@kafourymcdougal.com**
>	**mcdougal@kafourymcdougal.com**
>	**Attorney for Plaintiff**

## CERTIFICATE OF SERVICE

I certify that on November 17, 2015, I served or caused to be served a true and complete copy of the foregoing **PLAINTIFF'S REPLY ON MOTION FOR ATTORNEY FEES** on the party or parties listed below as follows:

☑	Via CM / ECF Filing

>	*/s/ Jason Kafoury*
>	**Jason L. Kafoury (OSB#091200)**
>	**Mark McDougal (OSB #890869)**
>	**Kafoury & McDougal**
>	**411 SW Second Ave., Ste. 200**
>	**Portland, OR 97204**
>	**(503) 224-2647**
>	**Fax: (503) 224-2673**
>	**jkafoury@kafourymcdougal.com**
>	**mcdougal@kafourymcdougal.com**
>	**Attorney for Plaintiff**