**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

| | |
|---|---|
| **JAMES M. CLEAVENGER,** | Case No.: CV 13-1908-DOC |
| **Plaintiff,** | |
| | |
| **vs.** | **ORDER RE: PLAINTIFF'S PETITION FOR ATTORNEY FEES AND NON-TAXABLE COSTS [173];** |
| **UNIVERSITY OF OREGON, ET AL.,** | **ORDER RE: BILL OF COSTS [185]** |
| **Defendants.** | |

Before the Court are Plaintiff's Petition for Attorney Fees and Non-Taxable Costs ("Petition") (Dkt. 173) and Bill of Costs (Dkt. 185). Oral arguments were held on February 12, 2016. Having reviewed the papers and considered the parties' arguments, the Court hereby GRANTS IN PART Plaintiff's Petition and GRANTS IN PART Plaintiff's Bill of Costs.

## I.    Relevant Factual and Procedural Background

Plaintiff filed suit against the University of Oregon and seven individual defendants in October 2013. Plaintiff James M. Cleavenger ("Cleavenger" or "Plaintiff") represented himself for approximately a year. On October 21, 2014, the law firm Kafoury & MacDougal filed a Notice of Appearance (Dkt. 38). On March 18, 2015, Plaintiff filed a Second Amended Complaint (Dkt. 56). On May 28, 2015, the Court granted in part and denied in part Defendants' Motion to Dismiss ("MTD Order") (Dkt. 77). The Court dismissed all claims against the state Defendant, the University of Oregon. *Id.* Defendants filed a Motion for Summary Judgment on June 11, 2016, moving for summary judgment on all remaining claims against all remaining defendants (Dkt. 82). On August 6, 2015, the Court granted in part and denied in part Defendants' Motion for Summary Judgment (Dkt. 105). Specifically, the Court granted summary judgment as to all remaining claims except Plaintiff's 42 U.S.C. § 1983 claim premised on First Amendment violations as to Defendants Carolyn McDermed, Brandon Lebrecht, and Scott Cameron. *Id.* The jury trial began on September 8, 2015. On September 25, 2015, the jury returned a verdict finding all three remaining defendants liable (Dkts. 167, 168).

On October 13, 2015, Plaintiff filed the instant Petition pursuant to Federal Rule of Civil Procedure 54, moving the Court for $452,200.00 in attorney's fees for Kafoury & MacDougal, and $2,533 in non-taxable costs. Defendants filed their Objections on October 30, 2015 ("Objections") (Dkt. 188). Plaintiff replied on November 17, 2015 (Dkt. 196).

Also on October 13, 2015, Plaintiff filed a Bill of Costs. Defendants filed their Objections to Bill of Costs on October 30, 2015 ("Bill of Costs Objections") (Dkt. 190). Plaintiff filed a Reply to Bill of Costs on November 17, 2015 ("Bill of Costs Reply") (Dkt. 197).

The Court will first address Plaintiff's Petition and then turn to the Bill of Costs.

## II.     Petition for Attorney's Fees and Non-Taxable Costs

### A.  Legal Standard

Under 42 U.S.C. § 1988, the Court may, in its discretion, grant a reasonable attorney's fee as part of the costs to the prevailing party. 42 U.S.C. § 1988(b). The lodestar formula should be used to determine a reasonable figure for an award of attorney's fees. A lodestar figure is calculated by "multiplying the hours spent on a case by a reasonable hourly rate of compensation for each attorney involved." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563 (1986). "A 'strong presumption' exists that the lodestar figure represents a 'reasonable' fee, and upward [or downward] adjustments of the lodestar are proper only in 'rare' and 'exceptional' cases." Jordan v. *Multnomah County*, 815 F2d 1258, 1262 (9th Cir. 1987) (quoting *Delaware Valley*, 478 U.S. at 565); *see also Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 982 (9th Cir. 2008).

A plaintiff is considered a prevailing party if he succeeds on any significant issue in litigation that gives some benefit that plaintiff sought in bringing the suit. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). To satisfy this requirement, the suit must have produced a material alteration of the legal relationship between the parties. *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001). This alteration may be the result of an enforceable judgment or comparable relief through a consent decree. *Farrar v. Hobby*, 506 U.S. 103, 111 (1992).

Once the Court determines attorney's fees are warranted in a given case, the Court must then assess whether the amount of fees requested is reasonable. "In setting a

reasonable attorney's fee, the district court should make specific findings as to the rate and hours it has determined to be reasonable." *Gracie v. Gracie*, 217 F.3d 1060, 1070 (9th Cir. 2000) (quoting *Frank Music Corp. v. Metro-Goldwyn Mayer Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989)). The first step the district court must take is to "determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate." *Gracie*, 217 F.3d at 1070 (internal quotation marks and citation omitted). Next, the district court should, where appropriate, "adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975), that has not been subsumed in lodestar calculation." *Id.* (internal citation and quotation marks omitted).

### B. Discussion

#### 1.    Prevailing Party

The Court concludes Plaintiff is the prevailing party for purposes of attorney's fees. The jury returned a verdict finding all three remaining Defendants liable and judgment was entered in favor of Plaintiff and against Defendants (Dkt. 172). Moreover, the parties do not dispute Plaintiff is the prevailing party; Defendants only dispute the reasonableness of Plaintiff's request and amount of attorney's fees that should be awarded.

#### 2.    Reasonable Rate

Because attorneys' fees are warranted here, the Court must address whether the amount of fees requested is reasonable. First, the Court will assess whether the rates are reasonable.

Reasonable fees "are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." *Van Skike v. Dir., Office of Workers' Comp. Programs*, 557 F.3d 1041, 1046 (9th Cir. 2009) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984) (internal quotation marks omitted)). The burden is on the fee applicant "'to produce satisfactory

evidence' of the relevant market rate." *Id.* (quoting *Blum*, 465 U.S. at 895 n.11). The Ninth Circuit has noted that "[a]ffidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *Camacho*, 523 F.3d at 980 (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) (internal quotation marks omitted)).

In addition, "as a benchmark for comparing an attorney's billing rate with the fee customarily charged in the locality, Court uses the most recent Oregon State Bar Economic Survey." *Nance v. May Trucking Co.*, No. 3:12-CV-01655-HZ, 2014 WL 6633111, at *3 (D. Or. Nov. 21, 2014); *see* Local Rule 54-3 ("Practice Tip") ("As for the reasonable hourly rate, the Court uses the most recent Oregon State Bar Economic Survey as its initial benchmark.").[1]

Defendants contest the hourly rate of one individual. Nonetheless, the Court must still determine whether Plaintiff has met his burden of producing evidence showing all the rates charged by Plaintiff's counsel are in line with "those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11.

### a. Attorney Rates

Here, Plaintiff requests that Gregory Kafoury's ("Mr. G. Kafoury") time be compensated at an hourly rate of $500, Mark McDougal's ("Mr. McDougal") time be compensated at an hourly rate of $450, Jason Kafoury's ("Mr. J. Kafoury") time be compensated at an hourly rate of $350, Natalie McDougal's ("Ms. McDougal") time be compensated at an hourly rate of $275, and Adam Kiel ("Mr. Kiel") be compensated at an hourly rate of $250.

---

[1] The most recent Oregon State Bar Economic Survey was published in 2012.

### i. Rate for Gregory Kafoury

Plaintiff requests that Gregory Kafoury's time be compensated at an hourly rate of $500. Gregory Kafoury provides evidence that he is the senior partner at Kafoury & MacDougal and has practiced law for more than forty years. Declaration of Gregory Kafoury ("G. Kafoury Decl.") (Dkt. 174) ¶ 6. Plaintiff also provides declarations from Charles R. Williamson ("Mr. Williamson") and William A. Barton ("Mr. Barton") – attorneys who did not represent Plaintiff in this case. Williamson declares an hourly rate of $500 for Mr. G. Kafoury is "consistent with [his] skill, reputation and experience," Declaration of Charles A. Williamson ("Williamson Decl.") (Dkt. 182) ¶ 6, and Mr. Barton declares Gregory Kafoury's rate is "reasonable and within the range of attorneys with comparable experience," Declaration of William A. Barton ("Barton Decl.") (Dkt. 183) ¶ 9.[2]

According to the 2012 Oregon State Bar ("OSB") Economic Survey, which provides information as to rates actually charged by Oregon attorneys in 2012, the average hourly rate for legal services charged by Portland-area attorneys with more than thirty years of experience was $340 in 2012, with a 25th percentile rate of $275, a 75th percentile rate of $400, and a 95th percentile rate of $500. *See Spada Properties, Inc. v. Summit Trading Co.*, No. 3:13-CV-01801-PK, 2014 WL 1406596, at *3 (D. Or. Apr. 9, 2014).

Mr. G. Kafoury was not lead counsel, Kafoury Decl. ¶ 3, and a review of his time sheet indicates that much of his time was spent "observing, taking notes, and providing advice" and assisting in the preparation of the final argument. *See id.* Ex. A. Accordingly, taking into account Mr. G. Kafoury's skill and experience and the

---

[2] Mr. Williamson declares he has been practicing law in Portland, Oregon since 1970 and is familiar with the billing practices and rates of law firms that bill by the hour and that he is personally familiar with the nature of Kafoury & McDougal's law practice. Williamson Decl. ¶¶ 2, 4. Mr. Barton declares he has been a lawyer in Oregon for forty years and that he is "familiar with the rates charged by trial attorneys, paralegals, and support staff in Oregon that have similar experience, reputation and ability as the trial attorneys and staff at Kafoury & McDougal who were involved in this case." Barton Decl. ¶¶ 1, 6.

benchmark provided by the OSB Economic Survey, the Court concludes that $400, rather than the requested $500, is a reasonable hourly rate for Mr. G. Kafoury in this case. *See Sterling Sav. Bank v. Derek L. Brown & Associates, Inc.*, No. 3:10-CV-00674-BR, 2013 WL 164424, at *3 (D. Or. Jan. 15, 2013) (finding a rate of $400 per hour was a reasonable rate for an attorney with over thirty years of experience); *see also Prison Legal News v. Umatilla Cty.*, No. 2:12-CV-01101-SU, 2013 WL 2156471, at *4 (D. Or. May 16, 2013) ("If the rate requested exceeds the average rate reported in the OSB Survey, the burden is on the prevailing party to justify that higher rate. Even when such justification is present, the court usually limits the hourly rate to the 75th percentile of the OSB Survey.") (citations omitted).

### ii. Rate for Mark McDougal

Plaintiff requests Mr. McDougal's time be compensated at an hourly rate of $450. Mr. McDougal's career began in 1989 and he has been involved in complex plaintiffs' litigation and has tried over 100 cases to jury verdict as either lead or co-counsel. Declaration of Mark McDougal ("M. McDougal Decl") (Dkt. 175) ¶¶ 6–8. Further, Mr. Williamson declares an hourly rate of $450 for Mr. McDougal is "consistent with [his] skill, reputation and experience," Williamson Decl. ¶ 6, and Mr. Barton declares Mr. McDougal's rate is "reasonable and within the range of attorneys with comparable experience," Barton Decl. ¶ 9.

According to the 2012 OSB Economic Survey, the average hourly rate for legal services charged by Portland-area attorneys with twenty-one to thirty years of experience was $326 in 2012, with a 25th percentile rate of $251, a 75th percentile rate of $399, and a 95th percentile rate of $470.

In light of the evidence in the record, the Court finds that an hourly rate of $400 is reasonable. *See Prison Legal News*, at 2013 WL 2156471, at *4.

### iii. Rate for Jason Kafoury

Plaintiff requests Mr. J. Kafoury's time be compensated at an hourly rate of $350. Mr. J. Kafoury declares he was lead counsel on this case and spent "considerably more time on this file than any other case in our firm since we became involved back in October 2014." Declaration of Jason Kafoury ("J. Kafoury Decl.") (Dkt. 176) ¶ 8. In addition, he "was the only attorney at our firm who conducted the nearly two dozen depositions that were part of this case." *Id.* Mr. J. Kafoury states he has participated in forty-one trials during his seven years as an attorney and has participated as a first or second chair in twenty-one trials. *Id.* ¶ 5. Referring to attorney's fees awards in other cases, Mr. J. Kafoury further declares that "Judge You agreed that my standard hourly rate of $275 with three years' trial experience was reasonable and granted that rate," and that "Judge Gaffin concluded that my individual rate of $300 for a fifth year attorney with trial experience was reasonable for the Portland, Oregon community." *Id.* ¶¶ 6–7.

In support of this request, Mr. Williamson declares that "[a]n hourly rate for Jason Kafoury is reasonable, since he has tried more cases in his seven years than many trial attorneys who have been practicing twice as long as he has." Williamson Decl. ¶ 7.[3] Barton declares Mr. J. Kafoury's requested rate is "reasonable and within the range of attorneys with comparable experience." Barton Decl. ¶ 9. Mr. Barton further states that he knows Mr. J. Kafoury "to be an exceptionally gifted young lawyer," and that "[i]n his 7 years as an attorney has first, second or co-chaired 41 jury trials, which I believe is more than any other Oregon civil plaintiff attorney of his generation." *Id.* ¶ 5.

According to the 2012 OSB Economic Survey, the average hourly rate for legal services charged by Portland-area attorneys with seven to nine years of experience was $258 in 2012, with a 25th percentile rate of $225, a 75th percentile rate of $295, and a 95th percentile rate of $375.

---

[3] Jason Kafoury states he graduated from law school in May 2008 and has worked at Kafoury & McDougal since December 2008.

Particularly given the evidence concerning Mr. J. Kafoury's trial experience, role in this case, and other courts' findings about his appropriate hourly rate, the Court concludes the requested hourly rate of $350 is reasonable.

### iv. Rate for Natalie McDougal

Plaintiff requests Ms. McDougal's time be compensated at an hourly rate of $275. Ms. McDougal has been a lawyer since 2004 and worked in the legal field for over six years prior to going to law school. Declaration of Natalie McDougal ("N. McDougal Decl.") (Dkt. 177) ¶¶ 4–5. Mr. Williamson states "[a]n hourly rate of $275 an hour for Ms. McDougal, who has been practicing for 11 years . . . [is a billing rate] consistent with similarly situated associates in law firms of the stature of Kafoury & McDougal in the Portland area." Williamson Decl. ¶ 8. Mr. Barton declares Ms. McDougal's rate is "reasonable and within the range of attorneys with comparable experience." Barton Decl. ¶ 9.

According to the 2012 OSB Economic Survey, the average hourly rate for legal services charged by Portland-area attorneys with ten to twelve years was $280 in 2012, with a 25th percentile rate of $233, a 75th percentile rate of $300, and a 95th percentile rate of $428.

In light of the foregoing and all the evidence in the record, the Court concludes a rate of $275 per hour is a reasonable rate for Ms. McDougal's services.

### v. Rate for Adam Kiel

Plaintiff requests Mr. Kiel's time be compensated at an hourly rate of $250. Mr. Kiel declares he has been a member of the Oregon Bar since May 2009. Declaration of Adam Kiel ("Kiel Decl.") (Dkt. 178) ¶ 4. Mr. Williamson states "[a]n hourly rate of . . . $250 for Adam Kiel, who has been practicing for seven years [is a billing rate] consistent with similarly situated associates in law firms of the stature of Kafoury & McDougal in the Portland area." Williamson Decl. ¶ 8. Mr. Barton declares Mr. Kiel's

rate is "reasonable and within the range of attorneys with comparable experience," Barton Decl. ¶ 9.

As indicated above, the 2012 OSB Economic Survey states the average hourly rate for legal services charged by Portland-area attorneys with seven to nine years of experience was $258 in 2012, with a 25th percentile rate of $225, a 75th percentile rate of $295, and a 95th percentile rate of $375.

Based on the evidence in the record, the Court finds $250 is a reasonable rate for Mr. Kiel.

### b.  Law Clerk Rate for Dustin Hawkins

Plaintiff requests that Dustin Hawkins' ("Mr. Hawkins") time be compensated at an hourly rate of $175. Mr. Hawkins has worked at Kafoury & MacDougal since January of 2008 and is currently employed there as a law clerk. Declaration of Dustin Hawkins ("Hawkins Decl.") (Dkt. 179) ¶ 3. He is in his final year of law school. *Id.* ¶ 4. Further, Mr. Williamson declares that he is "familiar with the rates charged by . . . law clerks" and that an hourly rate of $175 for Mr. Hawkins, "who has been with Kafoury & McDougal for over seven years," is "appropriate and reflect[s] the prevailing market rate in the community." Williamson Decl. ¶ 9.

However, the Court is not convinced that $175 is a reasonable hourly rate. The Court is persuaded by the reasoning in *Precision Seed Cleaners v. Country Mut. Ins. Co.*, in which the court concluded that "[b]ased on the fact that the average hourly rate for Portland attorneys with zero to three years of experience is $182 as reflected in the 2012 OSB Economic Survey, $185 per hour is not a reasonable hourly rate for a law clerk." 976 F. Supp. 2d 1228, 1247 (D. Or. 2013). The *Precision Seed Cleaners* court also discussed whether the law clerks in that case were members of the Oregon State Bar and how many years out of law school they were. *Id.* Mr. Hawkins has not graduated from law school (and is therefore not a member of the Oregon State Bar). Still, given that Mr. Hawkins has worked with Kafoury & McDougal for over seven years and his

work on this case included "find[ing], read[ing], and analyz[ing]" cases cited by Defendants and emailing with the client about the facts of the case, Hawkins Decl. Ex. A, the Court finds that a reasonable hourly rate for Mr. Hawkins is $120 per hour. *See Ash Grove Cement Co. v. Liberty Mut. Ins. Co.*, No. 3:09-CV-00239-HZ, 2014 WL 837389, at *12 (D. Or. Mar. 3, 2014) (noting that other courts in this District have awarded hourly rates of $125, $120, $100, and $80 for work performed by law clerks).

### c. Paralegal Rate for Dennis Hall and David Hess

Plaintiff requests that Dennis Hall ("Mr. Hall") and David Hess' ("Mr. Hess") time be compensated at an hourly rate of $125.

Mr. Hess been a paralegal at Kafoury & McDougal since March of 2005 and, since January 1, 2009, has been the "courtroom paralegal" for thirty-three trials. Declaration of David Hess ("Hess Decl.") (Dkt. 180) ¶¶ 1–2.

Mr. Hall has been "one of the primary trial assistants" with Kafoury & McDougal for over seven years, "having assisted in trying almost every trial the firm has tried during that time." Declaration of Dennis Hall ("Hall Decl.") (Dkt. 181) ¶ 2. Mr. Hall has "extensive experience in preparing cases for trial, specifically including exhibit and witness preparation." *Id.*

Mr. Williamson declares he is familiar with the rates charged by paralegals and that the hourly rate of $125 for Mr. Hess and Mr. Hall is appropriate and "reflect the prevailing market rate in the community." Williamson Decl. ¶ 9.

In light of the evidence in the record, the Court finds that $125 is a reasonable rate for Mr. Hall and Mr. Hess' services as paralegals. *See Prison Legal News*, 2013 WL 2156471, at *4 (awarding paralegal hourly rates of $125, $105, and $90 and noting they did not exceed average rate for first-year associate).

### d. Trial Technologist Rate for David Hess

In addition to working as a paralegal, Mr. Hess also performed the role of trial technologist. Plaintiff requests that Mr. Hess be compensated at an hourly rate of $185

for his services as a trial technologist. Mr. Hess declares that, "[b]eginning in 2013 our office transitioned to using Trial Director presentation software" and that he has "operated the Trial Director presentation software during eleven trials." Hess Decl. ¶ 4. He further states that before using Trial Director he "used the Sony Vegas digital video editing system to edit videotaped deposition testimony and surveillance footage and presented the edited video during nineteen trials. *Id.*

In further support of this request, Plaintiff provides a declaration from Steve Spear ("Mr. Spear"), who is "the owner of Spear Litigation Technology, LLC," and "has been a trial presentation professional nationally for 12 years." Declaration of Steve Spear ("Spear Decl.") (Dkt. 184) ¶ 1. Mr. Spear declares he is "an expert" with trial presentation software, including Trial Director and that "the prevailing hourly rate for a trial presentation specialist with my level of experience in Oregon is $185 per hour." *Id.* ¶¶ 3. With respect to Mr. Hess, Mr. Spear states he has "worked with David Hess on several occasions, and consider his skills to be superior" and therefore "feel[s] confident that the rate he should command for his services would be the $185 per hour." *Id.* ¶ 4.

In response, Defendants, citing no authority, argue "Plaintiff has not shown that any specialized skill performed by Mr. Hess at the trial justifies an increase from his fees from that of a paralegal." Objections at 7. Plaintiff responds that counsel elected to use a trial technologist at trial because "technical difficulties can be extremely distracting to lawyers' focus and attention." Reply at 6. Plaintiff further asserts that the "cost of a trial technologist has become one that lawyers and law firms routinely pass on as an expense paid by the client." Other than the Spear Declaration, Plaintiff cites no additional authority in support of this statement.

The Court finds it unreasonable to award Mr. Hess an hourly rate identical to that of someone with Mr. Spear's level of experience as a trial presentation specialist and expertise with trial presentation software. Accordingly, the Court concludes that a rate of $125 is reasonable for Mr. Hess' services as a trial technologist.

### 3.       Number of Hours Reasonably Expended

The fee applicant bears the burden of demonstrating that the number of hours spent was reasonably necessary to the litigation and that counsel made "a good faith effort to exclude from [the] fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 433–34. Further, it is also the fee applicant's burden "to submit evidence supporting the hours worked . . . . Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* at 433.

Plaintiff submits billing records as follows: 77.8 hours for Mr. G. Kafoury, 146.35 hours for Mr. McDougal, 650.4 hours for Mr. J. Kafoury, 23.5 hours for Ms. McDougal, 318.9 hours for Mr. Kiel, 31.3 hours for Mr. Hawkins, 33 hours for Mr. Hall, 80 hours for Mr. Hess as a trial technologist, and 101.7 hours for Mr. Hess as a paralegal (Dkts. 174–81). Petition at 2.

Defendants object to the number of hours Plaintiff requests on two grounds. First, Defendants assert Plaintiff's requested fees include redundant and unnecessary time. Second, Defendants argue Plaintiff's request includes time spent pursuing clearly unwarranted claims. Although Defendants do not characterize it this way, the Court concludes the second objection is a better construed as a request that the Court depart downwardly from the lodestar.[4] Therefore, the Court therefore will address the second objection in the section entitled "Adjustments to the Lodestar." The Court will address the first objection here.

---

[4] The Court arrives at this conclusion in part because Defendants do not argue the number *hours* reasonably expended should be reduced on this basis. Rather, Defendants calculate a lodestar amount – $110,915.00 – for fees billed prior to June 6, 2015 and then argue the Court should reduce that amount by 75% ($83,186.25). Coit Decl. Ex. 3. Defendants then subtract $83,186.25 from the overall lodestar amount they calculated. Objections at 10. In other words, Defendants calculate a total lodestar amount of $373,618.75 or $377,543.75 and then apply the "Reduction for Pursuit of State law Claims" – $83,186.25 – to arrive at a total attorney's fees amount of $290,432.50 or $294,357.50. *Id.* The Court also notes that in this objection, Defendants rely on the fact that Plaintiff did not succeed on certain claims. The "amount involved and the results obtained" is one of the *Kerr* factors courts analyze to determine whether the Court may adjust the lodestar figure. *See, e.g.*, *Doby v. Sisters of St. Mary of Oregon Ministries Corp.*, No. 3:13-CV-00977-ST, 2015 WL 4877786, at *8 (D. Or. Aug. 14, 2015).

Defendants do not object to the hours claimed by Plaintiff's two lead counsel – Jason Kafoury and Mark McDougal – for the time spent in trial. Objections at 3. However, Defendants argue "the hours claimed for the presence of additional counsel during trial are unreasonable." *Id.* Specifically, Defendants assert the Court should reject Plaintiff's request that fees be awarded for Mr. G. Kafoury's services and argue the Court should reduce Mr. Kiel and Mr. Hess' hours. The Court will address Defendants' specific objections to the number of hours in turn.

### a. Gregory Kafoury

Defendants object to Plaintiff's request for an award for time Mr. G. Kafoury "spent in the courtroom 'observing, taking notes, and providing advice' to his son . . . and his legal partner" and state that Plaintiff "presents nothing to indicate Greg Kafoury's 'notes' were ever used by either trial counsel, or that his advice was in any way helpful to his son." Objections at 4. Defendants assert that "[a]ny efforts Greg Kafoury contributed to the trial in this case were duplicative and patently unnecessary," that and the entirety of the request should be denied as to Mr. G. Kafoury. *Id.* Plaintiff responds that Mr. G. Kafoury's efforts were supplemental rather than duplicative and that he took a lead role in argument and obtained a successful result – the first during voir dire and the other "concerning the redaction of sensitive strategy discussions from a defense exhibit received into evidence." Reply at 4–5. Plaintiff also states a "considerable portion of Gregory Kafoury's notes were used to help Jason Kafoury in crafting his closing argument." *Id.* at 5.

A court may reduce the number of hours awarded because the lawyer performed unnecessarily duplicative work. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). However, "[o]ne inherently expects *some* degree of duplication as an inherent part of the process." *Id.* In addition, "[i]t must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of

the fee." *Id.* Therefore, "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Id.*

The Court is not persuaded that *all* of Mr. G. Kafoury's time consists of needless duplication. *See Democratic Party of Washington State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004) ("Participation of more than one attorney does not necessarily amount to unnecessary duplication of that effort."). First, Mr. G. Kafoury argued before the Court on two occasions. In addition, given that he provided advice during the trial – such as "during the testimony of Drake and cross-examination of Cleavenger," G. Kafoury Decl. Ex A – and his notes were used to help Mr. J. Kafoury craft his closing argument, *see* Declaration of Gregory Kafoury in Support of Reply ("Supp. G. Kafoury Decl.") (Dkt. 199) ¶ 6 ("[M]y primary contribution to the trial was my suggestions, many of which were adopted, on the content, structure, and phrasing of final argument."), the Court concludes Mr. G. Kafoury was mostly present in court because his assistance was needed or could have been needed "by the lawyer arguing the case." *Democratic Party of Washington State*, 388 F.3d at 1286.

However, the Court also pays heed to Mr. G. Kafoury's – an attorney who has practiced law for more than forty years, G. Kafoury Decl. ¶ 6 – professional judgment as to his own fee: "I recognize that our firm had a lot of attorneys working on this case, and it would not be unreasonable to conclude that part of my presence in the courtroom was because my son was lead counsel. Accordingly, I suggest a reduction of my fee by perhaps 30%." G. Kafoury Decl. ¶ 3.

Thus, particularly given that four attorneys were present throughout the trial and that Mr. G. Kafoury himself has suggested his presence in the courtroom was not always necessary, the Court finds it appropriate to reduce the fees on those grounds. However, as discussed above, the Court disagrees with Defendants that *everything* Mr. G. Kafoury contributed to the trial was unnecessary duplicative. The Court must determine what constitute an appropriate reduction.

According to Mr. G. Kafoury's time sheet, he spent the following hours "[o]bserving, taking notices, providing advice" during the testimony of various witnesses and "[p]articipating in post-trial strategy meeting[s]:" 7.2 hours on September 8, 2015;[5] 3.5 hours on September 9, 2015; 4.5 hours on September 10, 2015; 6.1 hours on September 11, 2015; 7.7 hours on September 14, 2015; 5.5 hours on September 15, 2015; 7.5 hours on September 16, 2015; 6.6 hours on September 21, 2015; 7 hours on September 22, 2015; and 6.4 hours on September 23, 2015. *See* G. Kafoury Decl. Ex. A. The Court also notes these particular entries have been block billed, *see Irwin v. Astrue*, No. CV-10-545-HZ, 2011 WL 5865938, at *3 (D. Or. Nov. 22, 2011). As such, the Court cannot easily determine how many hours were spent only observing and taking notes, how many hours were spent providing advice during the testimony of witnesses, and how many hours were spent participating in the post-trial strategy meetings.

Accordingly, to account for unnecessary duplicative time in the courtroom and the block billing specifically identified above,[6] the Court finds a twenty percent reduction in those particular billing entries is warranted. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (stating the district court has the authority "to reduce hours that are billed in block format" and noting the "fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked"); *Noel v. Hall*, No. 3:99-CV-00649-AC, 2013 WL 5376542, at *6 (D. Or. Sept. 24, 2013) (finding a fifty percent reduction for block-billed time requested over the three-hour maximum warranted "because the vague nature of the entry makes it impossible for the court to many *any* assessment as to the reasonableness

---

[5] This entry also includes "Voir Dire – arguing successfully to the Court for alteration of Voir Dire format." G. Kafoury Decl. Ex. A.
[6] The Court notes each entry includes block billing in increments over three hours. *See Noel v. Hall*, No. 3:99-CV-00649-AC, 2013 WL 5376542, at *6 (D. Or. Sept. 24, 2013) ("[T]he court may excuse this method when the billing period is no more than three hours.").

of that time expended"). Mr. G. Kafoury's time is thus reduced by 12.4 hours for a total of 65.4 hours.

### b.  Adam Kiel

Defendants argue that 118.1 of Mr. Kiel's hours should be rejected as redundant and unnecessary because he was sitting in the courtroom "taking notes, managing exhibits, and assisting with argument." Objections at 4 (quoting Kiel Decl. Ex. 1) (internal quotation marks omitted). Defendants also argue Mr. Kiel has submitted block billing for time spent during trial days at the office, therefore "making it impossible to tell what part of his time was spent sitting in the courtroom watching the trial attorneys and what portion may have been spent doing productive work at the office." *Id.* at 4–5.

Plaintiff responds that because this case involved an unusually large number and volume of exhibits for a civil rights claim and the Court decided to hold evidentiary arguments the evening before an exhibit was to be introduced, Plaintiff's counsel designated Mr. Kiel to manage the exhibits. Reply at 5. Mr. Kiel "selected which exhibits were most appropriate for use with [a] particular witness," Declaration of Adam Kiel in Support of Reply ("Supp. Kiel Decl.") (Dkt. 200) ¶ 2, which gave Mr. J. Kafoury and Mr. McDougal "a focused set of facts from which to conduct examination of witnesses," Reply at 5. Plaintiff asserts that Mr. Kiel could not have performed this function without spending at least part of his day in the courtroom during evidentiary arguments. *Id.* In addition, Plaintiff argues that "[b]ecause of his familiarity with the exhibits, he was able on occasion to impact the course of cross-examination." *Id.*; *see* Supp. Kiel Decl. ¶ 4 (discussing role in cross examination of Officer Chris Phillips).

The Court disagrees with Defendants that all 118.1 hours for the twelve trial days should be rejected, particularly given Plaintiff's explanation of Mr. Kiel's key role in selecting and managing the exhibits and shaping arguments based on the exhibits. However, the Court agrees with Defendants that Mr. Kiel's time should be reduced due to block billing. As noted above, "[b]lock billing, which bundles tasks in a block of time,

makes it extremely difficult for a court to evaluate the reasonableness of the number of hours expended." *Irwin*, No. CV-10-545-HZ, 2011 WL 5865938, at *3 (D. Or. Nov. 22, 2011) (quoting *Aranda v. Astrue*, No. CV. 08–340–MA, 2011 WL 2413996, at * 5 (D. Or. 2011) (internal quotation marks omitted)). "[T]he district court can 'reduce' the fee award where the documentation is inadequate." *Id.* (quoting *Fischer v. SJF–P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (internal quotation marks omitted)).

After reviewing Mr. Kiel's time sheet, the Court concludes that the following entries, although detailed, constitute block billing: 12.3 hours on September 8, 2015; 6.3 hours on September 9, 2015; 11.5 hours on September 10, 2015; 11.5 hours on September 11, 2015; 11.5 hours on September 14, 2015; 11.5 hours on September 15, 2015; 9.5 hours on September 16, 2015; 15.5 hours on September 21, 2015; 11 hours on September 22, 2015; and 14 hours on September 23, 2015. *See* Kiel Decl. Ex. A. In total, these entries account for 114.6 hours. The Court cannot tell what portion of this time was spent in the courtroom, what portion of time was spent at the office working on trial-related projects, and what portion of time was spent at the post-trial strategy meeting. For instance, the entry for 11.5 hours on September 10, 2015 reads: "Third day of trial; at office to select and prepare exhibits for 9/11 witnesses, assist with argument re: same, post-trial strategy meeting." *Id.* Given that the Court cannot assess the reasonableness of each task listed in these entries, the Court reduces the block-billed time requested by twenty percent, which amounts to a reduction of 22.92 hours. *See Lyon v. Chase Bank USA, N.A.,* 656 F.3d 877, 892 (9th Cir. 2011) ("The fee award may be reduced if [plaintiff s] renewed request is supported only by block-billing statements of the relevant activity, although a fee award cannot be denied on this basis."); *Noel*, 2013 WL 5376542, at *6.

The Court also rejects Mr. Kiel's billing of one hour on September 24, 2015 for "Eleventh day of trial; attend trial briefly for swearing in of bailiff and initiation of deliberations" as unnecessary and duplicative. The Court also finds the billing of 2.5

hours for "Twelvth [sic] day of trial; attend with client and McDougal awaiting verdict, take notes on verdict and polling" excessive, particularly given that Mr. McDougal billed one hour on that same day for "Present in courtroom awaiting jury verdict (present 2.5 hours, but worked on other matters for 1.5 hours)." Accordingly, the Court further reduces Mr. Kiel's entry for September 25, 2015 by two hours.

In total, the Court reduces Mr. Kiel's hours by 25.92 for a total of 292.98 hours.

### c. David Hess

Defendants object to Mr. Hess' paralegal billing records on the basis that they are "exceptionally vague." Objections at 6. Specifically, Defendants object to fourteen billing entries, arguing they "are so vague that it is impossible to determine if the time spent was duplicative of time also billed for trial technologist services, or of that billed by Mr. Hall, the other paralegal who has submitted time records for payment." *Id.* at 7; *id.* Coit Decl. Ex. 2. Plaintiff does not specifically respond to these arguments.

Having reviewed the entries to which Defendants object along with Mr. Hess' declaration, the Court agrees with Defendants. The entry from September 7, 2015 states Mr. Hess spent 10 hours as follows: "Trial preparation. Finalize Trial Subpoena and attach witness fee check. Prepare process server instructions and attach." Hess Decl. Ex. A. All the other entries to which Defendants object are either the same as or just as vague as the following examples: "Trial Preparation;" "Trial Day 5 / Evening Trial Preparation." *Id.* These entries "are too generalized to provide any real information as to what work the . . . paralegal performed." *Atl. Recording Corp. v. Andersen*, No. CV 05-933 AC, 2008 WL 2536834, at *9 (D. Or. June 24, 2008). The hours accompanying these entries range from 1 hour to 9.25 hours. This is "precisely the type of vague description that this court has warned attorneys 'makes it nearly impossible to assess the reasonableness of the requested time.'" *Id.* (citation omitted). In addition, the Court notes that eight of these entries are also block billed. For example, the entry from September 22, 2015 states reads: "Trial Day 9 / Evening Trial Preparation." Hess Decl.

Ex. A. Based on this entry, the Court has no way of knowing how many hours were spent on each of the two tasks listed.

Accordingly, the Court will reduce the hours that are "not sufficiently documented to determine whether they were necessary and reasonable." *Id.*; *see Hensley*, 461 U.S. at 433 ("Where documentation of hours is inadequate, the district court may reduce the award accordingly."). The Court concludes that Mr. Hess' paralegal entries for September 5, 2015; from September 7, 2015 through September 11, 2015; from September 13, 2015 through September 16, 2015; and from September 20, 2015 through September 24, 2015 are inadequately documented. *See* Hess Decl. Ex. Together, those entries represent 75.5 hours. The Court reduces those hours by 50 percent.[7] Thus, Mr. Hess' time for his services as a paralegal is reduced by 37.75 hours for a total of 63.95 hours. *See Atl. Recording Corp.*, 2008 WL 2536834, at *9 (identifying 28.2 requested hours that were too vague to permit the court to determine their reasonableness and deducting those hours from the total requested hours); *Wolfe v. City of Portland*, No. 3:12-CV-02035-PK, 2013 WL 6002391, at *5 (D. Or. Nov. 8, 2013); *see also Noel*, 2013 WL 3146863, at *7.

### 4.    Conclusion Regarding Reasonable Hours Expended

After reviewing Plaintiff's timekeeping records, the Court declines to reduce the hours beyond the reductions applied above. The Court is satisfied the hours billed (other than those specifically addressed above) are reasonable and appropriate in this case.

### 5.    Adjustments to the Lodestar

After calculating the lodestar, the Court "may adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975), that have not been subsumed in the lodestar

---

[7] The Court recognizes it reduced Mr. G. Kafoury and Mr. Kiel's hours by 20 percent for similar reasons. However, the Court concludes Mr. Hess' billing entries, unlike Mr. G. Kafoury and Mr. Kiel's entries, provide no detail about the tasks performed during those time periods, and therefore a greater reduction is warranted.

calculation." *Intel Corp. v. Terabyte Int'l, Inc.,* 6 F.3d 614, 622 (9th Cir. 1993) (internal citation omitted). The *Kerr* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* (citing *Kerr*, 526 F.2d at 70. "Only those factors that are applicable need be addressed." *United States v. Montagne Dev., Inc.*, No. 3:11-CV-01191-PK, 2014 WL 2334209, at *13 (D. Or. Mar. 10, 2014), *report and recommendation adopted as modified*, No. 3:11-CV-01191-PK, 2014 WL 2333777 (D. Or. May 29, 2014).

Here, Defendants argue the amount of attorney's fees should be reduced to account for Plaintiff's pursuit of "frivolous" state law claims. *See Doby v. Sisters of St. Mary of Oregon Ministries Corp.*, No. 3:13-CV-00977-ST, 2015 WL 4877786, at *8 (D. Or. Aug. 14, 2015) ("It is within the discretion of this court to adjust the lodestar figure either: (1) downward if the plaintiff has achieved only partial or limited success or if the fee is otherwise unreasonable . . . .") (citing *Hensley,* 461 U.S. at 435–36 (1983)). Specifically, Defendants seek a reduction of $83,186.25 – a 75% reduction of the fees incurred from October 2013 through June 5, 2015 – based on the time spent pursuing "frivolous" state law claims. Objections at 9–10; *see* Declaration of Andrea Coit ("Coit Decl.") (Dkt. 189) ¶ 3; *id.* Ex. 3 ("Chart Compiling Hours Billed, Rates, and Total Fees from October 2013 through June 5, 2015").

### a.  Objection Based on "Unwarranted" of "Frivolous" Claims

Defendants object to Plaintiff's fee request on the basis that it improperly includes time pursuing "clearly unwarranted" state law claims. Specifically, Defendants assert that the majority of the attorney's fees Plaintiff incurred up through June 6, 2015 –

the date he filed his Third Amended Complaint – "represent the pursuit of state law claims, all of which were frivolous when pursued in this court," and that fee period should be reduced by 75%. Objections at 9. Defendants argue Plaintiffs state law claims were frivolous because the Court found in its MTD Order that all state law claims against all Defendants (including the University of Oregon) were barred by the Eleventh Amendment. *Id.* at 8. Further, Defendants add that the "majority of the claims pursued for the first 19 months of this lawsuit were frivolous because the court lacked jurisdiction to hear them," and thus Plaintiff should not be awarded attorney's fees "in pursuit of these frivolous claims." *Id.*; *see* MTD Order at 12 ("Plaintiff's § 1983 claims against [the University of Oregon] and all individual Defendants sued in their individual capacity are DISMISSED WITH PREJUDICE, because they are not persons subject to suit under § 1983."). In other words, Defendants argue that Plaintiff's state law claims were frivolous because the Court "never had jurisdiction."

The Court disagrees with Defendants' contention that the state law claims were "frivolous because the court lacked *jurisdiction* to hear them." Objections at 9 (emphasis added). "While the Eleventh Amendment prevents federal courts from hearing cases against states, we have stated that 'dismissal based on Eleventh Amendment immunity is not a dismissal for lack of subject matter jurisdiction,' but instead rests on an affirmative defense." *Elwood v. Drescher*, 456 F.3d 943, 949 (9th Cir. 2006) (quoting *Miles v. State of California*, 320 F.3d 986, 988–89 (9th Cir. 2003)); *see also Hill v. Blind Indus. & Servs. of Maryland*, 179 F.3d 754, 760 (9th Cir.) *opinion amended on denial of reh'g*, 201 F.3d 1186 (9th Cir. 1999) ("Eleventh Amendment immunity 'does not implicate a federal court's subject matter jurisdiction in any ordinary sense . . . .'") (quoting *ITSI TV Prods., Inc. v. Agricultural Ass'ns*, 3 F.3d 1289, 1291 (9th Cir. 1993)).

Further, it is possible that Oregon could have consented to suit in federal court or even forfeited its Eleventh Amendment immunity defense. Indeed, the State "can waive" an Eleventh Amendment immunity defense, and "[u]nless the State raises the matter, a

court can ignore it." *Id.* Further, the Ninth Circuit has indicated that an Eleventh Amendment immunity defense "may even be forfeited by the State's failure to assert it." *Id.* (quoting *ITSI TV Prods., Inc.*, 3 F.3d at 1291) (internal quotation marks omitted). Thus, the Court finds that the state law claims barred by Eleventh Amendment immunity were not frivolous. *See Karam v. City of Burbank*, 352 F.3d 1188, 1195 ("A case may deemed frivolous only when the 'result is obvious or the . . . arguments of error are wholly without merit.'") (quoting *McConnell v. Critchlow*, 661 F.2d 116, 118 (9th Cir. 1981)); *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 421-22, 98 S. Ct. 694, 700, 54 L. Ed. 2d 648 (1978) ("[I]t is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.").

The Court also notes the instant situation is unlike the situation addressed in *Fox v. Vice*, 131 S Ct. 2205 (2011), because here, Defendants are not the prevailing party and are therefore not asking to recover reasonable attorney's fees. Rather, Defendants are only asking the Court to reduce *Plaintiff's* attorney's fee request. Accordingly, the Court does not apply the *Vox* test for determining whether a prevailing *defendant* may recover reasonable attorney's fees. *See Fox*, 131 S Ct. at 2218 ("In a suit of this kind, involving both frivolous and non-frivolous claims, a *defendant* may recover the reasonable attorney's fees he expended solely because of the frivolous allegations. And that is all. Consistent with the policy underlying § 1988, the defendant may not receive compensation for any fees that he would have paid in the absence of the frivolous claims.") (emphasis added). Although Defendants do not cite *Fox*, the authority they do cite addresses under what circumstances courts may award fees to the defendants when the plaintiff asserted frivolous claims. *See* Objections at 8 (citing *Tudor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1060 (9th Cir. 2006)).

For the foregoing reasons, the Court declines to reduce Plaintiff's attorney fee request on the basis that the state law claims "were frivolous when pursued in this court."[8]

### b.  Unsuccessful Claims/Level of Success

Defendants also point out that only one of Plaintiff's claims survived summary judgment. Objections at 9. Defendants mention that "the test for recovery for fees expended in pursuit of unsuccessful federal civil rights claims is generally one of relatedness to the successful claims." *Id.* at 8. However, it does not appear Defendants are arguing the Court should reduce Plaintiff's requested fee based on that test – the *Hensley* test. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).[9] Because the Court ultimately concludes Defendant has not asked the Court to reduce Plaintiff's fees on this basis, the Court need not delve into a *Hensley* analysis. Nonetheless, out of an abundance of caution, the Court will briefly address whether Plaintiff's request for attorney's fees should be reduced on this basis.

Under the *Hensley* test, where a plaintiff only succeeds on some of her claims, the district court addresses two questions under *Hensley*: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which she succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Schwarz v. Sec'y of Health & Human Servs.*,

---

[8] The Court notes that Plaintiff did not continue to pursue the state law claims in this Court after they were dismissed. *Cf. Elwood*, 456 F.3d at 949 ("The district court's finding of frivolousness was not an abuse of discretion, given that Elwood continued to press her claim against the California DOJ even after the court warned her that it appeared to be frivolous, and failed to amend her complaint or provide any basis for overcoming the Eleventh Amendment defense."); *Ramirez v. Merced Cty.*, No. 1:11-CV- 531 AWI DLB, 2013 WL 4780440, at *8 (E.D. Cal. Sept. 5, 2013) ("[B]ecause this case was not clearly frivolous at the time of filing, the Court will award attorneys fees from the point in time in which it was clear that the case had become frivolous, without foundation, and/or unreasonable.").

[9] Indeed, in the chart Defendants have included as part of their Objections, they specifically indicate they seek a "Reduction for Pursuit of State law Claims." Objections at 10. Defendants argue only that the state law claims were frivolous – not that they were *unrelated* to the claim on which Plaintiff succeeded. *See id.* at 8–9.

73 F.3d 895, 901 (9th Cir. 1995) (quoting *Hensley*, 461 U.S. at 434) (internal quotation marks omitted)); *see also Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003).

      With respect to the first inquiry, the Ninth Circuit has explained that "claims are 'unrelated' if they are 'entirely district and separate' from the claims on which the plaintiff prevailed." *Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001) (citation omitted). Claims are related if they "involve a common core of fact or [are] based on related legal theories." *Schwarz*, 73 F.3d at 901 (quoting *Hensley*, 461 U.S. at 434–35) (internal quotation marks omitted). In answering the second question, "a district court 'should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'" *Sorenson*, 239 F.3d at 1147 (quoting *Hensley*, 461 U.S. at 435). "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee" – a plaintiff may "obtain excellent results without receiving all the relief requested." *Id.* (quoting *Hensley*, 461 U.S. at 435 & n.11) (internal quotation marks omitted).

      Defendants emphasize Plaintiff did not succeed on certain claims. However, Defendants do not assert the claims on which Plaintiff failed to prevail were unrelated to the claim on which he succeeded. Plaintiff, on the other hand, affirmatively states "[t]he common core of facts runs throughout this litigation, beginning with Plaintiff's speech about TASERs while he was a student, up through the submission of the *Brady* materials that permanently damaged his career." Reply at 8. Plaintiff also argues that "[a]t no point did the dismissal of any defendant or claim allow Plaintiff to significantly narrow the scope of evidence he needed to present at trial." *Id.* Further, Plaintiff states the "efforts spent engaging in discovery against these former [individual] defendants was not wasted, as three of the four (Morrow, King, and Caufield) testified at length for the defense." *Id.*

      The Court cannot find that the claims on which Plaintiff failed are entirely separate and distinct from the claim on which Plaintiff ultimately prevailed. Indeed, as

Plaintiff correctly asserts, the claims "arose out of a common course of conduct." *Webb*, 330 F.3d at 1169 (quoting *Schwarz*, 73 F.3d at 903) (internal quotation marks omitted). Further, with respect to the second step of the *Hensley* test, the Court concludes that even though Plaintiff did not prevail against all Defendants or on all claims, Plaintiff obtained excellent results. *See Hensley*, 461 U.S. at 435 ("Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters."). Indeed, the jury found all three remaining Defendants liable for economic damages in the amount of $650,000. Jury Verdict (Dkts. 167, 168). The jury awarded punitive damages in the amount of $36,000 against Defendant McDermed, $51,000 against Defendant Lebrecht, and $18,000 against Defendant Cameron. *Id.* Plaintiff states he made an opening settlement offer of $600,000, Petition at 3, and that the Jury Verdict exceeded Defendants' best settlement offer of $20,000 (inclusive of fees and costs) by a favor of thirty-seven, Reply at 8. Accordingly, the Court declines to exercise its discretion to reduce Plaintiff's fee request on this basis.

### 6.    Non-Taxable Costs

Plaintiff requests $2,533 in non-taxable costs. Petition at 5. In addition, Plaintiff argues the Court should allow Plaintiff to recover the costs of videotaping depositions and daily transcripts. Bill of Costs Reply at 4–6.[10] Defendants respond that Plaintiff has not demonstrated such costs were either reasonably incurred or costs normally billed to fee paying clients. Bill of Costs Objections at 6. Further, Defendants assert neither videotaping costs nor daily trial transcript costs are "necessarily incidental to litigation." *Id.* at 7.

"[A]ttorneys' fees awards can include reimbursement for out-of-pocket expenses including the travel, courier and copying costs" and other expenses "incurred during the

---

[10] As is addressed below, Plaintiff first argues these costs are recoverable as taxable costs. Plaintiff alternatively argues these costs are recoverable as part of the attorney's fee award. Bill of Costs Reply at 4–6.

course of litigation which are normally billed to fee-paying clients." *Davis v. City & Cty. of San Francisco*, 976 F.2d 1536, 1556 (9th Cir. 1992) *opinion vacated in part on denial of reh'g*, 984 F.2d 345 (9th Cir. 1993) (citation and internal quotation marks omitted); *see also Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1058 n.1 (9th Cir. 2006); *cf. Grove v. Wells Fargo Fin. California, Inc.*, 606 F.3d 577, 583 (9th Cir. 2010) ("We rejected the defendant's argument that costs should be limited to those available under § 1920, explaining that the defendant 'fails to see that . . . travel expenses were not granted as costs under section 1920, but rather as out-of-pocket expenses, compensable under section 1988) (quoting *Davis v. Mason Cty.*, 927 F.2d 1473, 1488 (9th Cir. 1991)). Thus, in considering a request for non-taxable costs, the district court must determine "whether it is the prevailing practice in the community for lawyers to bill those costs separate from their hourly rates." *Grove*, 606 F.3d at 583. The requested expenses must be reasonable. *Harris v. Marhoefer*, 24 F.3d 16, 20 (9th Cir. 1994).

The Court will first address whether the costs of videotaping depositions should be allowed as part of the attorney's fee award. It does not appear there is a Ninth Circuit or District of Oregon case on point. As such, the Court defers to the general rule allowing recovery of costs that attorneys normally bill to fee-paying clients. Plaintiff argues the "prevailing practice in our legal community is to bill the costs of videotaping depositions to their client." Bill of Costs Reply at 4. To support this assertion, Plaintiff submits an affidavit from James Gidley ("Mr. Gidley"), an attorney currently at Perkins Coie LLP in Portland, Oregon, who has practiced law in Oregon since 1967. Affidavit of James Gidley ("Gidley Aff.") (Dkt. 198) ¶ 2. Mr. Gidley states that in his practice, "it is frequently necessary to take videotaped depositions," and that "[i]n such cases, the standard practice is that videotaping costs are the responsibility of, and are paid by, the client who retained our firm." *Id.* ¶ 4. Based on this evidence, the Court finds the cost of videotaping a deposition is a fee for which an attorney would normally bill a client.

Therefore, the Court awards Plaintiff his videotaping expenses in the amount of $8,532.88.

The Court now turns to the daily trial transcripts. Plaintiff states "[t]he daily trial transcripts were invaluable in allowing plaintiff's counsel to examine witnesses based on prior witness testimony." Bill of Costs Reply at 5. Defendant responds that the costs of the daily trial transcripts should not be awarded as part of the attorney's fee award because they were "incurred for the convenience of counsel." Bill of Costs Objections at 6–7. Plaintiff has not provided the Court with any authority demonstrating that courts in this District award costs for daily trial transcripts under § 1988. To the contrary, the Court's research indicates courts in this District do not award the costs of daily trial transcripts under § 1988; instead, these costs are awarded under 28 U.S.C. § 1920 or not at all. *Cf. Nemo v. City of Portland*, No. CV-94-1553-ST, 1996 WL 437633, at *8 (D. Or. Apr. 9, 1996) (stating that certain expenses, including hearing transcripts, "are more properly recoverable as costs under 28 U.S.C. § 1920," rather than under § 1988). Accordingly, the Court declines to award Plaintiff daily transcript expenses as part of the attorney's fee award.

## C. Final Calculation

Using a rate of $400 per hour for 65.4 hours for Gregory Kafoury; a rate of $400 per hour for 146.35 hours for Mark McDougal; a rate of $350 per hour for 640.4 hours for Jason Kafoury; a rate of $275 per hour for 23.5 hours for Natalie McDougal; a rate of $250 per hour for 292.98 hours for Adam Kiel; a rate of $125 per hour for 80 hours for David Hess' services as a trial technologist; a rate of $120 per hour for 31.3 hours for Dustin Hawkins; a rate of $125 per hour for 63.95 hours for David Hess' services as a paralegal; and a rate of $125 per hour for 33 hours for Dennis Hall, the Court awards $414,422.25 in attorney's fees and $11,065.88 in non-taxable costs, for a total award of $425,488.13.

### III.    Bill of Costs

Plaintiff also seeks $45,773.59 in taxable costs. Defendants argue the entire Bill of Costs should be rejected. Bill of Cost Objections at 1. In the alternative, Defendants assert the Court should reject certain costs. *Id.* at 2–9.

### A. Legal Standard

Rule 54(d)(1) provides, in relevant part: "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." This rule, [b]y its terms . . . creates a presumption in favor of awarding costs to a prevailing party, but vests in the district court discretion to refuse to award costs." *Assoc. of Mexican-Am. Educators v. California,* 231 F.3d 572, 591 (9th Cir. 2000) (en banc). If the district court decides to disallow costs, it must "'specify reasons' for its refusal to award costs." *Id.* However, the district court "need not give affirmative reasons for awarding costs; instead it need only find that the reasons for denying costs are not sufficiently persuasive to overcome the presumption in favor of an award." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003)

In addition, pursuant to Local Rule 54.1(a)(1), the prevailing party must provide a "detailed itemization of all claimed costs" and "appropriate documentation." In addition, Local Rule 54.1(a)(2) states the cost bill must be verified as required by 28 U.S.C. § 1924, which requires an affidavit that the items within the cost bill are correct, have been necessarily incurred in the case, and that the services for which fees have been charged were actually and necessarily performed.

Expenses that may be taxed as costs against the losing party are enumerated in 28 U.S.C. § 1920. Section 1920 provides:

> A judge or clerk of the court of the United States may tax as costs
> the following:
>
> (1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

"Although a district court has broad discretionary power to allow or disallow a prevailing party to recoup the costs of litigation, the court may not tax costs beyond those authorized by 28 U.S.C. § 1920." *Kelley v. Sears, Roebuck, and Co.,* No. 01–cv–1423–ST, 2004 WL 1824121, *3 (D. Or. Aug. 10, 2004) (citation omitted). However, courts are "free to construe the meaning and scope of the items enumerated as taxable costs." *Id.* (citing *Aflex Corp. v. Underwriters Lab., Inc.*, 914 F.3d 175, 177–78 (9th Cir. 1990) (per curiam), *cert denied*, 502 U.S. 812 (1991)).

## B. Discussion

Plaintiff submits a Bill of Costs seeking $45,773.59 for the following fees: fees of the clerk ($400.00), fees for service of summons and subpoena ($3,005.00), fees for printed or electronically recorded transcripts ($36,588.95), fees and disbursements for printing ($1,261.33), fees for witnesses ($4,478.35), and fees for exemplification and the costs of making copies of any materials where the copies are necessary obtained for use in the case ($39.96). Bill of Costs at 1. Plaintiff attached a document to the Bill of Costs listing each charge, the amount of that charge, the date of the charge, and what each

charge was for ("Itemized Bill of Costs").[11] Further, along with his Reply to Bill of Costs, Plaintiff filed a declaration from Mr. Hess. Declaration of David Hess. ("Hess Decl."). Plaintiff attached attached exhibits, including an exhibit with supporting invoices, to the Hess Declaration. *Id.* Ex. A. The Bill of Costs also includes a sworn declaration stating that "the foregoing costs are correct and were necessarily incurred in this action and that the services for which fees have been charged were actually and necessarily performed." Bill of Costs at 1.

The Court will first consider Defendants' argument that the Court should reject the entire Bill of Costs. Then, the Court will address Defendants' objections concerning certain requested amounts.

### 1.        Rejection of the Entire Bill of Costs

Defendants argue the entire Bill of Costs should be rejected because it is inadequately supported and fails to comply with statutory requirements. Bill of Costs Objections. The Court agrees with Defendants that "[s]imply filing a list of charges without supporting documentation is not 'appropriate documentation.'" *Tucker v. Cascade Gen., Inc.*, No. 3:09-CV-1491-AC, 2015 WL 2092849, at *1 (D. Or. May 5, 2015). However, the Court concludes Plaintiff has submitted appropriate documentation. Plaintiff has provided an itemization of claimed costs; a list of the expenses organized by category, with each individual expense individually itemized and described; the person or entity paid; and the date of payment. *See generally* Itemized Bill of Costs. Plaintiff also included a declaration from Mr. J. Kafoury swearing to the correctness and necessity of the costs, and swearing that the services that gave rise to the costs were actually and necessarily performed in this action. Bill of Costs at 1. In addition, when Plaintiff filed his Bill of Costs Reply, he submitted receipts and invoices for the claimed costs. *See generally* Hess Decl. Ex. A.

---

[11] The "Itemized Bill of Costs" refers to the spreadsheet Plaintiff attached to the Bill of Costs that was generated from Kafoury & McDougal's bookkeeping software. *See* Reply at 2.

Based on a review of this documentation, the Court is satisfied Plaintiff has complied with the requirements of Local Rule 54.1 and declines to reject the Bill of Costs in its entirety. *See Tucker*, 2015 WL 2092849, at *1. Therefore, the Court will turn to Defendants' specific objections to certain requested amounts.

### 2.    Fees of the Clerk and Marshal

A prevailing party may recover "[f]ees of the clerk and marshal." 28 U.S.C. § 1920(1); *see Tucker*, 2015 WL 2092849, at *2. Plaintiff seeks reimbursement of $3,005 as money paid for filing and for services of summons and subpoenas. Defendants object, arguing the process server fees are unreasonable and unexplained. Bill of Costs Objections at 8.

The first charge Defendants contest is the $370 for "Process Server for Service of Summons and Complaint." *Id.* Plaintiff supplies supporting invoices that illustrate how the charge reached $370. *See* Hess Decl. Ex. A, Ex. 1. These invoices show Plaintiff served the summons and complaint on nine separate individuals (eight for $40 and one for $50). *Id.* The Court concludes this is adequate documentation and therefore allows this cost. *See* L.R. 54.1(a)(1); 28 U.S.C. § 1920(1).

Defendants next object to various "unnecessary/unexplained process server fees." Bill of Cost Objections at 8. First, Defendants object to three charges of $75 for a process server fee for Defendants Cameron, Lebrecht, and McDermed because those fees were delivered to Defendants' counsel at the same time. *Id.* Plaintiff responds that Barrister Support Services charges a flat fee for each subpoena and does not offer discounts for delivery of multiple subpoenas to the same address. Hess Decl. ¶ 6. According to the Simone Farabee ("Ms. Farabee"), the industry standard for the service of process in Oregon "in regards to service of subpoenas is to charge a service fee per individual being served," regardless of address and regardless of whether the subpoena is personally served or delivered to an authorized entity. Declaration of Simone Farabee ("Farabee Decl.") (Dkt. 201-3) ¶ 3. Ms. Farabee further declares that "[t]he charge of a

service fee per individual being served is justified due to the tracking and handling of each individual document," which "requires an affidavit and that each . . . be signed by a notary public." *Id.* ¶ 5. Additionally, "[a]n affidavit of service can only contain one individual." *Id.* Given this explanation and the fact that Plaintiff provides supporting documentation showing these charges were actually incurred, Hess Decl. Ex. A, Exs. 11, 20, 22, the Court finds "the reasons for denying costs are not sufficiently persuasive to overcome the presumption in favor of an award." *Save Our Valley*, 335 F.3d at 945 (9th Cir. 2003). Accordingly, the Court allows this cost.

Defendants next object to separate service fees of $75 each for all trial subpoenas served on University of Oregon employees (Andy Bechdolt, Larry Black, Royce Myers, Eric Leroy, Zach Hermens, and Jared Davis) and for $50 served on Kent Abbott. Defendant argues "[i]t is unlikely Plaintiff was charged a separate service charge for each document inside the envelope dropped at UOPD." Bill of Costs Objections at 8. Plaintiff has provided the Court with adequate documentation showing these charges were incurred (and when they were incurred). *See* Hess Decl. Ex. A, Exs. 10, 12, 13, 18, 21, 26, 28.  For the same reasons articulated above, the Court allows these costs.

Defendants also object to the $75 service charges for Brian Patterson, Brandon Nicol, Timothy Ranger, Eric Markell, Ken Jackson, and Myrria Jones, which total $450. Bill of Costs Objections at 9. Plaintiff has provided the Court with adequate documentation showing these charges were incurred (and when they were incurred). *See* Hess Decl. Ex. A, Exs. 14, 15, 17, 19, 24, 25. Therefore, the Court allows these costs.

Defendants also object to a charge incurred on February 1, 2015 for "Civil Trial Subpoena Witness Fee" for Barrister Support Services. Plaintiff explains that the charge "is a reimbursement to Barrister Support Service for a $50 witness fee paid to Kent Abbott." Hess Decl. ¶ 3; *id.* Ex. A, Ex. 55. In light of Plaintiff's explanation and supporting documentation, the Court allows this cost.

### 3. Fees for Printed or Electronically Recorded Transcripts Necessarily Obtained for Use in the Case

Pursuant to 28 U.S.C. § 1920(2), a prevailing party may recover "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." Defendants specifically argue the Court should not allow recovery for costs of video depositions and daily trial transcripts. The Court will address each objection in turn.

#### a. Video Depositions

Defendant objects that Plaintiff seeks costs for a combined expense of "Court reporter/Videographer/Deposition Transcript Fees" for various witnesses and has not identified the percentage of that total that is attributable to the court reporter fees and the written transcript fees. Bill of Costs Objections at 4. In response, Plaintiff segregated the video costs from the deposition costs by providing an accounting of the videographer appearance fees for all depositions and the video processing fees. *See* Hess Decl. Ex. B. Plaintiff specifically explains he seeks videographer appearance fees for all depositions in the amount of $6709.38 and video processing fees in the amount of $1,823.50 for a total of $8,532.88. *Id.*

In addition to requesting that Plaintiff segregates these costs, Defendants assert the District of Oregon does not allow recovery for costs of videotaping non-perpetuation depositions and that when "the prevailing party is reimbursed for the cost of court reporting services and preparation of a written transcript, the added expense of videotaping the deposition is uniformly held to be unnecessary for purposes of [Rule] 54." Bill of Costs Objections at 3. Plaintiff responds that the District of Oregon does not *require* that these costs be rejected (though he acknowledges some courts have rejected them and "recovery of the costs of videotaping depositions under Rule 54 has generally been disfavored in Oregon"). Bill of Costs Reply at 4 (emphasis added). Further, in arguing this Court should allow video deposition costs, Plaintiff "offers that '[i]t is often more effective to show inconsistencies in the testimony of key witnesses on videotape

than to simply impeach them with a deposition transcript.'" *Id.* at 3 (quoting *Saba v. Unisys Corp.*, No.14-CV-01310-WHO, 2015 WL 5357577, at *1 (N.D. Cal. Sept. 14, 2015)).

Although the Court agrees with Plaintiff's conclusion that showing inconsistencies in a witness' testimony on videotape may be more effective than impeachment via a deposition transcript, the Court is not convinced this constitutes a "sufficient showing of necessity for videotaping" in this case. *Arboireau v. Adidas Salomon AG*, No. CV-01-105-ST, 2002 WL 31466564, at *6 (D. Or. June 14, 2002). In one case in this District, the court accepted that "the video version of Pullela's deposition was necessary to capture plaintiff's deposition demeanor for trial," but concluded that the defendant "fails to explain how, in the context of this case, Pullela's deposition demeanor was such an important issue that the video version, in addition to the written version, of her deposition was necessary." *Pullela v. Intel Corp.*, No. CV 08-1427-AC, 2010 WL 3361089, at *3 (D. Or. Aug. 25, 2010) *aff'd*, 467 F. App'x 553 (9th Cir. 2012). The *Pullela* court further noted that "demeanor of any witness, including the plaintiff in an employment lawsuit, is important in any case," but that "[t]hat general principle . . . should not automatically convert a videographer's fee into a recoverable item of cost where a court reporter also attended and transcribed the deposition and the party seeking to recover the videographer's cost does not offer one or more reasons specific to the case to justify an award of costs for both items." *Id.* This Court is persuaded by the *Pullela* court's reasoning that, although there might be some circumstances under which costs should be allowed for video depositions, "[r]outinely allowing recovery of the cost incurred for both the court reporter's transcript and a separate videographic record of depositions duplicates deposition costs without purpose." *Id.* Other courts in this District have similarly expressed concerns that the "videotaping costs duplicate the costs for the transcript since both contain the same information." *Id.*; *see also Kaufman v. Geico Indem. Co.*, No. 3:13-CV-01932-HZ, 2015

WL 5167248, at *5 (D. Or. Sept. 3, 2015). Accordingly, this Court concludes the costs Plaintiff incurred for videographer appearance fees for all depositions and video processing fees – $6,709.38 and $1,823.50, respectively – should not be allowed as taxable costs in this instance.[12] However, in the previous section, the Court already concluded these costs are recoverable as part of the attorney's fee award.[13]

### b.  Daily Trial Transcripts

Plaintiff seeks costs of $14,085.85 for "Real Time Rough Transcripts and Final Transcripts during Trial." Itemized Bill of Costs at 5. Defendants argue these expenses are not taxable costs because the trial transcripts were incurred for the convenience of counsel. Bill of Costs Objections at 5.

As noted above, under § 1920(2), a prevailing party may recover "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." In this District, "[t]he premium charge for a daily transcript can be awarded if the daily transcript is a necessity rather than for the convenience of counsel." *Adidas America, Inc. v. Payless Shoesource, Inc.*, Nos. 01-1655-KI (Lead Case), CV 03-1116-KI, 2009 WL 302246, at *3 (D. Or. Feb. 9, 2009); *see also Hunt v. City of Portland*, No. CV 08-802-AC, 2011 WL 3555772, at *8 (D. Or. Aug. 11, 2011) ("The expense of daily transcripts usually requires prior court approval or a finding by the district court that 'the case is complex and the transcripts proved invaluable to both counsel and the court.'") (citation omitted).

---

[12] The Court notes that Defendants specifically object to $490 for "conversion of Transcript Video to MPEG format to create video synched transcript" for McDermed, Lebrecht, Cameron, and Mike Morrow. Bill of Costs Objections at 4 (citing Itemized Bill of Costs at 5). Exhibit B to the Hess Declaration shows these amounts are included in the "video processing fees" listed above. Thus, the Court has already addressed these costs.

[13] The Court notes Defendants do not object to Plaintiff recovering the cost of deposition transcripts. "Fees incurred in obtaining deposition transcripts are generally available to the prevailing party under 28 U.S.C. § 1920(2)." *Kelley*, 2004 WL 1824121, at *4. Indeed, "[a] deposition need not be absolutely indispensable to justify an award of costs; rather, it must only be reasonably necessary at the time it was taken, without regard to alter developments that may eventually render the deposition unneeded at the time of trial or summary disposition." *Id.* (quoting *Frederick v. City of Portland*, 162 F.R.D. 139, 143 (D. Or. 1995)) (internal quotation marks omitted). The Court concludes these deposition fees were necessary and recoverable expenses and that Plaintiff may recover these costs from Defendants.

Plaintiff states that, before the trial started, counsel made the decision to obtain daily trial transcripts. Bill of Costs Reply at 5. Ultimately, Plaintiff contends, the daily transcripts were "invaluable in allowing plaintiff's counsel to examine witnesses based on prior witness testimony." *Id.* That may be the case, but the Court also notes Mr. G. Kafoury declares that, although counsel "had a running transcript made by a court reporter during the trial . . . I nonetheless took exhaustive notes during the trial [which were] intended to assist in the preparation of the questioning of subsequent witnesses, and in the crafting of final argument." Declaration of Gregory Kafourty ("G. Kafoury Decl.") (Dkt. 199) ¶ 5. Although the Court may award the cost of daily transcripts under certain circumstances, the Court cannot conclude the daily transcripts were "necessarily obtained for use in the case," including because other attorneys were present to take notes. In light of the evidence presented, the Court finds the case was not sufficiently complex or lengthy for daily trial transcripts to be necessary.[14] *Hunt*, 2011 WL 3555772, at *8 ("Here, the cost of daily transcripts is not warranted. First, City did not obtain a stipulation from Hunt or seek the court's prior approval that daily transcripts were necessary and, thus, their cost potentially recoverable. Second, trial of Hunt's claims did not involve the complexity or length that would justify as 'necessa[r]y' obtaining daily trial transcripts. The evidence was not complicated: no scientific, medical, financial, or similarly technical or complex testimony was presented at trial that might better support a claim of need for daily transcripts. The evidence consisted of witnesses, who described events they witnessed or experienced, and documents, almost all of which were letters, emails, police reports, and job applications. . . . Nor does the trial's eight-day length, in light of the straightforwardness of this evidence, provide support for City's suggestion that daily transcripts were needed.").[15]

---

[14] The Court also notes Plaintiff did not obtain a stipulation from Defendants or seek the Court's prior approval that daily transcripts were necessary.

[15] *See also Rodriguez v. General Dynamics Armament and Technical Products, Inc.*, 775 F. Supp. 2d. 1217, 1220 (D. Haw. 2011) ("In support of recovering the costs of the daily trial transcripts, the declaration of counsel submitted

Accordingly, Defendants request for a $14,085.85 deduction is granted.

### 4.    Fees for Witnesses

Plaintiff seeks reimbursement of $5,739.68 in costs incurred to obtain the witnesses' appearance at trial. Itemized Bill of Costs at 6–8.

"Witness fees, including a daily attendance fee and travel expenses as set forth in 28 U.S.C. § 1821, are taxable as costs under 28 U.S.C. § 1920(3) and [Rule] 54(d)(1). Under § 1821(a)(1), witness fees are recoverable for a witness 'in attendance at any court of the United States or before a United States Magistrate Judge, or before any person authorized to take his deposition.' [28 U.S.C. § 1821(a)(1).] To be taxable as costs the witness's testimony must be material to an issue tried and reasonably necessary to its disposition." *Tucker*, 2015 WL 2092849, at *3 (citation omitted).

Defendant argues Plaintiff seeks double recovery for "Civil Trial Subpoena Witness Fees" for the following witnesses:

> Casey Boyd - $172.25. Billed on August 21, 2015 and September 24, 2015 (pgs 6 and 8 of Plaintiff's Itemized Statement).
>
> Michael Drake - $167.65. Billed on August 21, 2015 and September 24, 2015 (pgs 6 and 8 of Plaintiff's Itemized statement).
>
> Brandon Nicol - $155.00. Billed on August 21, 2015 and September 18, 2015 (pgs 7 and 8 of Plaintiff's Itemized statement).
>
> Royce Myers - $167.50. Billed on August 21, 2015 and September 24, 2015 (pgs 7 and 8 of Plaintiff's Itemized Statement).

Bill of Costs Objections at 7.

---

in support of the bill of costs assets only that daily trial transcripts assisted in presenting accurate final argument, and the cross examination of later witnesses. This demonstrates that General Dynamics obtained the trial transcripts because General Dynamics considered them convenient to have, but by no means shows that such transcripts were necessary. The fact that General Dynamics *routinely* ordered a transcript for each day of trial further suggests that the dailies were procured as a matter of custom rather than for any particular purpose.") (citations and internal quotation marks omitted).

Plaintiff responds that Brandon Nicol ("Nicol") was issued a second witness fee because Plaintiff contemplated calling him as a rebuttal witness and that Michael Drake ("Drake") and Casey Boyd ("Boyd") were issued two witness fess because they were "held over for an additional day of trial." Bill of Costs Reply at 6. The Court is satisfied Plaintiff is not attempting to double recover for witness fees for Nicol, Drake, and Boyd. During oral argument, Plaintiff explained Royce Meyers ("Meyers") was also "held over" and paid for the second day. The Court is satisfied Plaintiff is not trying to double recover for witness fees for Meyers. In light of Plaintiff's explanation, the Court allows these costs.

### C. Final Calculation of Taxable Costs

In summary, the Court awards taxable costs as follows: fees of the clerk in the amount of $400, fees for the service of summons and subpoena in the amount of $3,005, fees for electronically recorded transcripts necessarily obtained for use in the case in the amount of $13,970.22, fees and disbursements for printing in the amount of $1,261.33, fees for witnesses in the amount of $4,478.35, and fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case in the amount of $39.96. Thus, in total, the Court awards $23,154.86 in taxable costs.

### IV.    Disposition

For the reasons set forth above, Plaintiff's Petition for Attorney Fees and Non-Taxable Costs is GRANTED in the amount of $425,488.13, and Plaintiff's Bill of Costs is GRANTED in the amount of $23,154.86.

DATED:      March 16, 2016

_David O. Carter_

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE